# EXHIBIT A

Trials@uspto.gov                                    Paper 8
571-272-7822                              Entered: October 28, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

GOPRO, INC.,
Petitioner,

v.

CONTOUR, LLC,
Patent Owner.
_____

Case IPR2015-01080
Patent 8,890,954 B2
_____

Before JUSTIN T. ARBES, MICHAEL J. FITZPATRICK, and
NEIL T. POWELL, *Administrative Patent Judges*.

ARBES, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2015-01080
Patent 8,890,954 B2

Petitioner GoPro, Inc. filed a Petition (Paper 1, "Pet.") requesting
*inter partes* review of claims 1–30 of U.S. Patent No. 8,890,954 B2
(Ex. 1001, "the '954 patent") pursuant to 35 U.S.C. § 311(a).  Patent Owner
Contour, LLC filed a Preliminary Response (Paper 6, "Prelim. Resp.")
pursuant to 35 U.S.C. § 313.  We have jurisdiction under 35 U.S.C. § 314
and 37 C.F.R. § 42.4(a).  Pursuant to 35 U.S.C. § 314(a), the Director may
not authorize an *inter partes* review unless the information in the petition
and preliminary response "shows that there is a reasonable likelihood that
the petitioner would prevail with respect to at least 1 of the claims
challenged in the petition."  For the reasons that follow, we have decided to
institute an *inter partes* review as to claims 1, 2, and 11–30 of the
'954 patent on certain grounds of unpatentability.

## I. BACKGROUND
### A. The '954 Patent[1]

The '954 patent describes an "integrated hands-free, [point-of-view
(POV)] action sports video camera or camcorder that is configured for
remote image acquisition control and viewing."  Ex. 1001, col. 1, ll. 14–17.
According to the '954 patent, "integrated hands-free, POV action sports
video cameras" available at the time of the invention were "still in their
infancy and may be difficult to use."  *Id.* at col. 1, ll. 44–49, Figs. 2A, 2B.
The disclosed device uses global positioning system (GPS) technology to
track its location during recording and a wireless connection protocol, such
as Bluetooth, to "provide control signals or stream data to [the] wearable

---

[1] U.S. Patent No. 8,896,694 B2 (Ex. 1002), which is being challenged in
Case IPR2015-01078, is a continuation of the '954 patent.

IPR2015-01080
Patent 8,890,954 B2

video camera and to access image content stored on or streaming from [the] wearable video camera." *Id.* at col. 1, ll. 53–62, col. 16, ll. 50–60. Figure 3A of the '954 patent is reproduced below.



As shown in Figure 3A, digital video camera 10 comprises camera housing 22, rotatable lens 26, image sensor 18 (not shown), such as a complementary metal-oxide semiconductor (CMOS) image capture card, microphone 90, and slidable switch activator 80, which can be moved to on and off positions to control recording and the storage of video. *Id.* at col. 5, ll. 38–61, col. 8, l. 64–col. 9, l. 50. "When recording video or taking photographs in a sports application, digital video camera 10 is often mounted in a location that does not permit the user to easily see the camera." *Id.* at col. 19, ll. 35–37. Digital video camera 10, therefore, includes wireless communication capability to allow another device, such as a smartphone or tablet computer executing application software, to control camera settings in real time, access video stored on the camera, and act as a "viewfinder" to "preview what digital video camera 10 sees" and allow the user to check alignment, light level, etc. *Id.* at col. 19, l. 38–col. 20, l. 47.

3

IPR2015-01080
Patent 8,890,954 B2

*B. Illustrative Claim*

Claim 1 of the '954 patent recites:

1. An integrated, hands-free, portable, viewfinderless point of view digital video camera, comprising:

a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded, and the image sensor producing real time video image data of the scene;

a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a wireless connection-enabled controller; and

a camera processor configured to:

receive the video image data directly or indirectly from the image sensor,

generate, from the video image data, first video image content at a first resolution and second video image content at a second resolution, wherein the first resolution is lower than the second resolution,

communicate the first video image content using the wireless connection protocol device to the wireless connection-enabled controller without displaying the first video image content, the second video image content, or the video image data at the video camera,

receive the control signals from the wireless connection-enabled controller,

adjust image capture settings of the video camera prior to recording the scene based at least in part on at least a portion of the control signals, and

in response to a record command, cause the second video image content to be stored at the video camera, wherein

the wireless connection-enabled controller comprises executable instructions for execution on a

4

IPR2015-01080
Patent 8,890,954 B2

handheld personal portable computing device, wherein when executed, the executable instructions cause the handheld personal portable computing device to:

receive the first video image content from the wireless connection protocol device,

display the first video image content on a display of the handheld personal portable computing device, the first video image content comprising a preview image of the scene, the preview image allowing a user of the video camera to manually adjust a position or orientation of the video camera to record the scene,

generate the control signals based at least on input received at the handheld personal portable computing device, wherein the control signals comprise at least one of a frame alignment, a multi-camera synchronization, remote file access, and a resolution setting and at least one of a lighting setting, an audio setting, and a color setting, and

communicate the control signals to the wireless connection protocol device.

### C. The Prior Art

Petitioner relies on the following prior art:

U.S. Patent No. 7,362,532 B2, issued Apr. 22, 2008 (Ex. 1013, "Ueyama");

U.S. Patent Application Publication No. 2010/0118158 A1, published May 13, 2010 (Ex. 1010, "Boland"); and

GoPro Sales Catalog (Ex. 1011, "GoPro Catalog").[2]

---

[2] When citing the GoPro Catalog, we refer to the page numbers at the bottom-right corner of each page. *See* 37 C.F.R. § 42.63(d)(2).

IPR2015-01080
Patent 8,890,954 B2

*D. The Asserted Grounds*

Petitioner challenges claims 1–30 of the '954 patent on the following

grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| Boland and GoPro Catalog | 35 U.S.C. § 103(a)[3] | 1–9, 11–20, 22–25, and 27–30 |
| Boland, GoPro Catalog, and Ueyama | 35 U.S.C. § 103(a) | 10, 21, and 26 |

*E. Claim Interpretation*

The Board interprets claims using the "broadest reasonable

construction in light of the specification of the patent in which [they]

appear[]." 37 C.F.R. § 42.100(b); *see* Office Patent Trial Practice Guide,

77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012); *In re Cuozzo Speed Techs.,*

*LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015).  Under this standard, we

interpret claim terms using "the broadest reasonable meaning of the words in

their ordinary usage as they would be understood by one of ordinary skill in

the art, taking into account whatever enlightenment by way of definitions or

otherwise that may be afforded by the written description contained in the

applicant's specification."  *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir.

1997).  We presume that claim terms have their ordinary and customary

meaning.  *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir.

---

[3] The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
(2011) ("AIA"), amended 35 U.S.C. §§ 102, 103, and 112.  Because the
'954 patent has an effective filing date before the effective dates of the
applicable AIA amendments, we refer to the pre-AIA versions of 35 U.S.C.
§§ 102, 103, and 112.

IPR2015-01080
Patent 8,890,954 B2

2007) ("The ordinary and customary meaning is the meaning that the term would have to a person of ordinary skill in the art in question." (internal quotation marks omitted)).  A patentee, however, may rebut this presumption by acting as his own lexicographer, providing a definition of the term in the specification with "reasonable clarity, deliberateness, and precision."  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).  The parties provide proposed interpretations for various limitations of the claims.  *See* Pet. 14–20; Prelim. Resp. 17–21.  For purposes of this Decision, we interpret two claim limitations as follows.

### 1. *"Scene to be Recorded" (Claims 1 and 22)*

Petitioner argues that the term "scene to be recorded" should be interpreted to mean "a scene viewed by the camera prior to recording." Pet. 15.  Patent Owner does not provide an alternative interpretation in its Preliminary Response.  Prelim. Resp. 17–21.  Based on the current record, we agree that Petitioner's proposed interpretation is the broadest reasonable interpretation in light of the Specification.  As Petitioner points out, claim 1 recites an image sensor "capturing light propagating through the lens and representing a *scene to be recorded*, . . . the image sensor producing real time video image data of the scene," and a camera processor configured to "generate, from the video image data, first video image content at a first resolution and second video image content at a second resolution" and "adjust image capture settings of the video camera *prior to recording the scene*."  *See* Pet. 15.  Claim 22 includes similar language.  On this record, applying the broadest reasonable interpretation of the claims in light of the

IPR2015-01080
Patent 8,890,954 B2

Specification, we interpret "scene to be recorded" to mean a scene viewed by the camera prior to recording.

### 2. "Record" (Claims 1, 3, 13, 22, and 27)

Petitioner argues that the term "record" should be interpreted to mean "store in response to a record command." Pet. 16. As support, Petitioner cites the recitation in claim 1 of a "camera processor configured to . . . in response to a record command, cause the second video image content to be stored at the video camera," the Specification's disclosure of a "Start Recording command signal," and the testimony of Kendyl A. Román regarding how a person of ordinary skill in the art would have understood the term. *Id.* (citing Ex. 1001, col. 25, ll. 9–11, Ex. 1007 ¶¶ 96–97). Patent Owner argues that the term "record" should be interpreted to mean "to store," citing portions of the Specification using both "record" and "store," and a dictionary definition of "record." Prelim. Resp. 18–20 (citing Ex. 1001, Ex. 2003, 974).

Based on the current record, we agree with Patent Owner that the term "record" in the claims, by itself, is not limited to storing only in response to a record command. As Patent Owner correctly points out, various claims already recite storing video image content based on or in response to a "record command." *See id.* at 19; *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"). For example, claim 1 recites a camera processor configured to "adjust image capture settings of the video camera prior to *recording* the scene" and, "*in response to a record command*, cause the second video image content to be stored at

8

IPR2015-01080
Patent 8,890,954 B2

the video camera."  Claims 3, 5, 13, 22, 23, and 28 similarly recite storing

based on or in response to a "record command."  Further, we do not see any

language in the Specification limiting the term "record" to storing only in

response to a record command.  Thus, we are not persuaded that "record,"

by itself, should be interpreted to require a record command as Petitioner

suggests.  On this record, applying the broadest reasonable interpretation of

the claims in light of the Specification, we interpret "record" to mean store.


## II. DISCUSSION

### A. *Obviousness Ground Based on Boland and the GoPro Catalog*
### *(Claims 1–9, 11–20, 22–25, and 27–30)*

Petitioner contends that claims 1–9, 11–20, 22–25, and 27–30 are

unpatentable over Boland and the GoPro Catalog under 35 U.S.C. § 103(a),

relying on the supporting testimony of Mr. Román.  Pet. 27–56.  We are

persuaded that Petitioner has established a reasonable likelihood of

prevailing on its asserted ground as to claims 1, 2, 11–20, 22–25, and 27–30,

but not as to claims 3–9, for the reasons explained below.


### 1. *Boland*

Boland describes a "video recording camera system configured to

record video from a user's perspective," comprising a headset positioned on

the wearer's ear and a wireless handset.  Ex. 1010 ¶¶ 6, 30, Fig. 1.

IPR2015-01080
Patent 8,890,954 B2

Figure 2A of Boland is reproduced below.



**FIG. 2A**

Figure 2A depicts headset 100 comprising lens 105, image sensor(s) 205, multimedia processor 210, storage medium 228, and radio 240, which communicates with wireless communication handset 201 over communication channel 202 (e.g., Bluetooth). *Id.* ¶¶ 32–35. Handset 201 includes "view screen 303 . . . to serve as a viewfinder for the headset 100 and . . . further provide for previewing of video recorded by the headset 100," and video control soft keys 307 to allow the user to control the operation of headset 100. *Id.* ¶¶ 46, 58, 61, 63, Fig. 3A. Video data is stored and overwritten, in a first in-first out manner, in non-volatile recorded video data buffer 229 of storage medium 228 for "continuous video recording," and the user may save particular video portions as clip files 231. *Id.* ¶¶ 35, 40–42, 48.

IPR2015-01080
Patent 8,890,954 B2

### 2. GoPro Catalog

The GoPro Catalog is a product catalog for Petitioner's "HD MotorsportsHERO" product. Ex. 1011, 2. It describes a "1080p [high-definition (HD)] wearable camera" and "optional wireless remote with an omni-directional range of 30 feet." *Id.* at 3, 6. The images shown on pages 2 and 15 of the catalog are reproduced below.

 

The images above depict the camera attached to a user's helmet, and the wireless remote control, which the GoPro Catalog describes as follows: "With a 30' / 10m range and the ability to wirelessly transmit a preview image of your photo or video before you start recording, the wireless remote opens up a world of filming opportunities and convenience." *Id.* at 15.

### 3. Level of Ordinary Skill in the Art

"Section 103(a) forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 (2007) (quoting 35 U.S.C. § 103(a)). Mr. Román testifies that a person of ordinary skill in the art would have had "education in computer science or

11

IPR2015-01080
Patent 8,890,954 B2

electrical engineering and experience in the field of digital video cameras, and knowledge of the scientific literature concerning the same." Ex. 1007 ¶ 37; *see* Pet. 20–21. According to Mr. Román, "[t]he education and experience levels may vary between persons of ordinary skill, with some persons holding a basic Bachelor's degree with three years of relevant work experience, and others holding a Masters or Ph.D. but having one to two years of experience." Ex. 1007 ¶ 37. Patent Owner does not dispute this assessment in its Preliminary Response. Based on the current record, including our review of the '954 patent and the types of problems and solutions described in the '954 patent and cited prior art, we determine that a person of ordinary skill in the art would have had at least a bachelor's degree in computer science, electrical engineering, or a similar discipline, and some experience creating, programming, or working with digital video cameras, such as POV action sports video cameras. *See* Ex. 1001, col. 1, ll. 12–49. We apply this level of ordinary skill in the art for purposes of this Decision.

### 4. Whether Petitioner Has Made a Threshold Showing That The GoPro Catalog Is Prior Art

As an initial matter, we must determine whether Petitioner has made a threshold showing that the GoPro Catalog is a prior art printed publication under 35 U.S.C. § 102(b). *See* Pet. 26. At this stage of the proceeding, the question is not whether a preponderance of the evidence supports the GoPro Catalog being prior art, but rather whether Petitioner has provided sufficient evidence, based on the current record, to show a reasonable likelihood of prevailing on its asserted grounds. *Compare* 35 U.S.C. § 314(a) (regarding

IPR2015-01080
Patent 8,890,954 B2

threshold for instituting a trial) *with* 35 U.S.C. § 316(e) (regarding proving
unpatentability of a claim).

The determination of whether a document is a "printed publication"
under 35 U.S.C. § 102 involves a case-by-case inquiry into the facts and
circumstances surrounding its disclosure to members of the public. *In re
Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). To qualify, a document
must have been "'sufficiently accessible to the public interested in the art'"
before the critical date. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)
(citation omitted). "A reference is publicly accessible 'upon a satisfactory
showing that such document has been disseminated or otherwise made
available to the extent that persons interested and ordinarily skilled in the
subject matter or art exercising reasonable diligence, can locate it.'"
*Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350–51 (Fed. Cir. 2008)
(citation omitted).

Petitioner argues that the GoPro Catalog is a prior art printed
publication because it was "distributed publicly at least as early as July
2009, when [Petitioner] attended the 2009 Tucker Rocky Dealer Show and
handed the GoPro Catalog to potential customers." Pet. 26. As support,
Petitioner cites the testimony of Damon Jones, a Senior Product Manager
employed by Petitioner since 2008. Ex. 1012 ¶¶ 1–2. Mr. Jones testifies
that as part of his employment, he "participate[s] in and [is] otherwise
familiar with various trade organizations relevant to [Petitioner's] business,"
including Tucker Rocky Distributing for "vendors, dealers, retailers,
customers and enthusiasts of . . . motorcycles and outdoor vehicles, and
associated accessories." *Id.* ¶ 4. Mr. Jones states that he attended the
Tucker Rocky Dealer Show on July 23–27, 2009 in Fort Worth, Texas,

13

IPR2015-01080
Patent 8,890,954 B2

which had "approximately 150 vendors," including Petitioner, and "over 1000 attendees," including "actual and potential dealers, retailers, and customers of portable, point of view video cameras." *Id.* ¶¶ 5–7 (citing Ex. A). Mr. Jones further states that he manned Petitioner's booth at the show, where Petitioner displayed the GoPro Catalog and "distributed hundreds of copies . . . without restriction to attendees." *Id.* ¶¶ 8–9 (citing Ex. B). We are persuaded, based on the current record, that Mr. Jones's testimony amounts to a threshold showing of public accessibility.

Patent Owner argues that Petitioner has not met its burden for five reasons. Prelim. Resp. 4–17. First, Patent Owner argues that the GoPro Catalog has no date on its face and thus fails to indicate when it might have been publicly available. *Id.* at 6. Patent Owner, however, does not cite any authority—and we are aware of none—imposing a strict requirement that a document must list a date to qualify as a prior art printed publication. Rather, the determination requires a case-by-case inquiry into all of the facts and circumstances surrounding the document's alleged disclosure to the public. *Klopfenstein*, 380 F.3d at 1350.

Second, Patent Owner contends that Petitioner offers no evidence that the GoPro Catalog was disseminated or otherwise made available to the public interested in the art, pointing to Petitioner's proposed definition of a person of ordinary skill in the art as someone with education in computer science or electrical engineering. Prelim. Resp. 7–9. Patent Owner also argues that Tucker Rocky Distributing is a trade organization for motorcycles and other action sports vehicles, and its dealer show is meant only for sales and marketing personnel. *Id.* These arguments are not persuasive, as they overlook other aspects of Mr. Jones's testimony

IPR2015-01080
Patent 8,890,954 B2

discussing action sports vehicle "accessories."  For example, Mr. Jones testifies that

> Tucker Rocky is a trade organization directed to motorcycles and other action sports vehicles, such as motorbikes, all-terrain vehicles (ATVs), snowmobiles and watercraft, as well as apparel, *parts and accessories related thereto*.  The Tucker Rocky trade organization is for vendors, dealers, retailers, *customers and enthusiasts* of such motorcycles and outdoor vehicles, and *associated accessories*.  *The accessories include video cameras that are mountable, for example, to a rider's helmet or vehicle so as to capture video from the rider's perspective.*

Ex. 1012 ¶ 4 (emphasis added).  Based on the current record, we are persuaded that those interested in digital video cameras of the type described in the '954 patent would have been interested in events like the Tucker Rocky Dealer Show where the GoPro Catalog was available.  *See, e.g.*, Ex. 1001, col. 1, ll. 12–23 ("First-person video cameras are a relatively new product category that have been adapted to capture POV video by action sports enthusiasts in a hands-free manner.").  Further, the fact that Petitioner chose to market its product at the show is at least some indication that individuals interested in POV action sports video cameras likely would be in attendance.

Third, Patent Owner argues that Petitioner offers no evidence that the Tucker Rocky Dealer Show was advertised or announced to the public. Prelim. Resp. 9–11.  Patent Owner cites a printout of Tucker Rocky Distributing's website from 2009 stating that "[w]e do not sell direct to the public," and a Facebook page indicating that the 2013 Tucker Rocky Dealer Show was not open to the public.  *Id.* (citing Exs. 2001, 2002).  Patent Owner's evidence is not persuasive at this stage of the proceeding.

IPR2015-01080
Patent 8,890,954 B2

Mr. Jones testifies that the 2009 Tucker Rocky Dealer Show was attended by "over 1000 attendees," including "*actual and potential* dealers, retailers, and *customers* of portable, point of view video cameras." Ex. 1012 ¶¶ 5, 7 (emphasis added).  Even if Patent Owner is correct that a customer could not have purchased a camera from Petitioner at the show, that does not mean necessarily that the GoPro Catalog was not accessible to customers, dealers, and retailers at the show.  Likewise, without more, whether the 2013 show was open to the public is not germane to the 2009 show.

Fourth, Patent Owner challenges Mr. Jones's declaration as based on inadmissible hearsay and not authenticating properly the GoPro Catalog. Prelim. Resp. 11–15.  We do not find those arguments persuasive at this stage of the proceeding.  A mechanism exists, however, for Patent Owner to challenge the admissibility of Mr. Jones's declaration (and other evidence submitted by Petitioner) after institution.  *See* 37 C.F.R. § 42.64; Prelim. Resp. 12 n.5.

Fifth, Patent Owner argues that Mr. Jones provides no evidence to support his statement that after the show and "'prior to September 13, 2009, [Petitioner] continued to distribute and otherwise make available the GoPro Catalog to [Petitioner's] actual and potential customers, dealers and retailers through its website, direct mail, and other means of distribution.'"  Prelim. Resp. 15–16 (citing Ex. 1012 ¶ 11).  Because Petitioner's assertions regarding the GoPro Catalog's availability at the Tucker Rocky Dealer Show in 2009 are sufficient for a threshold showing, however, we need not determine at this time any public accessibility that may have occurred subsequent to the show.  Patent Owner will have the opportunity to challenge all of Petitioner's assertions during trial, including the ability to

IPR2015-01080
Patent 8,890,954 B2

cross-examine Mr. Jones and object and move to exclude his testimony if warranted, and Petitioner will have the opportunity to respond.

Based on the current record, Petitioner has demonstrated a reasonable likelihood of prevailing on its assertion that the GoPro Catalog is a prior art printed publication under 35 U.S.C. § 102(b). The fact that we institute an *inter partes* review on a not fully developed record is not dispositive of the ultimate legal conclusion as to whether the GoPro Catalog qualifies as prior art. That conclusion will be based on a preponderance of the fully developed record evidence.

### 5. Claims 1, 2, 11–20, 22–25, and 27–30
### a. Independent Claims 1, 11, 22, and 27

Petitioner relies on Boland for the majority of the limitations of claim 1. Pet. 27–42. For example, Petitioner argues that Boland teaches a (1) "lens" (i.e., lens 105), (2) "image sensor" (i.e., image sensor(s) 205) producing "real time video image data" (i.e., input image signal(s) 209), (3) "wireless connection protocol device" (i.e., radio 240) configured to send "real time image content" (i.e., video data 216) to, and receive control signals or data signals from, a "wireless connection-enabled controller" (i.e., handset 201), and (4) "camera processor" (i.e., processor 210). *Id.* at 27–34. Petitioner relies on the combined teachings of Boland and the GoPro Catalog for certain limitations of claim 1, such as an image sensor capturing light representing a "scene to be recorded" (e.g., using a controller as a viewfinder to preview video before recording), generating first and second video image content at different resolutions, and adjusting image capture settings prior to recording. *Id.* at 31–42. Petitioner argues that it

IPR2015-01080
Patent 8,890,954 B2

would have been obvious to combine Boland's teachings with the GoPro
Catalog's teaching of a camera and wireless remote control. *Id.* at 32–33,
35–37. We have reviewed Petitioner's analysis and the supporting
testimony of Mr. Román, and are persuaded that Petitioner has demonstrated
a reasonable likelihood of prevailing as to claim 1, as well as claims 11, 22,
and 27. *See id.* at 27–56 (citing Ex. 1007).

Patent Owner argues that Boland and the GoPro Catalog do not teach
or suggest certain limitations of independent claims 1, 11, 22, and 27
directed to the generation of two types of video image content. Prelim.
Resp. 22–31. Specifically, claim 1 recites "real time video image data,"
"real time image content," and a camera processor configured to "generate,
*from the video image data*, first video image content at a first resolution and
second video image content at a second resolution, wherein the first
resolution is lower than the second resolution." Claims 11 and 27 recite
similar limitations. Claim 22 recites "capturing in real time the scene" and
"generating video image content *corresponding to the scene* at a first quality
and at a second quality, wherein the first quality is lower than the second
quality."

According to Patent Owner, Boland's "preview" functionality is used
for "watching video at the handset that has already been captured and stored
by the headset"; therefore, the video is generated from, and corresponds to,
previously stored content, not real time video image data of the scene, as
required by the claims. *Id.* at 22–25 (emphasis omitted). Patent Owner also
argues that Boland discloses, in a different embodiment, streaming full
resolution video to the handset, but never discloses streaming a low
resolution preview. *Id.* at 25–30. Finally, Patent Owner challenges

18

IPR2015-01080
Patent 8,890,954 B2

Petitioner's reliance on the GoPro Catalog because the reference does not
disclose technical details of its wireless remote control or explain what it
means by "preview image" (i.e., video or a single image), and argues that
Petitioner fails to explain why or how a person of ordinary skill in the art
would have combined the teachings of Boland and the GoPro Catalog. *Id.*
at 30–31, 36–39.

Patent Owner's arguments are not persuasive on this record.  As
Petitioner points out, Boland discloses previewing video in a "low resolution
format" from recorded video data buffer 229 *or* video clip file 231.  *See*
Pet. 35–36 (citing Ex. 1010 ¶¶ 53, 69).  Boland further states:

> [V]ideo frames *streamed* from the headset 100 . . . as output
> from the recorded video data buffer 229 . . . may be viewed
> and/or recorded to the handset 201 in substantially *real time*.
> As such, the video data 216A may include . . . video data sent
> as a *'live' video feed*.

Ex. 1010 ¶ 73 (emphasis added).  Other portions of Boland confirm that a
"real time" "live video feed" may be generated from recorded video data
buffer 229, and that the handset may be used as a "viewfinder" for viewing
what the headset currently is seeing.  *See id.* ¶¶ 9, 58 ("view screen 303 is to
serve as a viewfinder for the headset 100 and may further provide for
previewing of video recorded by the headset 100"), 61 ("view screen 303
serving as a preview screen or a 'view finder' similar to a conventional
video recorder"), 69 ("handset 201 is also used to preview (perhaps in a low
resolution format) video data that is stored on the headset 100 either in the
non-volatile recorded video data buffer 229 or as a distinct video clip
file 231"), 75.  Thus, Boland teaches both generating low resolution video
from recorded video data buffer 229, and video being streamed in real time
from recorded video data buffer 229.  Accordingly, we are not persuaded by

IPR2015-01080
Patent 8,890,954 B2

Patent Owner's contention that Boland's preview video from recorded video data buffer 229 is previously stored rather than generated from real time video data. *See* Prelim. Resp. 22–25.

Nor do we view Boland, based on the current record, as disclosing separate "preview" and "streaming" embodiments as Patent Owner suggests. *See id.* at 25–30. Rather, we view the cited disclosures as addressing potential capabilities of Boland's overall system. For instance, all of the cited disclosures reference the same elements of Figure 2A (e.g., processor 210, recorded video data buffer 229), indicating that they are part of the same overall system.

Finally, Petitioner's contention that it would have been obvious based on the GoPro Catalog to generate a low resolution preview prior to recording is persuasive. Petitioner cites the GoPro Catalog's statement that using a remote control for previewing before recording "'opens up a world of filming opportunities and convenience,'" and argues, with supporting testimony from Mr. Román, that a person of ordinary skill in the art would have understood doing so to "give[] the user the opportunity to adjust the camera position or settings in view of the previewed shot, with the predictable improvement of avoiding a poor quality recording." Pet. 32–33, 35–37 (citing Ex. 1011, 15, Ex. 1007 ¶¶ 131–32, 142, 145). Petitioner's analysis regarding the proposed combination is sufficient at this stage to show "some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *See KSR*, 550 U.S. at 417–18 (quotation omitted); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000) (evidence of a motivation to

IPR2015-01080
Patent 8,890,954 B2

combine prior art references "may flow from the prior art references themselves").

### b. Dependent Claims 13, 23, and 28

Claim 23 recites "causing the video image content at the first quality to be stored in the storage device at the video camera as a first video file." Claims 13 and 28 recite similar limitations.  Petitioner cites Boland's disclosure that preview (i.e., low resolution format) video may be stored in recorded video data buffer 229 or video clip file 231, and argues that a person of ordinary skill in the art would have been motivated to store the preview video as a file "so that a user would have ready, repeated access to a lower quality preview version of the video file to use in navigating to a desired segment of the video using Boland's forward index 308 and backward index 306 soft keys."  Pet. 46–47, 50, 53, 55 (citing Ex. 1010 ¶ 69, Ex. 1007 ¶ 168).  Patent Owner contends that preview frames in Boland are downloaded from recorded video data buffer 229 at the time of display by down-converting from the originally stored, higher quality versions, rather than downloading from preview video stored as a separate file.  Prelim. Resp. 33–36.  According to Patent Owner, a person of ordinary skill in the art would not have stored both high and low resolution versions as files because "[d]oing so would be wasteful of storage."  *Id.*

We are persuaded that Petitioner's explanation for why a person of ordinary skill in the art would have stored the preview video as a file (i.e., to allow the user "ready, repeated access" to the preview version) is sufficient based on the current record.  In particular, we do not see why Petitioner's cited advantage is factually incorrect.  Nor do we see, on this record, why

IPR2015-01080
Patent 8,890,954 B2

storage concerns would have outweighed that advantage such that a person of ordinary skill in the art would not have considered storing the preview video. *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n.8 (Fed. Cir. 2000) ("The fact that the motivating benefit comes at the expense of another benefit, however, should not nullify its use as a basis to modify the disclosure of one reference with the teachings of another.  Instead, the benefits, both lost and gained, should be weighed against one another."). Petitioner's analysis is sufficient as to dependent claims 13, 23, and 28.

### c. Conclusion

Upon review of Petitioner's analysis and the supporting testimony of Mr. Román, we are persuaded that, on this record, Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 1, 2, 11–20, 22–25, and 27–30 are unpatentable over Boland and the GoPro Catalog.

### 6. Claims 3–9

Independent claim 3 recites seven limitations in means-plus-function format under 35 U.S.C. 112, sixth paragraph.  Petitioner provides, for each limitation, a proposed interpretation identifying the recited function and alleged corresponding structure in the Specification of the '954 patent. Pet. 16–20; *see Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015) (interpreting a means-plus-function limitation requires first "identify[ing] the claimed function" and then "determin[ing] what structure, if any, disclosed in the specification corresponds to the claimed function"). Patent Owner does not propose different interpretations, but argues that the Petition is deficient with respect to claim 3.  Prelim. Resp. 20–21, 31–33.

IPR2015-01080
Patent 8,890,954 B2

A petition seeking *inter partes* review must identify "[h]ow the challenged claim is to be construed," including, for means-plus-function limitations, identifying "the specific portions of the specification that describe the structure, material, or acts corresponding to each claimed function." 37 C.F.R. § 42.104(b)(3). The Petition does so. A petition, however, also must identify "[h]ow the construed claim is unpatentable under the statutory grounds identified" and "where each element of the claim is found in the prior art," and must explain the "relevance of the evidence to the challenge raised." 37 C.F.R. §§ 42.104(b)(4), 42.104(b)(5); *see also* 37 C.F.R. § 42.22(a)(2) (a petition must include a "full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence"). The Petition does not explain sufficiently how claim 3 allegedly is unpatentable based on Petitioner's proposed interpretations of the means-plus-function limitations.

Claim 3, for example, recites a "means for generating a first data stream and a second data stream corresponding to the video image data, wherein the second data stream is a higher quality than the first data stream." Petitioner identifies the following as the corresponding structure in the Specification for performing the recited function: "main processor 500 as shown in Figs. 30 and 40, including a video codec 558 and FIFO buffer, which is configured to provide a 'fast photo mode' as shown in the flow diagram of Fig. 34 and as described at 19:61–20:47, 22:6–12, 26:34–42." Pet. 17–18. In its analysis of the prior art, Petitioner argues the following:

> The video stream at the second resolution discussed in [1.3.2] is higher than the first, and thus higher quality. A [person of ordinary skill in the art] would recognize Boland's processor 210, which has a CODEC and buffer 229 would be at least an

IPR2015-01080
Patent 8,890,954 B2

> equivalent of the '954 Patent disclosure of main processor 500
> configured to generate the recited data streams, the structure
> corresponding to the claimed "means."

*Id.* at 43–44 (citations omitted); *see also* Ex. 1007 ¶ 160 (identical testimony
from Mr. Román). Petitioner does not explain sufficiently *why* Boland's
processor 210 allegedly is equivalent to the corresponding structure
identified by Petitioner. As Patent Owner correctly points out, Petitioner
argues that the identified corresponding structure is configured to provide a
"fast photo mode" as shown in Figure 34 and described in various portions
of the Specification, but Petitioner never accounts for this in its analysis of
Boland. *See* Prelim. Resp. 32–33. Thus, assuming (without deciding) that
Petitioner's proposed interpretation is correct, Petitioner's analysis does not
demonstrate sufficiently that Boland discloses structure that is the same as or
the equivalent of Petitioner's alleged corresponding structure in the
Specification of the '954 patent.

Similarly, claim 3 recites a "means for adjusting one or more settings
of the video camera based at least in part on at least a portion of the control
signals received from the personal portable computing device." Petitioner
identifies the following as corresponding structure: "main processor 500 as
shown at Figs. 30 and 40, configured to provide video adjustments based on
signals received from controller 510 as described in the flow diagram of
Fig. 34 and described at 20:27–47, 22:33–53." Pet. 18. Petitioner argues
that a person of ordinary skill in the art "would recognize Boland's
processor 210, configured in view of the GoPro Catalog as described above
([1.3], [1.3.5]), as being at least an equivalent of the '954 Patent's disclosure
of 'main processor 500' configured to adjust one or more settings, the
structure corresponding to the claimed 'means.'" *Id.* at 45; *see also*

24

IPR2015-01080
Patent 8,890,954 B2

Ex. 1007 ¶ 165 (same).  Petitioner does not explain sufficiently *why*
Boland's processor 210 allegedly is equivalent to main processor 500
configured to provide video adjustments based on signals received from
controller 510 as shown in the flow diagram of Figure 34.

Thus, based on the record presented, Petitioner has not shown a
reasonable likelihood of prevailing on its assertion that claim 3, or
claims 4–9 depending therefrom, are unpatentable over Boland and the
GoPro Catalog.

### B. Obviousness Ground Based on Boland, the GoPro Catalog, and Ueyama (Claims 10, 21, and 26)

Petitioner contends that claims 10, 21, and 26 are unpatentable over
Boland, the GoPro Catalog, and Ueyama under 35 U.S.C. § 103(a), relying
on the supporting testimony of Mr. Román.  Pet. 56–59.  We are persuaded
that Petitioner has established a reasonable likelihood of prevailing on its
asserted ground as to claims 21 and 26, but not as to claim 10, for the
reasons explained below.

### 1. Ueyama

Ueyama describes an "image capturing apparatus which can be
remotely operated and is able to transmit captured image data to [an]
operation terminal."  Ex. 1013, col. 3, l. 67–col. 4, l. 4.  The operation
terminal receives streamed image data over a wireless connection, such as
Bluetooth, at a particular frame rate and can act as a "view finder" by
displaying the images on a monitor.  *Id.* at col. 4, ll. 13–18, 24–30.  The
image capturing apparatus "judges" the speed of the connection and

IPR2015-01080
Patent 8,890,954 B2

"decreas[es] the resolution" of images when the speed is low.  *Id.* at
Abstract, col. 10, ll. 4–14.

## 2. Analysis

Petitioner relies on the combination of Boland and the GoPro Catalog
discussed above, and relies on Ueyama as teaching the additional limitations
recited in claims 10, 21, and 26.  *See* Pet. 56–59.  For example, claim 21
recites "monitor[ing] a wireless connection bandwidth between the wireless
connection protocol device and the personal portable computing device" and
"adjust[ing] at least one of a frame rate and an image resolution of the first
image data stream based at least in part on the monitored wireless
connection bandwidth."  Petitioner argues that it would have been obvious to
incorporate Ueyama's judging functionality into the Boland system to
"know[] when it would be necessary to reduce resolution or frame rate to
meet the constraints of the available wireless link" and provide the
"predictable benefit of being able to provide the highest resolution preview
that is supported by the actual bandwidth of Boland's wireless link."
*Id.* at 57–58.  Similar to its argument regarding the combination of Boland
and the GoPro Catalog, Patent Owner argues that Petitioner's assertions are
conclusory and do not explain why or how an ordinarily skilled artisan
would have modified the Boland system.  Prelim. Resp. 39–40.

Based on the current record, we conclude that Petitioner has
established a reasonable likelihood of prevailing as to claims 21 and 26, as
Petitioner's arguments are supported by the testimony of Mr. Román and
Ueyama itself.  *See* Pet. 57–59; Ex. 1007 ¶ 223; Ex. 1013, Abstract, col. 1,
l. 57–col. 2, l. 10, col. 10, ll. 4–14 (describing transmission speed and cost

26

IPR2015-01080
Patent 8,890,954 B2

problems with communicating real-time video, and monitoring transmission times and reducing resolution when necessary).  Claim 10, however, depends from claim 3.  Petitioner does not rely on Ueyama for any of the limitations of claim 3, and has not established a reasonable likelihood of prevailing for the reasons set forth above.  *See supra* Section II.A.6.

Upon review of Petitioner's analysis and the supporting testimony of Mr. Román, we are persuaded that, on this record, Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 21 and 26 are unpatentable over Boland, the GoPro Catalog, and Ueyama, but has not established a reasonable likelihood of prevailing as to claim 10.

### C. Conclusion

We conclude that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to at least one claim of the '954 patent challenged in the Petition.  The Board, however, has not made a final determination under 35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

### III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that an *inter partes* review is instituted as to claims 1, 2, and 11–30 of the '954 patent;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '954 patent is hereby instituted commencing on the entry date of this Decision, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; and

IPR2015-01080
Patent 8,890,954 B2

FURTHER ORDERED that the trial is limited to the following grounds of unpatentability, and no other grounds set forth in the Petition as to claims 1, 2, and 11–30 of the '954 patent are authorized:

Claims 1, 2, 11–20, 22–25, and 27–30 under 35 U.S.C. § 103(a) as unpatentable over Boland and the GoPro Catalog; and

Claims 21 and 26 under 35 U.S.C. § 103(a) as unpatentable over Boland, the GoPro Catalog, and Ueyama.

IPR2015-01080
Patent 8,890,954 B2

PETITIONER:

Patrick D. McPherson
David T. Xue
DUANE MORRIS LLP
pdmcpherson@duanemorris.com
DTXue@duanemorris.com


PATENT OWNER:

Nicole M. Jantzi
Ian B. Brooks
ROPES & GRAY LLP
nicole.jantzi@ropesgray.com
Ian.Brooks@ropesgray.com

# EXHIBIT B

Trials@uspto.gov                                    Paper 8
571-272-7822                                        Entered: October 28, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

GOPRO, INC.,
Petitioner,

v.

CONTOUR, LLC,
Patent Owner.
_____

Case IPR2015-01078
Patent 8,896,694 B2
_____

Before JUSTIN T. ARBES, MICHAEL J. FITZPATRICK, and
NEIL T. POWELL, *Administrative Patent Judges*.

ARBES, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2015-01078
Patent 8,896,694 B2

Petitioner GoPro, Inc. filed a Petition (Paper 1, "Pet.") requesting
*inter partes* review of claims 1–20 of U.S. Patent No. 8,896,694 B2
(Ex. 1002, "the '694 patent") pursuant to 35 U.S.C. § 311(a).  Patent Owner
Contour, LLC filed a Preliminary Response (Paper 6, "Prelim. Resp.")
pursuant to 35 U.S.C. § 313.  We have jurisdiction under 35 U.S.C. § 314
and 37 C.F.R. § 42.4(a).  Pursuant to 35 U.S.C. § 314(a), the Director may
not authorize an *inter partes* review unless the information in the petition
and preliminary response "shows that there is a reasonable likelihood that
the petitioner would prevail with respect to at least 1 of the claims
challenged in the petition."  For the reasons that follow, we have decided to
institute an *inter partes* review as to claims 1–20 on certain grounds of
unpatentability.

## I. BACKGROUND

### A. The '694 Patent[1]

The '694 patent describes an "integrated hands-free, [point-of-view
(POV)] action sports video camera or camcorder that is configured for
remote image acquisition control and viewing."  Ex. 1002, col. 1, ll. 16–19.
According to the '694 patent, "integrated hands-free, POV action sports
video cameras" available at the time of the invention were "still in their
infancy and may be difficult to use."  *Id.* at col. 1, ll. 46–51, Figs. 2A, 2B.
The disclosed device uses global positioning system (GPS) technology to
track its location during recording and a wireless connection protocol, such
as Bluetooth, to "provide control signals or stream data to [the] wearable

---

[1] The '694 patent is a continuation of U.S. Patent No. 8,890,954 B2
(Ex. 1001), which is being challenged in Case IPR2015-01080.

IPR2015-01078
Patent 8,896,694 B2

video camera and to access image content stored on or streaming from [the] wearable video camera." *Id.* at col. 1, ll. 55–64, col. 16, ll. 52–62. Figure 3A of the '694 patent is reproduced below.



As shown in Figure 3A, digital video camera 10 comprises camera housing 22, rotatable lens 26, image sensor 18 (not shown), such as a complementary metal-oxide semiconductor (CMOS) image capture card, microphone 90, and slidable switch activator 80, which can be moved to on and off positions to control recording and the storage of video. *Id.* at col. 5, ll. 41–64, col. 8, l. 66–col. 9, l. 52. "When recording video or taking photographs in a sports application, digital video camera 10 is often mounted in a location that does not permit the user to easily see the camera." *Id.* at col. 19, ll. 37–39. Digital video camera 10, therefore, includes wireless communication capability to allow another device, such as a smartphone or tablet computer executing application software, to control camera settings in real time, access video stored on the camera, and act as a "viewfinder" to "preview what digital video camera 10 sees" and allow the user to check alignment, light level, etc. *Id.* at col. 19, l. 40–col. 20, l. 49.

IPR2015-01078
Patent 8,896,694 B2

*B. Illustrative Claim*

Claim 1 of the '694 patent recites:

1. A point of view digital video camera system, comprising:

an integrated hands-free portable viewfinderless video camera, the video camera including a lens and an image sensor, the image sensor capturing light propagating through the lens and representing a scene to be recorded, and the image sensor producing real time video image data of the scene without displaying the scene to a user of the video camera, wherein the real time video image data of the scene relates to an activity in which the user of the video camera is about to engage, the video camera comprising:

a camera processor for receiving the video image data directly or indirectly from the image sensor, and

a wireless connection protocol device operatively connected to the camera processor to send real time video image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a wireless connection-enabled controller, wherein

the camera processor is configured to:

generate the video image content simultaneously at a first resolution and at a second resolution, the video image content at the first resolution and the second resolution corresponding to the video image data representing the scene to be recorded, wherein the first resolution is lower than the second resolution,

stream the real time video image content at the first resolution using the wireless connection protocol device to the wireless connection-enabled controller without displaying the video image content at the video camera,

receive the control signals for adjusting image capture settings of the video camera,

4

adjust the image capture settings of the video camera prior to recording the scene, and

in response to a record command, cause the video image content at the second resolution to be stored at the video camera;

a mounting interface coupled to the video camera;

a mount configured to be mounted to the body, a garment, or a vehicle of the user of the video camera, the mount configured to receive the mounting interface for rotatably mounting the camera on the body, the garment, or the vehicle of the user of the video camera, the mounting interface and the mount further configured for manual adjustment of the video camera with respect to the user of the video camera; and

the wireless connection-enabled controller for controlling the video camera, the controller comprising executable instructions for execution on a personal portable computing device operable by a user of the personal portable computing device, wherein when executed, the executable instructions cause the personal portable computing device to:

receive video image content at the first resolution directly from the video camera,

display the video image content at the first resolution on a display of the portable computing device for adjustment of the image capture settings prior to the user of the video camera recording the activity, the video image content at the first resolution comprising a preview image of the scene which is not recorded on the camera or the personal portable computing device, the preview image allowing the user of the video camera to manually adjust an angle of the video camera with respect to the user of the video camera, and

generate the control signals to the wireless connection protocol device on the video camera to allow the user of the personal portable computing device to remotely adjust the image capture settings prior to the video camera recording the activity, wherein the control

IPR2015-01078
Patent 8,896,694 B2

signals comprise at least one of frame alignment, multi-camera synchronization, remote file access, data acquisition, and resolution setting adjustment and at least one of lighting setting adjustment, audio setting adjustment, and color setting adjustment.

## C. The Prior Art

Petitioner relies on the following prior art:

U.S. Patent No. 7,362,532 B2, issued Apr. 22, 2008 (Ex. 1013, "Ueyama");

U.S. Patent Application Publication No. 2010/0118158 A1, published May 13, 2010 (Ex. 1010, "Boland"); and

GoPro Sales Catalog (Ex. 1011, "GoPro Catalog").[2]

## D. The Asserted Grounds

Petitioner challenges claims 1–20 of the '694 patent on the following grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| Boland and GoPro Catalog | 35 U.S.C. § 103(a)[3] | 1–13, 15, 16, and 18–20 |
| Boland, GoPro Catalog, and Ueyama | 35 U.S.C. § 103(a) | 14 and 17 |

[2] When citing the GoPro Catalog, we refer to the page numbers at the bottom-right corner of each page. *See* 37 C.F.R. § 42.63(d)(2).

[3] The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA"), amended 35 U.S.C. §§ 102 and 103. Because the '694 patent has an effective filing date before the effective date of the applicable AIA amendments, we refer to the pre-AIA versions of 35 U.S.C. §§ 102 and 103.

6

IPR2015-01078
Patent 8,896,694 B2

*E. Claim Interpretation*

The Board interprets claims using the "broadest reasonable construction in light of the specification of the patent in which [they] appear[]." 37 C.F.R. § 42.100(b); *see* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015). Under this standard, we interpret claim terms using "the broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in the applicant's specification." *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997). We presume that claim terms have their ordinary and customary meaning. *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007) ("The ordinary and customary meaning is the meaning that the term would have to a person of ordinary skill in the art in question." (internal quotation marks omitted)). A patentee, however, may rebut this presumption by acting as his own lexicographer, providing a definition of the term in the specification with "reasonable clarity, deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). The parties provide proposed interpretations for various limitations of the claims. *See* Pet. 15–18; Prelim. Resp. 17–20. For purposes of this Decision, we interpret two claim limitations as follows.

*1. "Scene to be Recorded" (Claims 1 and 11)*

Petitioner argues that the term "scene to be recorded" should be interpreted to mean "a scene viewed by the camera prior to recording."

IPR2015-01078
Patent 8,896,694 B2

Pet. 16–17.  Patent Owner does not provide an alternative interpretation in
its Preliminary Response.  Prelim. Resp. 17–20.  Based on the current
record, we agree that Petitioner's proposed interpretation is the broadest
reasonable interpretation in light of the Specification.  As Petitioner points
out, claim 1 recites an image sensor "capturing light propagating through the
lens and representing a *scene to be recorded*, . . . the image sensor producing
real time video image data of the scene," and a camera processor configured
to generate video image content "corresponding to the video image data
representing the *scene to be recorded*" and "adjust the image capture settings
of the video camera *prior to recording the scene*."  *See* Pet. 16–17.  Claim
11 includes similar language.  On this record, applying the broadest
reasonable interpretation of the claims in light of the Specification, we
interpret "scene to be recorded" to mean a scene viewed by the camera prior
to recording.

### 2. "Record" (Claims 1, 3, and 11)

Petitioner argues that the term "record" should be interpreted to mean
"store in response to a record command."  Pet. 17–18.  As support, Petitioner
cites the recitation in claim 1 of a camera processor "configured to . . . in
response to a record command, cause the video image content at the second
resolution to be stored at the video camera," the Specification's disclosure of
a "Start Recording command signal," and the testimony of Kendyl A.
Román regarding how a person of ordinary skill in the art would have
understood the term.  *Id.* (citing Ex. 1002, col. 25, ll. 12–14, Ex. 1007 ¶ 97).
Patent Owner argues that the term "record" should be interpreted to mean
"to store," citing portions of the Specification using both "record" and

IPR2015-01078
Patent 8,896,694 B2

"store," and a dictionary definition of "record." Prelim. Resp. 18–20 (citing Ex. 1002, Ex. 2003, 974).

Based on the current record, we agree with Patent Owner that the term "record" in the claims, by itself, is not limited to storing only in response to a record command. As Patent Owner correctly points out, various claims already recite storing video image content based on or in response to a "record command." *See id.* at 19; *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored"). For example, claim 1 recites a camera processor configured to "adjust the image capture settings of the video camera prior to *recording* the scene" and, "*in response to a record command*, cause the video image content at the second resolution to be stored at the video camera." Claims 3 and 11 similarly recite storing based on or in response to a "record command." Further, we do not see any language in the Specification limiting the term "record" to storing only in response to a record command. Thus, we are not persuaded that "record," by itself, should be interpreted to require a record command as Petitioner suggests. On this record, applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret "record" to mean store.

## II. DISCUSSION

### A. *Obviousness Ground Based on Boland and the GoPro Catalog (Claims 1–13, 15, 16, and 18–20)*

Petitioner contends that claims 1–13, 15, 16, and 18–20 are unpatentable over Boland and the GoPro Catalog under 35 U.S.C. § 103(a), relying on the supporting testimony of Mr. Román. Pet. 25–53. We are

9

IPR2015-01078
Patent 8,896,694 B2

persuaded that Petitioner has established a reasonable likelihood of prevailing on its asserted ground for the reasons explained below.

*1. Boland*

Boland describes a "video recording camera system configured to record video from a user's perspective," comprising a headset positioned on the wearer's ear and a wireless handset.  Ex. 1010 ¶¶ 6, 30, Fig. 1.

Figure 2A of Boland is reproduced below.



**FIG. 2A**

Figure 2A depicts headset 100 comprising lens 105, image sensor(s) 205, multimedia processor 210, storage medium 228, and radio 240, which communicates with wireless communication handset 201 over communication channel 202 (e.g., Bluetooth).  *Id.* ¶¶ 32–35.  Handset 201 includes "view screen 303 . . . to serve as a viewfinder for the headset 100

IPR2015-01078
Patent 8,896,694 B2

and . . . further provide for previewing of video recorded by the headset 100," and video control soft keys 307 to allow the user to control the operation of headset 100.  *Id.* ¶¶ 46, 58, 61, 63, Fig. 3A.  Video data is stored and overwritten, in a first in-first out manner, in non-volatile recorded video data buffer 229 of storage medium 228 for "continuous video recording," and the user may save particular video portions as clip files 231.  *Id.* ¶¶ 35, 40–42, 48.

### *2. GoPro Catalog*

The GoPro Catalog is a product catalog for Petitioner's "HD MotorsportsHERO" product.  Ex. 1011, 2.  It describes a "1080p [high-definition (HD)] wearable camera" and "optional wireless remote with an omni-directional range of 30 feet."  *Id.* at 3, 6.  The images shown on pages 2 and 15 of the catalog are reproduced below.

 

The images above depict the camera attached to a user's helmet, and the wireless remote control, which the GoPro Catalog describes as follows: "With a 30' / 10m range and the ability to wirelessly transmit a preview image of your photo or video before you start recording, the wireless remote opens up a world of filming opportunities and convenience."  *Id.* at 15.

IPR2015-01078
Patent 8,896,694 B2

### 3. Level of Ordinary Skill in the Art

"Section 103(a) forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 (2007) (quoting 35 U.S.C. § 103(a)).  Mr. Román testifies that a person of ordinary skill in the art would have had "education in computer science or electrical engineering and experience in the field of digital video cameras, and knowledge of the scientific literature concerning the same."  Ex. 1007 ¶ 37; *see* Pet. 18–19.  According to Mr. Román, "[t]he education and experience levels may vary between persons of ordinary skill, with some persons holding a basic Bachelor's degree with three years of relevant work experience, and others holding a Masters or Ph.D. but having one to two years of experience."  Ex. 1007 ¶ 37.  Patent Owner does not dispute this assessment in its Preliminary Response.  Based on the current record, including our review of the '694 patent and the types of problems and solutions described in the '694 patent and cited prior art, we determine that a person of ordinary skill in the art would have had at least a bachelor's degree in computer science, electrical engineering, or a similar discipline, and some experience creating, programming, or working with digital video cameras, such as POV action sports video cameras.  *See* Ex. 1002, col. 1, ll. 14–51.  We apply this level of ordinary skill in the art for purposes of this Decision.

IPR2015-01078
Patent 8,896,694 B2

### 4. Whether Petitioner Has Made a Threshold Showing That
### The GoPro Catalog Is Prior Art

As an initial matter, we must determine whether Petitioner has made a threshold showing that the GoPro Catalog is a prior art printed publication under 35 U.S.C. § 102(b). *See* Pet. 24. At this stage of the proceeding, the question is not whether a preponderance of the evidence supports the GoPro Catalog being prior art, but rather whether Petitioner has provided sufficient evidence, based on the current record, to show a reasonable likelihood of prevailing on its asserted grounds. *Compare* 35 U.S.C. § 314(a) (regarding threshold for instituting a trial) *with* 35 U.S.C. § 316(e) (regarding proving unpatentability of a claim).

The determination of whether a document is a "printed publication" under 35 U.S.C. § 102 involves a case-by-case inquiry into the facts and circumstances surrounding its disclosure to members of the public. *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). To qualify, a document must have been "'sufficiently accessible to the public interested in the art'" before the critical date. *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989) (citation omitted). "A reference is publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350–51 (Fed. Cir. 2008) (citation omitted).

Petitioner argues that the GoPro Catalog is a prior art printed publication because it was "distributed publicly at least as early as July 2009, when [Petitioner] attended the 2009 Tucker Rocky Dealer Show and

IPR2015-01078
Patent 8,896,694 B2

handed the GoPro Catalog to potential customers." Pet. 24.  As support,
Petitioner cites the testimony of Damon Jones, a Senior Product Manager
employed by Petitioner since 2008.  Ex. 1012 ¶¶ 1–2.  Mr. Jones testifies
that as part of his employment, he "participate[s] in and [is] otherwise
familiar with various trade organizations relevant to [Petitioner's] business,"
including Tucker Rocky Distributing for "vendors, dealers, retailers,
customers and enthusiasts of . . . motorcycles and outdoor vehicles, and
associated accessories."  *Id.* ¶ 4.  Mr. Jones states that he attended the
Tucker Rocky Dealer Show on July 23–27, 2009 in Fort Worth, Texas,
which had "approximately 150 vendors," including Petitioner, and
"over 1000 attendees," including "actual and potential dealers, retailers, and
customers of portable, point of view video cameras."  *Id.* ¶¶ 5–7 (citing
Ex. A).  Mr. Jones further states that he manned Petitioner's booth at the
show, where Petitioner displayed the GoPro Catalog and "distributed
hundreds of copies . . . without restriction to attendees."  *Id.* ¶¶ 8–9 (citing
Ex. B).  We are persuaded, based on the current record, that Mr. Jones's
testimony amounts to a threshold showing of public accessibility.

Patent Owner argues that Petitioner has not met its burden for five
reasons.  Prelim. Resp. 4–17.  First, Patent Owner argues that the GoPro
Catalog has no date on its face and thus fails to indicate when it might have
been publicly available.  *Id.* at 6.  Patent Owner, however, does not cite any
authority—and we are aware of none—imposing a strict requirement that a
document must list a date to qualify as a prior art printed publication.
Rather, the determination requires a case-by-case inquiry into all of the facts
and circumstances surrounding the document's alleged disclosure to the
public.  *Klopfenstein*, 380 F.3d at 1350.

IPR2015-01078
Patent 8,896,694 B2

Second, Patent Owner contends that Petitioner offers no evidence that the GoPro Catalog was disseminated or otherwise made available to the public interested in the art, pointing to Petitioner's proposed definition of a person of ordinary skill in the art as someone with education in computer science or electrical engineering.  Prelim. Resp. 7–9.  Patent Owner also argues that Tucker Rocky Distributing is a trade organization for motorcycles and other action sports vehicles, and its dealer show is meant only for sales and marketing personnel.  *Id.*  These arguments are not persuasive, as they overlook other aspects of Mr. Jones's testimony discussing action sports vehicle "accessories."  For example, Mr. Jones testifies that

> Tucker Rocky is a trade organization directed to motorcycles and other action sports vehicles, such as motorbikes, all-terrain vehicles (ATVs), snowmobiles and watercraft, as well as apparel, *parts and accessories related thereto*.  The Tucker Rocky trade organization is for vendors, dealers, retailers, *customers and enthusiasts* of such motorcycles and outdoor vehicles, and *associated accessories*.  *The accessories include video cameras that are mountable, for example, to a rider's helmet or vehicle so as to capture video from the rider's perspective.*

Ex. 1012 ¶ 4 (emphasis added).  Based on the current record, we are persuaded that those interested in digital video cameras of the type described in the '694 patent would have been interested in events like the Tucker Rocky Dealer Show where the GoPro Catalog was available.  *See, e.g.*, Ex. 1002, col. 1, ll. 14–25 ("First-person video cameras are a relatively new product category that have been adapted to capture POV video by action sports enthusiasts in a hands-free manner.").  Further, the fact that Petitioner chose to market its product at the show is at least some indication that

IPR2015-01078
Patent 8,896,694 B2

individuals interested in POV action sports video cameras likely would be in attendance.

Third, Patent Owner argues that Petitioner offers no evidence that the Tucker Rocky Dealer Show was advertised or announced to the public. Prelim. Resp. 9–11.  Patent Owner cites a printout of Tucker Rocky Distributing's website from 2009 stating that "[w]e do not sell direct to the public," and a Facebook page indicating that the 2013 Tucker Rocky Dealer Show was not open to the public.  *Id.* (citing Exs. 2001, 2002).  Patent Owner's evidence is not persuasive at this stage of the proceeding. Mr. Jones testifies that the 2009 Tucker Rocky Dealer Show was attended by "over 1000 attendees," including "*actual and potential* dealers, retailers, and *customers* of portable, point of view video cameras."  Ex. 1012 ¶¶ 5, 7 (emphasis added).  Even if Patent Owner is correct that a customer could not have purchased a camera from Petitioner at the show, that does not mean necessarily that the GoPro Catalog was not accessible to customers, dealers, and retailers at the show.  Likewise, without more, whether the 2013 show was open to the public is not germane to the 2009 show.

Fourth, Patent Owner challenges Mr. Jones's declaration as based on inadmissible hearsay and not authenticating properly the GoPro Catalog. Prelim. Resp. 11–15.  We do not find those arguments persuasive at this stage of the proceeding.  A mechanism exists, however, for Patent Owner to challenge the admissibility of Mr. Jones's declaration (and other evidence submitted by Petitioner) after institution.  *See* 37 C.F.R. § 42.64; Prelim. Resp. 12 n.5.

Fifth, Patent Owner argues that Mr. Jones provides no evidence to support his statement that after the show and "'prior to September 13, 2009,

16

IPR2015-01078
Patent 8,896,694 B2

[Petitioner] continued to distribute and otherwise make available the GoPro Catalog to [Petitioner's] actual and potential customers, dealers and retailers through its website, direct mail, and other means of distribution.'"  Prelim. Resp. 15–16 (citing Ex. 1012 ¶ 11).  Because Petitioner's assertions regarding the GoPro Catalog's availability at the Tucker Rocky Dealer Show in 2009 are sufficient for a threshold showing, however, we need not determine at this time any public accessibility that may have occurred subsequent to the show.  Patent Owner will have the opportunity to challenge all of Petitioner's assertions during trial, including the ability to cross-examine Mr. Jones and object and move to exclude his testimony if warranted, and Petitioner will have the opportunity to respond.

Based on the current record, Petitioner has demonstrated a reasonable likelihood of prevailing on its assertion that the GoPro Catalog is a prior art printed publication under 35 U.S.C. § 102(b).  The fact that we institute an *inter partes* review on a not fully developed record is not dispositive of the ultimate legal conclusion as to whether the GoPro Catalog qualifies as prior art.  That conclusion will be based on a preponderance of the fully developed record evidence.

*5. Claims 1–13, 15, 16, and 18–20*

*a. Independent Claims 1, 3, and 11*

Petitioner relies on Boland for the majority of the limitations of claim 1.  Pet. 25–44.  For example, Petitioner argues that Boland teaches a "video camera" (i.e., headset 100) comprising a (1) "lens" (i.e., lens 105), (2) "image sensor" (i.e., image sensor(s) 205) producing "real time video image data" (i.e., input image signal(s) 209), (3) "camera processor"

17

(i.e., processor 210), and (4) "wireless connection protocol device"
(i.e., radio 240) to send "real time video image content" (i.e., video data 216)
to, and receive control signals or data signals from, a "wireless
connection-enabled controller" (i.e., handset 201). *Id.* Petitioner relies on
the combined teachings of Boland and the GoPro Catalog for certain
limitations of claim 1, such as an image sensor capturing light representing a
"scene to be recorded" (e.g., using a controller as a viewfinder to preview
video before recording), generating video image content at two different
resolutions, adjusting image capture settings prior to recording, and a
"mount" and "mounting interface." *Id.* Petitioner argues that it would have
been obvious to combine Boland's teachings with the GoPro Catalog's
teaching of a camera and wireless remote control, as well as the GoPro
Catalog's teaching of known mounting devices. *Id.* at 30–32, 34–40.
We have reviewed Petitioner's analysis and the supporting testimony of
Mr. Román, and are persuaded that Petitioner has demonstrated a reasonable
likelihood of prevailing as to claim 1, as well as claims 3 and 11. *See id.*
at 25–51 (citing Ex. 1007).

Patent Owner argues that Boland and the GoPro Catalog do not teach
or suggest certain limitations of independent claims 1, 3, and 11 directed to
the generation of two types of video image content. Prelim. Resp. 21–30.
Specifically, claim 1 recites "real time video image data," "real time video
image content," and a camera processor configured to "generate the video
image content simultaneously at a first resolution and at a second resolution,
the video image content at the first resolution and the second resolution
*corresponding* to the video image data representing the scene to be recorded,

IPR2015-01078
Patent 8,896,694 B2

wherein the first resolution is lower than the second resolution." Claims 3 and 11 recite similar limitations.

According to Patent Owner, Boland's "preview" functionality is used for "watching video at the handset that has already been captured and stored by the headset"; therefore, the video is generated from, and corresponds to, previously stored content, not real time video image data representing the scene to be recorded, as required by the claims. *Id.* at 21–24 (emphasis omitted). Patent Owner also argues that Boland discloses, in a different embodiment, streaming full resolution video to the handset, but never discloses streaming a low resolution preview. *Id.* at 24–26. Finally, Patent Owner challenges Petitioner's reliance on the GoPro Catalog because the reference does not disclose technical details of its wireless remote control or explain what it means by "preview image" (i.e., video or a single image), and argues that Petitioner fails to explain why or how a person of ordinary skill in the art would have combined the teachings of Boland and the GoPro Catalog. *Id.* at 26–27, 33–35.

Patent Owner's arguments are not persuasive on this record. As Petitioner points out, Boland discloses previewing video in a "low resolution format" from recorded video data buffer 229 *or* video clip file 231. *See* Pet. 34–36 (citing Ex. 1010 ¶¶ 53, 69). Boland further states:

> [V]ideo frames *streamed* from the headset 100 . . . as output from the recorded video data buffer 229 . . . may be viewed and/or recorded to the handset 201 in substantially *real time*. As such, the video data 216A may include . . . video data sent as a *'live' video feed*.

Ex. 1010 ¶ 73 (emphasis added). Other portions of Boland confirm that a "real time" "live video feed" may be generated from recorded video data buffer 229, and that the handset may be used as a "viewfinder" for viewing

19

IPR2015-01078
Patent 8,896,694 B2

what the headset currently is seeing. *See id.* ¶¶ 9, 58 ("view screen 303 is to serve as a viewfinder for the headset 100 and may further provide for previewing of video recorded by the headset 100"), 61 ("view screen 303 serving as a preview screen or a 'view finder' similar to a conventional video recorder"), 69 ("handset 201 is also used to preview (perhaps in a low resolution format) video data that is stored on the headset 100 either in the non-volatile recorded video data buffer 229 or as a distinct video clip file 231"), 75. Thus, Boland teaches both generating low resolution video from recorded video data buffer 229, and video being streamed in real time from recorded video data buffer 229. Accordingly, we are not persuaded by Patent Owner's contention that Boland's preview video from recorded video data buffer 229 is previously stored rather than generated from real time video data. *See* Prelim. Resp. 21–24.

Nor do we view Boland, based on the current record, as disclosing separate "preview" and "streaming" embodiments as Patent Owner suggests. *See id.* at 24–26. Rather, we view the cited disclosures as addressing potential capabilities of Boland's overall system. For instance, all of the cited disclosures reference the same elements of Figure 2A (e.g., processor 210, recorded video data buffer 229), indicating that they are part of the same overall system.

Further, Petitioner's contention that it would have been obvious based on the GoPro Catalog to generate a low resolution preview prior to recording is persuasive. Petitioner cites the GoPro Catalog's statement that using a remote control for previewing before recording "'opens up a world of filming opportunities and convenience,'" and argues, with supporting testimony from Mr. Román, that a person of ordinary skill in the art would

IPR2015-01078
Patent 8,896,694 B2

have understood doing so to "give[] the user the opportunity to adjust the
camera position or settings in view of the previewed shot, with the
predictable improvement of avoiding a poor quality recording." Pet. 30–32,
35–37 (citing Ex. 1011, 15, Ex. 1007 ¶¶ 117, 132, 136). Petitioner's
analysis regarding the proposed combination is sufficient at this stage to
show "some articulated reasoning with some rational underpinning to
support the legal conclusion of obviousness." *See KSR*, 550 U.S. at 417–18
(quotation omitted); *Brown & Williamson Tobacco Corp. v. Philip Morris
Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000) (evidence of a motivation to
combine prior art references "may flow from the prior art references
themselves").

    Patent Owner makes two additional arguments regarding claims 1 and
11. First, Patent Owner contends that Boland does not generate video image
content "simultaneously" at two different resolutions, as recited in claim 1.
Prelim. Resp. 27–29. Second, Patent Owner contends that Boland does not
"stream the real time video image content at the first resolution," as recited
in claim 1, or "wirelessly transmit[] the video image content at the first
quality in real time," as recited in claim 11. *Id.* at 29–30. According to
Patent Owner, Boland's preview video is generated from previously stored
video in recorded video data buffer 229, not generated simultaneously with
the high resolution video in real time or streamed in real time. *Id.* at 27–30.
We are not persuaded for the reasons explained above. Boland teaches
video being streamed in "real time" from recorded video data buffer 229,
such that low resolution preview video from the buffer can be streamed in
real time. *See, e.g.*, Ex. 1010 ¶ 73. Further, we are persuaded by

21

IPR2015-01078
Patent 8,896,694 B2

Petitioner's argument, supported by the testimony of Mr. Román, that a person of ordinary skill in the art would have understood that

> to achieve the low resolution preview in real time, camera processor 210 generates the high resolution video, storing it frame-by-frame to circular buffer 229, while at the same time, generating the lower resolution stream frame-by-frame out of the buffer, with both streams being created at the same time, even though a particular frame from one stream is used to create a particular frame of the other stream.

*See* Pet. 35–36 (citing Ex. 1007 ¶ 132).  Petitioner has made a sufficient showing as to claims 1, 3, and 11.

### b. Dependent Claims 15 and 18

Claim 15 recites "based at least in part on the record command, storing the video image content at the first quality at the video camera." Claim 18 recites a similar limitation.  Petitioner cites Boland's disclosure that preview (i.e., low resolution format) video may be stored in recorded video data buffer 229 or video clip file 231, and argues that a person of ordinary skill in the art would have been motivated to store the preview video as a file "so that a user would have ready, repeated access to a lower quality preview version of the video file to use in navigating to a desired segment of the video using Boland's forward index 308 and backward index 306 soft keys."  Pet. 52 (citing Ex. 1010 ¶ 69, Ex. 1007 ¶ 187).  Patent Owner contends that preview frames in Boland are downloaded from recorded video data buffer 229 at the time of display by down-converting from the originally stored, higher quality versions, rather than downloading from preview video stored as a separate file.  Prelim. Resp. 30–33. According to Patent Owner, a person of ordinary skill in the art would not

IPR2015-01078
Patent 8,896,694 B2

have stored the low resolution version as a file because "[d]oing so would be wasteful in view of Boland's ability to create the preview from the higher quality video." *Id.*

We are persuaded that Petitioner's explanation for why a person of ordinary skill in the art would have stored the preview video as a file (i.e., to allow the user "ready, repeated access" to the preview version) is sufficient based on the current record. In particular, we do not see why Petitioner's cited advantage is factually incorrect. Nor do we see, on this record, why storage concerns would have outweighed that advantage such that a person of ordinary skill in the art would not have considered storing the preview video. *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n.8 (Fed. Cir. 2000) ("The fact that the motivating benefit comes at the expense of another benefit, however, should not nullify its use as a basis to modify the disclosure of one reference with the teachings of another. Instead, the benefits, both lost and gained, should be weighed against one another."). Petitioner's analysis is sufficient as to dependent claims 15 and 18.

### c. Conclusion

Upon review of Petitioner's analysis and the supporting testimony of Mr. Román, we are persuaded that, on this record, Petitioner has shown a reasonable likelihood of prevailing on its assertion that claims 1–13, 15, 16, and 18–20 are unpatentable over Boland and the GoPro Catalog.

IPR2015-01078
Patent 8,896,694 B2

### B. Obviousness Ground Based on Boland, the GoPro Catalog, and Ueyama (Claims 14 and 17)

Petitioner contends that claims 14 and 17 are unpatentable over Boland, the GoPro Catalog, and Ueyama under 35 U.S.C. § 103(a), relying on the supporting testimony of Mr. Román.  Pet. 53–56.  We are persuaded that Petitioner has established a reasonable likelihood of prevailing on its asserted ground for the reasons explained below.

### 1. Ueyama

Ueyama describes an "image capturing apparatus which can be remotely operated and is able to transmit captured image data to [an] operation terminal."  Ex. 1013, col. 3, l. 67–col. 4, l. 4.  The operation terminal receives streamed image data over a wireless connection, such as Bluetooth, at a particular frame rate and can act as a "view finder" by displaying the images on a monitor.  *Id.* at col. 4, ll. 13–18, 24–30.  The image capturing apparatus "judges" the speed of the connection and "decreas[es] the resolution" of images when the speed is low.  *Id.* at Abstract, col. 10, ll. 4–14.

### 2. Analysis

Petitioner relies on the combination of Boland and the GoPro Catalog discussed above, and relies on Ueyama as teaching the additional limitations recited in claims 14 and 17.  *See* Pet. 53–56.  For example, claim 14 recites "monitoring a wireless connection bandwidth between the wireless connection protocol device and the personal portable computing device" and "adjusting at least one of the frame rate and the image resolution of the

IPR2015-01078
Patent 8,896,694 B2

video image content at the first quality based at least in part on the monitored wireless connection bandwidth." Petitioner argues that it would have been obvious to incorporate Ueyama's judging functionality into the Boland system to "know[] when it would be necessary to reduce resolution or frame rate to meet the constraints of the available wireless link" and provide the "predictable benefit of being able to provide the highest resolution preview that is supported by the actual bandwidth of Boland's wireless link." *Id.* at 55–56. Similar to its argument regarding the combination of Boland and the GoPro Catalog, Patent Owner argues that Petitioner's assertions are conclusory and do not explain why or how an ordinarily skilled artisan would have modified the Boland system. Prelim. Resp. 35–37.

Based on the current record, we conclude that Petitioner has established a reasonable likelihood of prevailing as to claims 14 and 17, as Petitioner's arguments are supported by the testimony of Mr. Román and Ueyama itself. *See* Pet. 55–56; Ex. 1007 ¶¶ 196–98; Ex. 1013, Abstract, col. 1, l. 57–col. 2, l. 10, col. 10, ll. 4–14 (describing transmission speed and cost problems with communicating real-time video, and monitoring transmission times and reducing resolution when necessary).

## C. Conclusion

We conclude that Petitioner has demonstrated a reasonable likelihood of prevailing with respect to at least one claim of the '694 patent challenged in the Petition. The Board, however, has not made a final determination under 35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

IPR2015-01078
Patent 8,896,694 B2

## III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that an *inter partes* review is instituted as to claims 1–20 of the '694 patent;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '694 patent is hereby instituted commencing on the entry date of this Decision, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; and

FURTHER ORDERED that the trial is limited to the following grounds of unpatentability, and no other grounds set forth in the Petition as to claims 1–20 of the '694 patent are authorized:

Claims 1–13, 15, 16, and 18–20 under 35 U.S.C. § 103(a) as unpatentable over Boland and the GoPro Catalog; and

Claims 14 and 17 under 35 U.S.C. § 103(a) as unpatentable over Boland, the GoPro Catalog, and Ueyama.

IPR2015-01078
Patent 8,896,694 B2

PETITIONER:

Patrick D. McPherson
David T. Xue
DUANE MORRIS LLP
pdmcpherson@duanemorris.com
DTXue@duanemorris.com


PATENT OWNER:

Nicole M. Jantzi
Ian B. Brooks
ROPES & GRAY LLP
nicole.jantzi@ropesgray.com
Ian.Brooks@ropesgray.com

EXHIBIT C

Richard D. Burbidge (#0492)
rburbidge@bmgtrial.com
Jefferson W. Gross (#8339)
jwgross@bmgtrial.com
Andrew Dymek (#9277)
adymek@bmgtrial.com
BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111
Telephone: (801) 355-6677
Facsimile:  (801) 355-2341

Frank W. Compagni (#7174)
MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102
Telephone: (801) 478-0071
Facsimile:  (801) 478-0076
compagni@utahpatents.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CONTOUR, LLC, a Utah limited liability company,<br><br>               Plaintiff,<br>   v.<br><br>CAMP SAVER, LLC, a Utah limited liability company, dba CAMPSAVER.COM, and DOES 1-500,<br><br>               Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMAND**<br><br>Civil No. 2:14-cv-00864-PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Contour, LLC ("Contour" or "Plaintiff"), by its undersigned attorneys, brings

this action against Defendants and hereby alleges as follows:

## THE PARTIES

1.      Plaintiff Contour is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business in Utah County, Utah.

2.      Defendant Camp Saver, LLC ("Camp Saver") is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business in Cache County, Utah, and doing business as CampSaver.com.

3.      Defendants Does 1 through 500 (the "Doe Defendants") are individuals and/or entities that may be liable for the claims set forth herein, but whose specific names have not yet been enumerated by Plaintiff.  At such time that Plaintiff identifies and/or confirms Does 1 through 500, this Complaint shall be amended to specifically name said Does 1 through 500. The named Defendant(s) and Defendants Does 1 through 500 will sometimes collectively be referred to herein as "Defendants."

## NATURE OF THE ACTION

4.      This is a civil action for infringement of United States Patent Nos. 8,890,954 (the "'954 Patent") and 8,896,694 (the "'694 Patent") under the patent laws of the United States, 35 U.S.C. § 271 *et seq.,* and for violations of the Utah Unfair Competition Act, Utah Code Ann. §13-5a-101 *et seq.*  True and correct copies of the '954 and '694 Patents are attached hereto as Exhibits A and B, respectively.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a).  This Court also has supplemental jurisdiction under 28 U.S.C.

§ 1331.

6.      This Court has pendent jurisdiction of the other causes of action set forth herein

under the provisions of 28 U.S.C. § 1338(b) in that other causes of action are joined with

substantial and related claims under the patent laws.

7.      Venue is proper in this judicial district under Title 28 U.S.C. §§ 1391 and 1400(b)

because Defendants are subject to personal jurisdiction in this judicial district, have committed

acts of infringement in this judicial district, and transact and are doing substantial business in this

judicial district.

8.      Personal jurisdiction exists over the Defendants.  Camp Saver is organized under

the laws of the State of Utah, and its principal place of business is within Utah.  Defendants have

purposefully availed themselves of the privilege of conducting activities within this forum.

These activities far exceed the requisite minimum contacts.  Defendants' activities in this forum

are continuous and systematic, and give rise to the liabilities sued upon herein.

9.      Defendants' activities in this forum include, *inter alia*, selling and offering to sell

infringing products in this forum, and marketing and advertising infringing products in this

forum.

10.     Camp Saver and the other Defendants do extensive business within the State of Utah.  Camp Saver and the other Defendants earn substantial amounts of revenue through their contacts with this forum.

## BACKGROUND

11.     On November 18, 2014, the '954 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing," was duly and legally issued to Plaintiff, as assignee.  Plaintiff is currently the owner and possessor of all rights pertaining to the '954 Patent.

12.     On November 25, 2014, the '694 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing," was duly and legally issued to Plaintiff as assignee.  Plaintiff is currently the owner and possessor of all rights pertaining to the '694 Patent.

13.     Plaintiff is a maker and seller of wearable and gear-mountable camera products, including the Contour Roam3, the Contour Roam2, and the Contour+2.  Features of the Contour+2 are described in the '954 and/or '694 Patents and set forth in one or more claims of the '954 Patent and in one or more claims of the '694 Patent.

14.     Camp Saver and one or more of the Doe Defendants sell and/or offer for sale (or direct or induce others to sell and/or offer for sale) camera products (the "infringing products") in the United States, that infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent.

4

15.     One or more of the Defendants advertise, demonstrate and/or recommend infringing uses and/or provide instruction on how to engage in infringing uses of the infringing products through various forms and by various means, including but not limited to advertisements, websites, product brochures and product manuals.

16.     One or more of the Defendants offer to sell and sell components that are a material part of the claimed invention of the '954 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

17.     One or more of the Defendants offer to sell and sell components that are a material part of the claimed invention of the '694 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '694 Patent.

**COUNT I**
**CLAIM FOR DIRECT INFRINGEMENT OF THE**
**'954 PATENT UNDER 35 U.S.C. § 271(a)**

18.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

19.     The '954 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

20.     Camp Saver and one or more of the Doe Defendants have been, and continue to be, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third

5

parties, come within the scope of one or more claims of the '954 Patent. Defendants have thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a) *et seq*.

21. Camp Saver and one or more of the Doe Defendants have been, and continue to be, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within a range of equivalents of one or more claims of the '954 Patent. Defendants have thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a).

22. The selling and/or offering to sell infringing products by Camp Saver and one or more of the Doe Defendants has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive rights under the '954 Patent.

23. Plaintiff has been injured and damaged monetarily and otherwise by Defendants' infringement of the '954 Patent. Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff, in an amount not less than a reasonable royalty.

24. Defendants' continuing acts of infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

25. Plaintiff has been and will continue to be irreparably harmed by Defendants' infringement of the '954 Patent unless enjoined by this Court. Defendants' infringing activities negatively impact sales of Plaintiff's competing camera products.

6

## COUNT II
## CLAIM FOR INDUCEMENT OF INFRINGEMENT OF THE
## '954 PATENT UNDER 35 U.S.C. § 271(b)

26.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

27.     Camp Saver and one or more of the Doe Defendants have indirectly infringed and are still indirectly infringing the '954 Patent in violation of 35 U.S.C. § 271(b) *et seq*., by actively inducing infringement of the '954 Patent.

28.     Camp Saver and the indirectly infringing Doe Defendants became aware of the '954 Patent, at the latest, when they were served with this complaint and yet continue to actively and knowingly induce others to directly infringe the '954 Patent.

29.     Despite its awareness of the '954 Patent, Camp Saver continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '954 Patent.  These active steps include, *inter alia*, advertising the availability of infringing products for purchase, advertising infringing uses and instructing how to engage in infringing uses of the infringing products, demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

30.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' indirect infringement of the '954 Patent in violation of 35 U.S.C. § 271(b).  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

31.     Defendants' continuing acts of indirect infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

32.     Plaintiff has been and will continue to be irreparably harmed by Defendants' indirect infringement of the '954 Patent unless enjoined by this Court.  Defendants' infringing activities negatively impact sales of Plaintiff's competing camera products.

**COUNT III**
**CLAIM FOR CONTRIBUTORY INFRINGEMENT OF THE**
**'954 PATENT UNDER 35 U.S.C. § 271(c)**

33.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

34.     Camp Saver and one or more of the Doe Defendants have committed and continue to commit acts of contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c) *et seq*., by, *inter alia*, offering to sell and selling components that are a material part of the claimed invention and which have no substantial non-infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

35.     These acts of contributory infringement of the '954 Patent include, *inter alia*, selling and offering for sale components, housings, mounts, replacement parts and kits, software, and applications, that are especially made and adapted for use in directly infringing the '954 Patent.

36.     Camp Saver and the Doe Defendants engaging in contributory infringement became aware of the '954 Patent, at the latest, when they were served with this Complaint and yet continue to engage in contributory infringement of the '954 Patent.

37.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c).  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

38.     Defendants' continuing acts of contributory infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

39.     Plaintiff has been and will continue to be irreparably harmed by Defendants' contributory infringement of the '954 Patent unless enjoined by this Court.  Defendants' infringing activities negatively impact sales of Plaintiff's competing camera products and related components.

### COUNT IV
### CLAIM FOR VIOLATION OF UTAH UNFAIR COMPETITION ACT, UTAH CODE ANN. § 13-5a-102 *et seq.*

40.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

41.     Camp Saver and one or more of the Doe Defendants have violated the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-102 *et seq.* by intentionally engaging in business acts or practices that are unlawful and unfair and constitute infringements of the '954 Patent.

42.     Plaintiff was injured by Defendants' unfair competition.  Defendants are therefore liable to Plaintiff for Plaintiff's actual damages, costs, and attorneys' fees.

43. Defendants' unfair competition and patent infringement were done knowingly, willfully, and intentionally. Under the circumstances, Plaintiff should be awarded punitive damages from Defendants.

## COUNT V
## CLAIM FOR DIRECT INFRINGEMENT OF THE
## '694 PATENT UNDER 35 U.S.C. § 271(a)

44. Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

45. The '694 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

46. Camp Saver and one or more of the Doe Defendants have been, and continue to be, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within the scope of one or more claims of the '694 Patent. Defendants have thereby infringed the '694 Patent in violation of 35 U.S.C. § 271(a) *et seq*.

47. Camp Saver and one or more of the Doe Defendants have been, and continue to be, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within a range of equivalents of one or more claims of the '694 Patent. Defendants have thereby infringed the '694 Patent in violation of 35 U.S.C. § 271(a).

48. The selling and/or offering to sell infringing products by Camp Saver and one or more of the Doe Defendants has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive rights under the '694 Patent.

10

49.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' infringement of the '694 Patent.  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff, in an amount not less than a reasonable royalty.

50.     Defendants' continuing acts of infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

51.     Plaintiff has been and will continue to be irreparably harmed by Defendants' infringement of the '694 Patent unless enjoined by this Court.  Defendants' infringing activities negatively impact sales of Plaintiff's competing camera products.

## COUNT VI
## CLAIM FOR INDUCEMENT OF INFRINGEMENT OF THE '694 PATENT UNDER 35 U.S.C. § 271(b)

52.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

53.     Camp Saver and one or more of the Doe Defendants have indirectly infringed and are still indirectly infringing the '694 Patent in violation of 35 U.S.C. § 271(b) *et seq*., by actively inducing infringement of the '694 Patent.

54.     Camp Saver and the indirectly infringing Doe Defendants became aware of the '694 Patent, at the latest, when they were served with this complaint and yet continue to actively and knowingly induce others to directly infringe the '694 Patent.

55.     Despite its awareness of the '694 Patent, Camp Saver continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '694 Patent.  These active steps include, *inter alia*, advertising the availability of infringing products for purchase,

11

advertising infringing uses and instructing how to engage in infringing uses of the infringing

products, demonstrating and recommending infringing configurations and uses, and providing

instructions and answering questions on infringing uses.

56.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants'

indirect infringement of the '694 Patent in violation of 35 U.S.C. § 271(b).  Defendants are

therefore liable to Plaintiff for the damages suffered by Plaintiff.

57.     Defendants' continuing acts of indirect infringement are willful, entitling Plaintiff

to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in

prosecuting this action under 35 U.S.C. § 285.

58.     Plaintiff has been and will continue to be irreparably harmed by Defendants'

indirect infringement of the '694 Patent unless enjoined by this Court.  Defendants' infringing

activities negatively impact sales of Plaintiff's competing camera products.

### COUNT VII
### CLAIM FOR CONTRIBUTORY INFRINGEMENT OF THE
### '694 PATENT UNDER 35 U.S.C. § 271(c)

59.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

60.     Camp Saver and one or more of the Doe Defendants have committed and

continue to commit acts of contributory infringement of the '694 Patent in violation of 35 U.S.C.

§ 271(c) *et seq*., by, *inter alia*, offering to sell and selling components that are a material part of

the claimed invention and which have no substantial non-infringing uses, knowing that the

components are especially made or especially adapted for use in a direct infringement of the '694

Patent.

61.     These acts of contributory infringement of the '694 Patent include, *inter alia*, selling and offering for sale components, housings, mounts, replacement parts and kits, software, and applications, that are especially made and adapted for use in directly infringing '694 Patent.

62.     Camp Saver and the Doe Defendants engaging in contributory infringement became aware of the '694 Patent, at the latest, when they were served with this Complaint and yet continue to engage in contributory infringement of the '694 Patent.

63.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' contributory infringement of the '694 Patent in violation of 35 U.S.C. § 271(c).  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

64.     Defendants' continuing acts of contributory infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

65.     Plaintiff has been and will continue to be irreparably harmed by Defendants' contributory infringement of the '694 Patent unless enjoined by this Court.  Defendants' infringing activities negatively impact sales of Plaintiff's competing camera products and related accessories and components.

### COUNT VIII
### CLAIM FOR VIOLATION OF UTAH UNFAIR COMPETITION ACT
### UTAH CODE ANN. § 13-5a-102 *et seq.*

66.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

67.     Camp Saver and one or more of the Doe Defendants have violated the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-102 *et seq*. by intentionally engaging in

business acts or practices that are unlawful and unfair and constitute infringements of the '694 Patent.

68.     Plaintiff was injured by Defendants' unfair competition.  Defendants are therefore liable to Plaintiff for Plaintiff's actual damages, costs, and attorneys' fees.

69.     Defendants' unfair competition and patent infringement were done knowingly, willfully, and intentionally.  Under the circumstances, Plaintiff should be awarded punitive damages from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a)      That this Court adjudge the '954 Patent and '694 Patent valid and enforceable by the Plaintiff;

b)      That this Court enter a judgment that Defendants have directly and indirectly infringed and are directly and indirectly infringing one or more claims of the '954 and '694 Patents and that such direct and indirect infringement by Defendants have been willful;

c)      That this Court enter a judgment that Defendants have induced others to infringe one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such induced infringement by Defendants has been willful;

d)      That this Court enter a judgment that Defendants have contributorily infringed one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such contributory infringement by Defendants has been willful;

e)      That this Court enter a judgment that Defendants have violated the Utah Unfair Competition Act;

f)      That this Court enter a judgment and order preliminarily and permanently enjoining Defendants, their employees and agents, and any person in active concert or participation with Defendants, from directly or indirectly infringing the '954 Patent and '694 Patents;

g)      That this Court enter a judgment against Defendants awarding damages adequate to compensate Plaintiff for the direct and indirect infringement by Defendants of the '954 Patent and '694 Patents, including enhanced damages up to three times the amount of compensatory damages for Defendants' willful infringement and any supplemental damages for any continuing post-verdict infringement until entry of a final judgment and cessation of such infringement;

h)      That this Court assess pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

i)      That this Court render a finding that this case is "exceptional" and award to Plaintiff its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

j)      On Plaintiff's claims for unfair competition, that the Court enter a judgment against Defendants awarding Plaintiff its actual damages, costs, attorney fees, and punitive damages; and

k)      That this Court grant Plaintiff such other and further relief as the Court may deem just, proper, and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all matters so triable.

DATED this _25th_ day of November, 2014.

BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111

MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102

By: ___/s/ Richard D. Burbidge_____
*Attorneys for Plaintiff*

# EXHIBIT D

Richard D. Burbidge (#0492)
rburbidge@bmgtrial.com
Jefferson W. Gross (#8339)
jwgross@bmgtrial.com
Andrew Dymek (#9277)
adymek@bmgtrial.com
BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111
Telephone: (801) 355-6677
Facsimile:  (801) 355-2341

Frank W. Compagni (#7174)
MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102
Telephone: (801) 478-0071
Facsimile:  (801) 478-0076
compagni@utahpatents.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CONTOUR, LLC, a Utah limited liability company,<br><br>                   Plaintiff,<br>     v.<br><br>GOPRO, INC., a Delaware Corporation, CAMP SAVER, LLC, a Utah limited liability company, dba CAMPSAVER.COM, and DOES 1-500,<br><br>                       Defendants. | **FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMAND**<br><br>Civil No. 2:14-cv-00864-PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Contour, LLC ("Contour" or "Plaintiff"), by its undersigned attorneys, brings

this action against Defendants and hereby alleges as follows:

## THE PARTIES

1.      Plaintiff Contour is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business at 5152 Edgewood Drive, Ste. 375, Provo, Utah.

2.      Defendant GoPro, Inc. ("GoPro") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 3000 Clearview Way, San Mateo, California.

3.      Defendant Camp Saver, LLC ("Camp Saver") is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business at 2280 South Heritage Dr., Nibley, Utah 84321, and doing business as CampSaver.com.

4.      Defendants Does 1 through 500 (the "Doe Defendants") are individuals and/or entities that may be liable for the claims set forth herein, but whose specific names have not yet been enumerated by Plaintiff.  At such time that Plaintiff identifies and/or confirms Does 1 through 500, this Complaint shall be amended to specifically name said Does 1 through 500. The named Defendant(s) and Defendants Does 1 through 500 will sometimes collectively be referred to herein as "Defendants."

## NATURE OF THE ACTION

5.      This is a civil action for infringement of United States Patent Nos. 8,890,954 (the "'954 Patent") and 8,896,694 (the "'694 Patent") under the patent laws of the United States, 35 U.S.C. § 271 *et seq.,* and for violations of the Utah Unfair Competition Act, Utah Code Ann. §13-5a-101 *et seq.*  True and correct copies of the '954 and '694 Patents are attached hereto as Exhibits A and B, respectively.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has supplemental jurisdiction under 28 U.S.C. § 1331.

7.      This Court has pendent jurisdiction of the other causes of action set forth herein under the provisions of 28 U.S.C. § 1338(b) in that other causes of action are joined with substantial and related claims under the patent laws.

8.      Venue is proper in this judicial district under Title 28 U.S.C. §§ 1391 and 1400(b) because Defendants are subject to personal jurisdiction in this judicial district, have committed acts of patent infringement in this judicial district, and transact and are doing substantial business in this judicial district.  Furthermore, Plaintiff is organized and exists under the laws of the State of Utah and resides in Utah.

9.      Personal jurisdiction exists over the Defendants.  GoPro applied for and received authorization to conduct business within the State of Utah.  Camp Saver is organized under the laws of the State of Utah, and its principal place of business is within Utah.  GoPro and Camp Saver have each designated and maintained an agent for service of process in Utah.

10.     GoPro, Camp Saver and the other Defendants have purposefully availed themselves of the privilege of conducting activities within this forum.  These activities far exceed the requisite minimum contacts.  Defendants' activities in this forum are continuous and systematic, and give rise to the liabilities sued upon herein.

11.     Defendants' activities in this forum include, *inter alia*, selling and offering to sell infringing products in this forum, and marketing and advertising infringing products in this

forum. GoPro has personally availed itself in this forum by committing acts of patent infringement in Utah including, *inter alia*, offering to sell and selling infringing products in Utah and by inducing Utah retailers, including but not limited to Camp Saver, to commit such acts of infringement in Utah.

12.     GoPro, Camp Saver and the other Defendants do extensive business within the State of Utah. GoPro, Camp Saver and the other Defendants earn substantial amounts of revenue through their contacts with this forum.

13.     On information and belief, GoPro has also purposefully availed itself of this forum by entering into agreements with numerous entities in Utah prescribing the conditions under which the entities may qualify and remain an "Authorized Reseller" of GoPro's infringing products. According to GoPro's website, GoPro has over 50 authorized resellers of its infringing products in Utah, including but not limited to Camp Saver, RC Willey, Cabelas, Snowbird Ski & Summer Resort, Jans Bicycles Ltd, and Canyon Bicycles.

## BACKGROUND

14.     On November 18, 2014, the '954 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing," was duly and legally issued to Plaintiff, as assignee. Plaintiff is currently the owner and possessor of all rights pertaining to the '954 Patent.

15.     On November 25, 2014, the '694 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition, Control and Viewing," was duly and legally issued to Plaintiff as assignee. Plaintiff is currently the owner and possessor of all rights pertaining to the '694 Patent.

16.     Plaintiff is a maker and seller of wearable and gear-mountable camera products, including the Contour Roam3, the Contour Roam2, and the Contour+2. Wireless features of the Contour+2 allowing the camera's video images and settings to be remotely captured, previewed and controlled are described in the '954 and/or '694 Patents and set forth in one or more claims of the '954 Patent and in one or more claims of the '694 Patent.

17.     GoPro, Camp Saver and one or more of the Doe Defendants sell and/or offer for sale (or direct or induce others to sell and/or offer for sale) camera products (the "infringing products") in the United States, that infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent.

18.     GoPro and one or more of the Doe Defendants make, use, sell, and/or offer for sale (or direct or induce others to make, use, sell, and/or offer for sale) camera products (the "infringing products"), including the HERO3, HERO 3+ and HERO4 products, in the United States, that infringe, either literally or under the doctrine of equivalents, at least one claim of the'954 Patent and at least on claim of the '694 Patent.

19.     GoPro and one or more of the Defendants advertise, demonstrate and/or recommend infringing uses and/or provide instruction on how to engage in infringing uses of the infringing products through various forms and by various means, including but not limited to advertisements, websites, product brochures and product manuals.

20.     GoPro and one or more of the Defendants offer to sell and sell components that are a material part of the claimed invention of the '954 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

21.     GoPro and one or more of the Defendants offer to sell and sell components that are a material part of the claimed invention of the '694 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '694 Patent.

22.     Contour and GoPro are direct competitors in the action camera market.

23.     On information and belief, at the end of 2012, GoPro introduced the HERO3 line of cameras that included wireless capability.

24.     On information and belief, prior to 2012, GoPro did not offer for sale any cameras with wireless capability.

25.     Each of GoPro's cameras that include wireless capability infringes one or more claims of each of the '954 and '694 Patents.

26.     On information and belief, GoPro's gross sales revenue increased from approximately $526 million in 2012 to approximately $986 million in 2013 (an 87% increase).

27.     On information and belief, GoPro's net profit nearly doubled from approximately $32 million in 2012 to over $60 million in 2013.

28.     On information and belief, GoPro's gross sales revenue has continued to rise in 2014.

29.     On information and belief, GoPro's significant gains in sales revenue since 2012 and significant gains in net profit are attributable to its sales of cameras that include wireless capabilities and infringe one or more claims of each of the '954 and '694 Patents.

30.     On information and belief, GoPro holds the largest share of the action camera market.

31.     On information and belief, GoPro's share of the action camera market continues to grow due to sales of its cameras that include wireless capabilities and infringe one or more claims of each of the '954 and '694 Patents.

32.     On information and belief, GoPro's success in capturing significant market share is attributable to its sales of cameras that include wireless capabilities and infringe one or more claims of each of the '954 and '694 Patents.

33.     On information and belief, Contour's ability to expand its share of the action camera market based on its patented technologies set forth in the '954 and '694 Patents has been impaired as a direct result of GoPro's significant market share that has been generated as a result of its infringement of the '954 and '694 Patents.

34.     In addition to damages suffered by Contour, Contour has been and continues to be irreparably harmed due to loss of market share in the action camera market as a result of GoPro's infringement of the '954 and '694 Patents.

## COUNT I
## CLAIM FOR DIRECT INFRINGEMENT OF THE
## '954 PATENT UNDER 35 U.S.C. § 271(a)

35.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

36.     The '954 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

37.     GoPro, Camp Saver and one or more of the Doe Defendants have been, and continue to be, making, using, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by

Defendants or third parties, come within the scope of one or more claims of the '954 Patent. Defendants have thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a) *et seq*.

38.     GoPro, Camp Saver and one or more of the Doe Defendants have been, and continue to be, making, using, selling and/or offering to sell, or directing others to make, use, sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within a range of equivalents of one or more claims of the '954 Patent.  Defendants have thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a).

39.     The making, using, selling and/or offering to sell infringing products by GoPro, Camp Saver and one or more of the Doe Defendants has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive rights under the '954 Patent.

40.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' infringement of the '954 Patent.  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff, in an amount not less than a reasonable royalty.

41.     Defendants' continuing acts of infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

42.     By this action, Plaintiff seeks recovery of its damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiff for the infringement of its patents.  As demonstrated by GoPro's meteoric increase in sales of infringing products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped

with wireless capabilities.   As the owner of the Patents, Plaintiff is entitled to the exclusive use

and exploitation of the Patents to capture market share in the area of personal cameras.  Plaintiff

will be irreparably injured during the pendency of this action unless GoPro, its direct competitor,

is enjoined from infringing the Patents because Plaintiff will be unable to acquire the share of the

market to which its exclusive use of the Patents would otherwise cause.  Plaintiff is thus entitled

to preliminary and permanent injunctions against GoPro and the other Defendants.

**COUNT II**
**CLAIM FOR INDUCEMENT OF INFRINGEMENT OF THE**
**'954 PATENT UNDER 35 U.S.C. § 271(b)**

43.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

44.     GoPro, Camp Saver and one or more of the Doe Defendants have indirectly

infringed and are still indirectly infringing the '954 Patent in violation of 35 U.S.C. § 271(b) *et

seq.*, by actively inducing infringement of the '954 Patent.

45.     GoPro, Camp Saver and the indirectly infringing Doe Defendants became aware

of the '954 Patent, at the latest, when they were served with this complaint and yet continue to

actively and knowingly induce others to directly infringe the '954 Patent.

46.     Despite its awareness of the '954 Patent, GoPro and Camp Saver continue to take

numerous active steps to encourage and aid and abet others' direct infringement of the '954

Patent.  These active steps include, *inter alia*, encouraging others to sell or resell infringing

products, advertising the availability of infringing products for purchase, advertising infringing

uses and instructing how to engage in infringing uses of the infringing products (e.g., on

websites, Facebook pages, and other media), demonstrating and recommending infringing

configurations and uses, and providing instructions and answering questions on infringing uses.

9

47.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants'
indirect infringement of the '954 Patent in violation of 35 U.S.C. § 271(b).  Defendants are
therefore liable to Plaintiff for the damages suffered by Plaintiff.

48.     Defendants' continuing acts of indirect infringement are willful, entitling Plaintiff
to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in
prosecuting this action under 35 U.S.C. § 285.  By this action, Plaintiff seeks recovery of its
damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable
royalty.  However, such monetary damages will not adequately compensate Plaintiff for the
infringement of its patents.  As demonstrated by GoPro's meteoric increase in sales of infringing
products, the patented technology has displaced, and will continue to displace, from the market
cameras not equipped with wireless capabilities.  As the owner of the Patents, Plaintiff is entitled
to the exclusive use and exploitation of the Patents to capture market share in the area of
personal cameras.  Plaintiff will be irreparably injured during the pendency of this action unless
GoPro, its direct competitor, is enjoined from infringing the Patents because Plaintiff will be
unable to acquire the share of the market to which its exclusive use of the Patents would
otherwise cause.  Plaintiff is thus entitled to preliminary and permanent injunctions against
GoPro and the other Defendants.

### COUNT III
### CLAIM FOR CONTRIBUTORY INFRINGEMENT OF THE
### '954 PATENT UNDER 35 U.S.C. § 271(c)

49.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

50.     GoPro, Camp Saver and one or more of the Doe Defendants have committed and
continue to commit acts of contributory infringement of the '954 Patent in violation of 35 U.S.C.

§ 271(c) *et seq*., by, *inter alia*, offering to sell and selling components that are a material part of the claimed invention and which have no substantial non-infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 Patent.

51. These acts of contributory infringement of the '954 Patent include, *inter alia*, making, using, selling and/or offering for sale components, housings, mounts, replacement parts and kits, software, and/or applications, that are especially made and adapted for use in directly infringing the '954 Patent.

52. GoPro, Camp Saver and the Doe Defendants engaging in contributory infringement became aware of the '954 Patent, at the latest, when they were served with this Complaint and yet continue to engage in contributory infringement of the '954 Patent.

53. Plaintiff has been injured and damaged monetarily and otherwise by Defendants' contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c). Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

54. Defendants' continuing acts of contributory infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285. By this action, Plaintiff seeks recovery of its damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty. However, such monetary damages will not adequately compensate Plaintiff for the infringement of its patents. As demonstrated by GoPro's meteoric increase in sales of infringing products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities. As the owner of the Patents, Plaintiff is entitled

to the exclusive use and exploitation of the Patents to capture market share in the area of personal cameras. Plaintiff will be irreparably injured during the pendency of this action unless GoPro, its direct competitor, is enjoined from infringing the Patents because Plaintiff will be unable to acquire the share of the market to which its exclusive use of the Patents would otherwise cause. Plaintiff is thus entitled to preliminary and permanent injunctions against GoPro and the other Defendants.

### COUNT IV
### CLAIM FOR VIOLATION OF UTAH UNFAIR COMPETITION ACT, UTAH CODE ANN. § 13-5a-102 *et seq.*

55.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

56.     GoPro, Camp Saver and one or more of the Doe Defendants have violated the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-102 *et seq.* by intentionally engaging in business acts or practices that are unlawful and unfair and constitute infringements of the '954 Patent.

57.     Plaintiff was injured by Defendants' unfair competition. Defendants are therefore liable to Plaintiff for Plaintiff's actual damages, costs, and attorneys' fees.

58.     Defendants' unfair competition and patent infringement were done knowingly, willfully, and intentionally. Under the circumstances, Plaintiff should be awarded punitive damages from Defendants.

### COUNT V
### CLAIM FOR DIRECT INFRINGEMENT OF THE '694 PATENT UNDER 35 U.S.C. § 271(a)

59.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

12

60.     The '694 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

61.     GoPro, Camp Saver and one or more of the Doe Defendants have been, and continue to be, selling and/or offering to sell, or directing others to make, use, sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within the scope of one or more claims of the '694 Patent. Defendants have thereby infringed the '694 Patent in violation of 35 U.S.C. § 271(a) *et seq.*

62.     GoPro, Camp Saver and one or more of the Doe Defendants have been, and continue to be, making, using, selling and/or offering to sell, or directing others to sell and/or offer to sell, infringing products, which alone or in combination with other products offered by Defendants or third parties, come within a range of equivalents of one or more claims of the '694 Patent.  Defendants have thereby infringed the '694 Patent in violation of 35 U.S.C. § 271(a).

63.     The making, using, selling and/or offering to sell infringing products by GoPro, Camp Saver and one or more of the Doe Defendants has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive rights under the '694 Patent.

64.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' infringement of the '694 Patent.  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff, in an amount not less than a reasonable royalty.

65.     Defendants' continuing acts of infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  By this action, Plaintiff seeks recovery of its damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable

13

royalty.  However, such monetary damages will not adequately compensate Plaintiff for the infringement of its patents.  As demonstrated by GoPro's meteoric increase in sales of infringing products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.   As the owner of the Patents, Plaintiff is entitled to the exclusive use and exploitation of the Patents to capture market share in the area of personal cameras.  Plaintiff will be irreparably injured during the pendency of this action unless GoPro, its direct competitor, is enjoined from infringing the Patents because Plaintiff will be unable to acquire the share of the market to which its exclusive use of the Patents would otherwise cause.  Plaintiff is thus entitled to preliminary and permanent injunctions against GoPro and the other Defendants.

### COUNT VI
### CLAIM FOR INDUCEMENT OF INFRINGEMENT OF THE
### '694 PATENT UNDER 35 U.S.C. § 271(b)

66.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

67.     GoPro, Camp Saver and one or more of the Doe Defendants have indirectly infringed and are still indirectly infringing the '694 Patent in violation of 35 U.S.C. § 271(b) *et seq.*, by actively inducing infringement of the '694 Patent.

68.     GoPro, Camp Saver and the indirectly infringing Doe Defendants became aware of the '694 Patent, at the latest, when they were served with this complaint and yet continue to actively and knowingly induce others to directly infringe the '694 Patent.

69.     Despite its awareness of the '694 Patent, GoPro and Camp Saver continue to take numerous active steps to encourage and aid and abet others' direct infringement of the '694 Patent.  These active steps include, *inter alia*, encouraging others to sell or resell infringing

products, advertising the availability of infringing products for purchase, advertising infringing uses and instructing how to engage in infringing uses of the infringing products (e.g., on websites, Facebook pages, and other media), demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

70.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' indirect infringement of the '694 Patent in violation of 35 U.S.C. § 271(b).  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

71.     Defendants' continuing acts of indirect infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  By this action, Plaintiff seeks recovery of its damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty.  However, such monetary damages will not adequately compensate Plaintiff for the infringement of its patents.  As demonstrated by GoPro's meteoric increase in sales of infringing products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities.   As the owner of the Patents, Plaintiff is entitled to the exclusive use and exploitation of the Patents to capture market share in the area of personal cameras.  Plaintiff will be irreparably injured during the pendency of this action unless GoPro, its direct competitor, is enjoined from infringing the Patents because Plaintiff will be unable to acquire the share of the market to which its exclusive use of the Patents would otherwise cause.  Plaintiff is thus entitled to preliminary and permanent injunctions against GoPro and the other Defendants.

15

## COUNT VII
## <u>CLAIM FOR CONTRIBUTORY INFRINGEMENT OF THE</u>
## <u>'694 PATENT UNDER 35 U.S.C. § 271(c)</u>

72.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

73.     GoPro, Camp Saver and one or more of the Doe Defendants have committed and continue to commit acts of contributory infringement of the '694 Patent in violation of 35 U.S.C. § 271(c) *et seq*., by, *inter alia*, offering to sell and selling components that are a material part of the claimed invention and which have no substantial non-infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '694 Patent.

74.     These acts of contributory infringement of the '694 Patent include, *inter alia*, making, using, selling and offering for sale components, housings, mounts, replacement parts and kits, software, and/or applications, that are especially made and adapted for use in directly infringing the '694 Patent.

75.     GoPro, Camp Saver and the Doe Defendants engaging in contributory infringement became aware of the '694 Patent, at the latest, when they were served with this Complaint and yet continue to engage in contributory infringement of the '694 Patent.

76.     Plaintiff has been injured and damaged monetarily and otherwise by Defendants' contributory infringement of the '694 Patent in violation of 35 U.S.C. § 271(c).  Defendants are therefore liable to Plaintiff for the damages suffered by Plaintiff.

77.     Defendants' continuing acts of contributory infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  By this action, Plaintiff seeks recovery of its

16

damages pursuant to 35 U.S.C. § 284 including, without limitation, lost profits and a reasonable royalty. However, such monetary damages will not adequately compensate Plaintiff for the infringement of its patents. As demonstrated by GoPro's meteoric increase in sales of infringing products, the patented technology has displaced, and will continue to displace, from the market cameras not equipped with wireless capabilities. As the owner of the Patents, Plaintiff is entitled to the exclusive use and exploitation of the Patents to capture market share in the area of personal cameras. Plaintiff will be irreparably injured during the pendency of this action unless GoPro, its direct competitor, is enjoined from infringing the Patents because Plaintiff will be unable to acquire the share of the market to which its exclusive use of the Patents would otherwise cause. Plaintiff is thus entitled to preliminary and permanent injunctions against GoPro and the other Defendants.

## COUNT VIII
## CLAIM FOR VIOLATION OF UTAH UNFAIR COMPETITION ACT
## UTAH CODE ANN. § 13-5a-102 *et seq.*

78.     Plaintiff restates all of the preceding paragraphs as if fully set forth herein.

79.     GoPro, Camp Saver and one or more of the Doe Defendants have violated the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-102 *et seq*. by intentionally engaging in business acts or practices that are unlawful and unfair and constitute infringements of the '694 Patent.

80.     Plaintiff was injured by Defendants' unfair competition. Defendants are therefore liable to Plaintiff for Plaintiff's actual damages, costs, and attorneys' fees.

17

81.     Defendants' unfair competition and patent infringement were done knowingly, willfully, and intentionally.  Under the circumstances, Plaintiff should be awarded punitive damages from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a)     That this Court adjudge the '954 Patent and '694 Patent valid and enforceable by the Plaintiff;

b)     That this Court enter a judgment that Defendants have directly and indirectly infringed and are directly and indirectly infringing one or more claims of the '954 and '694 Patents and that such direct and indirect infringement by Defendants have been willful;

c)     That this Court enter a judgment that Defendants have induced others to infringe one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such induced infringement by Defendants has been willful;

d)     That this Court enter a judgment that Defendants have contributorily infringed one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such contributory infringement by Defendants has been willful;

e)     That this Court enter a judgment that Defendants have violated the Utah Unfair Competition Act;

f)     That this Court enter a judgment and order preliminarily and permanently enjoining Defendants, their employees and agents, and any person in active concert or participation with Defendants, from directly or indirectly infringing the '954 Patent and '694 Patents;

18

g)      That this Court enter a judgment against Defendants awarding damages adequate to compensate Plaintiff for the direct and indirect infringement by Defendants of the '954 Patent and '694 Patents, including enhanced damages up to three times the amount of compensatory damages for Defendants' willful infringement and any supplemental damages for any continuing post-verdict infringement until entry of a final judgment and cessation of such infringement;

h)      That this Court assess pre-judgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

i)      That this Court render a finding that this case is "exceptional" and award to Plaintiff its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

j)      On Plaintiff's claims for unfair competition, that the Court enter a judgment against Defendants awarding Plaintiff its actual damages, costs, attorney fees, and punitive damages; and

k)      That this Court grant Plaintiff such other and further relief as the Court may deem just, proper, and equitable.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all matters so triable.

DATED this 5th day of January, 2015.

BURBIDGE MITCHELL & GROSS
215 South State Street, Suite 920
Salt Lake City, Utah 84111

MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah 84102

By: ___/s/ Richard D. Burbidge_____
        *Attorneys for Plaintiff*