# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONTOUR IP HOLDING, LLC and ION WORLDWIDE, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 15-1108-LPS-CJB |
| v. | ) ) | |
| GOPRO, INC. | ) ) | ████████████ |
| Defendant. | ) | REDACTED - PUBLIC VERSION |

## UNOPPOSED MOTION TO REDACT LIMITED PORTIONS OF THE APRIL 19, 2016 HEARING TRANSCRIPT

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue
Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006
(202) 508-4600

Dated: May 31, 2016

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONTOUR IP HOLDING, LLC and ION WORLDWIDE, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 15-1108-LPS-CJB |
| v. | ) ) | |
| GOPRO, INC. | ) ) | **CONFIDENTIAL – FILED UNDER SEAL** |
| Defendant. | ) ) | |

## UNOPPOSED MOTION TO REDACT LIMITED PORTIONS OF THE APRIL 19, 2016 HEARING TRANSCRIPT

Plaintiffs Contour IP Holding, LLC ("CIPH") and iON Worldwide, Inc. ("iON") (collectively, "Plaintiffs"), by and through their undersigned counsel, pursuant to Rule 5.2 of the Federal Rules of Civil Procedure and this Court's policy on the electronic availability of transcripts of court proceedings, hereby move for an Order redacting certain highly confidential portions of the hearing transcript from the hearing held on April 19, 2016 (D.I. No. 41). Plaintiffs' proposed redactions are narrowly tailored and apply only to particularly sensitive confidential information relating to private negotiations between iON and third-party Contour, LLC and between iON and CIPH. There is no public benefit to making this confidential information publicly available. Thus, for the reasons set forth below, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to redact the hearing transcript with respect to Plaintiffs' and Contour, LLC's confidential information. Pursuant to D. Del. LR 7.1.1, counsel for Plaintiffs has conferred with counsel for Defendant GoPro, Inc. ("GoPro"), and GoPro does not object to the redaction of information.

# I.    BACKGROUND

The Court held a hearing on April 19, 2016 to hear oral argument on two GoPro motions to stay—one motion to stay pending *inter partes* review of some of the patent claims and the other relating to Federal Rule of Civil Procedure 41(d)—as well as to conduct a scheduling conference. During the argument on the motions, the Court requested information regarding the status of iON and Contour, LLC's merger. Certain portions of the hearing transcript relating to the merger relate to confidential communications and negotiations between iON and third-party Contour, LLC and between iON and CIPH.

The official transcript of the hearing was filed on April 29, 2016, and Plaintiffs filed a notice of intent to redact material on May 20, 2016. The Court set the deadline for submitting redaction requests as May 31, 2016. Attached as exhibit A is a copy of portions of the transcript with the proposed redactions highlighted, and attached as Exhibit B is a redacted copy of the full transcript.

# II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that a protective order may be entered for good cause, including "requiring that a trade secret or other confidential . . . commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Likewise, Rule 5.2(e) allows a court to require redaction of additional information or limit or prohibit a nonparty's remote electronic access to a document filed with the court.

To determine whether "good cause" to seal exists, a court may look to a number of things, including (1) whether disclosure will violate any privacy interests; (2) whether the party benefiting from the order of confidentiality is a public entity or official; and (3) whether the case involves issues important to the public. *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995). "[I]f a case involves private litigants, and concerns matters of little legitimate public

interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 788 (3d Cir. 1994).

The Third Circuit has explained that good cause to seal a transcript "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 529 F. Supp. 866, 890 (E.D. Pa. 1981)).

## III.   ANALYSIS

Here, Plaintiffs seek a narrowly drawn protective order to cover only confidential information relating to private negotiations between iON and third-party Contour, LLC and between iON and CIPH. Rather than try to seal information about the merger of the two and the licensing negotiations generally, Plaintiffs seek to redact specific information related to the negotiations taking place since the merger was made public. *See* D.I. 41 at 51:6-8, 52:2-8, 57:14-21 (attached as Exh. A).

There is no public interest in publicly providing the information Plaintiffs request to be sealed, let alone any strong public interest. Indeed, this case involves private litigants and not public figures, weighing in favor of maintaining confidentiality. *Pansy,* 23 F.3d at 788. There is no benefit to the public in knowing about the private negotiations between iON and Contour, LLC or between iON and CIPH. And Plaintiffs' and Contour, LLC's confidential negotiations has nothing to do with public health or safety, factors that might otherwise weigh in favor of public accessibility.

On the other hand, there is a specific and serious potential for harm to Plaintiffs and Contour, LLC if their confidential information is disclosed. The portions Plaintiffs request to redact contain information not publicly available and intended to remain in confidence as Plaintiffs and third party Contour, LLC work to resolve their separate disputes. Plaintiff iON and

Plaintiff CIPH, which is co-owned by iON and Contour, LLC, would therefore be put at a disadvantage if the public became aware of the extent and nature of the negotiations between iON and Contour, LLC and between iON and CIPH before such agreement is final.

Plaintiffs have made every attempt to keep their proposed redactions limited to only the most sensitive information. Plaintiffs' proposed redactions do not prejudice GoPro or obscure the thrust of the stay motion arguments from the public. Plaintiffs therefore submit that they have shown the requisite "good cause" under Rule 26(c) for sealing those portions of the transcript relating to the Plaintiffs' and third-party Contour, LLC's private communications and negotiations.

## IV.    CONCLUSION

Plaintiffs respectfully request that this motion to redact certain confidential information regarding Plaintiffs and Contour, LLC's private communications and negotiations be granted.


Respectfully submitted,


*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue
Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs*

OF COUNSEL:
Paul M. Schoenhard
Nicole M. Jantzi
Ian B. Brooks
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, DC 20006-6807
(202) 508-4600


Dated:  May 31, 2016

# EXHIBIT A

# REDACTED IN

# ITS ENTIRETY

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


CONTOUR IP HOLDING, LLC,)
And iON WORLDWIDE, INC.,)
                        )
        Plaintiffs,     )   C.A. No. 15-1108-LPS-CJB
                        )
v.                      )
                        )
GoPRO, INC.,            )
                        )
        Defendant.      )


                Tuesday, April 19, 2016
                1:30 p.m.
                Courtroom 2A


                844 King Street
                Wilmington, Delaware


BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
     United States District Court Judge


APPEARANCES:


        SHAW KELLER, LLP
        BY:  KAREN ELIZABETH KELLER, ESQ.

                -and-

        ROPES & GRAY, LLP
        BY:  PAUL M. SCHOENHARD, ESQ.
        BY:  NICOLE M. JANTZI, ESQ.
        BY:  IAN BROOKS, ESQ.

                Counsel for the Plaintiffs

1   APPEARANCES CONTINUED:

2

            MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
3           BY:  JACK B. BLUMENFELD, ESQ.
            BY:  MICHAEL J. FLYNN, ESQ.
4
                    -and-
5
            DUANE MORRIS, LLP
6           BY:  KARINEH KHACHATOURIAN, ESQ.

7                           Counsel for the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1          THE COURT:  Counsel, before we

2     begin, let me just say a few things for the

3     record here.  The first is that we're here today

4     in the matter of Contour IP holding, LLC, et

5     al., versus GoPro, Incorporated.  That's civil

6     action number 15-1108-LPS-CJB here in our court.

7     And we're here for oral argument on two pending

8     motions, two motions to stay, one in favor of

9     IPR proceedings and the second relating to

10    Federal Rules of Procedure 41(d).  And in

11    addition we're here to hold a case management

12    conference in the case.

13          Before we go further, let me ask

14    counsel for each side to identify themselves for

15    the record, beginning with Delaware counsel.

16    We'll start with counsel for the Plaintiff, Ms.

17    Keller.

18          MS. KELLER:  Good afternoon, Your

19    Honor.  Karen Keller from Shaw Keller on behalf

20    of the Plaintiffs, Contour IP Holding, LLC, and

21    iON Worldwide, Inc.  With me today from Ropes &

22    Gray are Paul Schoenhard, Nicole Jantzi and Ian

23    Brooks.

24          THE COURT:  Welcome to you all.

1    All right.  And for Defendant's side.

2                    MR. BLUMENFELD:  Good afternoon,

3    Your Honor.  Jack Blumenfeld from Morris Nichols

4    for GoPro.  And with me at counsel table are

5    Karineh Khachatourian of Duane Morris in Palo

6    Alto and Michael Flynn from Morris Nichols.  And

7    with Your Honor's permission, Ms. Khachatourian

8    will be arguing today.

9                    THE COURT:  Thank you.  Welcome

10   counsel from near and far.  All right.  What I

11   thought we would do is to hear, as I think I

12   suggested in my oral order is to hear oral

13   arguments on the motions first and I've

14   allocated 45 minutes per side to each side with

15   regard to those two motions.  Then I'll likely

16   take a short break and come back out and we can

17   address kind of the case management conference

18   portion of this hearing.  I should also tell you

19   that I'm our criminal duty judge this week and I

20   expect that there's going to be a brief criminal

21   matter that I will likely have to address

22   somewhere in the midst of what we're doing.  My

23   hope is it will kind of come about around the

24   time when we're going to take a break between

1    these two portions, but it's a matter that would

2    have to proceed under seal and so either if it

3    comes naturally during our break that these

4    parties are ready or if they are ready

5    beforehand, at some point I'll have to ask the

6    parties to leave the court room while we take a

7    short break so I can handle that matter.  I

8    doubt it will take any longer than 5 or 10

9    minutes, but I just want to keep you apprised of

10   that, okay?

11            I know there's two motions, which

12   are different motions, but in light of their

13   size, I think it makes sense for me to here

14   argument from the movents as to both motions

15   kind of in order, whatever order you want to

16   take them.  Then I'll hear a response from the

17   respondent as to both and then any rebuttal that

18   the movent wants to make instead of having two

19   separate times to have the parties get up and

20   sit down for motion practice.

21            Other than that, I think both

22   motions are Defendant's motions and so I call on

23   counsel for Defendant to come forward and begin,

24   Ms. Khachatourian.  And I think I've allocated,

1   as I said, 45 minutes percent side.  What I'll

2   do is ask my law clerk to let me know when you

3   have 10 minutes left and let you know, that way

4   you can be sure to save any time you need to.

5                MS. KHACHATOURIAN:  Thank you,

6   Your Honor.  I appreciate it.  At the outset, I

7   wanted to make clear for both motions that I do

8   not think iON needs to be considered in the

9   disposition of either motion.  Activities have

10  occurred since the briefing of these motions

11  that I think the Court needs to be aware of.  As

12  I understand it, iON is not an exclusive

13  licensee to the patents in suit and therefore

14  iON does not have standing to be a co-plaintiff

15  in this suit.  We have asked Plaintiff's counsel

16  for the basis for why iON has standing in this

17  case.  They haven't responded to us.  We had

18  asked for certain corporate documentation so

19  that we could more fully understand the

20  relationship between Contour and iON.  Some

21  documentation was provided where those who have

22  reviewed it on Defendant's side doesn't see why

23  iON would be legally required to be a

24  co-plaintiff.  We've asked for supplemental

1    documentation and we haven't received a

2    response.

3                The second reason why iON

4    shouldn't be considered here is because they

5    didn't oppose.  They didn't file any opposition

6    to either the 41(d) motion or the motion to stay

7    pending IPR; therefore, if the Court were to

8    rule that GoPro is entitled to costs and fees

9    under 41(d), since iON didn't oppose, we think

10   there should be a ruling in favor of GoPro

11   vis-a-vis iON because they didn't oppose and the

12   same with the motion to stay pending

13   reexamination.

14                THE COURT:  Just real quickly on

15   those two issues.  As to the standing issue, do

16   you understand that to be opposed?  You believe

17   iON has standing, you don't believe it's an

18   exclusive licensee?  Do you understand the other

19   side to be opposing that view, that this is a

20   contested issue at least as of now?

21                MS. KHACHATOURIAN:  That is not my

22   understanding.

23                THE COURT:  Oh, you think it's

24   undisputed?

1          MS. KHACHATOURIAN:  That is my

2     understanding, yes.  I think that's probably a

3     question that you might want to pose to them.

4     But that's my understanding that there is no

5     dispute to the fact that they are not an

6     exclusive licensee.  And in fact, I believe it

7     was February 19th, the day the oppositions were

8     due to the motions that GoPro filed, Contour

9     filed an amended complaint basically withdrawing

10    iON from the pleading and stating that they had

11    not paid license fees and therefore were no

12    longer an exclusive licensee and withdrew iON

13    from the case.  And I believe then the following

14    Monday they withdrew their amended complaint.

15    After that, I have had discussions with

16    Plaintiff's counsel who, I believe, has

17    confirmed that they are presently not an

18    exclusive licensee and that that license has

19    been terminated.

20          THE COURT:  Okay.  Certainly if I

21    forget, I'll ask Plaintiff's counsel to remind

22    me to address with Plaintiff whether that issue

23    is disputed and whether, in fact, iON is

24    asserted to be an exclusive licensee or not.  I

1    guess if it were disputed and if iON were still

2    in the case, I guess on what basis would I have

3    when I resolve these motions, not to consider

4    their presence prior to say the adjudication of

5    a motion to dismiss for lack of standing?  In

6    essence, wouldn't you being having me decide

7    that kind of a motion to dismiss without

8    briefing or argument if this were, in fact, a

9    disputed issue and if they were at least

10    technically still a party in the case?

11    MS. KHACHATOURIAN:  Your Honor, I

12    think if the Court believes that a motion to

13    dismiss based on lack of standing were necessary

14    to adjudicate that issue, then yes, I would

15    agree with you that that's what I would be

16    asking you to do.  But here, with respect to the

17    motion for costs, it doesn't really matter,

18    because they didn't oppose.  The reason the

19    status matters is because Contour is arguing

20    that iON is a different party than the parties

21    before and there's analysis about that that I'll

22    get into.  So if the Court believes it needs

23    additional information before it can make that

24    determination based on the open questions, if

1  there are any, then yes, Your Honor, I would

2  agree with you, but I don't think that's the

3  case here.

4          THE COURT:  And then they didn't

5  file an opposition.  Am I right, that it looks

6  like from the documents because the day they

7  didn't file an opposition when it was due, they

8  also filed the amended complaint to take iON out

9  of the case?  Grant you, subsequently we have

10  this notice of withdrawal that came into play.

11  I understand that is unusual.  We'll get into

12  that.  That's what happened, right?  That's why

13  they didn't file something, because they took

14  iON out of the case on the day the motion was

15  due to be responded to; is that correct?

16          MS. KHACHATOURIAN:  I don't know

17  if that's the reason.  Unfortunately, you're

18  going to have to ask them.  I would just be

19  guessing.  But what I will say as an attorney,

20  if the other side points out that an opposition

21  has not been filed, other than feeling sick to

22  my stomach and finding out, you know, what the

23  issues are, if I was going to file an opposition

24  after receiving that notice, I would, in fact,

1    file one and I would beg for the Court's mercy.

2             THE COURT: Okay.

3             MS. KHACHATOURIAN: So it does beg

4    the question as to what the situation is here

5    because we actually also filed -- it was a

6    notice. It wasn't phrased a notice of

7    non-opposition, but it essentially was a notice

8    to the Court that no opposition was filed and

9    therefore we had asked for an order in our favor

10    vis-a-vis iON. And there was no response to

11    that notice either. So there's, you know --

12    there are two opportunities where if they wanted

13    to file an opposition, they could have. And

14    counsel is present day, and they announced that

15    they are counsel for both iON and Contour, so if

16    they wanted to file something, they obviously

17    could have. And the Contour papers did not

18    include any mention that it was on behalf of

19    iON, but our motion specifically stated that our

20    motions were against both parties.

21             THE COURT: Okay. Why don't we

22    press on?

23             MS. KHACHATOURIAN: Okay. Thank

24    you very much, Your Honor. I think I'm going to

1    take the, if it pleases the Court, the motion to

2    stay pending IPR first.

3                    THE COURT:  Sure.

4                    MS. KHACHATOURIAN:  The reason for

5    that is if the Court were to agree with GoPro

6    and grant the stay, then the issues with respect

7    to the 41(d) motion could be deferred, because

8    the case would be stayed.  And that may be

9    practical to the Court, because I suspect

10   knowing that the Court has read the papers, that

11   the Court is wondering about the difference

12   between Huntley and Garza in this jurisdiction.

13   And the Garza case is actually up on

14   interlocutory appeal right now.  I did check the

15   status.  I hadn't seen anything new.  But based

16   on the memorandum certifying the interlocutory

17   appeal, Judge Robinson did state that she was

18   granting -- she was certifying it for

19   interlocutory appeal because she saw that there

20   were substantial grounds for a difference of

21   opinion as to its correctness.  She also

22   acknowledged that the issue had not been

23   resolved by the Third Circuit and she felt that

24   it was better to stay the case because there had

1    already been a stay in place to wait for the

2    appeal to be concluded.  I'm fully prepared to

3    discuss all those issues when we address 41(d),

4    but I did want to raise that with the Court

5    outright, that if you were to grant the motion

6    to stay pending IPR, the 41(d) issue could be

7    deferred at which point the Third Circuit may

8    have spoken by the time the IPR is concluded in

9    October.

10            THE COURT:  And so the current

11   status in Garza is that Judge Robinson certified

12   the case for interlocutory appeal, the Third

13   Circuit has accepted the case.

14            MS. KHACHATOURIAN:  Sure.

15            THE COURT:  It's in the course of

16   briefing.  Or is it pending a decision?

17            MS. KHACHATOURIAN:  My

18   understanding it's in the course of briefing.  I

19   don't know anything more than that.

20            THE COURT:  So practically -- and

21   I know this relates to the Rule 41 issue, not

22   the issue you're starting with, but since you

23   mention it.  We have a situation where we're

24   pretty sure we're going to get a binding

1    decision from the Third Circuit at some point

2    within the next number of months on the

3    attorneys fees issue; is that right?

4              MS. KHACHATOURIAN:  That is

5    correct.

6              THE COURT:  That wouldn't

7    necessarily -- well, let's talk about -- when we

8    get to Rule 41, let's talk about whether -- you

9    know, because one of the questions is going to

10   be, why would you say anything about that issue

11   if you knew the circuit to which you were going

12   to follow was about to decide it?  But maybe we

13   can talk about whether there are other aspects

14   of that motion, even if I was uncertain about

15   whether I should maybe wait for the Third

16   Circuit on that question that could be decided

17   in the short term, but why don't we start with

18   the IPR stay request.

19             MS. KHACHATOURIAN:  Thank you,

20   Your Honor.  I think it's helpful to start with

21   the timeline of this case.  And to the extent

22   this is duplicative of anything, Your Honor,

23   please just interrupt me because I don't mean to

24   duplicate.  But I though it was important to see

1  it in context, because the patterns here are

2  relevant to why a motion to stay pending IPR

3  should be granted given what the Plaintiff's

4  opposition is to GoPro's motion.

5        This case was originally filed in

6  November 2014, and Contour LLC, on the same

7  patent suit, Camp Saver, which is a small mom

8  and pop store in Utah.  In January 2015, GoPro

9  was added.  I had a conversation with Contour's

10  counsel at that time, who had said to me that

11  Camp Saver was sued for jurisdictional reasons

12  to keep the case in Utah because you had a Utah

13  plaintiff, you have GoPro who is not in Utah and

14  is a Delaware corporation whose business is

15  really the centers in California.  And that was

16  stated to me unequivocally.

17        THE COURT:  Just to stop for a

18  second.  I think what you're saying is that you

19  had a conversation with opposing counsel in

20  which they admitted the only purpose, the only

21  reason to include a party in a litigation was to

22  secure venue.  And that's an issue that's

23  relevant to the motions, but what you're saying

24  right now isn't a part of the record, is it or

1       is there some --

2                    MS. KHACHATOURIAN:  It is

3       actually, Your Honor.

4                    THE COURT:  Okay.

5                    MS. KHACHATOURIAN:  So, that

6       conversation is memorialized in a pleading that

7       was subsequently filed in Utah and is attached

8       to our request for judicial notice, so it is my

9       understanding that it is.

10                   THE COURT:  Okay.  Do you happen

11      to know where -- let me ask you maybe

12      during -- well, to the extent there's some kind

13      of declaration or it's equivalent as to that

14      admission, you can point it out on me before we

15      leave today.

16                   MS. KHACHATOURIAN:  I will do so.

17                   THE COURT:  Thank you.

18                   MS. KHACHATOURIAN:  GoPro filed

19      its IPR's in the patents in suit in April of

20      2015, so we did it very quickly.  Actually,

21      frankly, incredibly quickly.  GoPro moved to

22      dismiss in April of 2015 as well, on April 27th.

23      Contour LLC and GoPro then stipulated to stay

24      the Utah action.  It was a joint motion, it was

1  agreed to on April 27th.  The Court ruled on

2  that motion on May 4th.  So the Utah case was to

3  be stayed until the motion to dismiss was heard.

4  That motion, subsequently to that order several

5  months later, was calendared for January 12th,

6  2016, to be heard.  So there was essentially an

7  8-month stay until the case was dismissed and

8  filed here in Delaware.

9           THE COURT:  Was the idea that it

10  was to be decided on that day as well or that

11  that decision may also have still been pending

12  and might have extended the stay?

13           MS. KHACHATOURIAN:  The latter,

14  Your Honor.

15           THE COURT:  Okay.

16           MS. KHACHATOURIAN:  And the order

17  is in the documents that we submitted to the

18  Court.  In June Contour IPH, the holding company

19  that is now the Plaintiff in this case, was

20  formed.  So while the case was stayed, shortly

21  thereafter, this entity was formed.  Case is

22  stayed.  November 23rd, 2015, the patents are

23  assigned to this new entity, so there is a break

24  in time, right?  They decide to form this entity

1   in June, but they don't assign the patents until

2   November 23rd.  November 23rd happens to be the

3   date that GoPro filed their motion to stay

4   pending IPR in Utah.  The reason why GoPro did

5   that was two-fold; one, because Contour would

6   not agree to extend the stay pending the IPR

7   decision and two, we can't delay.  If we had

8   waited in filing the motion, I'm sure we would

9   hear today that GoPro delayed and that we

10  brought the motion for a tactical advantage,

11  because that is one of the arguments you hear if

12  you wait too long.  So that is why we filed the

13  motion to stay pending reexam when we did.  A

14  week later, unbeknownst to us, Contour dismisses

15  the Utah action abruptly, out of nowhere and

16  then refiles here in the same day.  Does not

17  answer the motion to stay.  We never go to

18  hearing in January and the stay is extinguished

19  by virtue of the dismissal.  When the suit was

20  refiled here we asked Contour to stipulate to

21  the stay and they refused.  They did offer us a

22  longer time to answer, but they refused to agree

23  to a stay.

24          Believing that this is the same

1     action that's refiled, we send a demand letter

2     on December 18th, which was never responded to.

3     The hearing never went forward in Utah.  We

4     filed our motions.  February 19th oppositions

5     were due.  We got the amendment to the complaint

6     now taking iON out of the case, only for that to

7     be reversed a couple days later.  The IPR

8     hearing is June 22nd and the Board must rule by

9     October 28th.

10            These set of facts are important

11     to I believe see in contact to sort of

12     understand the pattern here and why GoPro feels

13     strongly about the motions and why they filed

14     them.

15            With respect to the motion to stay

16     pending IPR there's really a few arguments that

17     I could see that the Plaintiff makes as to why

18     it should not be stayed.  The first one, they

19     don't disagree that we are in the early stage of

20     the case, so you can check that off.  Clearly

21     nothing happened in Utah and nothing is really

22     happening here other than these motions and the

23     scheduling conference, so I don't think there's

24     any dispute that we're in the early stage of the

1    case here.  They oppose the idea that staying

2    the case will simplify the issues.  Their I

3    think largest argument or the argument that I

4    think they make most -- that's mostly out there

5    is that well, they cite these line of cases that

6    talk about, you know, the order's going to come

7    out from the Board in a couple months, so

8    there's no point in staying now.  I believe one

9    of the cases is Nexus.  And so you know, we're

10   not going to stay it right now, because there's

11   not really going to be a lot of waste here, it's

12   not going to be a simplification.  But those

13   cases don't have the facts as they appear here.

14              Essentially GoPro asserts that

15   what Contour has done here is this was all in

16   their control.  They decided to create a new

17   entity when they did.  They decided to assign

18   the patents.  They decided to merge or not merge

19   with iON.  They decided to get into a license

20   agreement or not with iON.  All of these things

21   were within their control.  And for them to

22   avoid a hearing in January where a motion to

23   stay would have been heard and refile here and

24   force us to have to file the motion to stay

1    again and say oh, well, now we're getting closer

2    to the hearing and we're getting closer to the

3    order, so we basically created this situation.

4    And so, you know, to reward them for that

5    procedural posture I think is sending a really

6    dangerous message if the Court were to say well,

7    it's not going to simplify the issues given the

8    timeline here that you're hearing is in June and

9    the PTAB is going to rule in October, because

10    that is one of Contour's own making.  They

11    skirted the stay.  They -- you know, everything

12    was within their control and to stand here now

13    and say well, the IPR is almost done, so we

14    should just move forward really doesn't get to

15    the core of the simplification of issues problem

16    to begin with.

17            THE COURT:  In terms of the the

18    equities of it, you know, look, they ended up

19    filing this new case and by the time this issue

20    is now percolating in the second court or closer

21    to the decision, they shouldn't be rewarded for

22    that?

23            MS. KHACHATOURIAN:  Correct.

24            THE COURT:   I guess about that,

1    they did also buy themselves kind of a certainty

2    of a number of months of additional delay,

3    right?  I mean, because they filed a new case

4    and again, you know, it's different Plaintiffs,

5    but I know you're putting together these groups

6    of Plaintiffs, they kind of assured themselves

7    nothing is going to happen on their case until

8    at least, you know, what ended up being, you

9    know, April of 2016.  Why wouldn't, you know,

10   why wouldn't that, that kind of burden that they

11   kind of took on kind of help mitigate the

12   equities a little bit in light of the, you know,

13   the assertion you're making, which is I should

14   consider the equities, don't give them a

15   windfall by deciding this in their favor in this

16   Court?

17            MS. KHACHATOURIAN:  But it doesn't

18   balance the equities.  And the reason for that

19   is that they're getting exactly what they want.

20   That delay, that several months, the case was

21   already stayed in Utah.  There would have been a

22   hearing in January.  That stay would not

23   extinguish until the Utah court ruled.  So

24   they're not winning or losing anything in terms

1    of filing in a new jurisdiction where there

2    would be some inherent delay.

3              Moreover, they did not request

4    that we respond initially in the normal, I

5    believe it's hopefully 21 days -- I think

6    California is 30 -- in the 21 days.  They were

7    willing to give us 180 days.  So delay wasn't

8    really a concern for them.  If they wanted to be

9    a very active plaintiff and were concerned about

10   the delay in Utah and coming to Delaware, they

11   wouldn't have given us all, you know, all of

12   that time to respond.  It really wasn't an issue

13   for them.

14             So that begs the question, why?

15   And given the pattern and given the timeline, I

16   believe and GoPro believes that filing here

17   would get them closer to the decision to avoid a

18   longer stay.

19             THE COURT:  On simplification, if

20   I'm trying to figure out, you know, the basic

21   argument, the traditional, you know,

22   simplification argument with respect to IPR

23   motions to stay is, you know, if the case were

24   not to be stayed first, is it likely that the

1　　Court is going to have to engage in any work

2　　between now and October if the case weren't

3　　stayed that it wouldn't have to engage in if the

4　　case were stayed?  For example, Plaintiff's note

5　　that the claim construction process here even

6　　under their proposals doesn't begin to get

7　　started until October of this year, so briefing

8　　doesn't happen until early 2017.  From the Court

9　　perspective, isn't it probably the case that

10　　there isn't likely to be Court expended,

11　　identifiable Court expended resources that

12　　would, that would get expended if the case

13　　weren't stayed?

14　　　　　　MS. KHACHATOURIAN:  Your Honor, I

15　　think that there would probably be a multitude

16　　of discovery disputes between the parties that

17　　the Court would have to engage in, particularly

18　　given this corporate structure where CIPH is now

19　　contending in one opposition and in the

20　　scheduling papers that Contour LLC is a third

21　　party, for example, but when facing this motion

22　　to stay, they're saying that Contour LLC would

23　　be prejudiced if a stay were granted.  So I

24　　think that there would be multiple of discovery

1      disputes, for example, not to mention the burden

2      that GoPro would have to go to in terms of, in

3      terms of having to produce discovery, putting

4      three people through depositions.  The core of

5      the case concerning discovery is probably the

6      most expensive there is for Defendants.  And

7      Plaintiff has already stated that the discovery

8      is going to be somewhat broad.  Also, there's

9      going to be that standing motion, and there may

10     also be a motion to transfer.

11               THE COURT:  Now, as to all of

12     those things, if we take at face value

13     Plaintiff's assertion that they do intend to

14     assert at least some if not all of the claims

15     not at issue in the IPR, if I were to say to you

16     well, with regard to either discovery-related

17     work or motion-related work of the kind you're

18     citing, if you take Plaintiff's assertion at

19     face value, why wouldn't the Court ultimately be

20     engaging in those kind of, that kind of work one

21     way or the other in the case?  Or put

22     differently, what is something that clearly

23     would not -- what is something that would happen

24     in the next six months that clearly would not

1    happen, depending on what occurs in the IPR, if

2    the IPR went a certain way?

3               MS. KHACHATOURIAN:  I think the

4    best way to answer that question is to talk

5    about the claims that were not subject to the

6    IPR.  The '694 Patent, all the claims are before

7    the Board.  On the parent patent, the '954, 23

8    of the 30 claims are before the Board.  The

9    others -- the seven other claims are means plus

10   function claims.  And essentially what would

11   happen is if those claims were to move forward,

12   Your Honor, they are the same as the other

13   claims that are before the Board, except they

14   have to correspond to a structure.  That's the

15   whole point of the means plus function claims.

16   But it's the same concepts, it's the same -- it

17   describes the same invention.  It's no different

18   from the claims that are before the Board.  And

19   in fact, if all of these claims are held

20   invalid, it is going to be very difficult, if

21   not impossible, for Contour to raise these

22   claims in this case.  So you actually, the Court

23   would be doing work that it wouldn't have to do

24   if it waited for the PTAB.

27

1    THE COURT: Assuming they would

2 drop the seven claims if they got a decision as

3 to the others that they were invalid?

4    MS. KHACHATOURIAN: It's GoPro's

5 assertion that they would have to. These are so

6 closely related.

7    THE COURT: I still don't

8 understand your point as to look, there's a lot

9 that might come out as to the other 23 claims

10 that could inform what's going on with respect

11 to those seven claims. For example, I think you

12 noted if there are terms in common, if we're

13 likely to get some, some input on invalidity

14 issues that are at least somewhat related to the

15 seven claims. But you know, I guess again,

16 taking at face value that they intend to go

17 forward with these no matter what, I'm trying to

18 figure out, what work is likely to be done by

19 the parties or the Court in these six months

20 that wouldn't have to be done? For example, I

21 think you would say, look, at a minimum --

22    MS. KHACHATOURIAN: Invalidity

23 contentions.

24    THE COURT: We'll be dealing with

1  some number of claims that could be out of the

2  case.  Is there anything else like that, if it

3  went your way totally in the IPR surely this

4  would be duplicative?

5              MS. KHACHATOURIAN:  Sure.  There's

6  infringement contentions that they have to do.

7  We have to respond to that.  We're going to get

8  the interrogatories that ask for our entire

9  invalidity case as well as our non infringement

10  position.  Infringement doesn't matter if your

11  claims aren't valid, so why do all of that up

12  front work now?  Delaware has process where this

13  is concerned, where you exchange early

14  information, you exchange information about the

15  accused devices and you provide technical

16  material.  They have already said that they

17  probably want to see our source code, which is

18  something that companies guard.  There are all

19  of these things that are going to breed dispute

20  and they are going to cause a lot of work, not

21  just for the parties, but for the Court.

22              I mean, I think it's important to

23  point out that the '954 is the parent of the

24  '694 and the only true difference between them

1     is the '694 has, what do you call that, where

2     you can hang it up?  It has an apparatus, a -- I

3     want to be completely clear on this.  It has a

4     hanging apparatus so that you can mount -- a

5     mounting apparatus.  That's the only difference

6     between the two patents.  These are closely

7     related patents.  They share the same

8     specification.  Other than this one minor

9     detail, they are essentially the same.  And I'm

10    happy, if it pleases the Court, to go through

11    these means plus function claims to point out

12    how similar they are to the actual other

13    independent and dependent claims that are before

14    the U.S. PTO right now.  It talks about, you

15    know, preview, streaming, video and high and low

16    resolution.  I mean, all of the elements that

17    are up at the Board right now are the same

18    elements that will affect these claims.

19            THE COURT:  Yeah.  My only point

20    is that, you know, it can cut both ways.  In

21    other words, I give you that there are lots

22    of -- because there have more similarities, lots

23    of expected simplification from a PTAB decision

24    as to related claims for sure, but if the

1    Plaintiff can say somewhat convincingly, we're

2    going forward as to these seven regardless, so

3    they are going to have to produce the same docs

4    about the same accused products.  They are going

5    to have to largely, you know, deal with

6    depositions, deal with responses to requests for

7    production interrogatories in the case one way

8    or the other.  Then the question is, well, you

9    know, why stay it if we're likely to get a

10   decision before claim construction really gets

11   started?  Now, if claim construction was, you

12   know, half way done or, you know, all the way

13   done, that might be different because you can

14   easily see the Court's resources could be

15   utilized there in a way that could be wasted.

16   And I think you responded in part by saying

17   look, we're dealing with contentions, we're

18   going to be dealing with responses relating to

19   those, to interrogatories in request for

20   production.  Anything else that you would point

21   to in terms of wasted work?

22            MS. KHACHATOURIAN:  I would point

23   to a few things.  As I said, those motions that

24   wouldn't be filed.

1          THE COURT:  Why would those

2    motions not be filed?

3          MS. KHACHATOURIAN:  If the case is

4    stayed, we're not going to file a motion to

5    dismiss for standing.  If the case is stayed,

6    we're not going to file a motion to transfer

7    right now.  I mean, the case is going to be

8    stayed.  If they are ruled invalid, the case is

9    most likely over.

10          THE COURT:  What I'm asking,

11   though, is not what you would file were the case

12   stayed.  What I'm asking is would they

13   be filed were the case to end up going forward

14   as to the other seven claims?

15          MS. KHACHATOURIAN:  Those motions

16   aren't claim dependent, right?  I mean, so they

17   are procedural motions.  But I would submit to

18   the Court that this case was filed in Delaware

19   after the PTAB instituted IPR and after the

20   decision was offered.  The decision was offered

21   in October of last year.  One month later,

22   almost to the day, this case was filed.  Nowhere

23   in the complaint, I don't believe, they alleged

24   these means plus function claims that they're

1    going to assert against GoPro.  The first that I

2    believe I became aware of it, and if I'm

3    mistaken, then I'll be corrected, is when it was

4    in the opposition to the motion to stay.

5            So knowing means plus function

6    claims and knowing how difficult they are to

7    pursue and knowing how related they are to the

8    other claims that are already in the IPR, you

9    almost have to think of it as if even though the

10   Board didn't institute on those seven claims, it

11   almost is a distinction without a difference.

12   Because depending -- the Board's ruling will

13   impact these claims.  And so this situation

14   really is no different from any other where

15   folks move for a motion to stay pending IPR.

16   You need to think of it as all of the claims

17   were instituted.  That's how closely related

18   they are.

19            And if they were to file against

20   us on those claims, that would have been done a

21   long time ago.  This case was originally filed

22   in 2014 against Camp Saver and early 2015

23   against GoPro.  So it begs the question why all

24   of a sudden now when you're faced with an

1      opposition to a motion to stay that you're going

2      to assert that you're going to assert it against

3      us.  How are they going to assert it against us?

4      I'd love to hear it, because where I stand I

5      think that is going to be a very uphill battle

6      and the Court is going to waste a lot of time

7      and so are the parties in doing discovery on

8      these claims and doing invalidity contentions

9      and doing infringement contentions and basically

10     responding to interrogatories and, you know,

11     motion to compel disputes and all the rest of

12     that.  This is the meat of the case right now.

13     We're at a crossroads.  If you don't order the

14     stay, everything is going to begin.  And so then

15     it doesn't matter if claims construction is

16     after the ruling.  All of the hard work and all

17     of the expense is going to happen now and so

18     that's why a stay is appropriate.  The fact that

19     seven out of how many claims, you know, seven

20     out of maybe 40 claims wasn't instituted, if you

21     look at the case law in Delaware and outside,

22     you don't -- you don't have to -- there doesn't

23     have to be a complete overlap.  That's not

24     required.

1           And so if there was ever a

2      compelling case to grant a motion to stay, not

3      just because of the stage of the proceedings

4      and, you know, the decision to institute and how

5      many claims.  I mean, this isn't a situation

6      like some of the cases that Plaintiff cited

7      where there are whole patents that people didn't

8      move on that didn't institute.  You know, one

9      claim was asserted and you didn't seek PTAB

10      review for that one claim.  We're talking about,

11      what, 93 percent of the claims are before the

12      PTAB right now.  The patents are so closely

13      related.  These seven claims are closely

14      related.  It's all the same invention except for

15      this one small mounting distinction.

16           So essentially what the Plaintiff

17      is asking you to do is to start at the worst

18      part of a case, frankly, which is discovery and

19      invalidity contentions and producing source code

20      and doing all this stuff and then hearing from

21      the PTAB that the claims are invalid and then

22      what?  You can't undo that.  So okay, GoPro is

23      right.  And everything that I say is going to

24      happen happens, and then I've spent half a

1     million dollars my client has and we're in all

2     these disputes and we have to produce all of

3     this incredibly sensitive information and that

4     can't be undone.  You know, so waiting basically

5     creates prejudice for GoPro that can't be fixed.

6               So, okay, October 28th a ruling

7     comes out for the PTAB invalidating everything.

8     Then what?  All that work is done, whereas on

9     the opposite side, Contour won't be prejudiced

10    because they've already waited all of this time

11    to prosecute their case.

12              The Plaintiff in this case is an

13    NPE.  It is a holding company.  When it's

14    convenient for them they say oh, Contour LLC is

15    a competitor in this motion, but then for the

16    other motion they say they're not related.  The

17    bottom line is they are an NPE.  They didn't

18    file a motion for preliminary injunction.  They

19    have not moved at a very fast pace here and they

20    stipulated to a stay initially for a very long

21    time.

22              So while Contour can then continue

23    its case at the end of October because if their

24    claims survive, all of the work GoPro will have

1   to then go through can't be undone.  So while

2   Contour can still do their case, if we do not

3   succeed at the PTAB or some of the claims

4   survive and then that case goes forward and it

5   will be simplified and everyone will know the

6   rules, here we're not going to get that half a

7   million dollars back.  We're not going to get

8   our source code back, you know.  We're going to

9   be put to that burden with no relief.

10              So that's why this situation is

11  ripe to stay the case, because what the PTAB

12  says will have implications across the board

13  where Contour, depending on how it goes, can

14  still move their case forward.  But GoPro can't,

15  you know, can't take their source code back.

16  They can't take their depositions back.  They

17  can't take any of that back.  And you're putting

18  them to a burden and you're having them do

19  infringement analysis and do all of these things

20  when infringement is not even going to be an

21  issue if the patents are invalid.

22              THE COURT:  Right.  And we should

23  move on.  All I'm saying is I see a lot of these

24  motions as I would do, the fact that it's a

1    little unique is because of the particular

2    procedural circumstances here, going to get a

3    decision from the PTAB necessarily in a much

4    different and earlier, closer stage in time to

5    when a case management conference is occurring

6    as we often do, so that's all I'm saying.

7                MS. KHACHATOURIAN:  I understand

8    that, Your Honor.  I will also submit and then I

9    will move onto the 41(d) motion, that once we

10   get that order, it's likely that Contour will

11   appeal.  Then what?  Then does the case still

12   continue?  Do we come back and ask for another

13   stay?  By that time, I mean October is still --

14   what are we in April -- October, so six months,

15   that's six months away and the Federal Circuit

16   appeal will take some time.  So why do all of

17   this work up front for claims that maybe will be

18   asserted, which frankly I submit will probably

19   not be and have never been to begin with?

20               On the 41(d) motion, in addition

21   to the attorneys' fees issue, whether 41(d)

22   includes attorneys' fees, there were several

23   other arguments that Contour made in opposition.

24   The first that it's not the same parties.  And

1    as we said in our papers there's nothing that

2    says it has to be the same parties, but also

3    they are the same parties.  I mean just because

4    look, if it walks like a duck and quacks like a

5    duck, it's a duck.  So you created a holding

6    company.  You owned -- you were the Plaintiff

7    and owned -- Contour LLC owned 51 percent.  Now

8    iON apparently owns 49 percent.  Same patents,

9    same agents, same place of business.  Just

10   because, you know, corporate shell game doesn't

11   mean it's the same parties, but it is the same

12   parties.  But nonetheless, I mean Contour is

13   Contour, like I said.  In the opposition to the

14   motion to stay pending IPR, they brought Contour

15   LLC into it and said Contour LLC would be

16   prejudiced.  So okay, so then you're not the

17   same party?  I'm not following.

18            THE COURT:  Can I just ask on the

19   Rule 41 issue.  I understand your point in terms

20   of, you say look, the rule, there were two

21   defendants, for example, out in Utah, one of

22   those two defendants has now sued here.  I think

23   your point is there's nothing in the rule, the

24   rule says if a plaintiff brings in essence the

1    same suit against a defendant, nothing in the

2    rule you say requires that the plaintiff brings

3    the same suit against the defendant and every

4    other defendant that they happen to sue in the

5    other district?

6              MS. KHACHATOURIAN:  Correct.  And

7    also that just because you're changing name

8    doesn't mean you're not the same plaintiff.

9              THE COURT:   Well, that's the one

10   I wanted to ask you a little bit more about.

11   And but if I look at the rule, which reads if a

12   plaintiff who previously dismissed an action,

13   dot dot dot, files an action based on or

14   including the same claim against the same

15   defendant, I guess the question is, it is

16   literally the case that this is not, that these

17   quote same plaintiffs that initiated the case in

18   Utah.  I know your argument is that look, in

19   essence it is, you know, look at the contortions

20   they went through to make it a different

21   plaintiff, but if I'm looking at the rule and it

22   says a plaintiff, how do I  -- how do I deal

23   with the argument that this is not the same

24   plaintiff, it's a different plaintiff?  Albeit

1      one that's related to that plaintiff, but a

2      different entity.

3                  MS. KHACHATOURIAN:  Two fold.

4      First with respect to their admission in their

5      opposition to the motion to stay, where they say

6      Contour LLC would be prejudiced if a stay were

7      entered.  If it was a different plaintiff, why

8      are you mentioning Contour LLC to begin with?

9      So that's number one.  Number two, I think you

10     have to go back to the --

11                 THE COURT:  That's the motion to

12     stay regarding the IPR?

13                 MS. KHACHATOURIAN:  Correct.

14                 THE COURT:  You're saying look,

15     there they point to prejudice to Contour LLC, so

16     they are kind of acknowledging they're basically

17     the same entity?

18                 MS. KHACHATOURIAN:  Correct.  And

19     then two, I think you need to look at the

20     purpose of the rule, which is stated, you know,

21     throughout all of the cases, including Garza,

22     which is this rule is put in effect to protect

23     defendants from having to defend the same action

24     twice.  So that's a check here, right?  You have

1   the same defendant, because defending the same

2   action twice.  So then you just have the

3   Plaintiff proc.  But this entire rule is

4   designed to protect against vexatious litigants

5   and forum shopping.  And it would be, I believe,

6   a dangerous precedent to say because you changed

7   the name of this entity and created a different

8   corporate form that somehow you wouldn't be

9   called the same plaintiff any more.  And by the

10  way, it's still got the name Contour in it.  It

11  might be a different name, but they are still a

12  majority owner and all the rest of it, so --

13              THE COURT:  So typically even if

14  related, corporate forms are respected in lots

15  contexts and supported in as to lots of motions.

16  And so I'm wondering, for example, is part of

17  your assertion that because Contour LLC merged

18  with iON and iON was, in fact, a plaintiff when

19  the case was filed that that has some bearing on

20  whether or not the same plaintiff filed this

21  case as did file the Utah motion?

22              MS. KHACHATOURIAN:  It's unclear

23  whether iON and Contour merged.  It really

24  depends on what you read.  In one brief they say

1    they are partners.  In another brief they say

2    they merged.  There's press releases that they

3    say merged.  The corporate documents don't

4    indicate as such.

5                    THE COURT:  What do the pleadings

6    say, the initial pleadings?

7                    MS. KHACHATOURIAN:  The pleadings

8    say they merged.  That's my recollection.

9                    THE COURT:  Is your assertion that

10   a merged entity, iON merges with Contour LLC so

11   in essence for purposes of Rule 41, that's the

12   Plaintiff, the same plaintiff?

13                   MS. KHACHATOURIAN:  That's one of

14   our contentions.  But the other is that even

15   though corporate formations are respected and

16   41(d) doesn't require bad faith, certainly in

17   your inherent authority and just generally, you

18   could find that it is the same plaintiff,

19   because there was a shell game going on, just

20   like with any other type of creditor case or any

21   other type of situation where if the purpose to

22   create this entity was to basically skirt around

23   trying to avoid this so that they could be in a

24   better forum.  And I believe the complaint says

1          that they decided to file here for iON's

2          benefit, for iON's convenience because iON was a

3          Delaware corporation.  And that's where iON

4          comes into play here, in that it doesn't appear

5          that iON should be a plaintiff in this case.

6          And therefore you can't really make the argument

7          that because iON is a co-plaintiff, it's not the

8          same plaintiffs.  That was their argument in

9          their opposition, is that because iON is a

10         co-plaintiff, it's different plaintiffs.  And

11         then they go on about CIPH versus Contour LLC,

12         but so then you just have CIPH and Contour LLC,

13         same agents, same everything, Utah company.  I

14         don't think that those facts can be ignored in

15         terms of making an analysis of whether they are

16         the same plaintiff.

17                    THE COURT:  At least one other

18         question I wanted to ask, which is in terms of

19         the forum shopping assertion, is there something

20         you could point to, I think at one point in your

21         reply brief you say look, they filed here

22         because it was clear that the case in Utah

23         wasn't going well.  You know, and I think --

24                    MS. KHACHATOURIAN:  That's right.

1          THE COURT:  I've got some case

2     law, I think our Court does, typically when you

3     hear forum shopping the thing that is kind of

4     most prominent when that word gets thrown around

5     is the idea that a party was refiling or filing

6     in a different jurisdiction from where they were

7     in order to avoid a Court's judgment or

8     decision, one already issued or one likely to

9     issue.  What would be the evidence here that, in

10    your view that I could look to what happened in

11    Utah to say look, it's pretty clear that the

12    reason why they dismissed and filed here is

13    forum shopping in the sense that they were

14    trying to avoid a decision that either had been

15    issued or was likely to issue?

16          MS. KHACHATOURIAN:  First it's the

17    stipulated stay that became an order.  There was

18    an indefinite stay in place until the motion to

19    dismiss was decided.  There was also a motion to

20    stay pending that was going to be heard January

21    12th.  And I would submit to the Court that

22    motions to stay pending reexamination in Utah

23    are, are granted more readily than Delaware, for

24    example.  And so it's GoPro's assertion that

1 given the Camp Saver situation where we ended up

2 in Utah -- and just to give you a little bit

3 more background, Contour originally was based in

4 Seattle, was a Washington company.  And it got

5 bought by Private Equity, which is based in

6 Utah.  And that's where Contour ended up being

7 based.  And then Contour sued Camp Saver first

8 in Utah and then GoPro.  GoPro is a Delaware

9 corporation, principle place of business in

10 California.  So there was already this sense of

11 forum shopping in the Utah case.  And then

12 according to Contour's papers, what they state

13 is they came to Delaware for the convenience of

14 iON.  They say that in their complaint.  iON is

15 a Delaware company.  They also say that it's

16 better to be in Delaware because GoPro is a

17 Delaware company as well.  And they say that

18 they got new lawyers.  And iON is a Delaware

19 corporation and they assigned the patents to

20 this CIPH, so Contour LLC didn't own the patents

21 any more and so a week after we filed the motion

22 to stay, they filed in Delaware.

23     THE COURT:  You think what

24 happened is they thought they were going to lose

1    the motion to stay pending IPR in Utah and

2    that's why they dismissed and you think the

3    record would bear it out?

4                    MS. KHACHATOURIAN:  Correct.

5                    THE COURT:  Okay.  You're right

6    up against your time.  I'll give you at least

7    five minutes for rebuttal.  Any last point you

8    want to make briefly that you didn't get a

9    chance to make initially?

10                   MS. KHACHATOURIAN:  No, Your

11   Honor.

12                   THE COURT:  Okay.  Thank you.

13                   MS. KHACHATOURIAN:  Thank you so

14   much.

15                   THE COURT:  All right.  Let me

16   hear from counsel for the Plaintiff's side.  Mr.

17   Schoenhard.

18                   MR. SCHOENHARD:  Yes, Your Honor.

19   Good afternoon.

20                   THE COURT:  Good afternoon to you.

21                   MR. SCHOENHARD:  Your Honor, today

22   I am -- my apologies.

23                   THE COURT:  No, that's okay.

24   Please continue.

1          MR. SCHOENHARD:  Your Honor, today

2     I'm appearing on behalf of both Contour IP

3     Holding and iON Worldwide.  You've heard quite a

4     bit of argument over the last 45 minutes or so

5     about some confusion as to what their respective

6     roles are.  I think it probably behooves me and

7     the Court to go through that briefly and then

8     enter our way back into the motions that are

9     before the Court in a moment.

10          I think it's helpful probably to

11     begin at the beginning of the story.  At the

12     closing of Ms. Khachatourian's argument, she

13     referenced Contour's genesis in Seattle.

14     Probably makes sense for us to start there at

15     least briefly and I expect to move quickly

16     through this.

17          Contour was started as an action

18     camera company in Seattle.  Very early in its

19     years found strong competition from GoPro.  They

20     were readily considered to be two of the most

21     formidable companies in the space.  GoPro be it

22     by dent of marketing or otherwise, I'm not a

23     marketing expert here, but ultimately was

24     prevailing in the marketplace and Contour was

1  not doing well financially.  Contour ultimately

2  ended up in receivership.  Contour was brought

3  out of receivership through Private Equity and

4  relocated itself into Utah.  The two primary

5  assets of Contour were its intellectual property

6  portfolio that it had been developing throughout

7  its time and also its operating practices, its

8  operating company and its line of action

9  cameras, so its goods and also its IP.  It

10  continued at that point to try to engage in

11  competition with GoPro or to resume competition

12  with GoPro.  It had difficulty doing this in

13  part because in its view GoPro was continuing an

14  ongoing infringement of Contour's IP portfolio,

15  so Contour filed suit.

16        At this point we're referring to

17  Contour LLC.  The corporate forms will matter as

18  we go along.  That case was originally filed as

19  a case against Camp Saver, a Utah based company

20  that was filed at the end of 2014 in Utah.

21  GoPro was added into the case in early 2015.  I

22  was not counsel in that case and I cannot attest

23  to Your Honor one way or the other regarding Ms.

24  Khachatourian's conversations that she may have

1       had with previous litigation counsel.

2                       THE COURT:  For what purpose

3       could Camp Saver have been added to the other

4       litigation other than to achieve a stronger

5       venue?

6                       MR. SCHOENHARD:  My general

7       understanding of the reason for suing Camp Saver

8       in the first instance was that they were a Utah

9       company that was selling into Utah products that

10      infringed.  And what the ultimate plan had been

11      in terms of a litigation strategy, I am not

12      fully aware, but the reason or what would seem

13      reasonable to me is that you have one Utah

14      entity which would naturally have venue in Utah

15      where it's experiencing its personal harm.  So

16      we had another Utah entity that it perceived as

17      an infringer directly in its Utah marketplace.

18                      Thereafter, the suit brought in

19      GoPro a couple months later and as Ms.

20      Khachatourian pointed out, the suit was stayed

21      pending resolution of a motion to dismiss in

22      approximately May of 2015 when at that point

23      neither Camp Saver nor GoPro had answered the

24      complaint and there had been no substantive

1    proceedings.

2             Fast forward thereafter.  At this

3    point Contour is having some difficulty in the

4    marketplace again and is looking for a

5    marketplace partner.  It finds iON Worldwide, a

6    Delaware based corporation that is also in the

7    wearable camera space.  They are complimentary

8    products, not exactly the same products, but

9    complimentary products.  iON was specializing in

10    wearable cameras and Contour in action cameras

11    and in iON, Contour saw a possible strong

12    business partner that would then ultimately be

13    responsible for manufacture and sales of Contour

14    cameras going forward.  They entered into an

15    agreement with an intent to merge those two

16    corporate entities, Contour LLC and iON

17    Worldwide, Inc.  As part of that merger

18    agreement, the intellectual property of Contour

19    was assigned to a holding company, Contour IP,

20    one of the named Plaintiffs here.  And each of

21    Contour LLC and iON Worldwide took an ownership

22    interest in Contour IP.  Contour IP then issued

23    to iON Worldwide an exclusive license to

24    practice of the patents.

1           THE COURT:  So the two entities

2    merged?

3           MR. SCHOENHARD:  The two entities

4    attempted to merge.  And this explains in part

5    the challenge in language here.  They entered

6    into a functional merger. ████████████████

7    ████████████████████████████████████████

8    ████████████████████████        and ultimately

9    that merger has resulted in a dissolution of

10   that merger that is in process in the background

11   today.  I represent both Contour IP holding and

12   iON Worldwide.  As the Court would surely

13   appreciate, I'm ethically borrowed from advising

14   either in terms of how that dissolution is to

15   take place or personally getting involved in

16   their dissolution proceedings.  My understanding

17   is, and I can assure the Court that as of the

18   time the complaint here was filed, iON was an

19   exclusive licensee to the two patents in suit.

20   Contour IP Holding was the owner of the two

21   patents in suit.

22           Thereafter, the attempted merger

23   started to fall apart and the companies, at the

24   higher level, Contour LLC and iON have been

1  working to unwind that merger in the background.

2  ████████████████████████████████████

3  ██████████████████████████

4  ████████████████  ████████████████

5  ████████████████████████████████████

6  ██████████████████████████████

7  ██████████████████████████████

8  ██████████████  It's my understanding as of

9  today that the parties expect to have reached a

10 sufficient agreement regarding their dispute

11 over licensing going forward that I should be

12 able to provide the Court with a status update

13 within the next week on that issue.

14           THE COURT:  I guess, for purposes

15 of where we stand, it is the case or is it not

16 the case that as of this moment Contour LLC and

17 iON have merged.  Whether they are attempting to

18 unwind that merger or whatever, -- isn't it the

19 case that the two entities did merge, are

20 currently iON, but are now attempting to unwind

21 that merger or is the status something else?

22           MR. SCHOENHARD:  That's not quite

23 correct, Your Honor.  At least to the best of my

24 understanding.  And I have acknowledge up front,

1      I am not a corporate or corporate restructure

2      lawyer by training.  My understanding is that

3      the attempted merger failed relatively near to

4      its inception in the process of bringing things

5      together, such that day, as I understand it,

6      Contour LLC is a separate operating company from

7      iON Worldwide.  What their respective rights are

8      with respect to each other based on past

9      contracts has been the subject of some dispute

10     between them.  But the two companies are

11     operating as separate corporate entities, have

12     separate management, are in other venues

13     represented separately and are not moving

14     forward together.  It is my understanding that

15     at no point did the merger get to the point that

16     the two had fully merged into a single entity.

17     In fact, Contour LLC was always intended to own,

18     as a corporate body, a separate interest in

19     Contour IP.  iON Worldwide was intended to

20     function as a manufacturing and sales arm of

21     what would become the Contour brand.

22              THE COURT:  In terms of the record

23     before me on this, did you allege in the

24     operative complaint that they merged?

1          MR. SCHOENHARD:  Yes, in the

2    operative complaint I alleged that the two had

3    merged in the late summer of 2015.  That was and

4    is to this date my understanding of what the

5    appropriate terminology would have been for the

6    agreement they entered into and the process they

7    were undertaking.  Since the time of the

8    operative complaint, the unwinding has taken

9    place.

10         THE COURT:  Has any of that stuff,

11   whatever happened after this merger, is any of

12   that stuff in the record?  You're saying it

13   right now in this hearing.  Is there anything in

14   the record that tells me what's occurred as

15   alleged in the operative complaint that the two

16   entities merged?

17         MR. SCHOENHARD:  Your Honor, no.

18         THE COURT:  Okay.  And then as of

19   today, and is it just your assertion -- I have

20   to look at the record again, but is it the case

21   that as far as you understand that iON is the

22   exclusive licensee of the patents in suit?

23         MR. SCHOENHARD:  Unfortunately,

24   Your Honor, I'm not in a position to make a

1    formal assertion on that issue.  It is my

2    understanding that there has been a dispute

3    between Contour IP and iON Worldwide as to

4    whether that exclusive license has been

5    effectively terminated and that it has been iON

6    Worldwide's position that the exclusive license

7    remains in effect.  It has been Contour IP's

8    position that the exclusive license has been

9    properly terminated.

10            THE COURT:  Maybe the better way

11    to ask it is in terms of what the record shows

12    in this case, the record that I can rely on,

13    what is the state of the record as to whether or

14    not iON is an exclusive licensee of the patents

15    in suit and whether at any stage between when

16    the case was initiated and now, iON failed to be

17    or was no longer an exclusive licensee?

18            MR. SCHOENHARD:  I appreciate Your

19    Honor's interest in seeking clarity on this.

20    And as far as the standing record is concerned

21    in this case, iON Worldwide is, on this record,

22    the exclusive licensee until such time as the

23    dispute is resolved between them and the parties

24    can inform the Court that either that license

1    has now been terminated or that iON continues

2    forward as an exclusive licensee in the future.

3              THE COURT:  And so on the current

4    record you're saying there's no indication that

5    at some point from the filing of the complaint

6    until now iON lost its status as an exclusive

7    licensee?

8              MR. SCHOENHARD:  As my co-counsel

9    has flagged for me, and I appreciate that and

10   recognize it, the paper filed by Contour IP in

11   opposition to the motions filed by GoPro in this

12   case noted Contour IP's termination of that

13   exclusive license, so Contour IP's position on

14   that.

15             THE COURT:  Okay.  So Contour IP

16   has stated in a filing that it terminated iON as

17   an exclusive licensee?

18             MR. SCHOENHARD:  Yes, Your Honor.

19             THE COURT:  They may dispute that

20   or may not.  Sounds like they would dispute

21   that, but that's in the record as well.

22             MR. SCHOENHARD:  Yes, Your Honor.

23             THE COURT:  Okay.  Would you

24   acknowledge what's going on here is unorthodox,

1    unusual?

2           MR. SCHOENHARD:  Certainly, Your

3    Honor.  And I can acknowledge its put me through

4    no shortage of consternation personally.  Your

5    Honor, as you recognized during Ms.

6    Khachatourian's opening argument, the timing of

7    the dissolution here is particularly unfortunate

8    when it comes to the motions that are currently

9    before the Court, in that on the same day that

10   Contour IP filed its oppositions to GoPro's

11   motions, Contour IP also filed an amended

12   complaint which was subsequently withdrawn that

13   would have effectively removed iON Worldwide

14   from the case. ████████████████████████

15   ████████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████████

18   ██████████  ████████████████████████

19   ██████████████████████

20   ████████████████████████

21   ████████████████████████████████████████

22           For purposes of today's

23   proceeding, I've been advised by both clients

24   that they are comfortable with me proceeding on

1    behalf of both Contour IP and iON Worldwide,

2    that the two share the same interest in ultimate

3    resolution of these motions and the same

4    interest in moving this case forward as

5    expeditiously as practicable.

6              THE COURT:  Okay.  Well, why don't

7    we, you know, take some bit of time, why don't I

8    let you get to the points you want to make about

9    both motions and I'll try to add in any

10   questions I have along the way.

11             MR. SCHOENHARD:  Thank you, Your

12   Honor.  If I take the motions in the same order

13   in which Ms. Khachatourian did, I would begin

14   with the motion to stay pending IPR proceedings.

15   Here I would like to initially make three high

16   level points which we can unpack and of course I

17   will entertain Your Honor's questions as we go

18   and we can see where the conversation heads.

19             The first and most important point

20   for the Court here is the relevant stages of

21   this litigation and of the PTAB proceedings.

22   This topic consumed a significant portion of

23   Your Honor's discussion with Ms. Khachatourian.

24   I think it's something that we can address

1     briefly here.  It is somewhat odd in going

2     through this Court's cases on whether to stay

3     pending IPR proceedings to find a situation in

4     which the PTAB is near conclusion of its

5     proceedings and litigation proceedings are in

6     the early stages.  As Ms. Khachatourian noted

7     during her argument, really nothing has happened

8     up until now, either in this Court or in the

9     prior Utah action, which we'll address

10    separately shortly.  Here I think for Your

11    Honor's benefit, the most important date in the

12    proposed scheduling order is the claim

13    construction hearing which had been proposed by

14    the Plaintiffs to take place in February of

15    2017.  By that time the PTAB will have concluded

16    its review of the two patents that are at issue

17    in this case.  That review would have concluded

18    approximately three to four months earlier,

19    depending on the precise timing of the claim

20    construction hearing.  And in fact, the parties

21    would not have even begun briefing claim

22    construction in this case.  All activities

23    between now and that time are activities that

24    Contour and iON would expect would take place

1　　regardless of the outcome of any PTAB

2　　proceedings.  In particular, discovery regarding

3　　the accused products and their functionality

4　　would take place regardless.  In the meantime,

5　　discovery regarding the validity of the patents

6　　would take place regardless.

7　　　　　　　　The second point, which is highly

8　　related, is that there are, in fact, eight

9　　claims not at issue in the PTAB.  I believe,

10　　Your Honor, Ms. Khachatourian mistakenly

11　　referred to the number as seven.  It is, in

12　　fact, eight.  It's claims 3 through 10 of the

13　　'954 Patent, so eight claims that are not at

14　　issue in the PTAB.  And here --

15　　　　　　　　THE COURT:  As to those claims,

16　　you are asserting hopefully?

17　　　　　　　　MR. SCHOENHARD:  We certainly

18　　intend to, Your Honor.

19　　　　　　　　THE COURT:  Regardless of whether

20　　or not the PTAB invalidates every other claim as

21　　to that patent, you're asserting it is the

22　　Plaintiff's current intent to move forward in

23　　the case as to those eight claims?

24　　　　　　　　MR. SCHOENHARD:  It is the

1          Plaintiff's current intent, yes, Your Honor.

2                    THE COURT:  In terms of what would

3          happen between now and October that might be,

4          were, for example, the other 22, 23 claims to be

5          invalidated, what might occur that would be

6          wasted in that scenario?  There would be some

7          work, wouldn't there, responses to infringement

8          contentions as to the other claims, invalidity

9          contentions as to those claims -- the other

10          claims specifically, wouldn't that be work that

11          would be not utilized were the PTAB's decision

12          to come out a certain way, or other, other

13          examples?

14                    MR. SCHOENHARD:  To a great

15          degree, I don't expect so.  As an initial matter

16          both Your Honor and Ms. Khachatourian have

17          referred to non-infringement contentions.  It is

18          my understanding that non-infringement

19          contentions are not regularly a part of Delaware

20          patent practice.  Infringement contentions

21          surely would be.  That's of course a burden to

22          be borne by the Plaintiffs and a burden that the

23          Plaintiff's are prepared to bear.  On the issue

24          of invalidity, yes, there would be invalidity

1       contentions that would be needed as to the

2       additional claims.

3                    THE COURT:  So you're not going to

4       file interrogatories seeking their contention as

5       to why they don't infringe?

6                    MR. SCHOENHARD:  To the extent we

7       would serve such interrogatories, Your Honor, we

8       might expect, for example, that work in

9       responding to those need not necessarily be

10      performed or fully perfected prior to the PTAB's

11      decision.  There's nothing in the Court's rules

12      or the proposed schedule, as I understand it,

13      Your Honor, that would force a decision in that

14      interim period.

15                   THE COURT:  You're saying you

16      wouldn't press it?  If they said look, we don't

17      want to respond to this until after October, you

18      wouldn't push it?

19                   MR. SCHOENHARD:  I think that

20      would be reasonable, Your Honor.  On the issue

21      of validity one would expect that GoPro already

22      has in mind any invalidity contentions it has.

23      One thing that unless I missed it, Your Honor,

24      was not made clear during the earlier argument

1       this afternoon is that GoPro did, in fact, seek

2       IPR review of the eight claims that are not

3       currently before the PTAB and the PTAB declined

4       to institute review on those claims.  That's

5       important for a couple reasons.  First, GoPro

6       has already gone through the effort to develop

7       an invalidity case as to those eight claims.  It

8       is not as if they would be starting from whole

9       cloth now.  Second, it also renders, I believe,

10      questionable, Your Honor, just how much impact

11      the PTAB's decision as to the other claims would

12      necessarily have on those remaining eight

13      claims.  After all, the PTAB has already decided

14      that I'm effectively the same record with the

15      same art before it to institute as to many

16      claims, not to institute as to those eight

17      facing the same arguments across the board.  It

18      is thus not clear to me, Your Honor, that a

19      decision with respect to the others would

20      necessarily apply to the eight claims, which, as

21      Ms. Khachatourian acknowledges, are largely

22      means plus function oriented, which adds an

23      additional layer of proofs into a validity or

24      infringement analysis, such that proofs not tied

1      to means plus function claims would not

2      necessarily reach their means plus function

3      counterparts.

4                  THE COURT:  Are you asserting that

5      nothing the PTAB stays as to the remainder of

6      the claims that are under review would have any

7      bearing on the question as to whether or not

8      those means plus function claims are invalid?

9                  MR. SCHOENHARD:  No, Your Honor, I

10     would not go so far as to say it would have no

11     bearing.  Surely the PTAB's sound judgment with

12     respect to other terms within those claims or

13     how the the art might generally read could be

14     instructive to this Court.  But it would not

15     necessarily be binding on this Court with

16     respect to those claims.  And also there would

17     be the additional elements of the structural

18     mappings that would not be conducted by the PTAB

19     as part of its analysis.

20                 THE COURT:  I'll let you press on.

21                 MR. SCHOENHARD:  Related to Your

22     Honor's last question, of course, I think it's

23     worthy of noting that only two claim terms are

24     subject currently to apparent claim construction

1    before the PTAB.  The eight claims that are not

2    before the PTAB include seven unique means plus

3    function claim terms.  So if we're looking

4    forward to how this Court would likely proceed

5    in claim construction, if we are looking forward

6    to how the parties would argue with respect to

7    the currently instituted claims of the PTAB and

8    the non-instituted claims, we see little claim

9    construction oriented overlap, just two terms

10   currently before the PTAB.

11                Unless Your Honor has anything

12   further on the motion to stay, perhaps we turn

13   to the Rule 41(d) motion and devote some time

14   there.

15                THE COURT:  Okay.  Couple quick

16   questions.

17                MR. SCHOENHARD:  Yes, Your Honor.

18                THE COURT:  Can I consider the

19   relationship of a non-party, Contour LLC, when

20   it's trying to determine what prejudice the

21   Plainiff, Plaintiffs in this action would face?

22   As opposed to treat them separately.  You

23   recognize the contradiction.  You're asking them

24   to treat them separately as to one set of

1    motions and then take into account the prejudice

2    LLC would face as to the others.  Why isn't that

3    a contradiction?

4              MR. SCHOENHARD:  I certainly do

5    recognize that, Your Honor.  And I believe that

6    there is a narrow space between the two,

7    although I will recognize that it is a narrow

8    space.  And that is really the function of

9    parent subsidiary going up versus going down.

10   Here Contour LLC owns a 51 percent share of

11   Contour IP.  As a result, what impacts Contour

12   IP does impact Contour LLC.  And GoPro's

13   position in the marketplace, which is a direct

14   competitor to Contour LLC, is thus relevant to

15   how the holding or how the holding in a

16   company -- I like to be careful in my usage of

17   terms, Your Honor.  My apologies.  How the

18   company with a controlling interest in the

19   patent holding company is ultimately impacted.

20   I would expect that for purposes of Your Honor's

21   weighing of the various factors that the

22   prejudice experienced by Contour LLC would

23   receive relatively little weight as compared to

24   the prejudice that could be experienced by

1    Contour IP as a patent owner directly.

2                    THE COURT:  Okay.  And why don't

3    you seek a preliminary injunction here?

4                    MR. SCHOENHARD:  As Your Honor is

5    aware and as we will explore when we get into

6    the Rule 41(d) motion, there have been

7    proceedings ongoing between a Contour entity in

8    the previous case, Contour LLC, and GoPro for an

9    extended period of time.  It did not seem

10   reasonable, frankly, to me, Your Honor, that at

11   the time that this case was filed by iON

12   Worldwide and Contour IP that a preliminary

13   injunction immediately be sought.  I also know

14   that preliminary injunctions are rarely granted

15   and that this Court does have a very strong

16   track record of moving forward expeditiously

17   with patent proceedings according to its patent

18   rules.

19                   THE COURT:  Lastly, in terms of

20   the prejudice argument, you know, part of the

21   idea is look, we're going to be prejudiced if

22   we don't move forward in the stay pending IPR's

23   grant.  You know, the Defendant is saying look,

24   these entities or at least entities relating to

1    them are out in Utah.  They were holding the

2    patents at the time.  They agree to a stay for

3    many months before this motion dismiss is

4    rectified.  And they take action by dismissing

5    that case and filing here, which is almost

6    certainly going to add further delay to the

7    moving forward of the case.  Its ended up

8    adding -- whatever would have happened in Utah,

9    its ended up adding some number of months now to

10    the moving forward of the case as to these

11    patents.  If the idea is we need to move

12    forward, we're so prejudiced if we're not moving

13    forward, why doesn't the lack of moving forward

14    of your own volition as to the patents, again,

15    albeit as to a different entity in Utah, now

16    tell me that there's no problem with granting a

17    motion to stay here with respect to the case?

18            MR. SCHOENHARD:  Your Honor, I

19    think it's very important and perhaps I should

20    have made this crystal clear at the outset.  I

21    think it's very important that we recognize the

22    difference between the agreed motion to stay in

23    Utah and the motion to stay that is now pending

24    before this Court.  At various points, Your

1    Honor, I heard Ms. Khachatourian suggest that

2    the motion to stay pending IPR review that was

3    filed later in the Utah proceeding --

4            THE COURT:  You agreed to the stay

5    pending the resolution of the motion to dismiss.

6    There was no agreement as to the motion to stay

7    that you learned they were going to file as to

8    the IPR?

9            MR. SCHOENHARD:  Correct, Your

10   Honor.  As to that motion, the motion to stay

11   pending the IPR, it was Contour's position that

12   that motion was never properly filed and that a

13   stay was already in place in the case.  Nor did

14   Contour LLC at that time have any interest in a

15   further stay of proceedings.  As to the stay

16   pending the motion to dismiss, that was a stay

17   of a limited duration pending the Court's

18   hearing that was to take place in January of

19   this year.  Refiling or after the merger when

20   iON chose, along with Contour IP, to file in

21   this Court, that would not necessarily delay the

22   case further.  Neither the Utah action nor this

23   action has ever seen an answer from GoPro,

24   which, Your Honor, is something that continues

1  to astound me as my understanding of the rules

2  is that at the allotted time either a Rule 12

3  motion or an answer ought to be filed.  We have

4  not seen one yet.  At the time that iON chose to

5  bring this case in Delaware rather than

6  attempting to intervene and recaption the then

7  stayed Utah action, iON and Contour IP did not

8  see any further delay that would be brought

9  about by proceeding here in this forum that was

10  readily convenient to iON, and again, has a long

11  history of proceeding forward in patent cases.

12          THE COURT:  But I guess -- well, I

13  want to leave you time to argue the Rule 41

14  motion.  Put differently, the patent holder

15  filed the Utah action when, sometime in 2014?

16          MR. SCHOENHARD:  It was November

17  2014.

18          THE COURT:  And didn't fight, of

19  its own volition, agreed to a world in which the

20  case wasn't going to move forward until at

21  least, and again, they transferred the patents.

22  But you know, at least now basically or to the

23  extent they didn't agree to that, the entities

24  who currently have rights in the patent, whoever

1     they are, they agreed to it, so the idea is the

2     holders of the patents have, of their own

3     volition, agreed to not move forward from

4     November 2014 until now.  Now they say, wait a

5     second.  We've go to move forward, so why is

6     there a contradiction there?

7                MR. SCHOENHARD:  Your Honor, I

8     believe that in the process of your explanation

9     you may have actually identified our answer.

10    And that is the change of the corporate parties

11    that are involved here.  Contour LLC was the

12    named Plaintiff in Utah, was the party

13    proceeding in Utah and was comfortable with the

14    several month delay that would have taken place

15    pending that motion to dismiss in Utah.  When

16    Contour LLC found iON Worldwide as a business

17    partner and target for a merger, iON Worldwide

18    had a separate corporate interest and to this

19    day continues to have a separate corporate

20    interest.  In fact, perhaps their separate

21    corporate interests suggests the reason why that

22    attempted marriage ultimately resulted in a very

23    quick annulment or divorce.  iON Worldwide has

24    been, from the time it has taken an exclusive

1     license to the patents, through the figure of

2     the complaint here in Delaware, has been very

3     interested in proceeding rapidly on the patent

4     rights it then held as an exclusive licensee.

5     Contour IP Holding, the patent owner by

6     assignment, is a non-operating holding company

7     that had granted that exclusive license to iON

8     and as part of that exclusive license a shared

9     right for assertion.  iON Worldwide, again, with

10    an effort to move forward expeditiously in a

11    forum of its choosing that was convenient to it

12    as a Delaware entity and I believe its principle

13    place of business is also local here.  I believe

14    it's in the Philadelphia area.  I hope I'm not

15    mistaken on that, Your Honor, that iON would

16    move forward.  iON Worldwide, Contour LLC is,

17    different corporate entities, different

18    interests in terms of how quickly this case

19    ought to proceed.

20           THE COURT:  Are there different

21    decision makers at iON as opposed to the

22    decision makers at Contour LLC?

23           MR. SCHOENHARD:  At various points

24    in time, Your Honor, it's not always clear to

1     me.  I believe at a point during the merger, I

2     believe they had started to share some level of

3     management, which then rapidly unwound again.

4     But my understanding is that the top level

5     management of iON remained disparate from the

6     top level management of Contour.

7               THE COURT:  I guess what I'm

8     asking is, Contour LLC decided that it was going

9     to file a case in Utah.  Then there was this

10    merger or maybe not merger, whatever it was, and

11    now there's iON.  And separately there's this

12    new holding company, Contour IP.  If it turned

13    out to be the case that the same people,

14    regardless of the change in corporate form, who

15    had decided to file the case in Utah were the

16    same ones making the decision to now dismiss it

17    and file it here, that might be one thing as

18    compared to if it's different people, a new

19    entity that comes in, has different views and

20    wants to do something different, maybe that's

21    something else.  Is there anything in the record

22    that helps me figure out whether these are the

23    same decision makers or different decision

24    makers as compared to Contour LLC versus iON

1    versus Contour IP?

2              MR. SCHOENHARD:  I don't believe

3    so, Your Honor.  And it's my general

4    understanding that the top level decision makers

5    were different, but without muddying the record

6    here with speculation and without piercing

7    attorney/client privilege, I couldn't dig too

8    deeply.

9              THE COURT:  Fair enough.  Let's

10   move to the Rule 41 motion.  My first question

11   is, and you can supplement, is the other side

12   has said, look, we believe forum shopping is in

13   play and we think the reason why they dismissed

14   that case and filed this case is because they

15   thought they were going to lose the motion to

16   stay pending IPR out there and they wanted to

17   move forward.  They were worried about it and

18   had reason to be worried about a decision on

19   that motion and they decided to file in a more

20   friendly forum as to that legal issue.  Tell me

21   why the record doesn't support that conclusion?

22             MR. SCHOENHARD:  Yes, Your Honor.

23   And I think that ties to two issues.  The first,

24   at the very obvious initial level, is the motion

1      to stay pending IPR in Utah and the second is

2      what opposing counsel has referred to as a

3      corporate shell game, which I think is then tied

4      into this discussion.  The first, the motion to

5      stay pending the IPR in Utah was a motion that

6      Contour never believed was appropriately filed.

7      That case had already been stayed.  There were

8      no ongoing proceedings in that case as the

9      parties awaited a hearing on a motion to dismiss

10     in January, that was to happen in January of

11     this year.

12                THE COURT:  Was it going to be

13     argued at that January hearing?

14                MR. SCHOENHARD:  Not to my

15     knowledge.  As far as I'm aware, and with my

16     apologies to the Court, if there's something in

17     that docket of which I'm not aware, it's my

18     understanding that that had not be calendared

19     for argument, that the briefing had not been

20     completed and that all that was currently of

21     record in that case was GoPro's motion to stay.

22     There would be no indication to Contour at that

23     point, as far as I know, when that was going to

24     be heard or how that could possibly impact that

1    case.

2              THE COURT:  Is it the case that

3    Contour IP was formed in Delaware on the same

4    day that the motion to stay in favor of IPR was

5    filed in the District of Utah?

6              MR. SCHOENHARD:  No, Your Honor.

7    Contour IP was actually formed in the mid summer

8    of 2015.  And I believe Ms. Khachatourian

9    actually referenced, Your Honor, to when Contour

10   IP was formed.  The assignments of the patents

11   took place into November of 2015, as iON and

12   Contour were moving forward with their merger.

13   And it was at that time that the assignments

14   were recorded and almost immediately upon

15   recordation of the assignments, which would then

16   perfect the exclusive license grant to iON

17   Worldwide, iON Worldwide and Contour IP, as of

18   that time then being the patent owner and

19   exclusive licensee, moved forward with the

20   instant case.  I can assure Your Honor that that

21   timing was not tied to the filing of a motion to

22   stay against Contour LLC.

23             THE COURT:  Maybe I misspoke, but

24   I had understood Ms. Khachatourian to be

1   asserting that on the same day the motion to

2   stay in favor of IPR was filed in Utah, a

3   relevant formation event with regard to Contour

4   IP occurred, whether it was the formation in

5   Delaware or their assignment of the patents.  As

6   far as you understand, did anything occur?

7   Maybe I either misremember or am mistaking what

8   Defendants stated, but did anything occur on the

9   same day the motion to stay was filed in Utah?

10              MR. SCHOENHARD:  Your Honor, I

11  regret to say I don't know if it was precisely

12  the same day, but I believe the assignments of

13  the patents to Contour IP were recorded on

14  approximately the same day or within several

15  days of when the motion to stay pending IPR was

16  filed in Utah.

17              THE COURT:  Those two things were

18  unrelated?

19              MR. SCHOENHARD:  Yes, Your Honor.

20              THE COURT:  Unrelated?

21              MR. SCHOENHARD:  Yes, Your Honor.

22              THE COURT:  All right.  Let me

23  just ask a couple more questions and then to the

24  extent I don't cover the issues that you wanted

1  to touch on in my questions, I'll let you use

2  your remaining time to address any more issues.

3            MR. SCHOENHARD:  Thank you, Your

4  Honor.

5            THE COURT:  On the issue of the

6  identity of the parties with respect to a Rule

7  41 motion, if I'm trying to figure out whether

8  or not when Rule 41 refers to a Plaintiff, one

9  that must be, in all cases, the exact same

10 entity that was in one case is in another or

11 whether there is some flexibility there, I asked

12 the other side what its best argument was on

13 that question.  What's your best argument as to

14 why they're wrong and the fact that we have

15 different entities as Plaintiffs in the cases

16 makes a difference?

17            MR. SCHOENHARD:  Your Honor, I

18 believe the language of the rule here is clear.

19 The language of the rule says a plaintiff,

20 suggesting, in fact, the same plaintiff.  Now,

21 there are circumstances in which a corporation

22 goes through a change in corporate form or a

23 corporate name change.  That is something that

24 is certainly not unfamiliar to this Court.  That

1    is substantively different when there is, in

2    fact, a transfer of assets between parties.

3    Here Contour IP Holding was formed as a separate

4    entity with ownership interests by Contour LLC

5    and iON Worldwide, a completely separate

6    corporate entity, to then collectively own a set

7    of IP that had previously been owned solely by

8    Contour LLC.  Contour LLC retained a slightly

9    controlling interest in that holding company, a

10   51 percent versus 49 percent share, but that is,

11   in fact, a transfer of assets into a separate

12   corporate form with separate -- and again, not a

13   wholly owned subsidiary where you could even say

14   that there is complete and total control over

15   all assets including their disposition, rather a

16   jointly owned entity as between Contour LLC and

17   iON.

18            THE COURT:  And maybe this is

19   related, but this goes without saying, but it

20   wouldn't, whether it were able to do it or not,

21   it would be a great thing if the rule were

22   basically meant to stop one party from filing a

23   case in one district and then turn around and

24   filing in another without having to incur some

1    costs, but someone got around that by somewhat

2    cleverly, you know, creating an entity solely

3    for the purposes of avoiding that rule, then

4    feel good if that's the case.  And if I'm asking

5    you what's the, what's the basis to believe why

6    this wasn't just simply, a, as the defense says,

7    a shell game to avoid, among other things, the

8    implication of that rule?  You're saying well,

9    look, this is a jointly owned entity that arose

10   out of an attempted merger with another company.

11   Is the idea behind that that look, it's got to

12   be clear that there are other reasons why this

13   entity was formed other than avoiding this rule

14   or some harm in the litigation?

15          MR. SCHOENHARD:  Yes, Your Honor.

16   And I believe that's the reason why many of the

17   cases addressed Rule 41(d) use the term

18   vexatious.  There is, as Ms. Khachatourian

19   pointed out, a policy interest in avoiding

20   duplicative litigation and the type of situation

21   Your Honor has suggested where a party is really

22   trying to sue a company, things aren't looking

23   that great, go find a new forum.  Here what we

24   have is something that, Your Honor, in my view

1     is very, very different.  Contour has gone

2     through several forms over a period of years,

3     each time largely because it has had difficulty

4     competing against GoPro in the marketplace.  And

5     like a Phoenix rising up from the ashes, every

6     time it attempts to do so either find a new

7     owner or a new partner, GoPro manages to knock

8     it back down.  As part of its attempted

9     resurrection, if you will, in Utah, Contour

10    again tried to go up against GoPro in the

11    marketplace and also in the IP arena.  When it

12    was running lower on resources it was looking

13    again for another partner.  It found iON

14    Worldwide.  It did not create or concoct some

15    new entity.  It did not look for a way to get

16    out of Utah and find a convenient entity that

17    would allow that, rather it looked for an active

18    participant in the industry, a participant that

19    could ideally leverage what it had and they

20    could find some level of synergy between their

21    product offerings and then compete effectively

22    in the marketplace.  There's no suggestion, I

23    don't believe, Your Honor, anywhere in the

24    record that iON Worldwide was not previously an

1    operating entity or was not a legitimate target

2    for a merger with Contour.  I don't believe such

3    an argument could be made.  Although ultimately

4    that merger was unsuccessful, I think it's clear

5    on this record, Your Honor, that iON and Contour

6    had attempted to form something that ultimately

7    could succeed in the marketplace that as part of

8    that effort, iON ultimately became an exclusive

9    licensee and attempted to control its own

10   litigation of the IP assets that had at one

11   point been held solely by Contour.

12            THE COURT:  Relatedly, you say

13   that the reason why the case was filed here was

14   that Delaware was more convenient for iON.

15   Perhaps you're saying it as to Contour IP too,

16   but at least for iON.  In terms of the people

17   that are the decision makers, what was it about

18   Delaware for those who were making decisions as

19   to the new Plaintiffs that actually made it more

20   convenient?

21            MR. SCHOENHARD:  So for iON

22   Worldwide, iON is a Delaware corporation that in

23   its view is actually an important thing.  People

24   take advantage of Delaware as a forum for

1    particular reasons.  Be it on the tax and

2    bankruptcy side or be it on the IP side, there's

3    quite a bit of respect for these courts when it

4    comes to IP cases.

5            THE COURT:  If it were the case

6    that in essence the same people who were driving

7    the entity that filed in Utah then turned around

8    and dismissed it and filed here, that wouldn't

9    make sense, right?  You'd have the same decision

10    makers who already filed this case in another

11    jurisdiction and the ability to decide where to

12    file it, would then be making a different

13    decision, but your assertion is that was them,

14    this is iON, iON was a different group of

15    people?

16            MR. SCHOENHARD:  Correct, Your

17    Honor.  iON -- that's where I was headed next.

18    It's a Delaware corporation with a principle

19    place of business here on the east coast.  And

20    I'll probably turn to my co-counsel and make

21    sure it's a nod.  I believe I may have misspoken

22    earlier when I suggested it was a Philadelphia

23    place of business.  It may actually be New

24    Jersey, I believe.  But it is also physically

1    located here on the east companies.

2             THE COURT:  All I'm saying, if the

3    two entities merged but it turned out that

4    Contour LLC, their decision makers, the heads of

5    that company, became -- were iON and those

6    people had already made the decision to file in

7    Utah, it wouldn't make a lot of sense to say

8    that iON decided that it was more convenient for

9    it to file in Delaware if the entity, albeit a

10   different entity, the decision makers were the

11   same, right?  Now, if there's some kind of

12   merger and new persons who weren't involved and

13   already filing the case in Utah come into play,

14   maybe they have different views and et cetera.

15   You're telling me it's the latter situation

16   that's occurring here?

17            MR. SCHOENHARD:  Yes, Your Honor.

18   And I certainly appreciate your concern, but iON

19   Worldwide is an east coast entity, not a Utah

20   based entity.  And iON Worldwide sought east

21   coast based counsel to proceed with this case.

22   They were interested in moving forward in

23   litigation on their home turf against a company

24   that they understood to be incorporated in the

1     same state they were and pursue forward with

2     their claims.

3              THE COURT:  Okay.  You have a few

4     minutes left.  Let me just make sure there's not

5     a question that I really want to ask that I

6     didn't ask and give you a chance to add anything

7     you need to add, Mr. Schoenhard.  Is there

8     anything you want to say about the argument that

9     because iON didn't file a response to the

10    motion, motions, that as to them the motion

11    should be granted?

12             MR. SCHOENHARD:  Yes, Your Honor.

13    Thank you.  I had intended to go there at the

14    outset with my initial discussion of the

15    corporate doings that are involved in this case.

16    As Your Honor recognized during the earlier

17    argument, at the time the oppositions were

18    filed, the amended complaint was also on file

19    and had not been withdrawn yet at that time.

20    iON'S position today is that it stands in

21    effectively the same shoes as Contour IP is,

22    putting forward these same defenses as to these

23    motions, but also notes that iON Worldwide was

24    at no time involved in the Utah action nor is

1    iON Worldwide a party to the PTAB proceedings.

2    And thus it was appropriate that Contour IP, as

3    the patent owner and as per GoPro's allegations,

4    the company more closely tied to Contour LLC to

5    continue to lead the charge as to these two

6    motions.

7              THE COURT:  Is there anything you

8    want to say, Mr. Schoenhard, that I haven't

9    asked you about with regard to Rule 41?  You're

10   right about at your time.  I'll give you a final

11   word or two.

12             MR. SCHOENHARD:  Yes, Your Honor,

13   if I could state two things just very briefly.

14   First, Ms. Khachatourian repeatedly stated that

15   nothing had happened in Utah.  In fact, I

16   believe at one point I wrote down the quotes,

17   clearly nothing happened in Utah.  When it comes

18   to a motion, a rule like Rule 41(d) where the

19   primary focus of the rule is on preventing

20   duplicative litigation, the fact that nothing

21   had happened in the prior suit is rather

22   important.  This is not -- that's primary point

23   one.

24             Primary point two, but relatedly,

1     there is nothing in this record that would

2     suggest that iON and Contour's IP's interest in

3     pursuing this litigation is vexatious or is

4     directly tied to what Contour LLC was doing in

5     Utah other than clearly as part of the pass of

6     the patent rights there was a need to pursue the

7     litigation either by attempting to intervene and

8     go through procedural finagling in Utah or to

9     file separately.  ION and Contour IP, as the new

10    parties in interest of the patents, chose to

11    proceed in Delaware.  I believe they had good

12    cause to do so and that does not suggest any bad

13    intent on their part.

14              THE COURT:  Okay.  Thank you, Mr.

15    Schoenhard.

16              MR. SCHOENHARD:  Thank you, Your

17    Honor.

18              THE COURT:  I appreciate it.  Ms.

19    Khachatourian, I'm going to give you five

20    minutes for rebuttal.

21              MS. KHACHATOURIAN:  Thank you,

22    Your Honor.  I'm from New York originally.

23    Since I have five minutes I'm going to incline

24    to talk fast, so slow me down if I go to too

1     fast.

2                    Your Honor, first and foremost

3     there are documents that go to the very point of

4     who is in control of this litigation that

5     Contour produced after all these papers were

6     filed.  It actually answered your question.

7     They are marked attorneys eyes only, so I don't

8     want to mess up the record to tell you what's in

9     those documents.  I don't know, do I have

10    permission to discuss what are in those

11    corporate documents?  They're attorneys eyes

12    only.  But nonetheless, Your Honor should look

13    at these documents, because they outline who has

14    control of this litigation and it goes directly

15    to the idea of who is in control, are they the

16    same people, is it the same people as Contour

17    LLC.  All of the information you're asking for

18    are in those documents.

19                    THE COURT:  Let me have you not

20    make reference to documents that would otherwise

21    be protected by either agreement or with regard

22    to confidentiality, but I understand what you're

23    saying is that there are documents not in the

24    record that you think would shed light on some

1    of the questions I'm asking?

2                MS. KHACHATOURIAN:  They are

3    directly on point, but because they are marked

4    attorneys eyes only, I don't want to cause the

5    transcript to be under seal and all that

6    information, so I would request that Contour

7    provide you with these documents.  They are

8    short to the exclusive license and the terms of

9    that license and the information is directly on

10   point and will provide clarity as to who is

11   actually the Plaintiff here.  And I won't go any

12   further than that.

13               The second thing I wanted to add

14   was Contour LLC was the party that stipulated to

15   the stay in Utah.  And it's the same party now

16   who is claiming prejudice if this action is

17   stayed pending reexam.  So it wasn't -- it was

18   Contour LLC, so I don't think their argument is

19   fair that, you know, it was supposed to be a

20   brief stay and it should have moved forward.

21   It's contradictory.  You can't claim prejudice

22   on the one side to a stay and then say hey, I'll

23   stay this case for eight months, it's not a big

24   deal.

1    In terms of my statement nothing

2 had happened in Utah, what I meant by that was

3 substantively.

4    THE COURT:  For purposes of the

5 second filing of the motion to stay?

6    MS. KHACHATOURIAN:  With respect

7 to the motion to stay that was pending in Utah,

8 there had been a notice requesting that it be

9 heard on January 12th.  It is true that the

10 Court hadn't ordered that the motion to stay be

11 heard on January 12th, but it had been

12 requested, so Contour was on notice.

13    Contour also mentioned that they

14 would not ask questions about the claims that

15 were pending before the PTAB on infringement.

16 Why is that, Your Honor?  Because it doesn't

17 make sense to do so.  Inherent in that is a

18 simplification of the issues.  So in some sense

19 they at least are implicitly conceding that with

20 respect to the claims that are pending before

21 the PTAB, this case should be stayed and that

22 the case should be simplified because of those

23 pending claims.

24    And I will say that with respect

1    to these means plus function claims, and it's

2    really important that the Court see that the

3    claims that are at issue at the PTAB will have

4    tremendous effect on these means plus function

5    claims.  It would be a waste of judicial

6    resources for the Court to be reviewing whether

7    the specific implementation of these means plus

8    function claims is unpatentable without first

9    considering the PTAB's decision as to whether

10   claims directed to the same features are found

11   to be unpatentable.  In other words, these means

12   plus function claims have the same features as

13   all of the claims currently pending before the

14   Board.  The only difference is it's a

15   corresponding structure and implementation.  And

16   to give you an example, if you actually look at

17   these means plus function claims and compare

18   them to the claims before the PTAB, Claim 1, one

19   of the dependent claims state generated from the

20   video image data, first video image content at a

21   first resolution and second video image content

22   at second resolution wherein the first

23   resolution is lower than the second resolution.

24   Essentially you're creating two video streams.

1    There's a lower and higher res.  In Claim 3, one

2    of the means plus function claims, a portable

3    point of view digital video camera comprising,

4    discusses some information and says means for

5    generating a first data stream and a second data

6    stream corresponding to the video image data

7    wherein the second data stream is a higher

8    quality than the first data stream.  It's the

9    same thing.  It's just tied to a structure, to a

10   device.  And I could go through piece by piece,

11   but essentially that's what you'll find.  If you

12   look at the claims, you will see an incredible

13   amount of overlap.

14              THE COURT:  What's your response

15   to the other side's point that the PTAB had the

16   ability to institute review on these eight

17   claims and didn't and so it indicates some

18   greater substantive strength as to these claims

19   vis-a-vis invalidity and therefore some greater

20   likelihood that the case will in fact proceed

21   forward as to those claims, and even if we are

22   likely to learn important information from the

23   PTAB as to the related claims?

24              MS. KHACHATOURIAN:  So the PTAB in

1    its analysis didn't say that, you know, it's not

2    likely that these will be invalidated.  What the

3    PTAB said was just that we didn't show the

4    required specific structure in the prior art,

5    which is generally the case, because it's

6    printed publications, it's not devices.  So they

7    are just --

8                    THE COURT:  But I guess my point

9    is, if we're trying to take bets on whether this

10   is a case where the Plaintiff is likely, in

11   fact, to proceed forward even if they get bad

12   news as to the related claims, why wouldn't, the

13   substance of what the PTAB is saying to us

14   suggest maybe this is a case where the Plaintiff

15   might actually go forward even though you're

16   telling me there's no way they can go forward?

17                    MS. KHACHATOURIAN:  Because the

18   PTAB only addressed this at a high level.

19   Because structure is difficult to see in prior

20   art and they didn't really go into a lot of

21   analysis.  And given the relatedness of the

22   claims.  In other words, after the PTAB's

23   decision, I think this will illustrate it,

24   assuming GoPro wins on all claims.  The patent

1    owner's argument necessarily becomes, even

2    though the PTAB found all recited features as

3    unpatentable, my specific implementation using

4    specific hardware and software is still

5    patentable.  And GoPro uses the same specific

6    hardware and software.  So therefore they

7    infringe.  In other words, means plus function

8    claims have the same features as all of the

9    claims currently before the PTAB as I

10   illustrated in one of my readings.  The

11   difference is you have to point to hardware and

12   software.  Well, if your features are invalid,

13   it doesn't matter what my hardware or software

14   does.  So basically if the case isn't stayed,

15   we're getting past the PTAB.  We're not letting

16   the PTAB do its job, because these claims are so

17   interrelated.  And the fact that the PTAB didn't

18   institute on these claims really is of no

19   relevance, because there is a whole slew of

20   other prior art that we could bring into court

21   that we couldn't bring at the PTAB given their

22   limitations.  And because means plus function

23   claims are hardware software embodiments, you're

24   more prone to go to the type of art that you

1    can't bring before the PTAB.  It's only written

2    publications.

3                    THE COURT:  Okay.  We're going to

4    have to leave it there.

5                    MS. KHACHATOURIAN:  One other

6    super quick thing is given all the mess on who

7    owns what and am I exclusive licensee, am I not,

8    I think it's really important that the Court --

9    it's not GoPro's burden, their dispute.  I mean

10   there is a shadow of doubt over who owns the

11   patents and all the rest of it, so I think

12   there's a preliminary question that needs to be

13   decided whether iON owns these patents and who

14   is the really the party in suit and why should

15   this case move forward?  So if the Court is not

16   inclined to grant a motion to stay pending IPR,

17   I would submit that the Court stay the case in

18   its inherent discretion while the standing

19   issues get worked out.

20                    THE COURT:  Okay.  Thank you.

21                    MS. KHACHATOURIAN:  Thank you,

22   Your Honor.

23                    THE COURT:  Let me take a short

24   break and come back probably in about five

1    minutes or so to pick up the remainder of what

2    we're going to do here, which will be to talk

3    about case management and other related issues.

4    So court will stand for a short recess.  Thank

5    you.

6              (Short recesss.)

7              THE COURT:  So it ended up being a

8    little more than five minutes, but I was able to

9    handle that criminal matter, so we won't have to

10   deal with that before we're done here.  Okay.

11   So what's remaining is the case management

12   conference portion of what's on our schedule for

13   today.  And let me just tell you, say a couple

14   of things for the record about my role in the

15   case and then talk about scheduling related

16   issues.  I know there are a number of disputes,

17   including whether to set a schedule at this

18   stage.  So but first let me first say, as I

19   think the parties know, with regard to my role

20   in this case as it relates to the referral from

21   the chief judge, I would have certain purview in

22   the case which would include the following: I've

23   been referred the case for scheduling purposes,

24   which among other things means to prepare for

1    and handle the case management conference, which

2    is what we're doing now, to decide one, whether

3    to enter a schedule.  It also means to decide

4    any scheduling related issues that come up after

5    a schedule is entered, for example, if there are

6    protective order related disputes or other

7    initial scheduling related disputes, those would

8    be referred to me by Chief Judge Stark and I

9    would decide them in the first instance.  That

10   said, what the parties could expect as the case

11   moves forward, if and when it does, is that at

12   some point you'll see from Chief Judge Stark's

13   chambers an order that in effect would take back

14   authority for dealing with scheduling related

15   disputes.  That order would probably come

16   somewhere around three months or so from the

17   date of the case management conference, again

18   assuming the schedule is entered and the matter

19   is proceeding forward.  And the idea is that at

20   that point we're likely closer to the case

21   events which Chief Judge Stark himself is going

22   to be handling those matters like Markman and

23   what comes after it and so it only makes sense

24   that at that stage of the case he and his

1   chambers be the one to decide whether any

2   changes to the schedule should be made.

3               In addition to scheduling, I've

4   got referral authority to decide motions to

5   dismiss, transfer and stay.  Obviously we have

6   two stay motions before me now, which I will

7   decide those motions in the first instance.  And

8   then lastly, the matter would be referred for

9   alternative dispute resolution and I would be

10  the magistrate judge who would initially be

11  assigned to pursue discussions with regard to

12  ADR with the parties.

13              That said, in cases like this

14  where I also have authority from the chief judge

15  to handle other substantive motions, what we say

16  to the parties is to the extent that either one

17  side or the other or both would wish or prefer

18  that I not be the magistrate judge that

19  addresses ADR with the parties because I have

20  another role in the case to resolve substantive

21  motions, in that instance, if even one party

22  would not wish me to be the magistrate judge to

23  handle ADR, the parties would file a short joint

24  letter, the text of which is found on my portion

1       of the District Court's website, which in

2       essence just says that there has been a request

3       that a different magistrate judge be assigned

4       the case for ADR purposes.  If I get that

5       letter, I forward it on to our chief magistrate

6       judge, Chief Judge Thynge, then in almost all

7       instances, she, in fact, does assign the matter

8       to a different magistrate judge to pursue ADR

9       while I remain with the remainder of the

10      referral from Chief Judge Stark.

11              Okay.  So second, with respect to

12      process and procedure, what I would typically do

13      and what I will do here today is to talk about

14      the disputes that the parties have with regard

15      to the schedule itself.  Now, I know that one

16      kind of threshold dispute is do I enter a

17      schedule at all at this stage?  And I would tell

18      you on that front what I would normally do in a

19      case like this, even with these two motions

20      pending, is the decision -- really the only

21      decision I have to make is do I enter a schedule

22      now until I resolve these motions?  What I would

23      normally do is I would normally be inclined to

24      enter a schedule in part because Chief Judge

1    Stark, as the parties know, in his patent

2    procedures has a preference for cases remaining

3    to move forward even with pending motions to

4    stay in place.  And because with respect to both

5    these issues, there are the motion to stay

6    pending IPR and the motion for costs, there are

7    at least some substantive arguments on each side

8    that are worth exploring.  And so in the main

9    what I would normally do is enter a schedule

10   with the expectation that these motions would

11   probably be decided at some point in the middle

12   of the initial disclosures period.  And if the

13   motions were granted or one or the other were,

14   then the case would be stayed at that point.  If

15   they weren't, the case would continue to move

16   forward.

17               That being said, there are enough

18   issues that I heard today about issues relating

19   to merger, to patent ownership, to all of the

20   moving pieces here, I want just a day or two to

21   consider whether it does, in fact, make sense to

22   enter a schedule or not with these motions to

23   stay pending.  So what I'm going to do is I'm

24   going to go through with the parties the

1     disputes with regard to the schedule and resolve

2     those and I'm going to address what other

3     information should be included in a schedule.

4     And I'm going to ask the parties to jointly file

5     a revised proposed scheduling order by no later

6     than this Friday so that I have a schedule that

7     I can enter if I, in fact, decide in my

8     discretion to do so and that will give me the

9     time to be able to consider just a little bit

10    more whether it makes sense to do that in this

11    case.

12          Any questions about that in terms

13    of procedure going forward from the Plaintiff's

14    side?

15          MR. SCHOENHARD:  No, Your Honor.

16          THE COURT:  Okay.  And the

17    defense?

18          MS. KHACHATOURIAN:  No, Your

19    Honor.

20          THE COURT:  All right.  Secondly,

21    just in terms of before we get to the schedule

22    related disputes, which is the next thing I will

23    turn to, is as to the motions, particularly the

24    motion to stay pending -- with regard to the

1    Rule 41 issue, I know the issue as to attorneys

2    fees is before the Third Circuit.  My

3    expectation is at some point in the coming

4    months we get a decision from them as to that

5    issue, are attorney fees getable as for purposes

6    of Rule 41(d).  My sense is and the parties can

7    tell me if I'm wrong, even if I was inclined to

8    wait for some guidance from the Third Circuit on

9    that specific question, I could decide the

10    threshold issue with regard to the Rule 41

11    motion earlier; that is, whether there is even

12    entitlement to costs under Rule 41 and thus

13    whether the stay could even possibly be

14    warranted while still putting to the side for a

15    second whether if costs were getable, those

16    costs would include attorneys fees.  Could I not

17    do that or does any side see a problem with me

18    being able to kind of at least decide that

19    threshold portion of the motion even if I was

20    inclined to wait for the Third Circuit as to the

21    other issue from the Defendant's side?

22          MS. KHACHATOURIAN:  Your Honor, I

23    believe the answer would be yes, but there's one

24    element that I'm a little concerned about,

1    because we don't have a full record not even

2    today, which is who is the Plaintiff?  So if

3    Your Honor believes that you have to go beyond

4    what's in the record to determine whether it's

5    the same plaintiff, I believe there are

6    documents and the corporate structure and who

7    owns what is still incredibly unsettled.  The

8    record states that as of February 19th iON was

9    not an exclusive licensee and there are

10   documents that are produced to us that shed

11   light on that one issue, on who has control.

12   And so I would submit to Your Honor that in

13   order to fully review the one issue of the

14   Plaintiff, that Contour produce those documents

15   to you en camera.

16             THE COURT:  Okay.  Are these --

17   because that was a separate issue I wanted to

18   address, which is the documents you raised which

19   I think that the Defendant's side believes would

20   have bearing on some of the decisions I need to

21   make with regard with to the pending motions.

22   These are documents that have been produced to

23   the defense but are just subject to some prior

24   agreement with regard to confidentiality?

1          MS. KHACHATOURIAN:  Yes, Your

2     Honor.  They were produced to us and produced

3     under the local rule that they would be produced

4     to us AEO, attorneys eyes only.  And I wanted to

5     be considerate of the Court and of counsel.

6     It's always annoying when people start blurting

7     out AEO stuff in open court.

8          THE COURT:  I'm not sure why the

9     request to submit them en camera or frankly why

10    either side couldn't submit them if I felt that

11    they might be helpful.

12          MS. KHACHATOURIAN:  Your Honor,

13    I'm more than happy to submit them to you under

14    seal.

15          THE COURT:  Okay.  All right.

16          MS. KHACHATOURIAN:  That's not a

17    problem at all.

18          THE COURT:  All right.  Let me get

19    the Plaintiff's take on that on whether I could

20    decide at least the threshold questions on the

21    Rule 41 motion even if I was inclined to wait on

22    the Third Circuit issue?

23          MR. SCHOENHARD:  As a general

24    matter, yes, Your Honor, I don't see any reason

1    why you could not.  And in fact, I think for the

2    purpose of Rule 41(d), the relevant time point

3    is at the time of the filing of the complaint

4    that is now complained of as part of the Rule

5    41(d) motion.  Here I don't actually believe

6    there is any legitimate dispute as to whether at

7    the time of the filing of the complaint here

8    Contour IP holding was, in fact, the patent

9    owner of the two patents in suit or that iON

10    Worldwide, Inc. was the exclusive licensee of

11    the patents in suit.  I'm happy to provide Your

12    Honor with the license agreement, which I

13    believe is the primary document that opposing

14    counsel is referring to, if that would aid you

15    in your consideration.

16            THE COURT:  Okay.

17            MR. SCHOENHARD:  But I believe

18    that anything that has happened since then would

19    ultimately not be directly relevant to the Rule

20    41(d) issue, which is tied to whether the newly

21    filed complaint was properly brought or was in

22    some way duplicative.

23            THE COURT:  Okay.  What I'm going

24    to do is I'll issue a short oral order after our

1    hearing today that will call for either side in

2    essence to provide -- and I'm looking for

3    focused, you know, documents -- to provide any

4    information that they believe would be relevant

5    to kind of the limited question as to the status

6    of relevant entities as it relates to the

7    pending motions.  And I'll frame that out in the

8    oral order so there will be a little more

9    guidance than I just gave off the cuff there and

10   ask you to do that in a couple of days so that

11   I'd have at least what either side believes may

12   be relevant additional documentation that I

13   might not need ultimately to be able to resolve

14   those motions.

15              MR. SCHOENHARD:  Thank you, Your

16   Honor.  I expect that on our side where some of

17   this confusion has laid we should be able to

18   provide both that as well as a status update

19   that should resolve the issues going forward in

20   just a few days time.

21              THE COURT:  Okay.  All right.  So

22   I'll issue a short oral order with regard to

23   that issue and we can move on from there.

24              MR. SCHOENHARD:  Thank you, Your

1    Honor.

2              THE COURT:  Thank you.  With

3    regard to the schedule, what I would next do is

4    to first is, again, the assumption here is that

5    this is a schedule that I would enter as of the

6    end of this week beginning of next.  Now, I know

7    there's a dispute about relevant dates in the

8    schedule which make up most of the disputes and

9    the gist of that is should we have a schedule

10   entered now or should we have a schedule that

11   enters in essence after the IPR proceeding has

12   concluded at the PTAB.  Because the idea here is

13   that we'd be entering a schedule now, the

14   Plaintiff's dates would be submitted as part of

15   this order, but I've also obtained from Chief

16   Judge Stark's chambers some additional dates as

17   to certain hearings that would have to occur

18   before him that roughly match with what the

19   Plaintiff's proposals were.

20             Let me give those to you so you

21   can include them in the submission before I then

22   ask you about other disputed issues with regard

23   to the schedule.  So with regard to the Markman

24   hearing -- again, this is all if the Plaintiff's

1    proposal with regard to dates as to a schedule

2    entered now will ultimately be adopted.  The

3    Markman hearing would occur on March 6th of 2017

4    at 9 a.m.  That's March 6th of 2017 at 9 a.m.  A

5    hearing on case dispositive and Daubert motions

6    would occur on December 5th of 2017 at 1 p.m.

7    That's December 5th of 2017 at 1 p.m.  A

8    pretrial conference would be held on March 9th

9    of 2018 at 11:30 a.m.  That's March 9th, 2018 at

10   11:30 a.m.  Trial would begin on April 9th of

11   2018 at 9 a.m.  That's April 9th, 2018 at 9 a.m.

12   All of these hearings in Chief Judge Stark's

13   courtroom.  Okay.  So those dates would be

14   included in the submission as well.

15                  Now, aside from that, if I'm

16   right, but you could help me, reading the

17   proposed scheduling order it looks like there's

18   four other areas of dispute that don't relate to

19   relative timing of dates.  Let me tell you what

20   I think they are and then if we go through those

21   and if there's anything I missed, you can tell

22   me if I'm missing something.

23                  I think the first is on Page 4.

24   That's really the dispute about whether

1    Defendant would need to produce sales figures as

2    of the date of the second initial disclosures in

3    Subparagraph B there.  I think that's the first

4    issue that's disputed.  That is a part of Chief

5    Judge Stark's patent procedures that the

6    Defendant does make that submission at that

7    time.  Is there anything the Defendant wants to

8    say as to why they think that's not appropriate

9    in this case?

10          MS. KHACHATOURIAN:  Your Honor,

11    simply put, since these claims are before the

12    PTAB right now, GoPro's position is is that if

13    there is a schedule and you adopt Plaintiff's

14    dates, that GoPro shouldn't be put to the burden

15    of producing sales information, particularly

16    since the fact that the PTAB instituted a review

17    is pertinent to willfulness, because obviously

18    we had an objectively reasonable basis to

19    believe we didn't infringe if the PTAB

20    instituted.  So it's GoPro's position consistent

21    with everything else that in light of the PTAB

22    proceedings, GoPro shouldn't be put to that

23    burden.  And particularly since during this

24    hearing Plaintiff did say that, you know,

1    there's certain of the aspects of the case they

2    wouldn't push, damages should be part and parcel

3    of that.  I don't know how you peal it all off.

4    And so we were just seeking to defer that

5    burden.

6              THE COURT:  Should the Plaintiff

7    not have to include his damages theory or model

8    in its first disclosure too?

9              MS. KHACHATOURIAN:  That would be

10   perfectly fine by us, Your Honor, because we

11   don't think the case should move forward.

12             THE COURT:  Okay.  Is there

13   anything the Plaintiff wants to say on that, Ms.

14   Keller?

15             MS. KELLER:  Yes, Your Honor.  So

16   I think this issue is intertwined with what you

17   also see in Paragraph 8 as it relates to

18   bifurcation generally of discovery for

19   willfulness and damages.  And Plaintiff's

20   position is very simple.  The standard practice

21   in this Court, after a long thought out review

22   of the default standard for discovery, was to

23   include sales figures for the accused products

24   early on so that Plaintiffs can make an educated

1     decision as to proceeding in the case and also

2     to facilitate ADR in this case.

3               We don't -- let me take a step

4     back.  As you heard in the argument earlier, the

5     same products are accused for the seven or eight

6     claims that will go forward, so it only makes

7     sense to proceed on a normal schedule as is

8     typical in this court as to sales figures if

9     we're going to proceed with a schedule.  We

10    don't understand, quite frankly, how willful

11    infringement relates to this initial disclosure

12    of sales figures and what the basis is for

13    Defendant's argument that the two are

14    intertwined.  I think the Court's general

15    process for not bifurcating at this point

16    damages and willfulness from the normal course

17    should also adhere in this case.

18               THE COURT:  Okay.  Thank you.  The

19    second issue was the request for bifurcation,

20    which I suppose is also related to the request

21    in Subparagraph B(2).  Ms. Khachatourian, is

22    there anything you want to add about why the

23    Defendant's side thinks this case is a good

24    candidate for bifurcation when it's not the norm

1          in Chief Judge Stark's cases?

2                    MS. KHACHATOURIAN:  Yes, Your

3          Honor.  This is, in fact, an extraordinarily

4          unusual case, given all the open issues, not

5          just with the PTAB but with ownership issues,

6          license issues, who owns what.  And therefore,

7          in addition to the willfulness component that we

8          discussed and the other issues I raised, I'd

9          also raise that given all the open issues, until

10         those are resolved it would make sense to

11         bifurcate so as not to put the burden onto GoPro

12         to participate in discovery that ultimately may

13         be unnecessary.

14                   THE COURT:  And while I have you

15         up here, why don't I ask you about what I

16         thought were the other two issues that remain,

17         which are on Page 5 of the scheduling order, a

18         dispute about requests for admission and then

19         probably more substantively, a dispute about

20         deposition hours, which I think has some bearing

21         on the issue of Contour LLC that was mentioned

22         in the letter, but is there anything you want to

23         add as to either of those two issues?

24                   MS. KHACHATOURIAN:  Your Honor, we

1    just think that the discovery request is

2    excessive.  45 RFA's to one party appears

3    excessive to us given the issues, particularly

4    if there are certain issues the Plaintiff said

5    they're not going to pursue while the PTAB is

6    pending.  With respect to the depositions, they

7    want 70 hours of GoPro.  We're just one party.

8    I mean, that's 10 depositions.  It's also

9    unclear who the parties are.  For example, you

10   know, CIPH, if we were to take discovery, there

11   would be some corporate formation and other

12   things we would obviously pursue, but Contour

13   LLC is the one who invented the patents,

14   produced the product and all the rest of it.

15   And then we presumably, if iON remains in the

16   case, and again that is still unclear, we are

17   going to want to depose them if they are the

18   ones now manufacturing Contour's products.  And

19   so they shouldn't get the same amount of hours

20   we have.  They should get less.  It's excessive

21   to have 10 depositions in a simple case like

22   this with only two patents where the patents are

23   so related.  I mean, that puts an extraordinary

24   burden on GoPro and its employees.

1          THE COURT:  Was there some -- I

2     thought, maybe I was wrong, but I thought some

3     of the back and forth about maybe the request

4     for 70 hours was because you also intended to

5     consider Contour LLC as a party.  And so the

6     idea was we think they should be treated as a

7     party and therefore we need more?

8          MS. KHACHATOURIAN:  Correct.  That

9     is correct.  And also, you know, we obviously

10    would take depositions of prior artists and

11    other more typical third parties that CIPH would

12    not.  I mean technically CIPH is a

13    non-practicing entity.  They are a holding

14    company for IP assets.  So the burden on

15    discovery is presumably less on them than it

16    would be on us, and therefore it needs to be

17    proportional.

18          THE COURT:  As to the issue about

19    whether it's appropriate to treat Contour LLC as

20    a third party and let you guys pursue discovery

21    with Rule 45 or whether there's an argument as

22    to whether they should be treated as a party, if

23    I wasn't going to decide that issue today

24    because I don't have anything before me about

1    what the law would be on that, I can still make

2    a decision about whether or not 70 or 35 hours,

3    70 hours for both sides or 35 and 70 is

4    appropriate?

5                    MS. KHACHATOURIAN:  Presuming that

6    I believe in our request we stated expert and

7    third parties would be exempted, so so long as

8    those, those third parties aren't included,

9    which includes Contour LLC where we would get

10   additional time, I would agree with Your Honor.

11                   THE COURT:  That's not disputed,

12   is it?  I believe that's not disputed.

13                   MS. KHACHATOURIAN:  Yeah, I don't

14   believe it is.

15                   THE COURT:  All right.  Thank you.

16                   MS. KHACHATOURIAN:  Thank you,

17   Your Honor.

18                   THE COURT:  Is there anything the

19   Plaintiff wants to add about those two disputes,

20   that is the dispute in Subparagraph C and E?

21                   MS. KELLER:  Your Honor, as to the

22   request for admission in Paragraph C, the

23   dispute really is it's unclear -- and this may

24   have been just been miscommunication between the

1    parties, whether these include requests for

2    authenticity RFA's, which arguably tends to

3    drive the number up a little bit higher, which

4    is why we asked for the additional amount, I

5    think we would be comfortable splitting it in

6    the middle to be honest, Your Honor.

7              As to Paragraph E, Subpart 1, Your

8    Honor, Plaintiff's request is for the Federal

9    Rules, which is 10 depositions at seven hours a

10   piece.  We don't see justification to move away

11   from that.  It's practice in this Court.  That's

12   what's good for the goose is good for the

13   gander, unless there's some abnormality in

14   numbers of parties on each side where there's an

15   adjustment made.  But here a typical competitor

16   case, you have 35 hours for Plaintiff's

17   deposition of a Defendant and 70 seems very

18   disparate.  We're obviously going to be

19   reasonable in the number of deposition hours we

20   use, but to be limited to something less than

21   the federal rules just seems extremely

22   prejudicial to the Plaintiffs.

23              THE COURT:  Okay.  Thank you, Ms.

24   Keller.  I'll just ask the parties to, when you

1     submit the final proposed schedule, just leave

2     these four disputes open as you have and I'll

3     just -- I'll simply make decisions on the

4     proposed form itself.

5             Did I miss any other scheduling

6     related disputes that the parties are aware of?

7     I see both sides shaking their head no and a

8     chance to tell me I'm wrong.  Okay.  Thank you.

9     Let me ask you then, before I just turn back to

10     the issue on ADR for a minute, are there any

11     other issues that don't relate to the motions

12     which we've talked about in some detail, that

13     don't relate to schedule disputes, but that are

14     the kinds of issues where the parties would say,

15     Judge, this isn't really ripe for decision now,

16     but it's an issue that if the case moves forward

17     or when it moves forward it's going to be an

18     issue that the parties are going to be disputing

19     and it's probably a good idea to make the Court

20     aware of it now so that you're familiar with the

21     fact that this is likely to come up in the

22     future and it's a pretty important issue?  Is

23     there anything like that from the Plaintiff's

24     side that we haven't already discussed today

1    that the Plaintiff would want to mention, Mr.

2    Schoenhard?

3                    MR. SCHOENHARD:  None of which

4    we're immediately aware, Your Honor.

5                    THE COURT:  Okay.  We did cover a

6    lot.  On the Defendant's side, is there anything

7    that falls into that category?

8                    MS. KHACHATOURIAN:  Nothing that I

9    haven't already discussed, Your Honor.

10                    THE COURT:  Okay.

11                    MS. KHACHATOURIAN:  Thank you.

12                    MR. BLUMENFELD:  Your Honor, I

13    should have raised this earlier, one scheduling

14    thing.  It's a small thing.  If we go forward

15    with the Plaintiff's schedule, the Markman

16    hearing is about a month later than the parties

17    had proposed and I would hope that we would be

18    free to move the briefing a little.  And the

19    main reason I raise that is because we had the

20    second round of briefs due on January 6th under

21    their proposal, which isn't perfect for a lot of

22    reasons.  And so if we could get the briefs in,

23    in a month before the Markman hearing, that

24    would be helpful, I think, to both sides.

1          THE COURT:  Right.  So the idea is

2     because we're moving the Markman back at least a

3     month from when you expected, it's not going to

4     effect the simplification issue because it's

5     actually moving it back.  Just to give the

6     parties a little more breathing space around the

7     holidays, if the parties can jointly agree to

8     revised briefing dates or otherwise revised

9     claim construction dates that push things back

10    slightly because of the new Markman hearing

11    date, that's fine, just go ahead and include

12    those revised dates in what you submit to me on

13    Friday.  Also if you could resolve Subparagraph

14    C, why don't you go ahead and do that so I just

15    have to make those decisions on that, that is,

16    on the issues with regard to request for

17    admission.  I'll just make the decisions on the

18    remaining three issues assuming they are the

19    ones that are live.

20          Okay.  With that said, let me just

21    say a word about ADR.  And I know some of this

22    may depend on one, whether the case moves

23    forward, but what I always like to do at least

24    at the initial scheduling conference is to ask

1   both sides their view as to when in the history

2   of the case is the first instance where the

3   Plaintiff and/or the Defendant believe that the

4   Court could actually make substantive progress

5   with the parties in terms of discussing the

6   issue of settlement.  Sometimes parties tell me

7   that it would probably need to happen at least

8   after initial disclosures are completed.

9   Sometimes the parties say it's the kind of case

10  where we would need to have a Markman order on

11  disputed terms to really be able to assess

12  merits by way of settlement.  Sometimes the

13  parties say something different.  If I asked

14  that to the Plaintiff's side, what's the first

15  time Plaintiffs believes that progress could be

16  made in terms of an initial call with regard to

17  ADR?

18              MR. SCHOENHARD:  Your Honor, the

19  Plaintiffs are open to resolution of this

20  dispute at any time, frankly.  I expect that

21  given the questions that have been raised by

22  GoPro in this case about the ownership issues,

23  although, again, I don't believe ownership is a

24  dispute, but the status of the license with

1  respect to iON, I would expect that it would

2  behoove the parties to wait until after that is

3  resolved before burdening the Court's resources

4  and moving forward with ADR.  But at that point

5  forward the Plaintiffs are prepared to proceed

6  and would happily find a good resolution.

7                 THE COURT:  Okay.  From the

8  Defendant's side?

9                 MS. KHACHATOURIAN:  Your Honor,

10  while GoPro is always open to resolution,

11  opposing counsel is correct.  Until the status

12  of ownership and the remaining corporate issues

13  are resolved, GoPro doesn't see an immediate

14  benefit.  They need to be speaking to the people

15  who have authority and from GoPro's perspective,

16  that's unclear right now, particularly since

17  there is a dispute between the two Plaintiffs.

18                 THE COURT:  Okay.  All right.

19  Well, what I'll do is I won't set an initial ADR

20  call in the schedule for now.  It's clear to

21  me that at least some number of case events

22  and/or party discussions have to happen before

23  we can probably make meaningful progress there.

24  I'll just tag it as a case that as we go along

1     I'll need to follow up with the parties on that

2     front at some point in the future.  Okay.

3     Before I leave you, is there anything else we

4     need to take up at this time from the

5     Plaintiff's perspective?

6                    MR. SCHOENHARD:  No, Your Honor.

7                    THE COURT:  Okay.  And from the

8     Defendant's perspective?

9                    MS. KHACHATOURIAN:  No, Your

10    Honor.

11                   THE COURT:  All right.  Counsel

12    and out of town clients, I wish you safe

13    travels.  I thank everybody for your

14    presentations today.  Look forward to getting a

15    revised schedule on Friday.  I'll issue a short

16    oral order with respect to the additional

17    submissions and we'll make a decision about the

18    entry of a schedule in short order.  Okay.

19    Thank you.  Court will stand in recess.

20                   (End at 4:04 p.m.)

21

22

23

24

1   State of Delaware )
                    )
2   New Castle County )

3

4

5               <u>CERTIFICATE OF REPORTER</u>

6

7        I, Stacy M. Ingram, Certified Curt Reporter

8   and Notary Public, do hereby certify that the

9   foregoing record, Pages 1 to 123 inclusive, is a true

10  and accurate transcript of my stenographic notes

11  taken on April 19, 2016, in the above-captioned

12  matter.

13

14       IN WITNESS WHEREOF, I have hereunto set my

15  hand and seal this 19th day of April 2016, at

16  Wilmington.

17

18

19              <u>/s/ Stacy M. Ingram</u>

20           Stacy M. Ingram, CCR

21

22

23

24

**'** 

**'694** [3] - 26:6, 28:24, 29:1
**'954** [3] - 26:7, 28:23, 60:13

**/**

**/s** [1] - 123:19

**1**

**1** [5] - 91:18, 108:6, 108:7, 116:7, 123:9
**10** [6] - 5:8, 6:3, 60:12, 113:8, 113:21, 116:9
**11:30** [2] - 108:9, 108:10
**12** [1] - 70:2
**123** [1] - 123:9
**12th** [4] - 17:5, 44:21, 90:9, 90:11
**15-1108-LPS-CJB** [2] - 1:5, 3:6
**180** [1] - 23:7
**18th** [1] - 19:2
**19** [2] - 1:9, 123:11
**19th** [4] - 8:7, 19:4, 103:8, 123:15
**1:30** [1] - 1:10

**2**

**2014** [6] - 15:6, 32:22, 48:20, 70:15, 70:17, 71:4
**2015** [10] - 15:8, 16:20, 16:22, 17:22, 32:22, 48:21, 49:22, 54:3, 76:8, 76:11
**2016** [5] - 1:9, 17:6, 22:9, 123:11, 123:15
**2017** [6] - 24:8, 59:15, 108:3, 108:4, 108:6, 108:7
**2018** [4] - 108:9, 108:11
**21** [2] - 23:5, 23:6
**22** [1] - 61:4
**22nd** [1] - 19:8
**23** [3] - 26:7, 27:9, 61:4
**23rd** [3] - 17:22, 18:2

**27th** [2] - 16:22, 17:1
**28th** [2] - 19:9, 35:6
**2A** [1] - 1:10

**3**

**3** [2] - 60:12, 92:1
**30** [2] - 23:6, 26:8
**35** [3] - 115:2, 115:3, 116:16

**4**

**4** [1] - 108:23
**40** [1] - 33:20
**41** [13] - 13:21, 14:8, 38:19, 42:11, 70:13, 74:10, 78:7, 78:8, 86:9, 102:1, 102:10, 102:12, 104:21
**41(d** [16] - 7:6, 7:9, 12:7, 13:3, 13:6, 37:9, 37:20, 37:21, 42:16, 65:13, 67:6, 85:17, 86:18, 105:2, 105:5, 105:20
**41(d)** [2] - 3:10, 102:6
**45** [5] - 4:14, 6:1, 47:4, 113:2, 114:21
**46** [2] - 38:8, 79:10
**4:04** [1] - 122:20
**4th** [1] - 17:2

**5**

**5** [2] - 5:8, 112:17
**51** [3] - 38:7, 66:10, 79:10
**5th** [2] - 108:6, 108:7

**6**

**6th** [2] - 108:3, 108:4, 118:20

**7**

**70** [6] - 113:7, 114:4, 115:2, 115:3, 116:17

**8**

**8** [1] - 110:17
**8-month** [1] - 17:7

**844** [1] - 1:12

**9**

**9** [4] - 108:4, 108:11
**93** [1] - 34:11
**9th** [4] - 108:8, 108:9, 108:10, 108:11

**A**

**a.m** [6] - 108:4, 108:9, 108:10, 108:11
**ability** [2] - 83:11, 92:16
**able** [8] - 52:12, 79:20, 96:8, 101:9, 102:18, 106:13, 106:17, 120:11
**abnormality** [1] - 116:13
**above-captioned** [1] - 123:11
**abruptly** [1] - 18:15
**accepted** [1] - 13:13
**according** [2] - 45:12, 67:17
**account** [1] - 66:1
**accurate** [1] - 123:10
**accused** [5] - 28:15, 30:4, 60:3, 110:23, 111:5
**achieve** [1] - 49:4
**acknowledge** [3] - 52:24, 56:24, 57:3
**acknowledged** [1] - 12:22
**acknowledges** [1] - 63:21
**acknowledging** [1] - 40:16
**action** [20] - 3:6, 16:24, 18:15, 19:1, 39:12, 39:13, 40:23, 41:2, 47:17, 48:8, 50:10, 59:9, 65:21, 68:4, 69:22, 69:23, 70:7, 70:15, 85:24, 89:16
**active** [2] - 23:9, 81:17
**activities** [3] - 6:9, 59:22, 59:23
**actual** [1] - 29:12
**add** [8] - 58:9, 68:6, 85:6, 85:7, 89:13, 111:22, 112:23, 115:19

**added** [3] - 15:9, 48:21, 49:3
**adding** [2] - 68:8, 68:9
**addition** [4] - 3:11, 37:20, 98:3, 112:7
**additional** [10] - 9:23, 22:2, 62:2, 63:23, 64:17, 106:12, 107:16, 115:10, 116:4, 122:16
**address** [9] - 4:17, 4:21, 8:22, 13:3, 58:24, 59:9, 78:2, 101:2, 103:18
**addressed** [2] - 80:17, 93:18
**addresses** [1] - 98:19
**adds** [1] - 63:22
**adhere** [1] - 111:17
**adjudicate** [1] - 9:14
**adjudication** [1] - 9:4
**adjustment** [1] - 116:15
**admission** [5] - 16:14, 40:4, 112:18, 115:22, 119:17
**admitted** [1] - 15:20
**adopt** [1] - 109:13
**adopted** [1] - 108:2
**ADR** [9] - 98:2, 98:19, 98:23, 99:4, 99:8, 111:2, 117:10, 119:21, 120:17, 121:4, 121:19
**advantage** [2] - 18:10, 82:24
**advised** [1] - 57:23
**advising** [1] - 51:13
**AEO** [2] - 104:4, 104:7
**affect** [1] - 29:18
**afternoon** [3] - 3:18, 4:2, 46:19, 46:20, 63:1
**agents** [2] - 38:9, 43:13
**ago** [1] - 32:21
**agree** [9] - 9:15, 10:2, 12:5, 18:6, 18:22, 68:2, 70:23, 115:10, 119:7
**agreed** [7] - 17:1, 57:20, 68:22, 69:4, 70:19, 71:1, 71:3
**agreement** [10] - 20:20, 50:15, 50:18, 52:10, 54:6, 57:16, 69:6, 88:21, 103:24, 105:12

**ahead** [2] - 119:11, 119:14
**aid** [1] - 105:14
**al** [1] - 3:5
**albeit** [3] - 39:24, 68:15, 84:9
**allegations** [1] - 86:3
**allege** [1] - 53:23
**alleged** [3] - 31:23, 54:2, 54:15
**allocated** [2] - 4:14, 5:24
**allotted** [1] - 70:2
**allow** [1] - 81:17
**almost** [7] - 21:13, 31:22, 32:9, 32:11, 68:5, 76:14, 99:6
**alternative** [1] - 98:9
**Alto** [1] - 4:6
**amended** [6] - 8:9, 8:14, 10:8, 57:11, 57:21, 85:18
**amendment** [1] - 19:5
**amount** [3] - 92:13, 113:19, 116:4
**analysis** [7] - 9:21, 36:19, 43:15, 63:24, 64:19, 93:1, 93:21
**announced** [1] - 11:14
**annoying** [1] - 104:6
**annulment** [1] - 71:23
**answer** [7] - 18:17, 18:22, 26:4, 69:23, 70:3, 71:9, 102:23
**answered** [2] - 49:23, 88:6
**apart** [1] - 51:23
**apologies** [3] - 46:22, 66:17, 75:16
**apparatus** [3] - 29:2, 29:4, 29:5
**apparent** [1] - 64:24
**appeal** [7] - 12:14, 12:17, 12:19, 13:2, 13:12, 37:11, 37:16
**appear** [2] - 20:13, 43:4
**APPEARANCES** [2] - 1:17, 2:1
**appearing** [1] - 47:2
**apply** [1] - 63:20
**appreciate** [6] - 6:6, 51:13, 55:18, 56:9, 84:18, 87:18
**apprised** [1] - 5:9
**appropriate** [6] - 33:18, 54:5, 86:2,

109:8, 114:19,
115:4
**appropriately** [1] -
75:6
**April** [11] - 1:9, 16:19,
16:22, 17:1, 22:9,
37:14, 108:10,
108:11, 123:11,
123:15
**area** [1] - 72:14
**areas** [1] - 108:18
**arena** [1] - 81:11
**arguably** [1] - 116:2
**argue** [2] - 65:6, 70:13
**argued** [1] - 75:13
**arguing** [2] - 4:8, 9:19
**argument** [28] - 3:7,
5:14, 9:8, 20:3,
23:21, 23:22, 39:18,
39:23, 43:6, 43:8,
47:4, 47:12, 57:6,
59:7, 62:24, 67:20,
75:19, 78:12, 78:13,
82:3, 85:8, 85:17,
89:18, 94:1, 111:4,
111:13, 114:21
**arguments** [6] - 4:13,
18:11, 19:16, 37:23,
63:17, 100:7
**arm** [1] - 53:20
**arose** [2] - 51:7, 80:9
**ARSHT** [1] - 2:2
**art** [6] - 63:15, 64:13,
93:4, 93:20, 94:20,
94:24
**artists** [1] - 114:10
**ashes** [1] - 81:5
**aside** [1] - 108:15
**aspects** [2] - 14:13,
110:1
**assert** [5] - 25:14,
32:1, 33:2, 33:3
**asserted** [3] - 8:24,
34:9, 37:18
**asserting** [4] - 60:16,
60:21, 64:4, 77:1
**assertion** [12] - 22:13,
25:13, 25:18, 27:5,
41:17, 42:9, 43:19,
44:24, 54:19, 55:1,
72:9, 83:13
**asserts** [1] - 20:14
**assess** [1] - 120:11
**assets** [6] - 48:5,
79:2, 79:11, 79:15,
82:10, 114:14
**assign** [3] - 18:1,
20:17, 99:7

**assigned** [5] - 17:23,
45:19, 50:19, 98:11,
99:3
**assignment** [2] - 72:6,
77:5
**assignments** [4] -
76:10, 76:13, 76:15,
77:12
**assuming** [4] - 27:1,
93:24, 97:18,
119:18
**assumption** [1] -
107:4
**assure** [2] - 51:17,
76:20
**assured** [1] - 22:6
**astound** [1] - 70:1
**attached** [1] - 16:7
**attempted** [12] - 51:4,
51:22, 52:2, 52:3,
53:3, 71:22, 80:10,
81:8, 82:6, 82:9
**attempting** [4] -
52:17, 52:20, 70:6,
87:7
**attempts** [1] - 81:6
**attest** [1] - 48:22
**attorney** [2] - 10:19,
102:5
**attorney/client** [1] -
74:7
**attorneys** [7] - 14:3,
88:7, 88:11, 89:4,
102:1, 102:16,
104:4
**attorneys'** [2] - 37:21,
37:22
**authenticity** [1] -
116:2
**authority** [5] - 42:17,
97:14, 98:4, 98:14,
121:15
**avoid** [6] - 20:22,
23:17, 42:23, 44:7,
44:14, 80:7
**avoiding** [3] - 80:3,
80:13, 80:19
**awaited** [1] - 75:9
**aware** [9] - 6:11, 32:2,
49:12, 67:5, 75:15,
75:17, 117:6,
117:20, 118:4

**B**

**B(2)** [1] - 111:21
**background** [4] -
45:3, 51:10, 52:1,

52:6
**bad** [3] - 42:16, 87:12,
93:11
**balance** [1] - 22:18
**bankruptcy** [1] - 83:2
**based** [12] - 9:13,
9:24, 12:15, 39:13,
45:3, 45:5, 45:7,
48:19, 50:6, 53:8,
84:20, 84:21
**basic** [1] - 23:20
**basis** [5] - 6:16, 9:2,
80:5, 109:18,
111:12
**battle** [1] - 33:5
**bear** [2] - 46:3, 61:23
**bearing** [5] - 41:19,
64:7, 64:11, 103:20,
112:20
**became** [4] - 32:2,
44:17, 82:8, 84:5
**become** [1] - 53:21
**becomes** [1] - 94:1
**BEFORE** [1] - 1:14
**beforehand** [1] - 5:5
**beg** [2] - 11:1, 11:3
**begin** [10] - 3:2, 5:23,
21:16, 24:6, 33:14,
37:19, 40:8, 47:11,
58:13, 108:10
**beginning** [3] - 3:15,
47:11, 107:6
**begs** [2] - 23:14,
32:23
**begun** [1] - 59:21
**behalf** [4] - 3:19,
11:18, 47:2, 58:1
**behind** [1] - 80:11
**behoove** [1] - 121:2
**behooves** [1] - 47:6
**believes** [7] - 9:12,
9:22, 23:16, 103:3,
103:19, 106:11,
120:15
**benefit** [3] - 43:2,
59:11, 121:14
**best** [4] - 26:4, 52:23,
78:12, 78:13
**bets** [1] - 93:9
**better** [4] - 12:24,
42:24, 45:16, 55:10
**between** [22] - 4:24,
6:20, 12:12, 24:2,
24:16, 28:24, 29:6,
52:6, 53:10, 55:3,
55:15, 55:23, 59:23,
61:3, 66:6, 67:7,
68:22, 79:2, 79:16,

81:20, 115:24,
121:17
**beyond** [1] - 103:3
**bifurcate** [1] - 112:11
**bifurcating** [1] -
111:15
**bifurcation** [3] -
110:18, 111:19,
111:24
**big** [1] - 89:23
**binding** [2] - 13:24,
64:15
**bit** [8] - 22:12, 39:10,
45:2, 47:4, 58:7,
83:3, 101:9, 116:3
**Blumenfeld** [1] - 4:3
**BLUMENFELD** [3] -
2:3, 4:2, 118:12
**blurting** [1] - 104:6
**Board** [9] - 19:8, 20:7,
26:7, 26:8, 26:13,
26:18, 29:17, 32:10,
91:14
**board** [2] - 36:12,
63:17
**Board's** [1] - 32:12
**body** [1] - 53:18
**borne** [1] - 61:22
**borrowed** [1] - 51:13
**bottom** [1] - 35:17
**bought** [1] - 45:5
**brand** [1] - 53:21
**break** [6] - 4:16, 4:24,
5:3, 5:7, 17:23,
95:24
**breathing** [1] - 119:6
**breed** [1] - 28:19
**brief** [5] - 4:20, 41:24,
42:1, 43:21, 89:20
**briefing** [6] - 6:10,
9:8, 13:16, 13:18,
24:7, 59:21, 75:19,
118:18, 119:8
**briefly** [5] - 46:8, 47:7,
47:15, 59:1, 86:13
**briefs** [2] - 118:20,
118:22
**bring** [4] - 70:5, 94:20,
94:21, 95:1
**bringing** [1] - 53:4
**brings** [2] - 38:24,
39:2
**broad** [1] - 25:8
**BROOKS** [1] - 1:23
**Brooks** [1] - 3:23
**brought** [6] - 18:10,
38:14, 48:2, 49:18,
70:8, 105:21

**burden** [13] - 22:10,
25:1, 36:9, 36:18,
61:21, 61:22, 95:9,
109:14, 109:23,
110:5, 112:11,
113:24, 114:14
**burdening** [1] - 121:3
**BURKE** [1] - 1:14
**business** [8] - 15:14,
38:9, 45:9, 50:12,
71:16, 72:13, 83:19,
83:23
**buy** [1] - 22:1
**BY** [7] - 1:19, 1:22,
1:22, 1:23, 2:3, 2:3,
2:6

**C**

**C.A** [1] - 1:5
**calendared** [2] - 17:5,
75:18
**California** [3] - 15:15,
23:6, 45:10
**camera** [5] - 47:18,
50:7, 92:3, 103:15,
104:9
**cameras** [4] - 48:9,
50:10, 50:14
**Camp** [9] - 15:7,
15:11, 32:22, 45:1,
45:7, 48:19, 49:3,
49:7, 49:23
**candidate** [1] - 111:24
**cannot** [1] - 48:22
**captioned** [1] - 123:11
**careful** [1] - 66:16
**case** [168] - 3:11, 3:12,
4:17, 6:17, 8:13,
9:2, 9:10, 10:3,
10:9, 10:14, 12:8,
12:13, 12:24, 13:12,
13:13, 14:21, 15:5,
15:12, 17:2, 17:7,
17:19, 17:20, 17:21,
19:6, 19:20, 20:1,
20:2, 21:19, 22:3,
22:7, 22:20, 23:23,
24:2, 24:4, 24:9,
24:12, 25:5, 25:21,
26:22, 28:2, 28:9,
30:7, 31:3, 31:5,
31:7, 31:8, 31:11,
31:13, 31:18, 31:22,
32:21, 33:12, 33:21,
34:2, 34:18, 35:11,
35:12, 35:23, 36:2,
36:4, 36:11, 36:14,

37:5, 37:11, 39:16, 39:17, 41:19, 41:21, 42:20, 43:5, 43:22, 44:1, 45:11, 48:18, 48:19, 48:21, 48:22, 52:15, 52:16, 52:19, 54:20, 55:12, 55:16, 55:21, 56:12, 57:14, 58:4, 59:17, 59:22, 60:23, 63:7, 67:8, 67:11, 68:5, 68:7, 68:10, 68:17, 69:13, 69:22, 70:5, 70:20, 72:18, 73:9, 73:13, 73:15, 74:14, 75:7, 75:8, 75:21, 76:1, 76:2, 76:20, 78:10, 79:23, 80:4, 82:13, 83:5, 83:10, 84:13, 84:21, 85:15, 89:23, 90:21, 90:22, 92:20, 93:5, 93:10, 93:14, 94:14, 95:15, 95:17, 96:3, 96:11, 96:15, 96:20, 96:22, 96:23, 97:1, 97:10, 97:17, 97:20, 97:24, 98:20, 99:4, 99:19, 100:14, 100:15, 101:11, 108:5, 109:9, 110:1, 110:11, 111:1, 111:2, 111:17, 111:23, 112:4, 113:16, 113:21, 116:16, 117:16, 119:22, 120:2, 120:9, 120:22, 121:21, 121:24
**cases** [14] - 20:5, 20:9, 20:13, 34:6, 40:21, 59:2, 70:11, 78:9, 78:15, 80:17, 83:4, 98:13, 100:2, 112:1
**Castle** [1] - 123:2
**category** [1] - 118:7
**CCR** [1] - 123:20
**centers** [1] - 15:15
**certain** [7] - 6:18, 26:2, 61:12, 96:21, 107:17, 110:1, 113:4
**certainly** [8] - 8:20, 42:16, 57:2, 60:17, 66:4, 68:6, 78:24, 84:18
**certainty** [1] - 22:1
**CERTIFICATE** [1] - 123:5

**certified** [1] - 13:11
**Certified** [1] - 123:7
**certify** [1] - 123:8
**certifying** [2] - 12:16, 12:18
**cetera** [1] - 84:14
**challenge** [1] - 51:5
**chambers** [3] - 97:13, 98:1, 107:16
**chance** [3] - 46:9, 85:6, 117:8
**change** [4] - 71:10, 73:14, 78:22, 78:23
**changed** [1] - 41:6
**changes** [1] - 98:2
**changing** [1] - 39:7
**charge** [1] - 86:5
**check** [2] - 12:14, 19:20, 40:24
**chief** [3] - 96:21, 98:14, 99:5
**Chief** [10] - 97:8, 97:12, 97:21, 99:6, 99:10, 99:24, 107:15, 108:12, 109:4, 112:1
**choosing** [1] - 72:11
**chose** [3] - 69:20, 70:4, 87:10
**CHRISTOPHER** [1] - 1:14
**CIPH** [7] - 24:18, 43:11, 43:12, 45:20, 113:10, 114:11, 114:12
**Circuit** [10] - 12:23, 13:7, 13:13, 14:1, 14:16, 37:15, 102:2, 102:8, 102:20, 104:22
**circuit** [1] - 14:11
**circumstances** [2] - 37:2, 78:21
**cite** [1] - 20:5
**cited** [1] - 34:6
**citing** [1] - 25:18
**civil** [1] - 3:5
**Claim** [2] - 91:18, 92:1
**claim** [18] - 24:5, 30:10, 30:11, 31:16, 34:9, 34:10, 39:14, 59:12, 59:19, 59:21, 60:20, 64:23, 64:24, 65:3, 65:5, 65:8, 89:21, 119:9
**claiming** [1] - 89:16
**claims** [96] - 25:14, 26:5, 26:6, 26:8,

26:9, 26:10, 26:11, 26:13, 26:15, 26:18, 26:19, 26:22, 27:2, 27:9, 27:11, 27:15, 28:1, 28:11, 29:11, 29:13, 29:18, 29:24, 31:14, 31:24, 32:6, 32:8, 32:10, 32:13, 32:16, 32:20, 33:8, 33:15, 33:19, 33:20, 34:5, 34:11, 34:13, 34:21, 35:24, 36:3, 37:17, 60:9, 60:12, 60:13, 60:15, 60:23, 61:4, 61:8, 61:9, 61:10, 62:2, 63:2, 63:4, 63:7, 63:11, 63:13, 63:16, 63:20, 64:1, 64:6, 64:8, 64:12, 64:16, 65:1, 65:7, 65:8, 85:2, 90:14, 90:20, 90:23, 91:1, 91:3, 91:5, 91:8, 91:10, 91:12, 91:13, 91:17, 91:18, 91:19, 92:2, 92:12, 92:17, 92:18, 92:21, 92:23, 93:12, 93:22, 93:24, 94:8, 94:9, 94:16, 94:18, 94:23, 109:11, 111:6
**clarity** [2] - 55:19, 89:10
**clear** [13] - 6:7, 29:3, 43:22, 44:11, 57:18, 62:24, 63:18, 68:20, 72:24, 78:18, 80:12, 82:4, 121:20
**clearly** [5] - 19:20, 25:22, 25:24, 86:17, 87:5
**clerk** [1] - 6:2
**cleverly** [1] - 80:2
**client** [1] - 35:1
**clients** [2] - 57:23, 122:12
**closely** [6] - 27:6, 29:6, 32:17, 34:12, 34:13, 86:4
**closer** [6] - 21:1, 21:2, 21:20, 23:17, 37:4, 97:20
**closing** [1] - 47:12
**cloth** [1] - 63:9
**co** [6] - 6:14, 6:24, 43:7, 43:10, 56:8, 83:20
**co-counsel** [2] - 56:8, 83:20

**co-plaintiff** [4] - 6:14, 6:24, 43:7, 43:10
**coast** [2] - 83:19, 84:19, 84:21
**code** [4] - 28:17, 34:19, 36:8, 36:15
**collectively** [2] - 57:21, 79:6
**comfortable** [3] - 57:24, 71:13, 116:5
**coming** [2] - 23:10, 102:3
**common** [1] - 27:12
**companies** [6] - 28:18, 47:21, 51:23, 52:6, 53:10, 84:1
**company** [25] - 17:18, 35:13, 38:6, 43:13, 45:4, 45:15, 45:17, 47:18, 48:8, 48:19, 49:9, 50:19, 53:6, 66:16, 66:18, 66:19, 72:6, 73:12, 79:9, 80:10, 80:22, 84:5, 84:23, 86:4, 114:14
**compare** [1] - 91:17
**compared** [3] - 66:23, 73:18, 73:24
**compel** [1] - 33:11
**compelling** [1] - 34:2
**compete** [1] - 81:21
**competing** [1] - 81:4
**competition** [3] - 47:19, 48:11
**competitor** [3] - 35:15, 66:14, 116:15
**complained** [1] - 105:4
**complaint** [21] - 8:9, 8:14, 10:8, 19:5, 31:23, 42:24, 45:14, 49:24, 51:18, 53:24, 54:2, 54:8, 54:15, 56:5, 57:12, 57:21, 72:2, 85:18, 105:3, 105:7, 105:21
**complete** [2] - 33:23, 79:14
**completed** [2] - 75:20, 120:8
**completely** [2] - 29:3, 79:5
**complimentary** [2] - 50:7, 50:9
**component** [1] - 112:7
**comprising** [1] - 92:3
**conceding** [1] - 90:19

**concepts** [1] - 26:16
**concern** [2] - 23:8, 84:18
**concerned** [4] - 23:9, 28:13, 55:20, 102:24
**concerning** [1] - 25:5
**concluded** [5] - 13:2, 13:8, 59:15, 59:17, 107:12
**conclusion** [2] - 59:4, 74:21
**concoct** [1] - 81:14
**conducted** [1] - 64:18
**conference** [3] - 3:12, 4:17, 19:23, 37:5, 96:12, 97:1, 97:17, 108:8, 119:24
**confidentiality** [2] - 88:22, 103:24
**confirmed** [1] - 8:17
**confusion** [2] - 47:5, 106:17
**consider** [6] - 9:3, 22:14, 65:18, 100:21, 101:9, 114:5
**considerate** [1] - 104:5
**consideration** [1] - 105:15
**considered** [3] - 6:8, 7:4, 47:20
**considering** [1] - 91:9
**consistent** [1] - 109:20
**consternation** [1] - 57:4
**construction** [11] - 24:5, 30:10, 30:11, 33:15, 59:13, 59:20, 59:22, 64:24, 65:5, 65:9, 119:9
**consumed** [1] - 58:22
**contact** [1] - 19:11
**contending** [1] - 24:19
**content** [2] - 91:20, 91:21
**contention** [1] - 62:4
**contentions** [14] - 27:23, 28:6, 30:17, 33:8, 33:9, 34:19, 42:14, 61:8, 61:9, 61:17, 61:19, 61:20, 62:1, 62:22
**contested** [2] - 7:20, 52:4

context [1] - 15:1
contexts [1] - 41:15
continue [6] - 35:22, 37:12, 46:24, 52:7, 86:5, 100:15
CONTINUED [1] - 2:1
continued - 48:10
continues [3] - 56:1, 69:24, 71:19
continuing [1] - 48:13
contortions [1] - 39:19
Contour [145] - 3:4, 3:20, 6:20, 8:8, 9:19, 11:15, 11:17, 15:6, 16:23, 17:18, 18:5, 18:14, 18:20, 20:15, 24:20, 24:22, 26:21, 35:9, 35:14, 35:22, 36:2, 36:13, 37:10, 37:23, 38:7, 38:12, 38:13, 38:14, 38:15, 40:6, 40:8, 40:15, 41:10, 41:17, 41:23, 42:10, 43:11, 43:12, 45:3, 45:6, 45:7, 45:20, 47:2, 47:17, 47:24, 48:1, 48:2, 48:5, 48:15, 48:17, 50:3, 50:10, 50:11, 50:13, 50:16, 50:18, 50:19, 50:21, 50:22, 51:8, 51:11, 51:20, 51:24, 52:2, 52:16, 53:6, 53:17, 53:19, 53:21, 55:3, 55:7, 56:10, 56:12, 56:13, 56:15, 57:10, 57:11, 58:1, 59:24, 65:19, 66:10, 66:11, 66:12, 66:14, 66:22, 67:1, 67:7, 67:8, 67:12, 69:14, 69:20, 70:7, 71:11, 71:16, 72:5, 72:16, 72:22, 73:6, 73:8, 73:12, 73:24, 74:1, 75:6, 75:22, 76:3, 76:7, 76:9, 76:12, 76:17, 76:22, 77:3, 77:13, 79:3, 79:4, 79:8, 79:16, 81:1, 81:9, 82:2, 82:5, 82:11, 82:15, 84:4, 85:21, 86:2, 86:4, 87:4, 87:9, 88:5, 88:16, 89:6, 89:14, 89:18, 90:12, 90:13, 103:14, 105:8,

112:21, 113:12, 114:5, 114:19, 115:9
CONTOUR [1] - 1:3
Contour's [8] - 15:9, 21:10, 45:12, 47:13, 48:14, 69:11, 87:2, 113:18
contracts [1] - 53:9
contradiction [3] - 65:23, 66:3, 71:6
contradictory [1] - 89:21
control [9] - 20:16, 20:21, 21:12, 79:14, 82:9, 88:4, 88:14, 88:15, 103:11
controlling [2] - 66:18, 79:9
convenience [2] - 43:2, 45:13
convenient [7] - 35:14, 70:10, 72:11, 81:16, 82:14, 82:20, 84:8
conversation [4] - 15:9, 15:19, 16:6, 58:18
conversations [1] - 48:24
convincingly [1] - 30:1
core [2] - 21:15, 25:4
corporate [29] - 6:18, 24:18, 38:10, 41:8, 41:14, 42:3, 42:15, 48:17, 50:16, 53:1, 53:11, 53:18, 71:10, 71:18, 71:19, 71:21, 72:17, 73:14, 75:3, 78:22, 78:23, 79:6, 79:12, 85:15, 88:11, 103:6, 113:11, 121:12
corporation [8] - 15:14, 43:3, 45:9, 45:19, 50:6, 78:21, 82:22, 83:18
correct [11] - 10:15, 14:5, 21:23, 39:6, 40:13, 40:18, 52:23, 83:16, 114:8, 114:9, 121:11
Correct [2] - 46:4, 69:9
corrected [1] - 32:3
correctness [1] - 12:21
correspond [1] -

26:14
corresponding [2] - 91:15, 92:6
costs [7] - 7:8, 9:17, 80:1, 100:6, 102:12, 102:15, 102:16
Counsel [3] - 1:24, 2:7, 3:1
counsel [24] - 3:14, 3:15, 3:16, 4:4, 4:10, 5:23, 6:15, 8:16, 8:21, 11:14, 11:15, 15:10, 15:19, 46:16, 48:22, 49:1, 56:8, 75:2, 83:20, 84:21, 104:5, 105:14, 121:11, 122:11
counterparts [1] - 64:3
County [1] - 123:2
couple [8] - 19:7, 20:7, 49:19, 63:5, 65:15, 77:23, 96:13, 106:10
course [6] - 13:15, 13:18, 58:16, 61:21, 64:22, 111:16
COURT [126] - 1:1, 3:1, 3:24, 4:9, 7:14, 7:23, 8:20, 10:4, 11:2, 11:21, 12:3, 13:10, 13:15, 13:20, 14:6, 15:17, 16:4, 16:10, 16:17, 17:9, 17:15, 21:17, 21:24, 23:19, 25:11, 27:1, 27:7, 27:24, 29:19, 31:1, 31:10, 36:22, 38:18, 39:9, 40:11, 40:14, 41:13, 42:5, 42:9, 43:17, 44:1, 45:23, 46:5, 46:12, 46:15, 46:20, 46:23, 49:2, 51:1, 52:14, 53:22, 54:10, 54:18, 55:10, 56:3, 56:15, 56:19, 56:23, 58:6, 60:15, 60:19, 61:2, 62:3, 62:15, 64:4, 64:20, 65:15, 65:18, 67:2, 67:19, 69:4, 70:12, 70:18, 72:20, 73:7, 74:9, 75:12, 76:2, 76:23, 77:17, 77:20, 77:22, 78:5, 79:18, 82:12, 83:5, 84:2, 85:3, 86:7, 87:14, 87:18, 88:19,

90:4, 92:14, 93:8, 95:3, 95:20, 95:23, 96:7, 101:16, 101:20, 103:16, 104:8, 104:15, 104:18, 105:16, 105:23, 106:21, 107:2, 110:6, 110:12, 111:18, 112:14, 114:1, 114:18, 115:11, 115:15, 115:18, 118:10, 119:1, 121:7, 121:18, 122:7, 122:11
court [9] - 3:6, 5:6, 21:20, 22:23, 94:20, 96:4, 104:7, 111:8, 122:19
Court [58] - 1:15, 6:11, 7:7, 9:12, 9:22, 11:8, 12:1, 12:5, 12:9, 12:10, 12:11, 13:4, 17:1, 17:18, 21:6, 22:16, 24:1, 24:8, 24:10, 24:11, 24:17, 25:19, 26:22, 27:19, 28:21, 29:10, 31:18, 33:6, 44:2, 44:21, 47:7, 47:9, 51:12, 51:17, 52:12, 55:24, 57:9, 58:20, 59:8, 64:14, 64:15, 65:4, 67:15, 68:24, 69:21, 75:16, 78:24, 90:10, 91:2, 91:6, 95:8, 95:15, 95:17, 104:5, 110:21, 116:11, 117:19, 120:4
Court's [9] - 11:1, 30:14, 44:7, 59:2, 62:11, 69:17, 99:1, 111:14, 121:3
courtroom [1] - 108:13
Courtroom [1] - 1:10
courts [1] - 83:3
cover [2] - 77:24, 118:5
create [3] - 20:16, 42:22, 81:14
created [2] - 21:3, 38:5, 41:7
creates [1] - 35:5
creating [2] - 80:2, 91:24
creditor [1] - 42:20

criminal [3] - 4:19, 4:20, 96:9
crossroads [1] - 33:13
crystal [1] - 68:20
cuff [1] - 106:9
current [4] - 13:10, 56:3, 60:22, 61:1
Curt [1] - 123:7
cut [1] - 29:20

D

damages [4] - 110:2, 110:7, 110:19, 111:16
dangerous [2] - 21:6, 41:6
data [6] - 91:20, 92:5, 92:6, 92:7, 92:8
date [6] - 18:3, 54:4, 59:11, 97:17, 109:2, 119:11
dates [10] - 107:7, 107:14, 107:16, 108:1, 108:13, 108:19, 109:14, 119:8, 119:9, 119:12
Daubert [1] - 108:5
days [7] - 19:7, 23:5, 23:6, 23:7, 77:15, 106:10, 106:20
deal [5] - 30:5, 30:6, 39:22, 89:24, 96:10
dealing [4] - 27:24, 30:17, 30:18, 97:14
December [3] - 19:2, 108:6, 108:7
decide [15] - 9:6, 14:12, 17:24, 83:11, 97:2, 97:3, 97:9, 98:1, 98:4, 98:7, 101:7, 102:9, 102:18, 104:20, 114:23
decided [15] - 14:16, 17:10, 20:16, 20:17, 20:18, 20:19, 43:1, 44:19, 63:13, 73:8, 73:15, 74:19, 84:8, 95:13, 100:11
deciding [1] - 22:15
decision [42] - 13:16, 14:1, 17:11, 18:7, 21:21, 23:17, 27:2, 29:23, 30:10, 31:20, 34:4, 37:3, 44:8,

44:14, 61:11, 62:11, 62:13, 63:11, 63:19, 72:21, 72:22, 73:16, 73:23, 74:4, 74:18, 82:17, 83:9, 83:13, 84:4, 84:6, 84:10, 91:9, 93:23, 99:20, 99:21, 102:4, 111:1, 115:2, 117:15, 122:17

**decisions** [5] - 82:18, 103:20, 117:3, 119:15, 119:17

**declaration** [1] - 16:13

**declined** [1] - 63:3

**deeply** [1] - 74:8

**default** [1] - 110:22

**defend** [1] - 40:23

**Defendant** [9] - 1:8, 2:7, 5:23, 67:23, 109:1, 109:6, 109:7, 116:17, 120:3

**defendant** [5] - 39:1, 39:3, 39:4, 39:15, 41:1

**Defendant's** [10] - 4:1, 5:22, 6:22, 102:21, 103:19, 111:13, 111:23, 118:6, 121:8, 122:8

**Defendants** [2] - 25:6, 77:8

**defendants** [3] - 38:21, 38:22, 40:23

**defending** [1] - 41:1

**defense** [3] - 80:6, 101:17, 103:23

**defenses** [1] - 85:22

**defer** [1] - 110:4

**deferred** [2] - 12:7, 13:7

**degree** [1] - 61:15

**DELAWARE** [1] - 1:1

**Delaware** [32] - 1:12, 3:15, 15:14, 17:8, 23:10, 28:12, 31:18, 33:21, 43:3, 44:23, 45:8, 45:13, 45:15, 45:16, 45:17, 45:18, 45:22, 50:6, 61:19, 70:5, 72:2, 72:12, 76:3, 77:5, 82:14, 82:18, 82:22, 82:24, 83:18, 84:9, 87:11, 123:1

**delay** [10] - 18:7, 22:2, 22:20, 23:2, 23:7, 23:10, 68:6, 69:21,

70:8, 71:14

**delayed** [1] - 18:9

**demand** [1] - 19:1

**dent** [1] - 47:22

**dependent** [3] - 29:13, 31:16, 91:19

**depose** [1] - 113:17

**deposition** [3] - 112:20, 116:17, 116:19

**depositions** [8] - 25:4, 30:6, 36:16, 113:6, 113:8, 113:21, 114:10, 116:9

**describes** [1] - 26:17

**designed** [1] - 41:4

**detail** [2] - 29:9, 117:12

**determination** [1] - 9:24

**determine** [2] - 65:20, 103:4

**develop** [1] - 63:6

**developing** [1] - 48:6

**device** [1] - 92:10

**devices** [2] - 28:15, 93:6

**devote** [1] - 65:13

**difference** [9] - 12:11, 12:20, 28:24, 29:5, 32:11, 68:22, 78:16, 91:14, 94:11

**different** [34] - 5:12, 9:20, 22:4, 26:17, 30:13, 32:14, 37:4, 39:20, 39:24, 40:2, 40:7, 41:7, 41:11, 43:10, 44:6, 68:15, 72:17, 72:20, 73:18, 73:19, 73:20, 73:23, 74:5, 78:15, 79:1, 81:1, 83:12, 83:14, 84:10, 84:14, 99:3, 99:8, 120:13

**differently** [2] - 25:22, 70:14

**difficult** [3] - 26:20, 32:6, 93:19

**difficulty** [3] - 48:12, 50:3, 81:3

**dig** [1] - 74:7

**digital** [1] - 92:3

**direct** [1] - 66:13

**directed** [1] - 91:10

**directly** [7] - 49:17, 67:1, 87:4, 88:14, 89:3, 89:9, 105:19

**disagree** [1] - 19:19

**disclosure** [2] - 110:8, 111:11

**disclosures** [3] - 100:12, 109:2, 120:8

**discovery** [17] - 24:16, 24:24, 25:3, 25:5, 25:7, 25:16, 33:7, 34:18, 60:2, 60:5, 110:18, 110:22, 112:12, 113:1, 113:10, 114:15, 114:20

**discovery-related** [1] - 25:16

**discretion** [2] - 95:18, 101:8

**discuss** [2] - 13:3, 88:10

**discussed** [3] - 112:8, 117:24, 118:9

**discusses** [1] - 92:4

**discussing** [1] - 120:5

**discussion** [2] - 58:23, 75:4, 85:14

**discussions** [3] - 8:15, 98:11, 121:22

**dismiss** [15] - 9:5, 9:7, 9:13, 16:22, 17:3, 31:5, 44:19, 49:21, 68:3, 69:5, 69:16, 71:15, 73:16, 75:9, 98:5

**dismissal** [1] - 18:19

**dismissed** [6] - 17:7, 39:12, 44:12, 46:2, 74:13, 83:8

**dismisses** [1] - 18:14

**dismissing** [1] - 68:4

**disparate** [2] - 73:5, 116:18

**disposition** [2] - 6:9, 79:15

**dispositive** [1] - 108:5

**dispute** [24] - 8:5, 19:24, 28:19, 51:7, 52:10, 53:9, 55:2, 55:23, 56:19, 56:20, 95:9, 98:9, 99:16, 105:6, 107:7, 108:18, 108:24, 112:18, 112:19, 115:20, 115:23, 120:20, 120:24, 121:17

**disputed** [8] - 8:23, 9:1, 9:9, 107:22, 109:4, 115:11,

115:12, 120:11

**disputes** [16] - 24:16, 25:1, 33:11, 35:2, 96:16, 97:6, 97:7, 97:15, 99:14, 101:1, 101:22, 107:8, 115:19, 117:2, 117:6, 117:13

**disputing** [1] - 117:18

**dissolution** [4] - 51:9, 51:14, 51:16, 57:7

**distinction** [2] - 32:11, 34:15

**DISTRICT** [2] - 1:1, 1:1

**district** [2] - 39:5, 79:23

**District** [3] - 1:15, 76:5, 99:1

**divorce** [1] - 71:23

**docket** [1] - 75:17

**docs** [1] - 30:3

**document** [1] - 105:13

**documentation** [4] - 6:18, 6:21, 7:1, 106:12

**documents** [17] - 10:6, 17:17, 42:3, 88:3, 88:9, 88:11, 88:13, 88:18, 88:20, 88:23, 89:7, 103:6, 103:10, 103:14, 103:18, 103:22, 106:3

**doings** [1] - 85:15

**dollars** [2] - 35:1, 36:7

**done** [9] - 20:15, 21:13, 27:18, 27:20, 30:12, 30:13, 32:20, 35:8, 96:10

**dot** [3] - 39:13

**doubt** [2] - 5:8, 95:10

**down** [5] - 5:20, 66:9, 81:8, 86:16, 87:24

**drive** [1] - 116:3

**driving** [1] - 83:6

**drop** [1] - 27:2

**DUANE** [1] - 2:5

**Duane** [1] - 4:5

**duck** [3] - 38:4, 38:5

**due** [5] - 8:8, 10:7, 10:15, 19:5, 118:20

**duplicate** [1] - 14:24

**duplicative** [5] - 14:22, 28:4, 80:20, 86:20, 105:22

**duration** [1] - 69:17

**during** [8] - 5:3, 16:12, 57:5, 59:7, 62:24, 73:1, 85:16, 109:23

**duty** [1] - 4:19

**E**

**early** [9] - 19:19, 19:24, 24:8, 28:13, 32:22, 47:18, 48:21, 59:6, 110:24

**easily** [1] - 30:14

**east** [4] - 83:19, 84:1, 84:19, 84:20

**educated** [1] - 110:24

**effect** [6] - 40:22, 52:3, 55:7, 91:4, 97:13, 119:4

**effectively** [5] - 55:5, 57:13, 63:14, 81:21, 85:21

**effort** [3] - 63:6, 72:10, 82:8

**eight** [13] - 60:8, 60:12, 60:13, 60:23, 63:2, 63:7, 63:12, 63:16, 63:20, 65:1, 89:23, 92:16, 111:5

**either** [19] - 5:2, 6:9, 7:6, 11:11, 25:16, 44:14, 51:14, 55:24, 59:8, 70:2, 77:7, 81:6, 87:7, 88:21, 98:16, 104:10, 106:1, 106:11, 112:23

**element** [1] - 102:24

**elements** [3] - 29:16, 29:18, 64:17

**ELIZABETH** [1] - 1:19

**embodiments** [1] - 94:23

**employees** [1] - 113:24

**en** [2] - 103:15, 104:9

**End** [1] - 122:20

**end** [4] - 31:13, 35:23, 48:20, 107:6

**ended** [8] - 21:18, 22:8, 45:1, 45:6, 48:2, 68:7, 68:9, 96:7

**engage** [4] - 24:1, 24:3, 24:17, 48:10

**engaging** [1] - 25:20

**enter** [9] - 47:8, 97:3, 99:16, 99:21, 99:24,

100:9, 100:22, 101:7, 107:5
**entered** [8] - 40:7, 50:14, 51:5, 54:6, 97:5, 97:18, 107:10, 108:2
**entering** [1] - 107:13
**enters** [1] - 107:11
**entertain** [1] - 58:17
**entire** [2] - 28:8, 41:3
**entities** [13] - 50:16, 51:1, 51:3, 52:19, 53:11, 54:16, 67:24, 70:23, 72:17, 78:15, 84:3, 106:6
**entitled** [1] - 7:8
**entitlement** [1] - 102:12
**entity** [32] - 17:21, 17:23, 17:24, 20:17, 40:2, 40:17, 41:7, 42:10, 42:22, 49:14, 49:16, 53:16, 67:7, 68:15, 72:12, 73:19, 78:10, 79:4, 79:6, 79:16, 80:2, 80:9, 80:13, 81:15, 81:16, 82:1, 83:7, 84:9, 84:10, 84:19, 84:20, 114:13
**entry** [1] - 122:18
**equities** [4] - 21:18, 22:12, 22:14, 22:18
**Equity** [2] - 45:5, 48:3
**equivalent** [1] - 16:13
**ESQ** [7] - 1:19, 1:22, 1:22, 1:23, 2:3, 2:3, 2:6
**essence** [8] - 9:6, 38:24, 39:19, 42:11, 83:6, 99:2, 106:2, 107:11
**essentially** [8] - 11:7, 17:6, 20:14, 26:10, 29:9, 34:16, 91:24, 92:11
**et** [2] - 3:4, 84:14
**ethically** [1] - 51:13
**event** [1] - 77:3
**events** [2] - 97:21, 121:21
**evidence** [1] - 44:9
**exact** [1] - 78:9
**exactly** [2] - 22:19, 50:8
**example** [13] - 24:4, 24:21, 25:1, 27:11, 27:20, 38:21, 41:16, 44:24, 61:4, 62:8,

91:16, 97:5, 113:9
**examples** [1] - 61:13
**except** [2] - 26:13, 34:14
**excessive** [2] - 113:2, 113:3, 113:20
**exchange** [2] - 28:13, 28:14
**exclusive** [33] - 6:12, 7:18, 8:6, 8:12, 8:18, 8:24, 50:23, 51:19, 52:4, 52:8, 54:22, 55:4, 55:6, 55:8, 55:14, 55:17, 55:22, 56:2, 56:6, 56:13, 56:17, 57:16, 71:24, 72:4, 72:7, 72:8, 76:16, 76:19, 82:8, 89:8, 95:7, 103:9, 105:10
**exempted** [1] - 115:7
**expect** [12] - 4:20, 47:15, 52:9, 59:24, 61:15, 62:8, 62:21, 66:20, 97:10, 106:16, 120:20, 121:1
**expectation** [2] - 100:10, 102:3
**expected** [2] - 29:23, 119:3
**expeditiously** [3] - 58:5, 67:16, 72:10
**expended** [3] - 24:10, 24:11, 24:12
**expense** [1] - 33:17
**expensive** [1] - 25:6
**experienced** [2] - 66:22, 66:24
**experiencing** [1] - 49:15
**expert** [2] - 47:23, 115:6
**explains** [1] - 51:4
**explanation** [1] - 71:8
**explore** [1] - 67:5
**exploring** [1] - 100:8
**extend** [1] - 18:6
**extended** [2] - 17:12, 67:9
**extent** [6] - 14:21, 16:12, 62:6, 70:23, 77:24, 98:16
**extinguish** [1] - 22:23
**extinguished** [1] - 18:18
**extraordinarily** [1] - 112:3
**extraordinary** [1] -

113:23
**extremely** [1] - 116:21
**eyes** [4] - 88:7, 88:11, 89:4, 104:4

**F**

**face** [5] - 25:12, 25:19, 27:16, 65:21, 66:2
**faced** [1] - 32:24
**facilitate** [1] - 111:2
**facing** [2] - 24:21, 63:17
**fact** [33] - 8:5, 8:6, 8:23, 9:8, 10:24, 26:19, 33:18, 36:24, 41:18, 53:17, 57:19, 59:20, 60:8, 60:12, 63:1, 71:20, 78:14, 78:20, 79:2, 79:11, 86:15, 86:20, 92:20, 93:11, 94:17, 99:7, 100:21, 101:7, 105:1, 105:8, 109:16, 112:3, 117:21
**factors** [1] - 66:21
**facts** [3] - 19:10, 20:13, 43:14
**failed** [2] - 53:3, 55:16
**fair** [2] - 74:9, 89:19
**faith** [1] - 42:16
**fall** [1] - 51:23
**falls** [1] - 118:7
**familiar** [1] - 117:20
**far** [7] - 4:10, 54:21, 55:20, 64:10, 75:15, 75:23, 77:6
**fast** [4] - 35:19, 50:2, 87:24, 88:1
**favor** [6] - 3:8, 7:10, 11:9, 22:15, 76:4, 77:2
**features** [5] - 91:10, 91:12, 94:2, 94:8, 94:12
**February** [4] - 8:7, 19:4, 59:14, 103:8
**federal** [1] - 116:21
**Federal** [3] - 3:10, 37:15, 116:8
**fees** [8] - 7:8, 8:11, 14:3, 37:21, 37:22, 102:2, 102:5, 102:16
**felt** [2] - 12:23, 104:10
**few** [5] - 3:2, 19:16,

30:23, 85:3, 106:20
**fight** [1] - 70:18
**figure** [5] - 23:20, 27:18, 72:1, 73:22, 78:7
**figures** [4] - 109:1, 110:23, 111:8, 111:12
**file** [31] - 7:5, 10:5, 10:7, 10:13, 10:23, 11:1, 11:13, 11:16, 20:24, 31:4, 31:6, 31:11, 32:19, 35:18, 41:21, 43:1, 62:4, 69:7, 69:20, 73:9, 73:15, 73:17, 74:19, 83:12, 84:6, 84:9, 85:9, 85:18, 87:9, 98:23, 101:4
**filed** [53] - 8:8, 8:9, 10:8, 10:21, 11:5, 11:8, 15:5, 16:7, 16:18, 17:8, 18:3, 18:12, 19:4, 19:13, 22:3, 30:24, 31:2, 31:13, 31:18, 31:22, 32:21, 41:19, 41:20, 43:21, 44:12, 45:21, 45:22, 48:15, 48:18, 48:20, 51:18, 56:10, 56:11, 57:10, 57:11, 67:11, 69:3, 69:12, 70:3, 70:15, 74:14, 75:6, 76:5, 77:2, 77:9, 77:16, 82:13, 83:7, 83:8, 83:10, 85:18, 88:6, 105:21
**files** [1] - 39:13
**filing** [15] - 18:8, 21:19, 23:1, 23:16, 44:5, 56:5, 56:16, 68:5, 76:21, 79:22, 79:24, 84:13, 90:5, 105:3, 105:7
**finagling** [1] - 87:8
**final** [2] - 86:10, 117:1
**financially** [1] - 48:1
**fine** [2] - 110:10, 119:11
**first** [33] - 3:3, 4:13, 12:2, 19:18, 23:24, 32:1, 37:24, 40:4, 44:16, 45:7, 49:8, 58:19, 63:5, 74:10, 74:23, 75:4, 88:2, 91:8, 91:20, 91:21, 91:22, 92:5, 92:8, 96:18, 97:9, 98:7, 107:4, 108:23,

109:3, 110:8, 120:2, 120:14
**First** [1] - 86:14
**five** [5] - 46:7, 87:19, 87:23, 95:24, 96:8
**fixed** [1] - 35:5
**flagged** [1] - 56:9
**flexibility** [1] - 78:11
**Flynn** [1] - 4:6
**FLYNN** [1] - 2:3
**focus** [1] - 86:19
**focused** [1] - 106:3
**fold** [2] - 18:5, 40:3
**folks** [1] - 32:15
**follow** [2] - 14:12, 122:1
**following** [3] - 8:13, 38:17, 96:22
**FOR** [1] - 1:1
**force** [2] - 20:24, 62:13
**foregoing** [1] - 123:9
**foremost** [1] - 88:2
**forget** [1] - 8:21
**form** [7] - 17:24, 41:8, 73:14, 78:22, 79:12, 82:6, 117:4
**formal** [1] - 55:1
**formally** [1] - 57:17
**formation** [3] - 77:3, 77:4, 113:11
**formations** [1] - 42:15
**formed** [7] - 17:20, 17:21, 76:3, 76:7, 76:10, 79:3, 80:13
**formidable** [1] - 47:21
**forms** [3] - 41:14, 48:17, 81:2
**forth** [1] - 114:3
**forum** [12] - 41:5, 42:24, 43:19, 44:3, 44:13, 45:11, 70:9, 72:11, 74:12, 74:20, 80:23, 82:24
**forward** [59] - 5:23, 19:3, 21:14, 26:11, 27:17, 30:2, 31:13, 36:4, 36:14, 50:2, 50:14, 52:11, 53:14, 56:2, 58:4, 60:22, 65:4, 65:5, 67:16, 67:22, 68:7, 68:10, 68:12, 68:13, 70:11, 70:20, 71:3, 71:5, 72:10, 72:16, 74:17, 76:12, 76:19, 84:22, 85:1, 85:22, 89:20, 92:21, 93:11, 93:15,

93:16, 95:15, 97:11, 97:19, 99:5, 100:3, 100:16, 101:13, 106:19, 110:11, 111:6, 117:16, 117:17, 118:14, 119:23, 121:4, 121:5, 122:14
**four** [3] - 59:18, 108:18, 117:2
**frame** [1] - 106:7
**frankly** [7] - 16:21, 34:18, 37:18, 67:10, 104:9, 111:10, 120:20
**free** [1] - 118:18
**Friday** [3] - 101:6, 119:13, 122:15
**friendly** [1] - 74:20
**front** [5] - 28:12, 37:17, 52:24, 99:18, 122:2
**full** [1] - 103:1
**fully** [6] - 6:19, 13:2, 49:12, 53:16, 62:10, 103:13
**function** [20] - 26:10, 26:15, 29:11, 31:24, 32:5, 53:20, 63:22, 64:1, 64:2, 64:8, 65:3, 66:8, 91:1, 91:4, 91:8, 91:12, 91:17, 92:2, 94:7, 94:22
**functional** [1] - 51:6
**functionality** [1] - 60:3
**future** [4] - 52:7, 56:2, 117:22, 122:2

### G

**game** [4] - 38:10, 42:19, 75:3, 80:7
**gander** [1] - 116:13
**Garza** [4] - 12:12, 12:13, 13:11, 40:21
**general** [4] - 49:6, 74:3, 104:23, 111:14
**generally** [4] - 42:17, 64:13, 93:5, 110:18
**generated** [1] - 91:19
**generating** [1] - 92:5
**genesis** [1] - 47:13
**getable** [2] - 102:5, 102:15
**gist** [1] - 107:9

**given** [14] - 15:3, 21:7, 23:11, 23:15, 24:18, 45:1, 93:21, 94:21, 95:6, 112:4, 112:9, 113:3, 120:21
**goods** [1] - 48:9
**goose** [1] - 116:12
**GoPro** [55] - 1:7, 3:5, 4:4, 7:8, 7:10, 8:8, 12:5, 15:8, 15:13, 16:18, 16:21, 16:23, 18:3, 18:4, 18:9, 19:12, 20:14, 23:16, 25:2, 32:1, 32:23, 34:22, 35:5, 35:24, 36:14, 45:8, 45:16, 47:19, 47:21, 48:11, 48:12, 48:13, 48:21, 49:19, 49:23, 56:11, 62:21, 63:1, 63:5, 67:8, 69:23, 81:4, 81:7, 81:10, 93:24, 94:5, 109:14, 109:22, 112:11, 113:7, 113:24, 120:22, 121:10, 121:13
**GoPro's** [11] - 15:4, 27:4, 44:24, 57:10, 66:12, 75:21, 86:3, 95:9, 109:12, 109:20, 121:15
**grant** [7] - 10:9, 12:6, 13:5, 34:2, 67:23, 76:16, 95:16
**granted** [7] - 15:3, 24:23, 44:23, 67:14, 72:7, 85:11, 100:13
**granting** [2] - 12:18, 68:16
**Gray** [1] - 3:22
**GRAY** [1] - 1:21
**great** [3] - 61:14, 79:21, 80:23
**greater** [2] - 92:18, 92:19
**grounds** [1] - 12:20
**group** [1] - 83:14
**groups** [1] - 22:5
**guard** [1] - 28:18
**guess** [9] - 9:1, 9:2, 21:24, 27:15, 39:15, 52:14, 70:12, 73:7, 93:8
**guessing** [1] - 10:19
**guidance** [2] - 102:8, 106:9
**guys** [1] - 114:20

### H

**half** [3] - 30:12, 34:24, 36:6
**hand** [1] - 123:15
**handle** [5] - 5:7, 96:9, 97:1, 98:15, 98:23
**handling** [1] - 97:22
**hang** [1] - 29:2
**hanging** [1] - 29:4
**happily** [1] - 121:6
**happy** [3] - 29:10, 104:13, 105:11
**hard** [1] - 33:16
**hardware** [5] - 94:4, 94:6, 94:11, 94:13, 94:23
**harm** [2] - 49:15, 80:14
**head** [1] - 117:7
**headed** [1] - 83:17
**heads** [2] - 58:18, 84:4
**hear** [8] - 4:11, 4:12, 5:16, 18:9, 18:11, 33:4, 44:3, 46:16
**heard** [17] - 17:3, 17:6, 20:23, 44:20, 47:3, 69:1, 75:24, 90:9, 90:11, 100:18, 111:4
**hearing** [23] - 4:18, 18:18, 19:3, 19:8, 20:22, 21:2, 21:8, 22:22, 34:20, 54:13, 59:13, 59:20, 69:18, 75:9, 75:13, 106:1, 107:24, 108:3, 108:5, 109:24, 118:16, 118:23, 119:10
**hearings** [2] - 107:17, 108:12
**held** [4] - 26:19, 72:4, 82:11, 108:8
**help** [2] - 22:11, 108:16
**helpful** [4] - 14:20, 47:10, 104:11, 118:24
**helps** [1] - 73:22
**hereby** [1] - 123:8
**hereunto** [1] - 123:14
**high** [3] - 29:15, 58:15, 93:18
**higher** [4] - 51:24, 92:1, 92:7, 116:3
**highly** [1] - 60:7

**himself** [1] - 97:21
**history** [2] - 70:11, 120:1
**hold** [1] - 3:11
**holder** [1] - 70:14
**holders** [1] - 71:2
**HOLDING** [1] - 1:3
**holding** [15] - 3:4, 17:18, 35:13, 38:5, 50:19, 51:11, 66:15, 66:19, 68:1, 72:6, 73:12, 79:9, 105:8, 114:13
**Holding** [5] - 3:20, 47:3, 51:20, 72:5, 79:3
**holidays** [1] - 119:7
**home** [1] - 84:23
**honest** [1] - 116:6
**Honor** [104] - 3:19, 4:3, 6:6, 9:11, 10:1, 11:24, 14:20, 14:22, 16:3, 17:14, 24:14, 26:12, 37:8, 46:11, 46:18, 46:21, 47:1, 48:23, 52:23, 54:17, 54:24, 56:18, 56:22, 57:3, 57:5, 58:12, 60:10, 60:18, 61:1, 61:16, 62:7, 62:13, 62:20, 62:23, 63:10, 63:18, 64:9, 65:11, 65:17, 66:5, 66:17, 67:4, 67:10, 68:18, 69:1, 69:10, 69:24, 71:7, 72:15, 72:24, 74:3, 74:22, 76:6, 76:9, 76:20, 77:10, 77:19, 77:21, 78:4, 78:17, 80:15, 80:21, 80:24, 81:23, 82:5, 83:17, 84:17, 85:12, 85:16, 86:12, 87:17, 87:22, 88:2, 88:12, 90:16, 95:22, 101:15, 101:19, 102:22, 103:3, 103:12, 104:2, 104:12, 104:24, 105:12, 106:16, 107:1, 109:10, 110:10, 110:15, 112:3, 112:24, 115:10, 115:17, 115:21, 116:6, 116:8, 118:4, 118:9, 118:12, 120:18, 121:9, 122:6, 122:10

**Honor's** [7] - 4:7, 55:19, 58:17, 58:23, 59:11, 64:22, 66:20
**HONORABLE** [1] - 1:14
**hope** [3] - 4:23, 72:14, 118:17
**hopefully** [2] - 23:5, 60:16
**hours** [1] - 112:20, 113:7, 113:19, 114:4, 115:2, 115:3, 116:9, 116:16, 116:19
**Huntley** [1] - 12:12

### I

**Ian** [1] - 3:22
**IAN** [1] - 1:23
**idea** [13] - 17:9, 20:1, 44:5, 67:21, 68:11, 71:1, 80:11, 88:15, 97:19, 107:12, 114:6, 117:19, 119:1
**ideally** [1] - 81:19
**identifiable** [1] - 24:11
**identified** [1] - 71:9
**identify** [1] - 3:14
**identity** [1] - 78:6
**ignored** [1] - 43:14
**illustrate** [1] - 93:23
**illustrated** [1] - 94:10
**image** [4] - 91:20, 91:21, 92:6
**immediate** [1] - 121:13
**immediately** [3] - 67:13, 76:14, 118:4
**impact** [4] - 32:13, 63:10, 66:12, 75:24
**impacted** [1] - 66:19
**impacts** [1] - 66:11
**implementation** [3] - 91:7, 91:15, 94:3
**implication** [1] - 80:8
**implications** [1] - 36:12
**implicitly** [1] - 90:19
**important** [14] - 14:24, 19:10, 28:22, 58:19, 59:11, 63:5, 68:19, 68:21, 82:23, 86:22, 91:2, 92:22, 95:8, 117:22
**impossible** [1] - 26:21
**IN** [2] - 1:1, 123:14

**Inc** [3] - 3:21, 50:17, 105:10
**INC** [2] - 1:4, 1:7
**inception** [1] - 53:4
**incline** [1] - 87:23
**inclined** [5] - 95:16, 99:23, 102:7, 102:20, 104:21
**include** [10] - 11:18, 15:21, 65:2, 96:22, 102:16, 107:21, 110:7, 110:23, 116:1, 119:11
**included** [3] - 101:3, 108:14, 115:8
**includes** [2] - 37:22, 115:9
**including** [4] - 39:14, 40:21, 79:15, 96:17
**inclusive** [1] - 123:9
**Incorporated** [1] - 3:5
**incorporated** [1] - 84:24
**incredible** [1] - 92:12
**incredibly** [3] - 16:21, 35:3, 103:7
**incur** [1] - 79:24
**indefinite** [1] - 44:18
**independent** [1] - 29:13
**indicate** [1] - 42:4
**indicates** [1] - 92:17
**indication** [2] - 56:4, 75:22
**industry** [1] - 81:18
**inform** [2] - 27:10, 55:24
**information** [12] - 9:23, 28:14, 35:3, 88:17, 89:6, 89:9, 92:4, 92:22, 101:3, 106:4, 109:15
**infringe** [3] - 62:5, 94:7, 109:19
**infringed** [1] - 49:10
**infringement** [14] - 28:6, 28:9, 28:10, 33:9, 36:19, 36:20, 48:14, 61:7, 61:17, 61:18, 61:20, 63:24, 90:15, 111:11
**infringer** [1] - 49:17
**Ingram** [3] - 123:7, 123:19, 123:20
**inherent** [4] - 23:2, 42:17, 90:17, 95:18
**initial** [12] - 42:6, 61:15, 74:24, 85:14,

97:7, 100:12, 109:2, 111:11, 119:24, 120:8, 120:16, 121:19
**initiated** [2] - 39:17, 55:16
**injunction** [3] - 35:18, 67:3, 67:13
**injunctions** [1] - 67:14
**input** [1] - 27:13
**instance** [5] - 49:8, 97:9, 98:7, 98:21, 120:2
**instances** [1] - 99:7
**instant** [1] - 76:20
**instead** [1] - 5:18
**institute** [8] - 32:10, 34:4, 34:8, 63:4, 63:15, 63:16, 92:16, 94:18
**instituted** [7] - 31:19, 32:17, 33:20, 65:7, 65:8, 109:16, 109:20
**instructive** [1] - 64:14
**intellectual** [2] - 48:5, 50:18
**intend** [3] - 25:13, 27:16, 60:18
**intended** [4] - 53:17, 53:19, 85:13, 114:4
**intent** [4] - 50:15, 60:22, 61:1, 87:13
**interest** [13] - 50:22, 53:18, 55:19, 58:2, 58:4, 66:18, 69:14, 71:18, 71:20, 79:9, 80:19, 87:2, 87:10
**interested** [2] - 72:3, 84:22
**interests** [3] - 71:21, 72:18, 79:4
**interim** [1] - 62:14
**interlocutory** [4] - 12:14, 12:16, 12:19, 13:12
**interrelated** [1] - 94:17
**interrogatories** [6] - 28:8, 30:7, 30:19, 33:10, 62:4, 62:7
**interrupt** [1] - 14:23
**intertwined** [2] - 110:16, 111:14
**intervene** [2] - 70:6, 87:7
**invalid** [7] - 26:20, 27:3, 31:8, 34:21,

36:21, 64:8, 94:12
**invalidated** [2] - 61:5, 93:2
**invalidates** [1] - 60:20
**invalidating** [1] - 35:7
**invalidity** [11] - 27:13, 27:22, 28:9, 33:8, 34:19, 61:8, 61:24, 62:22, 63:7, 92:19
**invented** [1] - 113:13
**invention** [2] - 26:17, 34:14
**involved** [6] - 51:8, 51:15, 71:11, 84:12, 85:15, 85:24
**iON** [113] - 1:4, 3:21, 6:8, 6:12, 6:14, 6:16, 6:20, 6:23, 7:3, 7:9, 7:11, 7:17, 8:10, 8:12, 8:23, 9:1, 9:20, 10:8, 10:14, 11:10, 11:15, 11:19, 19:6, 20:19, 20:20, 38:8, 41:18, 41:23, 42:10, 43:2, 43:3, 43:5, 43:7, 43:9, 45:14, 45:18, 47:3, 50:5, 50:9, 50:11, 50:16, 50:21, 50:23, 51:8, 51:12, 51:18, 51:24, 52:4, 52:7, 52:17, 52:20, 53:7, 53:19, 54:21, 55:3, 55:5, 55:14, 55:16, 55:21, 56:1, 56:6, 56:16, 57:13, 58:1, 59:24, 67:11, 69:20, 70:4, 70:7, 70:10, 71:16, 71:17, 71:23, 72:7, 72:9, 72:15, 72:16, 72:21, 73:5, 73:11, 73:24, 76:11, 76:16, 76:17, 79:5, 79:17, 81:13, 81:24, 82:5, 82:8, 82:14, 82:16, 82:21, 82:22, 83:14, 83:17, 84:5, 84:8, 84:18, 84:20, 85:9, 85:23, 86:1, 87:2, 87:9, 95:13, 103:8, 105:9, 113:15, 121:1
**iON's** [3] - 43:1, 43:2, 85:20
**IP** [45] - 1:3, 3:4, 3:20, 47:2, 48:9, 48:14, 50:19, 50:22, 51:11, 51:20, 53:19, 55:3, 56:10, 56:15, 57:10,

57:11, 58:1, 66:11, 66:12, 67:1, 67:12, 69:20, 70:7, 72:5, 73:12, 74:1, 76:3, 76:7, 76:10, 76:17, 77:4, 77:13, 79:3, 79:7, 81:11, 82:10, 82:15, 83:2, 83:4, 85:21, 86:2, 87:9, 105:8, 114:14
**IP's** [4] - 55:7, 56:12, 56:13, 87:2
**IPH** [1] - 17:18
**IPR** [39] - 3:9, 7:7, 12:2, 13:6, 13:8, 14:18, 15:2, 18:4, 18:6, 19:7, 19:16, 21:13, 23:22, 25:15, 26:1, 26:22, 26:6, 28:3, 31:19, 32:8, 32:15, 38:14, 40:12, 46:1, 58:14, 59:3, 63:2, 69:2, 69:8, 69:11, 74:16, 75:1, 75:5, 76:4, 77:2, 77:15, 95:16, 100:6, 107:11
**IPR's** [2] - 16:19, 67:22
**issue** [56] - 7:15, 7:20, 8:22, 9:9, 9:14, 12:22, 13:6, 13:21, 13:22, 14:3, 14:10, 15:22, 21:19, 23:12, 25:15, 36:21, 37:21, 38:19, 44:9, 44:15, 52:13, 55:1, 59:16, 60:9, 60:14, 61:23, 62:20, 74:20, 78:5, 91:3, 102:1, 102:5, 102:10, 102:21, 103:11, 103:13, 103:17, 104:22, 105:20, 105:24, 106:22, 106:23, 109:4, 110:16, 111:19, 112:21, 114:18, 114:23, 117:10, 117:16, 117:18, 117:22, 119:4, 120:6, 122:15
**issued** [3] - 44:8, 44:15, 50:22
**issues** [36] - 7:15, 10:23, 12:6, 13:3, 20:2, 21:7, 21:15, 27:14, 74:23, 77:24, 78:2, 90:18, 95:19,

96:3, 96:16, 97:4, 100:5, 100:18, 106:19, 107:22, 112:4, 112:5, 112:6, 112:8, 112:9, 112:16, 112:23, 113:3, 113:4, 117:11, 117:14, 119:16, 119:18, 120:22, 121:12
**itself** [3] - 48:4, 99:15, 117:4

**J**

**JACK** [1] - 2:3
**Jack** [1] - 4:3
**JANTZI** [1] - 1:22
**Jantzi** [1] - 3:22
**January** [13] - 15:8, 17:5, 18:18, 20:22, 22:22, 44:20, 69:18, 75:10, 75:13, 90:9, 90:11, 118:20
**Jersey** [1] - 83:24
**job** [1] - 94:16
**joint** [2] - 16:24, 98:23
**jointly** [4] - 79:16, 80:9, 101:4, 119:7
**Judge** [14] - 1:15, 12:17, 13:11, 97:8, 97:12, 97:21, 99:6, 99:10, 99:24, 107:16, 108:12, 109:5, 112:1, 117:15
**judge** [9] - 4:19, 96:21, 98:10, 98:14, 98:18, 98:22, 99:3, 99:6, 99:8
**judgment** [2] - 44:7, 64:11
**judicial** [2] - 16:8, 91:5
**June** [4] - 17:18, 18:1, 19:8, 21:8
**jurisdiction** [4] - 12:12, 23:1, 44:6, 83:11
**jurisdictional** [1] - 15:11
**justification** [1] - 116:10

**K**

**Karen** [1] - 3:19

**KAREN** [1] - 1:19
**Karineh** [1] - 4:5
**KARINEH** [1] - 2:6
**keep** [2] - 5:9, 15:12
**KELLER** [5] - 1:19, 1:19, 3:18, 110:15, 115:21
**Keller** [5] - 3:17, 3:19, 110:14, 116:24
**Khachatourian** [17] - 4:5, 4:7, 5:24, 49:20, 58:13, 58:23, 59:6, 60:10, 61:16, 63:21, 69:1, 76:8, 76:24, 80:18, 86:14, 87:19, 111:21
**KHACHATOURIAN** [66] - 2:6, 6:5, 7:21, 8:1, 9:11, 10:16, 11:3, 11:23, 12:4, 13:14, 13:17, 14:4, 14:19, 16:2, 16:5, 16:16, 16:18, 17:13, 17:16, 21:23, 22:17, 24:14, 26:3, 27:4, 27:22, 28:5, 30:22, 31:3, 31:15, 37:7, 39:6, 40:3, 40:13, 40:18, 41:22, 42:7, 42:13, 43:24, 44:16, 46:4, 46:10, 46:13, 87:21, 89:2, 90:6, 92:24, 93:17, 95:5, 95:21, 101:18, 102:22, 104:1, 104:12, 104:16, 109:10, 110:9, 112:2, 112:24, 114:8, 115:5, 115:13, 115:16, 118:8, 118:11, 121:9, 122:9
**Khachatourian's** [3] - 47:12, 48:24, 57:6
**kind** [20] - 4:17, 4:23, 5:15, 9:7, 16:12, 22:1, 22:6, 22:10, 22:11, 25:17, 25:20, 40:16, 44:3, 84:11, 99:16, 102:18, 106:5, 120:9
**kinds** [1] - 117:14
**King** [1] - 1:12
**knock** [1] - 81:7
**knowing** [4] - 12:10, 32:5, 32:6, 32:7
**knowledge** [1] - 75:15

**L**

**lack** [3] - 9:5, 9:13, 68:13
**laid** [1] - 106:17
**language** [3] - 51:5, 78:18, 78:19
**largely** [1] - 30:5, 63:21, 81:3
**largest** [1] - 20:3
**last** [4] - 31:21, 46:7, 47:4, 64:22
**lastly** [2] - 67:19, 98:8
**late** [1] - 54:3
**latter** [2] - 17:13, 84:15
**law** [4] - 6:2, 33:21, 44:2, 115:1
**lawyer** [1] - 53:2
**lawyers** [1] - 45:18
**layer** [1] - 63:23
**lead** [1] - 86:5
**learn** [1] - 92:22
**learned** [1] - 69:7
**least** [22] - 7:20, 9:9, 22:8, 25:14, 27:14, 43:17, 46:6, 47:15, 52:23, 67:24, 70:21, 70:22, 82:16, 90:19, 100:7, 102:18, 104:20, 106:11, 119:2, 119:23, 120:7, 121:21
**leave** [6] - 5:6, 16:15, 70:13, 95:4, 117:1, 122:3
**left** [2] - 6:3, 85:4
**legal** [1] - 74:20
**legally** [1] - 6:23
**legitimate** [2] - 82:1, 105:6
**less** [3] - 113:20, 114:15, 116:20
**letter** [4] - 19:1, 98:24, 99:5, 112:22
**letting** [1] - 94:15
**level** [9] - 51:24, 58:16, 73:2, 73:4, 73:6, 74:4, 74:24, 81:20, 93:18
**leverage** [1] - 81:19
**license** [20] - 8:11, 8:18, 20:19, 50:23, 52:4, 55:4, 55:6, 55:8, 55:24, 56:13, 57:17, 72:1, 72:7, 72:8, 76:16, 89:8, 89:9, 105:12, 112:6, 120:24
**licensee** [21] - 6:13, 7:18, 8:6, 8:12, 8:18, 8:24, 51:19, 52:8, 54:22, 55:14, 55:17, 55:22, 56:2, 56:7, 56:17, 72:4, 76:19, 82:9, 95:7, 103:9, 105:10
**licensing** [1] - 52:11
**light** [5] - 5:12, 22:12, 88:24, 103:11, 109:21
**likelihood** [1] - 92:20
**likely** [17] - 4:15, 4:21, 23:24, 24:10, 27:13, 27:18, 30:9, 31:9, 37:10, 44:8, 44:15, 65:4, 92:22, 93:2, 93:10, 97:20, 117:21
**limitations** [1] - 94:22
**limited** [3] - 69:17, 106:5, 116:20
**line** [3] - 20:5, 35:17, 48:8
**literally** [1] - 39:16
**litigants** [1] - 41:4
**litigation** [15] - 15:21, 49:1, 49:4, 49:11, 58:21, 59:5, 80:14, 80:20, 82:10, 84:23, 86:20, 87:3, 87:7, 88:4, 88:14
**live** [1] - 119:19
**LLC** [57] - 1:3, 3:4, 3:20, 15:6, 16:23, 24:20, 24:22, 35:14, 38:7, 38:15, 40:6, 40:8, 40:15, 41:17, 42:10, 43:11, 43:12, 45:20, 48:17, 50:16, 50:21, 51:24, 52:2, 52:16, 53:6, 53:17, 65:19, 66:2, 66:10, 66:12, 66:14, 66:22, 67:8, 69:14, 71:11, 71:16, 72:16, 72:22, 73:8, 73:24, 76:22, 79:4, 79:8, 79:16, 84:4, 86:4, 87:4, 88:17, 89:14, 89:18, 112:21, 113:13, 114:5, 114:19, 115:9
**LLP** [4] - 1:19, 1:21, 2:2, 2:5
**local** [2] - 72:13, 104:3
**located** [1] - 84:1
**look** [27] - 21:18, 27:8, 27:21, 30:17, 33:21, 38:4, 38:20, 39:11, 39:18, 39:19, 40:14, 40:19, 43:21, 44:10, 44:11, 54:20, 62:16, 67:21, 67:23, 74:12, 80:9, 80:11, 81:15, 88:12, 91:16, 92:12, 122:14
**looked** [1] - 81:17
**looking** [7] - 39:21, 50:4, 65:3, 65:5, 80:22, 81:12, 106:2
**looks** [2] - 10:5, 108:17
**lose** [2] - 45:24, 74:15
**losing** [1] - 22:24
**lost** [1] - 56:6
**love** [1] - 33:4
**low** [1] - 29:15
**lower** [3] - 81:12, 91:23, 92:1

**M**

**magistrate** [6] - 98:10, 98:18, 98:22, 99:3, 99:5, 99:8
**main** [2] - 100:8, 118:19
**majority** [1] - 41:12
**makers** [9] - 72:21, 72:22, 73:23, 73:24, 74:4, 82:17, 83:10, 84:4, 84:10
**management** [11] - 3:11, 4:17, 37:5, 53:12, 73:3, 73:5, 73:6, 96:3, 96:11, 97:1, 97:17
**manages** [1] - 81:7
**manufacture** [1] - 50:13
**manufacturing** [2] - 53:20, 113:18
**mappings** [1] - 64:18
**March** [4] - 108:3, 108:4, 108:8, 108:9
**marked** [2] - 88:7, 89:3
**marketing** [2] - 47:22, 47:23
**marketplace** [9] - 47:24, 49:17, 50:4, 50:5, 66:13, 81:4, 81:11, 81:22, 82:7
**Markman** [8] - 97:22, 107:23, 108:3, 118:15, 118:23, 119:2, 119:10, 120:10
**marriage** [1] - 71:22
**match** [1] - 107:18
**material** [1] - 28:16
**matter** [17] - 3:4, 4:21, 5:1, 5:7, 9:17, 27:17, 28:10, 33:15, 48:17, 61:15, 94:13, 96:9, 97:18, 98:8, 99:7, 104:24, 123:12
**matters** [2] - 9:19, 97:22
**mean** [16] - 14:23, 22:3, 28:22, 29:16, 31:7, 31:16, 34:5, 37:13, 38:3, 38:11, 38:12, 39:8, 95:9, 113:8, 113:23, 114:12
**meaningful** [1] - 121:23
**means** [21] - 26:9, 26:15, 29:11, 31:24, 32:5, 63:22, 64:1, 64:2, 64:8, 65:2, 91:1, 91:4, 91:7, 91:11, 91:17, 92:2, 92:4, 94:7, 94:22, 96:24, 97:3
**meant** [2] - 79:22, 90:2
**meantime** [1] - 60:4
**meat** [1] - 33:12
**memorandum** [1] - 12:16
**memorialized** [1] - 16:6
**mention** [4] - 11:18, 13:23, 25:1, 118:1
**mentioned** [2] - 90:13, 112:21
**mentioning** [1] - 40:8
**mercy** [1] - 11:1
**merge** [5] - 20:18, 50:15, 51:4, 52:19
**merged** [13] - 41:17, 41:23, 42:2, 42:3, 42:8, 42:10, 51:2, 52:17, 53:16, 53:24, 54:3, 54:16, 84:3
**merger** [23] - 50:17, 51:6, 51:7, 51:9, 51:10, 51:22, 52:1, 52:18, 52:21, 53:3,

53:15, 54:11, 69:19, 71:17, 73:1, 73:10, 76:12, 80:10, 82:2, 82:4, 84:12, 100:19
**merges** [1] - 42:10
**merits** [1] - 120:12
**mess** [2] - 88:8, 95:6
**message** [1] - 21:6
**Michael** [1] - 4:6
**MICHAEL** [1] - 2:3
**mid** [1] - 76:7
**middle** [2] - 100:11, 116:6
**midst** [1] - 4:22
**might** [13] - 8:3, 17:12, 27:9, 30:13, 41:11, 61:3, 61:5, 62:8, 64:13, 73:17, 93:15, 104:11, 106:13
**million** [2] - 35:1, 36:7
**mind** [1] - 62:22
**minimum** [1] - 27:21
**minor** [1] - 29:8
**minute** [1] - 117:10
**minutes** [11] - 4:14, 5:9, 6:1, 6:3, 46:7, 47:4, 85:4, 87:20, 87:23, 96:1, 96:8
**miscommunication** [4] - 57:15, 57:19, 57:20, 115:24
**misremember** [1] - 77:7
**miss** [1] - 117:5
**missed** [2] - 62:23, 108:21
**missing** [1] - 108:22
**misspoke** [1] - 76:23
**misspoken** [1] - 83:21
**mistaken** [2] - 32:3, 72:15
**mistakenly** [1] - 60:10
**mistaking** [1] - 77:7
**mitigate** [1] - 22:11
**model** [1] - 110:7
**mom** [1] - 15:7
**moment** [2] - 47:9, 52:16
**Monday** [1] - 8:14
**month** [5] - 31:21, 71:14, 118:16, 118:23, 119:3
**months** [16] - 14:2, 17:5, 20:7, 22:2, 22:20, 25:24, 27:19, 37:14, 37:15, 49:19, 59:18, 68:3, 68:9,

89:23, 97:16, 102:4
**moreover** [1] - 23:3
**Morris** [3] - 4:3, 4:5, 4:6
**MORRIS** [2] - 2:2, 2:5
**most** [8] - 20:4, 25:6, 31:9, 44:4, 47:20, 58:19, 59:11, 107:8
**mostly** [1] - 20:4
**motion** [100] - 5:20, 6:9, 7:6, 7:12, 9:5, 9:7, 9:12, 9:17, 10:14, 11:19, 12:1, 12:7, 13:5, 14:14, 15:2, 15:4, 16:24, 17:2, 17:3, 17:4, 18:3, 18:8, 18:10, 18:13, 18:17, 19:15, 20:22, 20:24, 24:21, 25:9, 25:10, 25:17, 31:4, 31:6, 32:4, 32:15, 33:1, 33:11, 34:2, 35:15, 35:16, 35:18, 37:9, 37:20, 38:14, 40:5, 40:11, 41:21, 44:18, 44:19, 45:21, 46:1, 49:21, 58:14, 65:12, 65:13, 67:6, 68:3, 68:17, 68:22, 68:23, 69:2, 69:5, 69:6, 69:10, 69:12, 69:16, 70:3, 70:14, 71:15, 74:10, 74:15, 74:19, 74:24, 75:4, 75:5, 75:9, 75:21, 76:4, 76:21, 77:1, 77:9, 77:15, 78:7, 85:10, 86:18, 90:5, 90:7, 90:10, 95:16, 100:5, 100:6, 101:24, 102:11, 102:19, 104:21, 105:5
**motion-related** [1] - 25:17
**motions** [54] - 3:8, 4:13, 4:15, 5:11, 5:12, 5:14, 5:22, 6:7, 6:10, 8:8, 9:3, 11:20, 15:23, 19:4, 19:13, 19:22, 23:23, 30:23, 31:2, 31:15, 31:17, 36:24, 41:15, 44:22, 47:8, 56:11, 57:8, 57:11, 58:3, 58:9, 58:12, 66:1, 85:10, 85:23, 86:6, 98:4, 98:6, 98:7, 98:15, 98:21, 99:19,

99:22, 100:3, 100:10, 100:13, 100:22, 101:23, 103:21, 106:7, 106:14, 108:5, 117:11
**mount** [1] - 29:4
**mounting** [2] - 29:5, 34:15
**move** [25] - 21:14, 26:11, 32:15, 34:8, 36:14, 36:23, 37:9, 47:15, 60:22, 67:22, 68:11, 70:20, 71:3, 71:5, 72:10, 72:16, 74:10, 74:17, 95:15, 100:3, 100:15, 106:23, 110:11, 116:10, 118:18
**moved** [4] - 16:21, 35:19, 76:19, 89:20
**movent** [1] - 5:18
**movents** [1] - 5:14
**moves** [4] - 97:11, 117:16, 117:17, 119:22
**moving** [13] - 53:13, 58:4, 67:16, 68:7, 68:10, 68:12, 68:13, 76:12, 84:22, 100:20, 119:2, 119:5, 121:4
**MR** [56] - 4:2, 46:18, 46:21, 47:1, 49:6, 51:3, 52:22, 54:1, 54:17, 54:23, 55:18, 56:8, 56:18, 56:22, 57:2, 58:11, 60:17, 60:24, 61:14, 62:6, 62:19, 64:9, 64:21, 65:17, 66:4, 67:4, 68:18, 69:9, 70:16, 71:7, 72:23, 74:2, 74:22, 75:14, 76:6, 77:10, 77:19, 77:21, 78:3, 78:17, 80:15, 82:21, 83:16, 84:17, 85:12, 86:12, 87:16, 101:15, 104:23, 105:17, 106:15, 106:24, 118:3, 118:12, 120:18, 122:6
**MS** [68] - 3:18, 6:5, 7:21, 8:1, 9:11, 10:16, 11:3, 11:23, 12:4, 13:14, 13:17, 14:4, 14:19, 16:2, 16:5, 16:16, 16:18,

17:13, 17:16, 21:23, 22:17, 24:14, 26:3, 27:4, 27:22, 28:5, 30:22, 31:3, 31:15, 37:7, 39:6, 40:3, 40:13, 40:18, 41:22, 42:7, 42:13, 43:24, 44:16, 46:4, 46:10, 46:13, 87:21, 89:2, 90:6, 92:24, 93:17, 95:5, 95:21, 101:18, 102:22, 104:1, 104:12, 104:16, 109:10, 110:9, 110:15, 112:2, 112:24, 114:8, 115:5, 115:13, 115:16, 115:21, 118:8, 118:11, 121:9, 122:9
**muddying** [1] - 74:5
**multiple** [1] - 24:24
**multitude** [1] - 24:15
**must** [2] - 19:8, 78:9

## N

**name** [5] - 39:7, 41:7, 41:10, 41:11, 78:23
**named** [2] - 50:20, 71:12
**narrow** [2] - 66:6, 66:7
**naturally** [2] - 5:3, 49:14
**near** [3] - 4:10, 53:3, 59:4
**necessarily** [9] - 14:7, 37:3, 62:9, 63:12, 63:20, 64:2, 64:15, 69:21, 94:1
**necessary** [1] - 9:13
**need** [16] - 6:4, 32:16, 40:19, 62:9, 68:11, 85:7, 87:6, 103:20, 106:13, 109:1, 114:7, 120:7, 120:10, 121:14, 122:1, 122:4
**needed** [1] - 62:1
**needs** [5] - 6:8, 6:11, 9:22, 95:12, 114:16
**negotiations** [1] - 52:5
**never** [6] - 18:17, 19:2, 19:3, 37:19, 69:12, 75:6
**New** [3] - 83:23, 87:22, 123:2

**new** [17] - 12:15, 17:23, 20:16, 21:19, 22:3, 23:11, 45:18, 73:12, 73:18, 80:23, 81:6, 81:7, 81:15, 82:19, 84:12, 87:9, 119:10
**newly** [1] - 105:20
**news** [1] - 93:12
**next** [7] - 14:2, 25:24, 52:13, 83:17, 101:22, 107:3, 107:6
**Nexus** [1] - 20:9
**Nichols** [2] - 4:3, 4:6
**NICHOLS** [1] - 2:2
**Nicole** [1] - 3:22
**NICOLE** [1] - 1:22
**non** [8] - 11:7, 28:9, 61:17, 61:18, 65:8, 65:19, 72:6, 114:13
**non-infringement** [2] - 61:17, 61:18
**non-instituted** [1] - 65:8
**non-operating** [1] - 72:6
**non-opposition** [1] - 11:7
**non-party** [1] - 65:19
**non-practicing** [1] - 114:13
**None** [1] - 118:3
**nonetheless** [1] - 38:12, 88:12
**norm** [1] - 111:24
**normal** [3] - 23:4, 111:7, 111:16
**normally** [4] - 99:18, 99:23, 100:9
**Notary** [1] - 123:8
**note** [1] - 24:4
**noted** [3] - 27:12, 56:12, 59:6
**notes** [2] - 85:23, 123:10
**nothing** [15] - 19:21, 22:7, 38:1, 38:23, 39:1, 59:7, 62:11, 64:5, 86:15, 86:17, 86:20, 87:1, 90:1, 118:8
**notice** [9] - 10:10, 10:24, 11:6, 11:7, 11:11, 16:8, 90:8, 90:12
**noting** [1] - 64:23
**November** [7] - 15:6,

17:22, 18:2, 70:16, 71:4, 76:11

**nowhere** [2] - 18:15, 31:22

**NPE** [2] - 35:13, 35:17

**number** [12] - 3:6, 14:2, 22:2, 28:1, 40:9, 60:11, 68:9, 96:16, 116:3, 116:19, 121:21

**numbers** [1] - 116:14

## O

**objectively** [1] - 109:18

**obtained** [1] - 107:15

**obvious** [1] - 74:24

**obviously** [5] - 11:16, 109:17, 113:12, 114:9, 116:18

**Obviously** [1] - 98:5

**occur** [6] - 61:5, 77:6, 77:8, 107:17, 108:3, 108:6

**occurred** [3] - 6:10, 54:14, 77:4

**occurring** [2] - 37:5, 84:16

**occurs** [1] - 26:1

**October** [12] - 13:9, 19:9, 21:9, 24:2, 24:7, 31:21, 35:6, 35:23, 37:13, 37:14, 61:3, 62:17

**odd** [1] - 59:1

**OF** [2] - 1:1, 123:5

**offer** [1] - 18:21

**offered** [2] - 31:20

**offerings** [1] - 81:21

**often** [1] - 37:6

**once** [1] - 37:9

**one** [60] - 3:8, 11:1, 14:9, 18:5, 18:11, 19:18, 20:8, 21:10, 24:19, 25:20, 29:8, 30:7, 31:21, 34:8, 34:10, 34:15, 38:21, 39:9, 40:1, 40:9, 41:24, 42:13, 43:17, 43:20, 44:8, 48:23, 49:13, 50:20, 62:21, 62:23, 65:24, 70:4, 73:17, 78:8, 78:10, 79:22, 79:23, 82:10, 86:16, 86:23, 89:22, 91:18, 92:1, 94:10, 95:5, 97:2, 98:1,

98:16, 98:21, 99:15, 100:13, 102:23, 103:11, 103:13, 113:2, 113:7, 113:13, 118:13, 119:22

**ones** [3] - 73:16, 113:18, 119:19

**ongoing** [3] - 48:14, 67:7, 75:8

**open** [9] - 9:24, 104:7, 112:4, 112:9, 117:2, 120:19, 121:10

**opening** [1] - 57:6

**operating** [6] - 48:7, 48:8, 53:6, 53:11, 72:6, 82:1

**operative** [4] - 53:24, 54:2, 54:8, 54:15

**opinion** [1] - 12:21

**opportunities** [1] - 11:12

**oppose** [5] - 7:5, 7:9, 7:11, 9:18, 20:1

**opposed** [3] - 7:16, 65:22, 72:21

**opposing** [5] - 7:19, 15:19, 75:2, 105:13, 121:11

**opposite** [1] - 35:9

**opposition** [17] - 7:5, 10:5, 10:7, 10:20, 10:23, 11:7, 11:8, 11:13, 15:4, 24:19, 32:4, 33:1, 37:23, 38:13, 40:5, 43:9, 56:11

**oppositions** [4] - 8:7, 19:4, 57:10, 85:17

**oral** [7] - 3:7, 4:12, 105:24, 106:8, 106:22, 122:16

**order** [27] - 4:12, 5:15, 11:9, 17:4, 17:16, 21:3, 33:13, 37:10, 44:7, 44:17, 58:12, 59:12, 97:6, 97:13, 97:15, 101:5, 103:13, 105:24, 106:8, 106:22, 107:15, 108:17, 112:17, 120:10, 122:16, 122:18

**order's** [1] - 20:6

**ordered** [1] - 90:10

**oriented** [2] - 63:22, 65:9

**originally** [5] - 15:5, 32:21, 45:3, 48:18,

87:22

**otherwise** [3] - 47:22, 88:20, 119:8

**ought** [2] - 70:3, 72:19

**outcome** [1] - 60:1

**outline** [1] - 88:13

**outright** [1] - 13:5

**outset** [3] - 6:6, 68:20, 85:14

**outside** [1] - 33:21

**overlap** [3] - 33:23, 65:9, 92:13

**own** [8] - 21:10, 45:20, 53:17, 68:14, 70:19, 71:2, 79:6, 82:9

**owned** [7] - 38:6, 38:7, 79:7, 79:13, 79:16, 80:9

**owner** [8] - 41:12, 51:20, 67:1, 72:5, 76:18, 81:7, 86:3, 105:9

**owner's** [1] - 94:1

**ownership** [7] - 50:21, 79:4, 100:19, 112:5, 120:22, 120:23, 121:12

**owns** [7] - 38:8, 66:10, 95:7, 95:10, 95:13, 103:7, 112:6

## P

**p.m** [4] - 1:10, 108:6, 108:7, 122:20

**pace** [1] - 35:19

**Page** [2] - 108:23, 112:17

**Pages** [1] - 123:9

**paid** [1] - 8:11

**Palo** [1] - 4:5

**paper** [1] - 56:10

**papers** [6] - 11:17, 12:10, 24:20, 38:1, 45:12, 88:5

**Paragraph** [3] - 110:17, 115:22, 116:7

**parcel** [1] - 110:2

**parent** [3] - 26:7, 28:23, 66:9

**part** [21] - 15:24, 30:16, 34:18, 41:16, 48:13, 50:17, 51:4, 52:2, 61:19, 64:19, 67:20, 72:8, 81:8, 82:7, 87:5, 87:13,

99:24, 105:4, 107:14, 109:4, 110:2

**participant** [2] - 81:18

**participate** [1] - 112:12

**particular** [3] - 37:1, 60:2, 83:1

**particularly** [7] - 24:17, 57:7, 101:23, 109:15, 109:23, 113:3, 121:16

**parties** [55] - 5:4, 5:6, 5:19, 9:20, 11:20, 24:16, 27:19, 28:21, 33:7, 37:24, 38:2, 38:3, 38:11, 38:12, 52:9, 55:23, 57:15, 57:20, 59:20, 65:6, 71:10, 75:9, 78:6, 79:2, 87:10, 96:19, 97:10, 98:12, 98:16, 98:19, 98:23, 99:14, 100:1, 100:24, 101:4, 102:6, 113:9, 114:11, 115:7, 115:8, 116:1, 116:14, 116:24, 117:6, 117:14, 117:18, 118:16, 119:6, 119:7, 120:5, 120:6, 120:9, 120:13, 121:2, 122:1

**partner** [5] - 50:5, 50:12, 71:17, 81:7, 81:13

**partners** [1] - 42:1

**party** [22] - 9:10, 9:20, 15:21, 24:21, 38:17, 44:5, 65:19, 71:12, 79:22, 80:21, 86:1, 89:14, 89:15, 95:14, 98:21, 113:2, 113:7, 114:5, 114:7, 114:20, 114:22, 121:22

**pass** [1] - 87:5

**past** [2] - 53:8, 94:15

**patent** [21] - 15:7, 26:7, 60:21, 61:20, 66:19, 67:1, 67:17, 70:11, 70:14, 70:24, 72:3, 72:5, 76:18, 86:3, 87:6, 93:24, 100:1, 100:19, 105:8, 109:5

**Patent** [2] - 26:6, 60:13

**patentable** [1] - 94:5

**patents** [37] - 6:13, 16:19, 17:22, 18:1, 20:18, 29:6, 29:7, 34:7, 34:12, 36:21, 38:8, 45:19, 45:20, 50:24, 51:19, 51:21, 54:22, 55:14, 59:16, 60:5, 68:2, 68:11, 68:14, 70:21, 71:2, 72:1, 76:10, 77:5, 77:13, 87:10, 95:11, 95:13, 105:9, 105:11, 113:13, 113:22

**pattern** [2] - 19:12, 23:15

**patterns** [1] - 15:1

**PAUL** [1] - 1:22

**Paul** [1] - 3:22

**peal** [1] - 110:3

**pending** [47] - 3:7, 7:7, 7:12, 12:2, 13:6, 13:16, 15:2, 17:11, 18:4, 18:6, 18:13, 19:16, 32:15, 38:14, 44:20, 44:22, 46:1, 49:21, 58:14, 59:3, 67:22, 68:23, 69:2, 69:5, 69:11, 69:16, 69:17, 71:15, 74:16, 75:1, 75:5, 77:15, 89:17, 90:7, 90:15, 90:20, 90:23, 91:13, 95:16, 99:20, 100:3, 100:6, 100:23, 101:24, 103:21, 106:7, 113:6

**people** [13] - 25:4, 34:7, 73:13, 73:18, 82:16, 82:23, 83:6, 83:15, 84:6, 88:16, 104:6, 121:14

**per** [2] - 4:14, 86:3

**perceived** [1] - 49:16

**percent** [7] - 6:1, 34:11, 38:7, 38:8, 66:10, 79:10

**percolating** [1] - 21:20

**perfect** [2] - 76:16, 118:21

**perfected** [1] - 62:10

**perfectly** [1] - 110:10

**performed** [1] - 62:10

**perhaps** [3] - 65:12, 68:19, 71:20

**Perhaps** [1] - 82:15

**period** [4] - 62:14, 67:9, 81:2, 100:12
**permission** [2] - 4:7, 88:10
**personal** [1] - 49:15
**personally** [2] - 51:15, 57:4
**persons** [1] - 84:12
**perspective** [4] - 24:9, 121:15, 122:5, 122:8
**pertinent** [1] - 109:17
**Philadelphia** [2] - 72:14, 83:22
**Phoenix** [1] - 81:5
**phrased** [1] - 11:6
**physically** [1] - 83:24
**pick** [1] - 96:1
**piece** [3] - 92:10, 116:10
**pieces** [1] - 100:20
**piercing** [1] - 74:6
**place** [18] - 13:1, 38:9, 44:18, 45:9, 51:15, 54:9, 59:14, 59:24, 60:4, 60:6, 69:13, 69:18, 71:14, 72:13, 76:11, 83:19, 83:23, 100:4
**Plainff** [1] - 65:21
**plaintiff** [26] - 6:14, 6:24, 15:13, 23:9, 38:24, 39:2, 39:8, 39:12, 39:21, 39:22, 39:24, 40:1, 40:7, 41:9, 41:18, 41:20, 42:12, 42:18, 43:5, 43:7, 43:10, 43:16, 78:19, 78:20, 103:5
**Plaintiff** [26] - 3:16, 8:22, 17:19, 19:17, 25:7, 30:1, 34:6, 34:16, 35:12, 38:6, 41:3, 42:12, 71:12, 78:8, 89:11, 93:10, 93:14, 103:2, 103:14, 109:24, 110:6, 110:13, 113:4, 115:19, 118:1, 120:3
**Plaintiff's** [24] - 6:15, 8:16, 8:21, 15:3, 24:4, 25:13, 25:18, 46:16, 60:22, 61:1, 61:23, 101:13, 104:19, 107:14, 107:19, 107:24, 109:13, 110:19, 116:8, 116:16,
117:23, 118:15, 120:14, 122:5
**plaintiffs** [3] - 39:17, 43:8, 43:10
**Plaintiffs** [17] - 1:5, 1:24, 3:20, 22:4, 22:6, 50:20, 59:14, 61:22, 65:21, 78:15, 82:19, 110:24, 116:22, 120:15, 120:19, 121:5, 121:17
**plan** [1] - 49:10
**play** [4] - 10:10, 43:4, 74:13, 84:13
**pleading** [2] - 8:10, 16:6
**pleadings** [3] - 42:5, 42:6, 42:7
**pleases** [2] - 12:1, 29:10
**plus** [18] - 26:9, 26:15, 29:11, 31:24, 32:5, 63:22, 64:1, 64:2, 64:8, 65:2, 91:1, 91:4, 91:7, 91:12, 91:17, 92:2, 94:7, 94:22
**point** [50] - 5:5, 13:7, 14:1, 16:14, 20:8, 26:15, 27:8, 28:23, 29:11, 29:19, 30:20, 30:22, 38:19, 38:23, 40:15, 43:20, 46:7, 48:10, 48:16, 49:22, 50:3, 53:15, 56:5, 57:14, 58:19, 60:7, 73:1, 75:23, 82:11, 86:16, 86:22, 86:24, 88:3, 89:3, 89:10, 92:3, 92:15, 93:8, 94:11, 97:12, 97:20, 100:11, 100:14, 102:3, 105:2, 111:15, 121:4, 122:2
**pointed** [2] - 49:20, 80:19
**points** [5] - 10:20, 58:8, 58:16, 68:24, 72:23
**policy** [1] - 80:19
**pop** [1] - 15:8
**portable** [1] - 92:2
**portfolio** [2] - 48:6, 48:14
**portion** [5] - 4:18, 58:22, 96:12, 98:24, 102:19
**portions** [1] - 5:1
**pose** [1] - 8:3
**position** [11] - 28:10, 54:24, 55:6, 55:8, 56:13, 66:13, 69:11, 85:20, 109:12, 109:20, 110:20
**possible** [1] - 50:11
**possibly** [2] - 75:24, 102:13
**posture** [1] - 21:5
**practicable** [1] - 58:5
**practical** [1] - 12:9
**practically** [1] - 13:20
**practice** [5] - 5:20, 50:24, 61:20, 110:20, 116:11
**practices** [1] - 48:7
**practicing** [1] - 114:13
**precedent** [1] - 41:6
**precise** [1] - 59:19
**precisely** [1] - 77:11
**prefer** [1] - 98:17
**preference** [1] - 100:2
**prejudice** [9] - 35:5, 40:15, 65:20, 66:1, 66:22, 66:24, 67:20, 89:16, 89:21
**prejudiced** [6] - 24:23, 35:9, 38:16, 40:6, 67:21, 68:12
**prejudicial** [1] - 116:22
**preliminary** [5] - 35:18, 67:3, 67:12, 67:14, 95:12
**prepare** [1] - 96:24
**prepared** [3] - 13:2, 61:23, 121:5
**presence** [1] - 9:4
**present** [1] - 11:14
**presentations** [1] - 122:14
**presently** [1] - 8:17
**press** [4] - 11:22, 42:2, 62:16, 64:20
**presumably** [2] - 113:15, 114:15
**presuming** [1] - 115:5
**pretrial** [1] - 108:8
**pretty** [3] - 13:24, 44:11, 117:22
**prevailing** [1] - 47:24
**preventing** [1] - 86:19
**preview** [1] - 29:15
**previous** [2] - 49:1, 67:8
**previously** [3] - 39:12, 79:7, 81:24
**primary** [5] - 48:4, 86:19, 86:22, 86:24, 105:13
**principle** [1] - 45:9, 72:12, 83:18
**principles** [1] - 51:7
**printed** [1] - 93:6
**Private** [2] - 45:5, 48:3
**privilege** [1] - 74:7
**problem** [4] - 21:15, 68:16, 102:17, 104:17
**proc** [1] - 41:3
**procedural** [4] - 21:5, 31:17, 37:2, 87:8
**Procedure** [1] - 3:10
**procedure** [2] - 99:12, 101:13
**procedures** [2] - 100:2, 109:5
**proceed** [10] - 5:2, 65:4, 72:19, 84:21, 87:11, 92:20, 93:11, 111:7, 111:9, 121:5
**proceeding** [10] - 57:23, 57:24, 69:3, 70:9, 70:11, 71:13, 72:3, 97:19, 107:11, 111:1
**proceedings** [16] - 3:9, 34:3, 50:1, 51:16, 58:14, 58:21, 59:3, 59:5, 60:2, 67:7, 67:17, 69:15, 75:8, 86:1, 109:22
**process** [9] - 24:5, 28:12, 51:6, 51:10, 53:4, 54:6, 71:8, 99:12, 111:15
**produce** [5] - 25:3, 30:3, 35:2, 103:14, 109:1
**produced** [7] - 88:5, 103:10, 103:22, 104:2, 104:3, 113:14
**producing** [2] - 34:19, 109:15
**product** [2] - 81:21, 113:14
**production** [2] - 30:7, 30:20
**products** [9] - 30:4, 49:9, 50:8, 50:9, 60:3, 110:23, 111:5, 113:18
**progress** [3] - 120:4,
120:15, 121:23
**prominent** [1] - 44:4
**prone** [1] - 94:24
**proofs** [2] - 63:23, 63:24
**properly** [4] - 55:9, 57:17, 69:12, 105:21
**property** [2] - 48:5, 50:18
**proportional** [1] - 114:17
**proposal** [2] - 108:1, 118:21
**proposals** [2] - 24:6, 107:19
**proposed** [8] - 59:12, 59:13, 62:12, 101:5, 108:17, 117:1, 117:4, 118:17
**prosecute** [1] - 35:11
**protect** [2] - 40:22, 41:4
**protected** [1] - 88:21
**protective** [1] - 97:6
**provide** [8] - 28:15, 52:12, 89:7, 89:10, 105:11, 106:2, 106:3, 106:18
**provided** [1] - 6:21
**PTAB** [52] - 21:9, 26:24, 29:23, 31:19, 34:9, 34:12, 34:21, 35:7, 36:3, 36:11, 37:3, 58:21, 59:4, 59:15, 60:1, 60:9, 60:14, 60:20, 63:3, 63:13, 64:5, 64:18, 65:1, 65:2, 65:7, 65:10, 86:1, 90:15, 90:21, 91:3, 91:18, 92:15, 92:23, 92:24, 93:3, 93:13, 93:18, 94:2, 94:9, 94:15, 94:16, 94:17, 94:21, 95:1, 107:12, 109:12, 109:16, 109:19, 109:21, 112:5, 113:5
**PTAB's** [6] - 61:11, 62:10, 63:11, 64:11, 91:9, 93:22
**PTO** [1] - 29:14
**Public** [1] - 123:8
**publications** [2] - 93:6, 95:2
**purpose** [5] - 15:20, 40:20, 42:21, 49:2, 105:2

**purposes** [9] - 42:11, 52:14, 57:22, 66:20, 80:3, 90:4, 96:23, 99:4, 102:5
**pursue** [8] - 32:7, 85:1, 87:6, 98:11, 99:8, 113:5, 113:12, 114:20
**pursuing** [1] - 87:3
**purview** [1] - 96:21
**push** [3] - 62:18, 110:2, 119:9
**put** [9] - 25:21, 36:9, 40:22, 57:3, 70:14, 109:11, 109:14, 109:22, 112:11
**puts** [1] - 113:23
**putting** [5] - 22:5, 25:3, 36:17, 85:22, 102:14

## Q

**quacks** [1] - 38:4
**quality** [1] - 92:8
**questionable** [1] - 63:10
**questions** [12] - 9:24, 14:9, 58:10, 58:17, 65:16, 77:23, 78:1, 89:1, 90:14, 101:12, 104:20, 120:21
**quick** [6] - 65:15, 71:23, 95:6
**quickly** [5] - 7:14, 16:20, 16:21, 47:15, 72:18
**quite** [4] - 47:3, 52:22, 83:3, 111:10
**quote** [1] - 39:17
**quotes** [1] - 86:16

## R

**raise** [4] - 13:4, 26:21, 112:9, 118:19
**raised** [4] - 103:18, 112:8, 118:13, 120:21
**rapidly** [2] - 72:3, 73:3
**rarely** [1] - 67:14
**rather** [4] - 70:5, 79:15, 81:17, 86:21
**reach** [1] - 64:2
**reached** [2] - 52:9, 57:16
**read** [3] - 12:10,

41:24, 64:13
**readily** [3] - 44:23, 47:20, 70:10
**reading** [1] - 108:16
**readings** [1] - 94:10
**reads** [1] - 39:11
**ready** [2] - 5:4
**real** [1] - 7:14
**really** [2] - 9:17, 15:15, 19:16, 19:21, 20:11, 21:5, 21:14, 23:8, 23:12, 30:10, 32:14, 41:23, 43:6, 59:7, 66:8, 80:21, 85:5, 91:2, 93:20, 94:18, 95:8, 95:14, 99:20, 108:24, 115:23, 117:15, 120:11
**reason** [17] - 7:3, 9:18, 10:17, 12:4, 15:21, 18:4, 22:18, 44:12, 49:7, 49:12, 71:21, 74:13, 74:18, 80:16, 82:13, 104:24, 118:19
**reasonable** [5] - 49:13, 62:20, 67:10, 109:18, 116:19
**reasons** [5] - 15:11, 63:5, 80:12, 83:1, 118:22
**rebuttal** [3] - 5:17, 46:7, 87:20
**recaption** [1] - 70:6
**receive** [1] - 66:23
**received** [1] - 7:1
**receivership** [2] - 48:2, 48:3
**receiving** [1] - 10:24
**recess** [2] - 96:4, 122:19
**recesss** [1] - 96:6
**recited** [1] - 94:2
**recognize** [5] - 56:10, 65:23, 66:5, 66:7, 68:21
**recognized** [2] - 57:5, 85:16
**recollection** [1] - 42:8
**record** [31] - 3:3, 3:15, 15:24, 46:3, 53:22, 54:12, 54:14, 54:20, 55:11, 55:12, 55:13, 55:20, 55:21, 56:4, 56:21, 63:14, 67:16, 73:21, 74:5, 74:21, 75:21, 81:24, 82:5, 87:1, 88:8, 88:24,

96:14, 103:1, 103:4, 103:8, 123:9
**recordation** [1] - 76:15
**recorded** [2] - 76:14, 77:13
**rectified** [1] - 68:4
**reexam** [2] - 18:13, 89:17
**reexamination** [2] - 7:13, 44:22
**reference** [1] - 88:20
**referenced** [2] - 47:13, 76:9
**referral** [3] - 96:20, 98:4, 99:10
**referred** [6] - 60:11, 61:17, 75:2, 96:23, 97:8, 98:8
**referring** [2] - 48:16, 105:14
**refers** [1] - 78:8
**refile** [1] - 20:23
**refiled** [2] - 18:20, 19:1
**refiles** [1] - 18:16
**refiling** [2] - 44:5, 69:19
**refused** [2] - 18:21, 18:22
**regard** [20] - 4:15, 25:16, 77:3, 86:9, 88:21, 96:19, 98:11, 99:14, 101:1, 101:24, 102:10, 103:21, 103:24, 106:22, 107:3, 107:22, 107:23, 108:1, 119:16, 120:16
**regarding** [5] - 40:12, 48:23, 52:10, 60:2, 60:5
**regardless** [6] - 30:2, 60:1, 60:4, 60:6, 60:19, 73:14
**regret** [1] - 77:11
**regularly** [1] - 61:19
**relate** [3] - 108:18, 117:11, 117:13
**related** [28] - 25:16, 25:17, 27:6, 27:14, 29:7, 29:24, 32:7, 32:17, 34:13, 34:14, 35:16, 40:1, 41:14, 60:8, 64:21, 79:19, 92:23, 93:12, 96:3, 96:15, 97:4, 97:6, 97:7, 97:14, 101:22,

111:20, 113:23, 117:6
**relatedly** [2] - 82:12, 86:24
**relatedness** [1] - 93:21
**relates** [5] - 13:21, 96:20, 106:6, 110:17, 111:11
**relating** [4] - 3:9, 30:18, 67:24, 100:18
**relationship** [2] - 6:20, 65:19
**relative** [1] - 108:19
**relatively** [2] - 53:3, 66:23
**releases** [1] - 42:2
**relevance** [1] - 94:19
**relevant** [11] - 15:2, 15:23, 58:20, 66:14, 77:3, 105:2, 105:19, 106:4, 106:6, 106:12, 107:7
**relief** [1] - 36:9
**relocated** [1] - 48:4
**rely** [1] - 55:12
**remain** [2] - 99:9, 112:16
**remainder** [2] - 64:5, 96:1, 99:9
**remained** [1] - 73:5
**remaining** [6] - 63:12, 78:2, 96:11, 100:2, 119:18, 121:12
**remains** [1] - 55:7, 113:15
**remind** [1] - 8:21
**removed** [1] - 57:13
**renders** [1] - 63:9
**repeatedly** [1] - 86:14
**reply** [1] - 43:21
**REPORTER** [1] - 123:5
**Reporter** [1] - 123:7
**represent** [1] - 51:11
**represented** [1] - 53:13
**request** [15] - 14:18, 16:8, 23:3, 30:19, 89:6, 99:2, 104:9, 111:19, 111:20, 113:1, 114:3, 115:6, 115:22, 116:8, 119:16
**requested** [1] - 90:12
**requesting** [1] - 90:8
**requests** [2] - 30:6,

112:18, 116:1
**require** [1] - 42:16
**required** [3] - 6:23, 33:24, 93:4
**requires** [1] - 39:2
**res** [1] - 92:1
**resolution** [12] - 29:16, 49:21, 58:3, 69:5, 91:21, 91:22, 91:23, 98:9, 120:19, 121:6, 121:10
**resolve** [7] - 9:3, 98:20, 99:22, 101:1, 106:13, 106:19, 119:13
**resolved** [5] - 12:23, 55:23, 112:10, 121:3, 121:13
**resources** [5] - 24:11, 30:14, 81:12, 91:6, 121:3
**respect** [22] - 9:16, 12:6, 19:15, 23:22, 27:10, 40:4, 53:8, 63:19, 64:12, 64:16, 65:6, 68:17, 78:6, 83:3, 90:6, 90:20, 90:24, 99:11, 100:4, 113:6, 121:1, 122:16
**respected** [2] - 41:14, 42:15
**respective** [2] - 47:5, 53:7
**respond** [4] - 23:4, 23:12, 28:7, 62:17
**responded** [4] - 6:17, 10:15, 19:2, 30:16
**respondent** [1] - 5:17
**responding** [2] - 33:10, 62:9
**response** [5] - 5:16, 7:2, 11:10, 85:9, 92:14
**responses** [2] - 30:6, 30:18, 61:7
**responsible** [1] - 50:13
**rest** [4] - 33:11, 41:12, 95:11, 113:14
**restructure** [1] - 53:1
**result** [1] - 66:11
**resulted** [2] - 51:9, 71:22
**resume** [1] - 48:11
**resurrection** [1] - 81:9
**retained** [1] - 79:8
**reversed** [1] - 19:7
**review** [11] - 34:10,

59:16, 59:17, 63:2, 63:4, 64:6, 69:2, 92:16, 103:13, 109:16, 110:21
**reviewed** [1] - 6:22
**reviewing** [1] - 91:6
**revised** [5] - 101:5, 119:8, 119:12, 122:15
**reward** [1] - 21:4
**rewarded** [1] - 21:21
**RFA's** [2] - 113:2, 116:2
**rights** [4] - 53:7, 70:24, 72:4, 87:6
**ripe** [2] - 36:11, 117:15
**rising** [1] - 81:5
**Robinson** [2] - 12:17, 13:11
**role** [3] - 96:14, 96:19, 98:20
**roles** [1] - 47:6
**room** [1] - 5:6
**Ropes** [1] - 3:21
**ROPES** [1] - 1:21
**roughly** [1] - 107:18
**round** [1] - 118:20
**Rule** [23] - 13:21, 14:8, 38:19, 42:11, 65:13, 67:6, 70:2, 70:13, 74:10, 78:6, 78:8, 80:17, 86:9, 86:18, 102:1, 102:6, 102:10, 102:12, 104:21, 105:2, 105:4, 105:19, 114:21
**rule** [21] - 7:8, 19:8, 21:9, 38:20, 38:23, 38:24, 39:2, 39:11, 39:21, 40:20, 40:22, 41:3, 78:18, 78:19, 79:21, 80:3, 80:8, 80:13, 86:18, 86:19, 104:3
**ruled** [3] - 17:1, 22:23, 31:8
**Rules** [2] - 3:10, 116:9
**rules** [5] - 36:6, 62:11, 67:18, 70:1, 116:21
**ruling** [4] - 7:10, 32:12, 33:16, 35:6
**running** [1] - 81:12

## S

**safe** [1] - 122:12

**sales** [7] - 50:13, 53:20, 109:1, 109:15, 110:23, 111:8, 111:12
**save** [1] - 6:4
**Saver** [9] - 15:7, 15:11, 32:22, 45:1, 45:7, 48:19, 49:3, 49:7, 49:23
**saw** [2] - 12:19, 50:11
**scenario** [1] - 61:6
**schedule** [34] - 62:12, 96:12, 96:17, 97:3, 97:5, 97:18, 98:2, 99:15, 99:17, 99:21, 99:24, 100:9, 100:22, 101:1, 101:3, 101:6, 101:21, 107:3, 107:5, 107:8, 107:9, 107:10, 107:13, 107:23, 108:1, 109:13, 111:7, 111:9, 117:1, 117:13, 118:15, 121:20, 122:15, 122:18
**scheduling** [15] - 19:23, 24:20, 59:12, 96:15, 96:23, 97:4, 97:7, 97:14, 98:3, 101:5, 108:17, 112:17, 117:5, 118:13, 119:24
**Schoenhard** [6] - 3:22, 46:17, 85:7, 86:8, 87:15, 118:2
**SCHOENHARD** [55] - 1:22, 46:18, 46:21, 47:1, 49:6, 51:3, 52:22, 54:1, 54:17, 54:23, 55:18, 56:8, 56:18, 56:22, 57:2, 58:11, 60:17, 60:24, 61:14, 62:6, 62:19, 64:9, 64:21, 65:17, 66:4, 67:4, 68:18, 69:9, 70:16, 71:7, 72:23, 74:2, 74:22, 75:14, 76:6, 77:10, 77:19, 77:21, 78:3, 78:17, 80:15, 82:21, 83:16, 84:17, 85:12, 86:12, 87:16, 101:15, 104:23, 105:17, 106:15, 106:24, 118:3, 120:18, 122:6
**seal** [4] - 5:2, 89:5,

104:14, 123:15
**Seattle** [3] - 45:4, 47:13, 47:18
**second** [20] - 3:9, 7:3, 15:18, 21:20, 60:7, 63:9, 71:5, 75:1, 89:13, 90:5, 91:21, 91:22, 91:23, 92:5, 92:7, 99:11, 102:15, 109:2, 111:19, 118:20
**secondly** [1] - 101:20
**secure** [1] - 15:22
**see** [20] - 6:22, 14:24, 19:11, 19:17, 28:17, 30:14, 36:23, 58:18, 65:8, 70:8, 91:2, 92:12, 93:19, 97:12, 102:17, 104:24, 110:17, 116:10, 117:7, 121:13
**seek** [3] - 34:9, 63:1, 67:3
**seeking** [3] - 55:19, 62:4, 110:4
**seem** [2] - 49:12, 67:9
**selling** [1] - 49:9
**send** [1] - 19:1
**sending** [1] - 21:5
**sense** [14] - 5:13, 44:13, 45:10, 47:14, 83:9, 84:7, 90:17, 90:18, 97:23, 100:21, 101:10, 102:6, 111:7, 112:10
**sensitive** [1] - 35:3
**separate** [13] - 5:19, 53:6, 53:11, 53:12, 53:18, 71:18, 71:19, 71:20, 79:3, 79:5, 79:11, 79:12, 103:17
**separately** [6] - 53:13, 59:10, 65:22, 65:24, 73:11, 87:9
**serve** [1] - 62:7
**set** [6] - 19:10, 65:24, 79:6, 96:17, 121:19, 123:14
**settlement** [2] - 120:6, 120:12
**seven** [14] - 26:9, 27:2, 27:11, 27:15, 30:2, 31:14, 32:10, 33:19, 34:13, 60:11, 65:2, 111:5, 116:9
**several** [6] - 17:4, 22:20, 37:22, 71:14,

77:14, 81:2
**shadow** [1] - 95:10
**shaking** [1] - 117:7
**share** [5] - 29:7, 58:2, 66:10, 73:2, 79:10
**shared** [1] - 72:8
**Shaw** [1] - 3:19
**SHAW** [1] - 1:19
**shed** [2] - 88:24, 103:10
**shell** [4] - 38:10, 42:19, 75:3, 80:7
**shoes** [1] - 85:21
**shopping** [6] - 41:5, 43:19, 44:3, 44:13, 45:11, 74:12
**Short** [1] - 96:6
**short** [11] - 4:16, 5:7, 14:17, 89:8, 95:23, 96:4, 98:23, 105:24, 106:22, 122:15, 122:18
**shortage** [1] - 57:4
**shortly** [2] - 17:20, 59:10
**show** [1] - 93:3
**shows** [1] - 55:11
**sick** [1] - 10:21
**side** [32] - 3:14, 4:1, 4:14, 6:1, 6:22, 7:19, 10:20, 35:9, 46:16, 74:11, 78:12, 83:2, 89:22, 98:17, 100:7, 101:14, 102:14, 102:17, 102:21, 103:19, 104:10, 106:1, 106:11, 106:16, 111:23, 116:14, 117:24, 118:6, 120:14, 121:8
**side's** [1] - 92:15
**sides** [4] - 115:3, 117:7, 118:24, 120:1
**significant** [1] - 58:22
**similar** [1] - 29:12
**similarities** [1] - 29:22
**simple** [2] - 110:20, 113:21
**simplification** [7] - 20:12, 21:15, 23:19, 23:22, 29:23, 90:18, 119:4
**simplified** [2] - 36:5, 90:22
**simplify** [2] - 20:2, 21:7

**simply** [3] - 80:6, 109:11, 117:3
**single** [1] - 53:16
**sit** [1] - 5:20
**situation** [11] - 11:4, 13:23, 21:3, 32:13, 34:5, 36:10, 42:21, 45:1, 59:3, 80:20, 84:15
**six** [4] - 25:24, 27:19, 37:14, 37:15
**size** [1] - 5:13
**skirt** [1] - 42:22
**skirted** [1] - 21:11
**slew** [1] - 94:19
**slightly** [2] - 79:8, 119:10
**slow** [1] - 87:24
**small** [3] - 15:7, 34:15, 118:14
**software** [5] - 94:4, 94:6, 94:12, 94:13, 94:23
**solely** [3] - 79:7, 80:2, 82:11
**someone** [1] - 80:1
**sometime** [1] - 70:15
**sometimes** [3] - 120:6, 120:9, 120:12
**somewhat** [5] - 25:8, 27:14, 30:1, 59:1, 80:1
**somewhere** [2] - 4:22, 97:16
**sort** [1] - 19:11
**sought** [2] - 67:13, 84:20
**sound** [1] - 64:11
**sounds** [1] - 56:20
**source** [4] - 28:17, 34:19, 36:8, 36:15
**space** [5] - 47:21, 50:7, 66:6, 66:8, 119:6
**speaking** [1] - 121:14
**specializing** [1] - 50:9
**specific** [6] - 91:7, 93:4, 94:3, 94:4, 94:5, 102:9
**specifically** [2] - 11:19, 61:10
**specification** [1] - 29:8
**speculation** [1] - 74:6
**spent** [1] - 34:24
**splitting** [1] - 116:5
**spoken** [1] - 13:8

**Stacy** [3] - 123:7, 123:19, 123:20
**stage** [8] - 19:19, 19:24, 34:3, 37:4, 55:15, 96:18, 97:24, 99:17
**stages** [2] - 58:20, 59:6
**stand** [5] - 21:12, 33:4, 52:15, 96:4, 122:19
**standard** [2] - 110:20, 110:22
**standing** [10] - 6:14, 6:16, 7:15, 7:17, 9:5, 9:13, 25:9, 31:5, 55:20, 95:18
**stands** [1] - 85:20
**Stark** [4] - 97:8, 97:21, 99:10, 100:1
**Stark's** [5] - 97:12, 107:16, 108:12, 109:5, 112:1
**start** [6] - 3:16, 14:17, 14:20, 34:17, 47:14, 104:6
**started** [5] - 24:7, 30:11, 47:17, 51:23, 73:2
**starting** [2] - 13:22, 63:8
**State** [1] - 123:1
**state** [6] - 12:17, 45:12, 55:13, 85:1, 86:13, 91:19
**statement** [1] - 90:1
**states** [1] - 103:8
**STATES** [1] - 1:1
**States** [1] - 1:15
**stating** [1] - 8:10
**status** [10] - 9:19, 12:15, 13:11, 52:12, 52:21, 56:6, 106:5, 106:18, 120:24, 121:11
**stay** [91] - 3:8, 7:6, 7:12, 12:2, 12:6, 12:24, 13:1, 13:6, 14:18, 15:2, 16:23, 17:7, 17:12, 18:3, 18:6, 18:13, 18:17, 18:18, 18:21, 18:23, 19:15, 20:10, 20:23, 20:24, 21:11, 22:22, 23:18, 23:23, 24:22, 24:23, 30:9, 32:4, 32:15, 33:1, 33:14, 33:18, 34:2, 35:20, 36:11, 37:13, 38:14,

40:5, 40:6, 40:12, 44:17, 44:18, 44:20, 44:22, 45:22, 46:1, 58:14, 59:2, 65:12, 67:22, 68:2, 68:17, 68:22, 68:23, 69:2, 69:4, 69:6, 69:10, 69:13, 69:15, 69:16, 74:16, 75:1, 75:5, 75:21, 76:4, 76:22, 77:2, 77:9, 77:15, 89:15, 89:20, 89:22, 89:23, 90:5, 90:7, 90:10, 95:16, 95:17, 98:5, 98:6, 100:4, 100:5, 100:23, 101:24, 102:13
**stayed** [21] - 12:8, 17:3, 17:20, 17:22, 19:18, 22:21, 23:24, 24:3, 24:4, 24:13, 31:4, 31:5, 31:8, 31:12, 49:20, 70:7, 75:7, 89:17, 90:21, 94:14, 100:14
**staying** [2] - 20:1, 20:8
**stays** [1] - 64:5
**stenographic** [1] - 123:10
**step** [1] - 111:3
**still** [15] - 9:1, 9:10, 17:11, 27:7, 36:2, 36:14, 37:11, 37:13, 41:10, 41:11, 94:4, 102:14, 103:7, 113:16, 115:1
**stipulate** [1] - 18:20
**stipulated** [4] - 16:23, 35:20, 44:17, 89:14
**stomach** [1] - 10:22
**stop** [2] - 15:17, 79:22
**store** [1] - 15:8
**story** [1] - 47:11
**strategy** [1] - 43:9
**stream** [4] - 92:5, 92:6, 92:7, 92:8
**streaming** [1] - 29:15
**streams** [1] - 91:24
**Street** [1] - 1:12
**strength** [1] - 92:18
**strong** [3] - 47:19, 50:11, 67:15
**stronger** [1] - 49:4
**strongly** [1] - 19:13
**structural** [1] - 64:17
**structure** [7] - 24:18, 26:14, 91:15, 92:9, 93:4, 93:19, 103:6

**stuff** [4] - 34:20, 54:10, 54:12, 104:7
**subject** [5] - 26:5, 52:5, 53:9, 64:24, 103:23
**submission** [3] - 107:21, 108:14, 109:6
**submissions** [1] - 122:17
**submit** [11] - 31:17, 37:8, 37:18, 44:21, 95:17, 103:12, 104:9, 104:10, 104:13, 117:1, 119:12
**submitted** [2] - 17:17, 107:14
**Subparagraph** [4] - 109:3, 111:21, 115:20, 119:13
**Subpart** [1] - 116:7
**subsequently** [4] - 10:9, 16:7, 17:4, 57:12
**subsidiary** [2] - 66:9, 79:13
**substance** [1] - 93:13
**substantial** [1] - 12:20
**substantive** [6] - 49:24, 92:18, 98:15, 98:20, 100:7, 120:4
**substantively** [3] - 79:1, 90:3, 112:19
**succeed** [2] - 36:3, 82:7
**sudden** [1] - 32:24
**sue** [2] - 39:4, 80:22
**sued** [3] - 15:11, 38:22, 45:7
**sufficient** [1] - 52:10
**suggest** [4] - 69:1, 87:2, 87:12, 93:14
**suggested** [3] - 4:12, 80:21, 83:22
**suggesting** [1] - 78:20
**suggestion** [1] - 81:22
**suggests** [1] - 71:21
**suing** [1] - 49:7
**suit** [18] - 6:13, 6:15, 15:7, 16:19, 18:19, 39:1, 39:3, 48:15, 49:18, 49:20, 51:19, 51:21, 54:22, 55:15, 86:21, 95:14, 105:9, 105:11
**summer** [2] - 54:3,

76:7
**super** [1] - 95:6
**supplement** [1] - 74:11
**supplemental** [1] - 6:24
**support** [1] - 74:21
**supported** [1] - 41:15
**suppose** [1] - 111:20
**supposed** [1] - 89:19
**surely** [4] - 28:3, 51:12, 61:21, 64:11
**survive** [2] - 35:24, 36:4
**suspect** [1] - 12:9
**synergy** [1] - 81:20

## T

**table** [1] - 4:4
**tactical** [1] - 18:10
**tag** [1] - 121:24
**talks** [1] - 29:14
**target** [2] - 71:17, 82:1
**tax** [1] - 83:1
**technical** [1] - 28:15
**technically** [2] - 9:10, 114:12
**tends** [1] - 116:2
**term** [2] - 14:17, 80:17
**terminated** [6] - 8:19, 55:5, 55:9, 56:1, 56:16, 57:18
**termination** [2] - 52:3, 56:12
**terminology** [1] - 54:5
**terms** [29] - 21:17, 22:24, 25:2, 25:3, 27:12, 30:21, 38:19, 43:15, 43:18, 49:11, 51:14, 53:22, 55:11, 61:2, 64:12, 64:23, 65:3, 65:9, 66:17, 67:19, 72:18, 82:16, 89:8, 90:1, 101:12, 101:21, 120:5, 120:11, 120:16
**text** [1] - 98:24
**THE** [128] - 1:1, 1:1, 1:14, 3:1, 3:24, 4:9, 7:14, 7:23, 8:20, 10:4, 11:2, 11:21, 12:3, 13:10, 13:15, 13:20, 14:6, 15:17, 16:4, 16:10, 16:17, 17:9, 17:15, 21:17, 21:24, 23:19, 25:11, 27:1, 27:7, 27:24,

29:19, 31:1, 31:10, 36:22, 38:18, 39:9, 40:11, 40:14, 41:13, 42:5, 42:9, 43:17, 44:1, 45:23, 46:5, 46:12, 46:15, 46:20, 46:23, 49:2, 51:1, 52:14, 53:22, 54:10, 54:18, 55:10, 56:3, 56:15, 56:19, 56:23, 58:6, 60:15, 60:19, 61:2, 62:3, 62:15, 64:4, 64:20, 65:15, 65:18, 67:2, 67:19, 69:4, 70:12, 70:18, 72:20, 73:7, 74:9, 75:12, 76:2, 76:23, 77:17, 77:20, 77:22, 78:5, 79:18, 82:12, 83:5, 84:2, 85:3, 86:7, 87:14, 87:18, 88:19, 90:4, 92:14, 93:8, 95:3, 95:20, 95:23, 96:7, 101:16, 101:20, 103:16, 104:8, 104:15, 104:18, 105:16, 105:23, 106:21, 107:2, 110:6, 110:12, 111:18, 112:14, 114:1, 114:18, 115:11, 115:15, 115:18, 116:23, 118:5, 119:10, 119:1, 121:7, 121:18, 122:7, 122:11
**themselves** [3] - 3:14, 22:1, 22:6
**theory** [1] - 110:7
**thereafter** [4] - 17:21, 49:18, 50:2, 51:22
**therefore** [10] - 6:13, 7:7, 8:11, 11:9, 43:6, 92:19, 94:6, 112:6, 114:7, 114:16
**they've** [1] - 35:10
**thinks** [1] - 111:23
**Third** [9] - 12:23, 13:7, 13:12, 14:1, 14:15, 102:2, 102:8, 102:20, 104:22
**third** [5] - 24:20, 114:11, 114:20, 115:7, 115:8
**three** [5] - 25:4, 58:15, 59:18, 97:16, 119:18

threshold [4] - 99:16, 102:10, 102:19, 104:20
throughout [2] - 40:21, 48:6
thrown [1] - 44:4
Thynge [1] - 99:6
tied [7] - 63:24, 75:3, 76:21, 86:4, 87:4, 92:9, 105:20
ties [1] - 74:23
timeline [3] - 14:21, 21:8, 23:15
timing [4] - 57:6, 59:19, 76:21, 108:19
today [19] - 3:3, 3:21, 4:8, 16:15, 18:9, 46:21, 47:1, 51:11, 52:9, 54:19, 85:20, 96:13, 99:13, 100:18, 103:2, 106:1, 114:23, 117:24, 122:14
today's [1] - 57:22
together [3] - 22:5, 53:5, 53:14
took [4] - 10:13, 22:11, 50:21, 76:11
top [3] - 73:4, 73:6, 74:4
topic [1] - 58:22
total [1] - 79:14
totally [1] - 28:3
touch [1] - 78:1
town [1] - 122:12
track [1] - 67:16
traditional [1] - 23:21
training [1] - 53:2
transcript [2] - 89:5, 123:10
transfer [5] - 25:10, 31:6, 79:2, 79:11, 98:5
transferred [1] - 70:21
travels [1] - 122:13
treat [3] - 65:22, 65:24, 114:19
treated [2] - 114:6, 114:22
tremendous [1] - 91:4
Trial [1] - 108:10
tried [1] - 81:10
true [3] - 28:24, 90:9, 123:9
try [2] - 48:10, 58:9
trying [8] - 23:20, 27:17, 42:23, 44:14,

65:20, 78:7, 80:22, 93:9
Tuesday [1] - 1:9
TUNNELL [1] - 2:2
turf [1] - 84:23
turn [5] - 65:12, 79:23, 83:20, 101:23, 117:9
turned [3] - 73:12, 83:7, 84:3
twice [1] - 40:24, 41:2
two [52] - 3:7, 3:8, 4:15, 5:1, 5:11, 5:18, 7:15, 11:12, 18:5, 18:7, 29:6, 38:20, 38:22, 40:3, 40:9, 40:19, 47:20, 48:4, 50:15, 51:1, 51:3, 51:19, 51:20, 52:6, 52:19, 53:10, 53:16, 54:2, 54:15, 58:2, 59:16, 64:23, 65:9, 66:6, 74:23, 77:17, 84:3, 86:5, 86:11, 86:13, 86:24, 91:24, 98:6, 99:19, 100:20, 105:9, 111:13, 112:16, 112:23, 113:22, 115:19, 121:17
two-fold [1] - 18:5
type [4] - 42:20, 42:21, 80:20, 94:24
typical [2] - 111:8, 114:11, 116:15
typically [3] - 41:13, 44:2, 99:12

U

U.S [1] - 29:14
ultimate [2] - 49:10, 58:2
ultimately [14] - 25:19, 47:23, 48:1, 50:12, 51:8, 66:19, 71:22, 82:3, 82:6, 82:8, 105:19, 106:13, 108:2, 112:12
unbeknownst [1] - 18:14
uncertain [1] - 14:14
unclear [5] - 41:22, 113:9, 113:16, 115:23, 121:16
under [9] - 5:2, 7:9, 24:6, 64:6, 89:5,

102:12, 104:3, 104:13, 118:20
understood [2] - 76:24, 84:24
undertaking [1] - 54:7
undisputed [1] - 7:24
undo [1] - 34:22
undone [2] - 35:4, 36:1
unequivocally [1] - 15:16
unfamiliar [1] - 78:24
unfortunate [1] - 57:7
Unfortunately [1] - 10:17
unfortunately [1] - 54:23
unique [2] - 37:1, 65:2
UNITED [1] - 1:1
United [1] - 1:15
unless [3] - 62:23, 65:11, 116:13
unnecessary [1] - 112:13
unorthodox [1] - 56:24
unpack [1] - 58:16
unpatentable [3] - 91:8, 91:11, 94:3
unrelated [2] - 77:18, 77:20
unsettled [1] - 103:7
unsuccessful [1] - 82:4
unusual [3] - 10:11, 57:1, 112:4
unwind [3] - 52:1, 52:18, 52:20
unwinding [2] - 52:2, 54:8
unwound [1] - 73:3
up [30] - 5:19, 12:13, 21:18, 22:8, 28:11, 29:2, 29:17, 31:13, 37:17, 45:1, 45:6, 46:6, 48:2, 52:24, 59:8, 66:9, 68:7, 68:9, 81:5, 81:10, 88:8, 96:1, 96:7, 97:4, 107:8, 112:15, 116:3, 117:21, 122:1, 122:4
update [2] - 52:12, 106:18
uphill [1] - 33:5
usage [1] - 66:16
uses [1] - 94:5
Utah [69] - 15:8,

15:12, 15:13, 16:7, 16:24, 17:2, 18:4, 18:15, 19:3, 19:21, 22:21, 22:23, 23:10, 38:21, 39:18, 41:21, 43:13, 43:22, 44:11, 44:22, 45:2, 45:6, 45:8, 45:11, 46:1, 48:4, 48:19, 48:20, 49:8, 49:9, 49:13, 49:14, 49:16, 49:17, 59:9, 68:1, 68:8, 68:15, 68:23, 69:3, 69:22, 70:7, 70:15, 71:12, 71:13, 71:15, 73:9, 73:15, 75:1, 75:5, 76:5, 77:2, 77:9, 77:16, 81:9, 81:16, 83:7, 84:7, 84:13, 84:19, 85:24, 86:15, 86:17, 87:5, 87:8, 89:15, 90:2, 90:7
utilized [2] - 30:15, 61:11

V

valid [1] - 28:11
validity [3] - 60:5, 62:21, 63:23
value [3] - 25:12, 25:19, 27:16
various [6] - 66:21, 68:24, 72:23
venue [3] - 15:22, 49:5, 49:14
venues [1] - 53:12
versus [6] - 3:5, 43:11, 66:9, 73:24, 74:1, 79:10
vexatious [3] - 41:4, 80:18, 87:3
video [7] - 29:15, 91:20, 91:21, 91:24, 92:3, 92:6
view [7] - 7:19, 44:10, 48:13, 80:24, 82:23, 92:3, 120:1
views [2] - 73:19, 84:14
virtue [1] - 18:19
vis [6] - 7:11, 11:10, 92:19
vis-a-vis [3] - 7:11, 11:10, 92:19
volition [3] - 68:14, 70:19, 71:3

W

wait [8] - 13:1, 14:15, 18:12, 71:4, 102:8, 102:20, 104:21, 121:2
waited [3] - 18:8, 26:24, 35:10
waiting [1] - 35:4
walks [1] - 38:4
wants [5] - 5:18, 73:20, 109:7, 110:13, 115:19
warranted [1] - 102:14
Washington [1] - 45:4
waste [3] - 20:11, 33:6, 91:5
wasted [3] - 30:15, 30:21, 61:6
ways [1] - 29:20
wearable [2] - 50:7, 50:10
website [1] - 99:1
week [5] - 4:19, 18:14, 45:21, 52:13, 107:6
weighing [1] - 66:21
weight [1] - 66:23
Welcome [2] - 3:24, 4:9
whereas [1] - 35:8
wherein [2] - 91:22, 92:7
WHEREOF [1] - 123:14
whole [4] - 26:15, 34:7, 63:8, 94:19
wholly [1] - 79:13
willful [1] - 111:10
willfulness [4] - 109:17, 110:19, 111:16, 112:7
willing [1] - 23:7
Wilmington [2] - 1:12, 123:16
windfall [1] - 22:15
winning [1] - 22:24
wins [1] - 93:24
wish [3] - 98:17, 98:22, 122:12
withdraw [1] - 57:21
withdrawal [1] - 10:10
withdrawing [1] - 8:9
withdrawn [2] - 57:12, 85:19
withdrew [2] - 8:12, 8:14

**WITNESS** [1] - 123:14

**wondering** [2] - 12:11, 41:16

**word** [3] - 44:4, 86:11, 119:21

**words** [4] - 29:21, 91:11, 93:22, 94:7

**world** [1] - 70:19

**WORLDWIDE** [1] - 1:4

**Worldwide** [30] - 3:21, 47:3, 50:5, 50:17, 50:21, 50:23, 51:12, 53:7, 53:19, 55:3, 55:21, 57:13, 58:1, 67:12, 71:16, 71:17, 71:23, 72:9, 72:16, 76:17, 79:5, 81:14, 81:24, 82:22, 84:19, 84:20, 85:23, 86:1, 105:10

**Worldwide's** [1] - 55:6

**worried** [2] - 74:17, 74:18

**worst** [1] - 34:17

**worth** [1] - 100:8

**worthy** [1] - 64:23

**written** [1] - 95:1

**wrote** [1] - 86:16

# Y

**year** [4] - 24:7, 31:21, 69:19, 75:11

**years** [2] - 47:19, 81:2

**York** [1] - 87:22

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew E. Russell, hereby certify that on May 31, 2016, this document was served on

the persons listed below in the manner indicated:

**<u>BY E-MAIL</u>**

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302-351-9661
mblumenfeld@mnat.com
mflynn@mnat.com

Karineh Khachatourian
Patrick S. Salceda
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA 94304
(640) 847-4145
karinehk@duanemorris.com
psalceda@duanemorris.com


*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiffs*