IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CONTOUR IP HOLDING, LLC and ION WORLDWIDE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GOPRO, INC. <br><br> Defendant. | ) ) ) ) ) ) ) Civil Action No. 15-1108-LPS-CJB ) ) ) ) ) |

## MEMORANDUM ORDER

Before the Court is a motion to stay the proceedings in the instant patent infringement case (the "Motion"), filed by Defendant GoPro, Inc. ("Defendant" or "GoPro"). (D.I. 14) GoPro seeks a stay of this case pending the United States Patent and Trademark Office's ("PTO") resolution of *inter partes* review ("IPR") of the asserted patents, United States Patent Nos. 8,890,954 (the "'954 patent") and 8,896,694 (the "'694 patent"). For the reasons stated below, the Court GRANTS GoPro's Motion.

### I. BACKGROUND

#### A. The Asserted Patents

The PTO issued the asserted patents on November 18 and 25, 2014, respectively. The '694 patent is a continuation of the '954 patent, and they share the same specification. The patents relate to a wearable digital video camera equipped with a wireless connection protocol and having the capability to provide remote image acquisition control and viewing. (*See, e.g.*, D.I. 1, exs. 1 & 2, Abstract)

#### B. The Utah Action

On November 25, 2014, non-party Contour, LLC ("Contour")—a Utah limited liability

company and then-assignee of the asserted patents—filed a lawsuit in the United States District Court for the District of Utah (the "Utah Court") against Camp Saver, LLC (also a Utah limited liability company) and various Doe Defendants; that suit alleged infringement of the '954 and '694 patents (the "Utah Action"). (D.I. 16, ex. C) Several weeks later, Contour amended its complaint to add GoPro as a defendant. (*Id.*, ex. D) On June 16, 2015, the Utah Court granted the parties' joint request for an order staying all deadlines pending resolution of the defendants' partial motion to dismiss, (*id.*, exs. G, I), a hearing on which was scheduled for January 12, 2016, (*id.*, ex. J at 3).

On April 20, 2015, meanwhile, GoPro had filed its IPR petitions, requesting that the PTO's Patent Trial and Appeal Board ("PTAB") review the validity of all claims of the asserted patents. (*See id.*, ex. A at 2; *id.*, ex. B at 2) On October 28, 2015, the PTAB instituted IPR proceedings as to claims 1, 2 and 11-30 of the '954 patent and as to all claims of the '694 patent. (*Id.*) The PTAB's final written decisions are expected by October 28, 2016. (D.I. 20 at 5)

Almost one month after the PTAB's institution decisions, on November 23, 2015, the defendants in the Utah Action moved for a stay pending resolution of the IPR proceedings. (D.I. 16, ex. J) One week later, on November 30, 2015, Contour voluntarily dismissed its complaint in the Utah Action, without prejudice, pursuant to Federal Rule of Civil Procedure 41. (*Id.*, ex. K)

### C. This Action

After the filing of GoPro's IPR petitions, Contour entered into an agreement to merge with iON Worldwide, Inc., (D.I. 34, ex. C; D.I. 1 at ¶ 14), a Delaware corporation, (D.I. 1 at ¶ 2). Pursuant to the terms of the agreement, Contour IP Holding, LLC ("CIPH") was formed under Utah law, and Contour assigned all rights pertaining to the asserted patents to CIPH. (D.I. 20 at 5 & ex. D) Contour holds a bare majority stake in CIPH. (D.I. 4; D.I. 20 at 5) It is alleged in the

Complaint that CIPH then granted iON an exclusive license to the asserted patents. (D.I. 1 at ¶¶ 15-16; D.I. 20 at 5)

On November 30, 2015—the same day that Contour had dismissed the Utah Action—CIPH and iON ("Plaintiffs") commenced the instant action against GoPro. (D.I. 1) On December 4, 2015, Chief Judge Leonard P. Stark referred this case to the Court for resolution of all matters relating to scheduling and any motions to dismiss, stay or transfer venue that are filed in the case. (D.I. 5) In lieu of filing an Answer to Plaintiffs' Complaint, on February 1, 2016, GoPro filed the instant Motion, (D.I. 14), as well as a Motion to Stay and for Costs ("Motion for Costs") pursuant to Federal Rule of Civil Procedure 41(d), (D.I. 10).

Briefing on the instant Motion was complete on February 29, 2016, (D.I. 26), and the Court heard oral argument on April 19, 2016, (D.I. 41 (hereinafter, "Tr.")). Immediately following oral argument on the pending motions, the Court conducted a Rule 16 Case Management Conference. (*Id.*) The Court then issued a Scheduling Order on April 28, 2016. (D.I. 37)

With respect to issues of standing, by February 19, 2016—the deadline for Plaintiffs' opposition to the instant Motion—iON's status as an exclusive licensee was very much in flux. The opposition brief to the Motion was filed by CIPH only, and CIPH explained therein that iON's "exclusive license has been terminated due to non-payment of royalties." (D.I. 20 at 5 n.2) On the same date, CIPH filed an Amended Complaint that now named itself as the sole Plaintiff. (D.I. 19) Then, three days later, CIPH and iON filed a Notice withdrawing the Amended Complaint—rendering the original Complaint (filed by both Plaintiffs) as the operative Complaint in this matter. (D.I. 22) And yet by the time of oral argument on the Motion, iON's status as an

3

exclusive licensee was again unclear. At oral argument, Plaintiffs' counsel explained that Contour's and iON's attempted merger had been unsuccessful, that the parties were currently working to unwind the merger, and that they were trying to resolve a dispute about whether iON held and would continue to hold an exclusive license to the asserted patents. (Tr. at 51-56)

On June 21, 2016, Plaintiffs filed a letter informing the Court that, pursuant to a new agreement between Contour, CIPH and iON, iON was now a non-exclusive licensee of the asserted patents, and that iON had agreed to be removed as a Plaintiff in this action. (D.I. 58; *see also* D.I. 66, ex. B at ¶¶ 1(b), (g)) Plaintiffs' letter indicated that they soon intend to file a motion for leave to file an amended complaint, or, in the alternative, to dismiss iON as a named Plaintiff. (D.I. 58) At GoPro's request, (D.I. 60), the Court held a teleconference with the parties regarding this development on July 7, 2016.

## II. STANDARD OF REVIEW

A court has discretionary authority to grant a motion to stay. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage. *See, e.g., Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, — F. Supp. 3d —, Civil Action No. 15-691-LPS, 2016 WL 3437605, at *1 (D. Del. June 17, 2016); *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865-LPS, 2010 WL 5149351, at *1 (D. Del. Dec. 13, 2010). The Court will discuss these factors in turn below.

## III. DISCUSSION

### A. Simplification of Issues

With regard to simplification, a very high percentage of the asserted patents' claims are at issue in the IPR proceedings: every claim of the '694 patent and 22 of the 30 claims of the '954 patent. GoPro has thus demonstrated to the PTAB that there is a reasonable likelihood that it will prevail as to its arguments regarding the invalidity of those many claims. 35 U.S.C. § 314(a). In light of this, and in light of the fact that estoppel will apply to GoPro (as to claims it raised or reasonably could have raised in the PTAB) for non-cancelled claims on which trial is instituted, 35 U.S.C. § 315(e)(2), the Court agrees with GoPro that a stay will significantly help further the simplification of issues in this case.

While it is true that claims 3-10 of the '954 patent[1] are not before the PTAB, even Plaintiffs acknowledge that this group of claims "contain[s] terms identical or similar to terms found in claims instituted for review." (D.I. 20 at 2; *see also id.* at 8; Tr. at 91-92) Moreover, the '954 patent is closely related to the '694 patent (all claims as to which are currently at issue before the PTAB). Thus, as Plaintiffs' counsel further acknowledged at oral argument, "[s]urely the PTAB's sound judgment with respect to other [claim] terms [in the two patents that also happen to be found within claims 3-10 of the '954 patent] or how the art might generally read could be instructive to this Court" with respect to claims 3-10. (Tr. at 64)[2]

---

[1] Claim 3 is an independent claim and claims 4-10 depend on claim 3. (*See* '954 patent, cols. 29:46-30:56)

[2] For example, in its decisions to institute review of certain other claims in the two asserted patents, the PTAB construed two claim terms ("scene to be recorded" and "record") that are either found in claim 3 of the '954 patent (i.e., "record") or where a variant thereof is found in that claim (i.e., "record the scene" and "recording the scene"). (D.I. 16, ex. A at 6-9; *id.*, ex. B at

5

In light of the above, this factor weighs in favor of a stay.

B.  **Status of the Litigation**

As to the litigation's status, the Court has explained that "staying a case in its early stages in favor of an IPR proceeding can advance judicial efficiency, in that this prevents the court and parties from expending resources on claims that may later be rendered invalid." *Toshiba Samsung Storage Tech. Korea Corp.*, 2016 WL 3437605, at *3. Here, this case was certainly in its early stages when the Motion was filed. (D.I. 15 at 11; D.I. 20 at 12-13) The Motion was brought about as early as it could have been—in lieu of an Answer, and just a little over a month after the filing of the Complaint. In such circumstances, the Court has found that this factor weighs strongly in favor of a stay. *See Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012); *see also Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013).[3]

Plaintiffs argue that nevertheless, this factor should weigh *against* a stay since the PTAB's decision is expected by late October 2016—that is, within a few months. (D.I. 20 at 12-13) In these circumstances, they contend, "'[t]he potential benefits of reduced discovery are not likely to

---

6-9; *see also* '954 patent, cols. 29:62-30:5)

[3]     The Court did thereafter issue a Scheduling Order in April 2016, and, in light of this, the parties and the Court have since completed some additional work. Since the Scheduling Order was issued: (1) the parties have exchanged initial disclosures; (2) Plaintiffs have identified the accused products and served infringement contentions; and (3) the parties have sought Court assistance with respect to disputes regarding the content of a protective order and the sufficiency of GoPro's production of core technical documents. (D.I. 43-46; D.I. 61-65) But even if it were appropriate to consider the case's status today (and not as of the date of the filing of the Motion), it is clear that many significant case events are still very far off. Claim construction briefing is not set to begin until January 18, 2017, the *Markman* hearing is scheduled for March 6, 2017, and trial is scheduled to begin on April 9, 2018. (D.I. 37) Such a state of affairs would still favor a stay as to this factor.

be so significant to the parties that they warrant taking this case off of its present scheduling track'" since the Court can simply "incorporate the [PTAB's] decision[s]" into this case. (*Id.* (quoting *Nexans Inc. v. Belden Inc.*, C.A. No. 12-1491-SLR-SRF, 2014 WL 651913, at *4 (D. Del. Feb. 19, 2014)).

Plaintiffs' point has some merit. As compared, for example, to a case where the PTAB's decisions were not due for another year, this few-month timeframe limits the amount of case-related effort that might turn out to be wasted, were the PTAB to later invalidate some or all of the claims at issue. And yet as Defendant notes, it is at least true that absent a stay, Defendant will soon be required to produce invalidity contentions, (*see* D.I. 37 at ¶ 7(d) (setting August 5, 2016 as GoPro's deadline to serve initial invalidity contentions)), and it may also need to respond to infringement- and validity-related discovery inquiries shortly thereafter. Such work could be undone by the PTAB's rulings. (Tr. at 61-62 (Plaintiffs' counsel acknowledging that some invalidity contentions could amount to wasted work, were the PTAB to invalidate certain claims at issue before it))

Because the case is surely at an early stage, and because there is the prospect that a stay could save the parties from at least some work that might later be preempted by the PTAB's decisions, the Court concludes that this factor favors a stay.

C.  **Undue Prejudice**

This Court has analyzed whether a non-movant would suffer undue prejudice (and whether a movant would gain an unfair tactical advantage) if a stay is granted by examining four factors: (1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *Neste Oil OYJ v. Dynamic Fuels, LLC*,

Civil Action No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013); *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

The timing of GoPro's requests for IPR and for a stay do not support the conclusion that it is pursuing an inappropriate tactical advantage. To the contrary, GoPro filed its IPR petitions seven months *before* this action commenced (and only a few months after GoPro was added to the Utah Action). It also filed the instant Motion very early in this case, and at an understandable time (e.g., at a time when, if GoPro did not take action, litigation and discovery regarding Plaintiffs' infringement claims would soon proceed). With respect to the status of the PTAB proceedings, the Court has described the posture of these proceedings above. That posture demonstrates that a stay in favor of the PTAB's decisions will be short, and that it may at least save the parties from some amount of potentially wasted effort. And as for the relationship between the parties, CIPH is a holding company and does not compete in any market with GoPro.[4] (D.I. 26 at 4; Tr. at 35)

---

[4] In opposing the instant Motion, CIPH argued that a stay would severely prejudice Plaintiffs because, *inter alia*, the accused GoPro products compete directly with non-party *Contour*'s products in the market for action cameras. (D.I. 20 at 10) This position is in conflict with the Court's general practice when assessing the undue prejudice factor, which is to determine whether the "*parties* are direct competitors." *Ever Win Int'l Corp.*, 902 F. Supp. 2d at 510 (emphasis added). The Court is unsure whether it would ever be appropriate to consider the status of a non-party company that is the parent corporation of a party when assessing the "direct competition" subfactor. But even if there were a scenario in which it made sense to do so, this is not it. That is so for a number of reasons, but particularly because, as GoPro accurately notes, "in opposing GoPro's Motion for Costs [], CIPH went to great lengths to point out that Contour *is not* a party to this lawsuit"—since, as to that motion, Contour's status as a non-party potentially *benefitted* CIPH. (D.I. 26 at 4 (emphasis added) (citing D.I. 21 at 2 ("As an initial matter, Rule 41(d) does not apply here, because the parties are different. For example, the originally-named plaintiffs here, CIPH and iON, are different from the plaintiff in the prior action, Contour . . . ."))); *see also* Tr. at 48 (Plaintiffs' counsel noting, in discussing a different issue, that when it comes to the distinction between Contour and CIPH, the "corporate forms will matter"))

Finally, as to this factor, there is another consideration that counsels in favor of a stay. As GoPro notes, it has been Plaintiffs' own actions that have stymied the process of having their rights in the asserted patents timely adjudicated. (D.I. 26 at 7-8; Tr. at 20) After all, it was iON's decision (along with Contour) that the two would merge and that rights in the asserted patents would be assigned to CIPH. These events later resulted in the dismissal of the Utah Action, as well as the filing of this action in this Court—all of which meant more delay in having an infringement case as to the asserted patents move forward. (Tr. at 22-23) Moreover, iON's tortured "are they or aren't they?" status as an exclusive licensee to the asserted patents—the subject of much conflict between it, Contour and CIPH over the last many months—has been a roadblock to the efficient progress of this case. iON's status was potentially relevant to both pending motions in the case. And the uncertainty as to its status has necessitated a number of filings and letters that have required Court attention—most recently in the July 7, 2016 status teleconference with the parties. (*See, e.g.*, D.I. 19, 22, 34-36, 58, 60, 66; *see also* Tr. at 6-7, 9) In short, if a stay would cause any prejudice to Plaintiffs, it cannot be "undue" prejudice, in light of the many hurdles that Plaintiffs have placed in their own way so far.

Due to all of these considerations, the Court finds that this factor weighs in favor of a stay.

## IV. CONCLUSION

The potential for simplifying the issues, the current status of this litigation and the amount of undue prejudice associated with the stay request all favor a stay. In light of that, the Court concludes that a stay pending resolution of the IPR proceedings is warranted.

Therefore, it is ORDERED that:

(1)  GoPro's Motion is GRANTED. The proceedings are STAYED from the date of

this Memorandum Order until a decision is issued by the PTAB in both IPR proceedings, with the following exceptions: (1) to the extent that the parties cannot agree on whether iON should be dismissed from the case and/or the proper procedure for dismissal of iON, and if motion practice is needed to resolve that issue, then the Court will resolve the issue during the pendency of the stay; and (2) GoPro shall produce to Plaintiffs GoPro's core technical documents, consistent with the substance of Chief Judge Stark's July 6, 2016 Oral Order. (D.I. 65)

(2) The parties shall timely advise the Court when decisions are issued by the PTAB in both of the IPR proceedings. To the extent that one or both of those proceedings conclude prior to the issuance of a PTAB decision (e.g., due to settlement), the parties shall also timely advise the Court of that fact.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **July 21, 2016** for review by the Court, along with a motion for redaction that includes a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: July 14, 2016

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE