## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CONTOUR IP HOLDING, LLC,          )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        Civil Action No. 15-1108-LPS-CJB
                                  )
GOPRO, INC.,                      )
                                  )
                Defendant.        )

## MEMORANDUM ORDER

Presently pending before the Court in this patent infringement case is Defendant GoPro

Inc.'s ("Defendant" or "GoPro") motion seeking a transfer of venue to the United States District

Court for the Northern District of California ("Northern District of California") pursuant to 28

U.S.C. § 1404(a) (the "Motion"). (D.I. 83)[1] Plaintiff Contour IP Holding, LLC ("Plaintiff" or

"CIPH") opposes the Motion. For the reasons set forth below, the Motion is GRANTED.

## I.    BACKGROUND

### A.    The Parties

Plaintiff is a limited liability company organized and existing under the laws of the State

of Utah, and has its principal place of business in Provo, Utah. (D.I. 1 at ¶ 1) It describes itself

as a small company run by three managers that has no full-time employees. (D.I. 98, ex. 3 at ¶ 4)

Defendant is a Delaware corporation that has its principal place of business in San Mateo,

---

[1]     The Motion also seeks, in the alternative to transfer to the Northern District of
California, that the case be transferred instead to the United States District Court for the District
of Utah (the "Utah Court"). (D.I. 83) Because it is not disputed by GoPro that the stronger case
for transfer here is to the Northern District of California, and because (in light of the Supreme
Court of the United States' recent decision in *TC Heartland LLC v. Kraft Foods Group Brands
LLC*, 137 S.Ct. 1514 (2017)) it is not clear that this case is now properly venued in the Utah
Court, (D.I. 133; D.I. 134 at 56-57), the Court will only assess herein Defendant's request for
transfer to the Northern District of California.

California, which is located in the Northern District of California. (D.I. 1 at ¶ 3) The company employs approximately 1,786 people; most (all but 482) work in the United States, and those United States-based employees are "primarily" located in San Mateo, San Francisco and San Diego, California. (D.I. 87 at ¶ 2) Defendant does not have any offices or facilities in Delaware. (*Id.* at ¶ 3)

### B.    The Asserted Patents

In this case, Plaintiff asserts infringement of United States Patent Nos. 8,890,954 (the "'954 patent") and 8,896,694 (the "'694 patent") (collectively, the "asserted patents" or the "patents-in-suit"). (D.I. 1 at ¶ 4) The patents, which share the same specification, relate to a wearable digital video camera equipped with a wireless connection protocol and having the capability to provide remote image acquisition control and viewing. (*See, e.g.*, *id.*, exs. 1 & 2, Abstract) The patents contain both apparatus claims (as to particular types of digital video cameras) and method claims (as to methods of using such cameras). (*Id.*) Plaintiff is currently asserting 25 claims across the two patents. (D.I. 137 at 5)

The Complaint contains six counts: one each for direct, induced and contributory infringement as to both patents-in-suit. (D.I. 1) Thus, GoPro is accused of direct infringement by "making, using, selling and /or offering to sell, or directing others to sell and/or offer to sell" certain camera products (the "accused products"). (*See, e.g., id.* at ¶ 71) It is also accused of inducing others to infringe in various ways, such as by "requiring one or more [of] its endorsers, suppliers, distributors and resellers to manufacture, use, [sell] and/or offer for sale" the accused products, (*see, e.g., id.* at ¶ 79; *see also id.* at ¶ 80), or by advertising the availability of the accused products for purchase, advertising how to engage in infringing uses (via websites,

Facebook pages, product manuals or other media), and by demonstrating, recommending and/or providing instructions/answering questions as to infringing uses, (*see, e.g., id.* at ¶ 80). GoPro is further accused of contributory infringement, by way of "making, using, selling and/or offering for sale cameras, camera accessories and/or the GoPro App, that are especially made and adapted for use in directly infringing" the patents-in-suit. (*See, e.g., id.* at ¶ 86)

### C.    Procedural History

This case has a very convoluted procedural history that is relevant to the instant Motion. Thus, the Court sets out that history in some detail below.

### 1.    The Utah Action, the IPR Petitions and Contour's Attempted Merger with iON

On November 25, 2014, non-party Contour, LLC ("Contour")—a Utah limited liability company and then-assignee of the asserted patents—filed a lawsuit (the "Utah Action") in the United States District Court for the District of Utah (the "Utah Court"). (D.I. 16, ex. C)  The suit was filed against Camp Saver, LLC ("Camp Saver," a Utah limited liability company) and various Doe Defendants; Contour alleged that those defendants infringed the '954 and '694 patents. (*Id.*)  Several weeks later, in January 2015, Contour amended its complaint to add GoPro as a defendant; later Contour filed a second amended complaint against both Camp Saver and GoPro. (*Id.* at ¶ 20 & ex. D)

On April 20, 2015, GoPro filed certain *inter partes review* ("IPR") petitions. Those petitions requested that the United States Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") review the validity of all claims of the asserted patents. (*See id.*, ex. A at 2; *id.*, ex. B at 2)

3

In May 2015, Contour entered into an agreement to merge with iON Worldwide, Inc. ("iON"), a maker and seller of camera products. (D.I. 34, ex. C; *see also* D.I. 1 at ¶¶ 13-14)  iON is a Delaware corporation, and its principal place of business is located in Moorestown, New Jersey. (D.I. 1 at ¶ 2)  Pursuant to the terms of the Contour/iON agreement, Plaintiff CIPH was formed under Utah law in June 2015, and Contour was to assign all rights pertaining to the asserted patents to CIPH. (D.I. 20 at 5 & ex. D)  Contour held a bare majority stake (50.1%) in CIPH; 49.9 % of CIPH was held by iON. (D.I. 4; D.I. 20 at 5)

On June 16, 2015, the Utah Court granted the parties' joint request for an order staying all deadlines pending resolution of the defendants' then-pending partial motion to dismiss. (D.I. 16, exs. G, I)  A hearing on that motion was scheduled for January 12, 2016. (*Id.*, ex. J at 3)

On October 28, 2015, the PTAB instituted IPR proceedings as to claims 1, 2 and 11-30 of the '954 patent and as to all claims of the '694 patent. (*Id.* at 4)  Almost one month after the PTAB's institution decisions, on November 23, 2015, the defendants in the Utah Action moved for a further stay of that case pending resolution of the IPR proceedings (the "Utah Stay Motion"). (*Id.* at 2)

On that same date, November 23, 2015, CIPH recorded the assignments of the asserted patents to it from Contour, pursuant to the terms of the Contour/iON merger agreement. (D.I. 20 at 5 & n.1)  By that time, CIPH had allegedly granted iON an exclusive license to the asserted patents. (D.I. 1 at ¶¶ 15-16; D.I. 20 at 5)

One week later, on November 30, 2015, Contour voluntarily dismissed its operative complaint in the Utah Action, without prejudice, pursuant to Federal Rule of Civil Procedure 41. (D.I. 16, ex. K)

4

### 2.    The Filing of this Action

On November 30, 2015—the same day that Contour dismissed the Utah Action—CIPH

and iON together commenced the instant suit against GoPro.  (D.I. 1)  In their Complaint,

Plaintiffs explained why they had filed this new suit, and why it had been filed in this Court (as

opposed to the Utah Court, where the Utah Action against GoPro had previously been litigated):

> 22.    The instant action was filed following the merger between
> iON and Contour and the assignment of the Asserted Patents
> to [CIPH].  Plaintiffs have filed this action in order to
> realign parties after the merger *and to advance the dispute in
> a forum more convenient to iON than the Utah Action.*

(*Id.* at ¶ 22 (emphasis added))  On December 4, 2015, Chief Judge Leonard P. Stark referred this

case to the Court for resolution of all matters relating to scheduling and any motions to dismiss,

stay or transfer venue that are filed in the case.  (D.I. 5)

### 3.    Activity After the Filing of this Action

On February 1, 2016, in lieu of filing an Answer to Plaintiffs' Complaint, GoPro filed a

motion seeking a stay of the case pending resolution of the then-instituted IPR proceedings (the

"Delaware Stay Motion").  (D.I. 14)  It also filed a motion to stay and for costs ("Motion for

Costs") pursuant to, *inter alia*, Federal Rule of Civil Procedure 41(d).  (D.I. 10)  Rule 41(d)

states that if "a plaintiff who previously dismissed an action in any court files an action based on

or including the same claim against the same defendant," then a court may order the plaintiff to

pay all or part of the costs of the previous action.  Fed. R. Civ. P. 41(d).  With its Motion for

Costs, GoPro was arguing that:  (1) pursuant to the meaning of Rule 41(d), Contour and CIPH

should be seen as the same "plaintiff"; (2) they had wastefully filed the same litigation involving

the same claims against the same defendant in two different jurisdictions; and (3) CIPH and iON

5

should thus have to pay certain of GoPro's costs and attorney's fees. (D.I. 10; D.I. 11; D.I. 134 at 68-69)

But in the meantime, a dispute had arisen between Contour, CIPH and iON. This led Contour and CIPH to file a suit (the "CIPH/iON Utah Action") on February 19, 2016 against iON for breach of contract and declaratory relief in the Utah Court. (D.I. 60 at 1; D.I. 85, ex. B) In that suit, CIPH and Contour: (1) accused iON of making false statements and material omissions in order to induce Contour to license to iON certain intellectual property, including the patents-in-suit; and (2) stated that as of February 2, 2016, CIPH had terminated its license agreement with iON. (D.I. 85, ex. B at ¶ 1)

That same date—February 19, 2016—was the deadline for Plaintiffs' opposition to the Delaware Stay Motion to be filed. CIPH (alone) filed an opposition, and explained therein that iON's "exclusive license has been terminated due to non-payment of royalties." (D.I. 20 at 5 n.2) On the same date, CIPH filed an Amended Complaint that now named itself as the sole Plaintiff in this case. (D.I. 19) But then, three days later, CIPH and iON abruptly filed a Notice *withdrawing* the Amended Complaint—and rendering the original Complaint (in which both CIPH and iON were listed as Plaintiffs) as again the operative Complaint in this matter. (D.I. 22)

On April 19, 2016, the Court heard oral argument on Defendant's Delaware Stay Motion and its Motion for Costs, and conducted a Case Management Conference. (D.I. 41)[2] By the time of this hearing (and despite CIPH and iON having withdrawn the Amended Complaint), iON's status as an exclusive licensee was again unclear. At the hearing, Plaintiffs' counsel explained

---

[2]    At no point prior to or during that hearing did CIPH or iON inform the Court of the existence of the CIPH/iON Utah Action. (D.I. 60 at 1)

that Contour's and iON's attempted merger had been unsuccessful, that the parties were currently

working to unwind the merger, and that they were trying to resolve a dispute about whether iON

held and would continue to hold an exclusive license to the asserted patents. (D.I. 41 at 51-56)

After the hearing, on April 28, 2016, the Court issued a Scheduling Order. (D.I. 37)

On June 21, 2016, CIPH and iON filed a letter informing the Court that, pursuant to an

agreement between Contour, CIPH and iON, iON was now a non-exclusive licensee of the

asserted patents, and that iON had agreed to be removed as a named Plaintiff in this action. (D.I.

58; *see also* D.I. 66, ex. B at ¶¶ 1(b), (g)) After resolving the CIPH/iON Utah Action, on

September 6, 2016, CIPH and iON filed a motion seeking iON's dismissal as a Plaintiff in the

case. (D.I. 73) The Court later recommended that this motion be granted, (D.I. 77), and on

December 9, 2016, Chief Judge Stark dismissed iON with prejudice from the lawsuit, (D.I. 97).

In July 2016, the Court: (1) granted the Delaware Stay Motion, staying the proceedings

until the PTAB rendered a decision on both pending IPR proceedings; and (2) denied the Motion

for Costs without prejudice to Defendant's ability to renew the motion when the stay was lifted.

(D.I. 70) The case was then stayed for a few months. But in October 2016, the PTAB ultimately

denied the two pending IPR petitions, finding that GoPro had not established that a certain

relevant catalog was a printed publication under 35 U.S.C. § 102(b). (D.I. 78 at 1)

On November 7, 2016, the Court denied Defendant's request to maintain the stay pending

appeal of the PTAB's decisions. A new Scheduling Order was entered on November 23, 2016,

which set a trial in the case for November 13, 2018. (D.I. 91)

### 4.    The Instant Motion and the Renewed Motion for Costs

GoPro filed the instant Motion on November 22, 2016. (D.I. 83) The Motion was fully

7

briefed on December 19, 2016.  (D.I. 106)[3]  On December 1, 2016, Defendant renewed its

Motion for Costs, (D.I. 93), which was fully briefed on January 6, 2017, (D.I. 110).[4]

Defendant next sought oral argument on both the instant Motion and the renewed Motion

for Costs, (D.I. 111), which the Court held on April 26, 2017, (D.I. 134, hereinafter "Tr.").  On

May 2, 2017, May 23, 2017 and May 24, 2017, the parties submitted notices of supplemental

authority and letters relevant to the instant Motion.  (D.I. 126; D.I. 132; D.I. 133)

## II.     DISCUSSION

### A.     Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.  It provides

that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

The party seeking a transfer has the burden "to establish that a balancing of proper

interests weigh[s] in favor of the transfer[.]"  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d

Cir. 1970) (citation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.

---

[3]      GoPro also filed a request that the Court take judicial notice of certain documents, (D.I. 85), which the Court does not understand to be opposed.  The Court will GRANT that request.

[4]      With regard to the renewed Motion for Costs, the Court will accede to GoPro's request that the Court not resolve the motion, (Tr. at 60), in light of the Court's decision herein that this case should be transferred to the Northern District of California.  Though the Court has expressed skepticism that Contour and CIPH could be seen as the same "plaintiff" for purposes of Rule 41(d), (Tr. at 23, 61, 66-68), the Court agrees that, in light of its decision that the case is more conveniently venued elsewhere, it is most appropriate for the Court to cede resolution of the Motion for Costs to the transferee court.

1995).[5] That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor* of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (emphasis added) (internal quotation marks and citation omitted); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

The United States Court of Appeals for the Third Circuit has observed that courts must analyze "all relevant factors" to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Nevertheless, it has identified a set of private interest and public interest factors that are appropriate to account for in this analysis (the "*Jumara* factors"). The private interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

*Id.* (citations omitted). The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [5] the public policies of the fora, . . . and [6] the familiarity of the trial judge with the applicable state law in diversity cases[.]

---

[5] In analyzing a motion to transfer venue in a patent case, it is the law of the regional circuit that applies. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

*Id.* at 879-80 (citations omitted).

## B.   Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009). Here, there was and is no real dispute that CIPH could have properly brought this infringement action in the Northern District of California. (D.I. 84 at 6 (citing 28 U.S.C. § 1400(b)); D.I. 98; Tr. at 53-54; D.I. 133)

## C.   Application of the *Jumara* Factors

The Court will proceed to analyze the *Jumara* factors and their impact on whether transfer should be granted.

### 1.   Private Interest Factors

#### a.   Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) (citation omitted), *adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate[,] then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus*, 2012 WL 4889438, at *4 (internal quotation marks, brackets and citations omitted); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744,

10

753-54 (D. Del. 2012) ("*Altera*").[6]

When Plaintiff filed this case (along with then co-Plaintiff iON), it took the unusual step of specifying in its Complaint the *explicit reason why* it chose to file suit in this District (and not, for example, in the Utah Court): this was "a forum more convenient to iON than [the forum of] the Utah Action." (D.I. 1 at ¶ 22) Having read the Complaint, and being familiar with the facts of the case, it is clear to the Court why CIPH and iON were so clear about their motivation for filing here.

After all, Contour, an entity with a relationship to CIPH, had previously filed what was in essence the same suit against GoPro (and Camp Saver) in the Utah Court. And then, not long after the Utah Stay Motion was filed, within a week's time:  (1) CIPH recorded the assignments of the patents; (2) Contour abruptly dismissed the Utah Action; and (3) CIPH immediately re-filed this action (along with iON) against GoPro. In light of these unique events, CIPH had to expect that it would face some hostile questions from its adversary GoPro (and perhaps scrutiny from the courts) as to *why* GoPro had been haled into court to face very similar allegations, back-to-back, in two different jurisdictions.[7]

And this is where the explanation in the Complaint came in—that the decision to file here

---

[6]    However, there are some circumstances whereby a plaintiff's choice of forum will not weigh in favor of transfer, such as where the choice is arbitrary, irrational or selected to impede the efficient and convenient progress of a case. *See Pragmatus*, 2012 WL 4889438, at *4; *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this would likely weigh in favor of transfer); *cf. Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *8-9 (D. Del. Sept. 20, 2013).

[7]    And indeed, CIPH did face those questions. Soon after this case was filed, GoPro put forward its Motion for Costs, in which it made the argument that in light of the above-referenced events, CIPH and iON should be on the hook to pay GoPro's costs in the Utah Action.

had been motivated by the involvement of a new, independent party, iON.[8] This explanation was helpful in taking the sting out of any argument that CIPH/Contour had engaged in some type of wrongful forum shopping or wasteful litigation. That is, it seemed understandable that, with iON now having joined the case, iON would find it more convenient to litigate in a court located (1) close to its headquarters in New Jersey and (2) in the same state where it is incorporated.

During oral argument on the Motion for Costs, the Court directly questioned CIPH/iON's counsel on this issue—that is, on its position as to why this case was filed here. The Court noted that it appeared that many of the same persons who controlled Contour also controlled CIPH, and that if "in essence the same people who were driving the entity that filed in Utah [Contour] then turned around and dismissed [the Utah Action] and filed it [in Delaware]" this could be a hurdle that CIPH would need to overcome in pushing back against GoPro's Rule 41(d) "same plaintiff" argument. (D.I. 41 at 83) Thus, the Court repeatedly asked CIPH/iON's counsel whether it was CIPH's "assertion . . . that . . . iON . . . [an entity run by] a different group of people" than those managing Contour and CIPH, was the driving force behind this suit having been brought in this

---

[8]     CIPH also argued that the filing of this case did not violate Rule 41(d), *inter alia*, because the same "plaintiff" had not filed both suits—Contour had filed the Utah Action, while CIPH, a different entity, was the plaintiff in this action. Atmospherically, though, were CIPH to have hinged its explanation for filing this case here solely on the fact that it and Contour are simply separate corporate entities (and so, CIPH could file a new case wherever it wanted to), that would likely have raised some eyebrows and fostered even louder arguments from GoPro about forum shopping. One reason for this is that like Contour, CIPH is (1) a Utah entity that is (2) run by three members (James Harrison, Nora Anderson and James Clarke) who are either based out of Utah or have listed their business address as being in Utah. *See infra* Section III.C.1.d. Another reason is that Contour's principals are basically the same people who manage CIPH. Mr. Harrison, is listed as a manager of Contour, and is also a manager of CIPH; Ms. Anderson is Contour's Registered Agent, and is a manager of CIPH and its Registered Agent; and James Clarke is a manager of Contour and a manager of CIPH. (Tr. at 8-9, 64-65; D.I. 66, ex. B; D.I. 85, ex. C; D.I. 98, ex. 3)

District. (*Id.* at 83-84) Again, the point of the Court's question was that if *iON* (an independent

company with different decision-makers from those controlling Contour and CIPH) had directed

this filing, that would support CIPH/iON's argument that there was nothing untoward about the

fact that the same basic case was filed first in one jurisdiction, and then another. CIPH/iON's

counsel confirmed that this, in fact, was what had happened here:

> Yes, Your Honor. And I certainly appreciate your concern, but iON
> Worldwide is an east coast entity, not a Utah[-]based entity. And
> iON Worldwide sought east coast[-]based counsel to proceed with
> this case. They were interested in moving forward in litigation on
> their home turf against a company that they understood to be
> incorporated in the same state they were and pursue forward with
> their claims.

(Tr. at 84-85; *see also id.* at 81-82 (CIPH/iON's counsel noting that Contour "did not look for a

way to get out of Utah and find a convenient entity that would allow that" but instead found iON,

a player in the relevant camera market, and "iON . . . attempted to control its own litigation of the

IP assets that had at one point been held solely by Contour"); *id.* at 82 (CIPH/iON's counsel

noting that the fact that "iON [was and is] a Delaware corporation [was] an important thing" as

to why iON picked this District for suit))[9]

Of course, since that time, iON and CIPH's proposed merger has come undone. The

fallout from that failed merger was the cause of much uncertainty and delay in this case, and it

---

[9]     Indeed, even during the most recent oral argument on the renewed Motion for
Costs, CIPH's counsel in essence made this same argument again. That is, in emphasizing why
the instant case was filed here—and why CIPH had not done anything wrong in doing
so—CIPH's counsel reminded the Court that "[s]omehow we keep losing track of iON and
iON's role in filing the Complaint here and, in fact, its existence." (Tr. at 71) Counsel went on
to explain that iON was never controlled by Contour (or CIPH), and that iON thus went on to
pursue a case against GoPro in its own name, free of influence by Contour. (*Id.* at 71-73, *see
also id.* at 84)

led to litigation between CIPH and iON in the Utah Court. That dispute was eventually resolved via settlement, with iON losing its status as an exclusive licensee of the patents. By the time of the filing of the instant Motion, the Court had recommended (at Plaintiffs' request) that iON be dismissed as a Plaintiff, and iON later was so dismissed. The net effect of all this is that while CIPH and iON certainly could be said to have originally "selected the forum for some legitimate reason [i.e., picking a location convenient to iON and where iON was incorporated,]" *Altera*, 842 F. Supp. 2d at 753-54 (internal quotation marks and citation omitted), the Court also must recognize that as of the filing of the Motion, this reason no longer had any real resonance. Put differently, if the "legitimate reason" why this case was filed in Delaware was to make things more convenient for an entity that is no longer a party to the litigation, then that reason does not currently amount to a strong argument for why the case is conveniently venued here.[10]

Moreover, CIPH's recent arguments have caused the Court to question whether it can rely on this party to accurately convey the true reason for its filing in this jurisdiction. Despite all that the Court has said above regarding CIPH's clearly indicated prior explanation for filing here, in its briefing on the instant Motion, CIPH took a decidedly different tack. Suddenly, CIPH was highlighting lots of *other reasons* why this case was filed in this District. (D.I. 98 at 7 ("Here, CIPH had and continues to have legitimate reasons for choosing Delaware for this action.")).

---

[10]     Although motions to transfer venue should ordinarily be decided based on the situation that existed when suit was initiated, *see In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013), where (as here) a significant event occurs after the case's filing (and, in this case, before the filing of the instant transfer Motion) and bears on the transfer analysis, it would be wrong for the Court not to consider it. *See, e.g., In re Mobile Telecomm. Techs., LLC*, — F. Supp. 3d —, 2017 WL 1065134, at *7 & n.8 (D. Del. Mar. 20, 2017); *cf. Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2013 WL 4629000, at *5 (D. Del. Aug. 28, 2013).

14

Those included that: (1) GoPro is incorporated here; (2) GoPro sells products within this District; (3) this Court is experienced in resolving patent disputes; (4) CIPH's counsel is located in Washington, D.C., close by to Delaware; and (5) James Harrison, one of CIPH's managers, manages the entity out of his Miami, Florida office. (D.I. 98 at 7)[11]

Of course, most (if not all) of these reasons—had they been the real reasons why CIPH and iON filed suit here—certainly could have been seen as legitimate. But again, it is clear that these were *not* the reasons motivating the filing of this case in this Court. They could not have been, since CIPH had taken pains earlier in the case to explain that *iON's convenience* was the reason. (Tr. at 35-42 (CIPH's counsel again confirming, during oral argument on the instant Motion, that CIPH had previously represented that the justification for filing the instant matter in this District was that CIPH did so "at the behest of iON" and that it "acted at the direction of iON, the exclusive licensee of the patents, that had a large share interest in [CIPH and wished to] file a new case here in Delaware"))

It is also easy to see why CIPH did not mention these five "other" reasons earlier—nearly all of these reasons would have been just as available at the time when Contour sued GoPro in the Utah Action.[12] GoPro was just as much a Delaware corporation then, it sold products in Delaware then, this Court was just as experienced in patent matters then, and Mr. Harrison,

---

[11]    The sixth and last reason CIPH referenced in its briefing was that "at the time of filing the complaint, Delaware was convenient to iON, which is a Delaware corporation with a principal place of business in New Jersey." (D.I. 98 at 7)

[12]    Again, the Court understands that Contour and CIPH are two separate entities, and that corporate forms are to be respected. But it has already earlier explained why, nevertheless, the optics of relying on something other than *iON's convenience* could have been problematic for CIPH at the outset of this case.

15

presumably, was just as much of a Florida resident then.[13] Had CIPH focused on *these* reasons early in this case as the reasons why this new suit was brought in the District of Delaware, that would only have fed into GoPro's claims that CIPH was playing wasteful games with venue.

When CIPH and iON told the Court that it filed here for iON's convenience, the Court took that assertion seriously, and credited it. Now that CIPH has de-emphasized that reason, and offered up a litany of other "reasons" in its place, it has caused the Court to question CIPH's credibility on this front. This too factors into the Court's decision as to the proper weight to be afforded this first private interest *Jumara* factor.

In sum: (1) the previously-asserted reason for the case's filing here now has little to no practical impact; and (2) due to CIPH's shifting positions on the issue, the Court cannot comfortably rely on CIPH to tell it what CIPH's "legitimate reasons" for filing here actually were. In light of this, the Court finds this first private interest *Jumara* factor should not redound in CIPH's favor, and instead is neutral.

### b.   Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—GoPro prefers to litigate in the Northern District of California. In analyzing this factor, the Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus*, 2012 WL 4889438, at *6 (citation omitted).

GoPro contends that it has a number of legitimate reasons for seeking to transfer this action to the Northern District of California, including that: (1) its principal place of business is

---

[13]     As for the location of CIPH's counsel, it is true that its counsel did not represent Contour in the Utah Action.

16

in that forum; (2) a good number of its employees and "nearly all" of its relevant documents are located there; and (3) other third-party witnesses are located nearby. (D.I. 84 at 7; D.I. 87 at ¶¶ 5-6) As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer. *See, e.g., Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014); *Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014).[14] That logic applies here, and thus, the second private interest *Jumara* factor weighs in favor of transfer.

### c.    Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As a matter of law, a claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (certain internal quotation marks and citations omitted). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases).

Here, there a number of different types of alleged infringing acts. Below, the Court will

---

[14]    To the extent that Plaintiff suggests that in the transfer analysis, the movant's choice of forum is automatically not given the same weight as Plaintiff's preference, (D.I. 98 at 8 (citations omitted)), the Court has previously explained why it cannot find any support for that proposition in governing Third Circuit case law. *See, e.g., Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *6 n.13 (D. Del. Aug. 20, 2015) (citing cases).

discuss what it knows of them, and what the record evidence indicates about where those acts

may have taken place:

- With regard to the "making" of the accused products, it does not appear to be disputed that most, if not all, of the cameras at issue are manufactured overseas. (D.I. 98, ex. 1 at Form 10-K ("Form 10-K") at 5 (GoPro 2015 Form 10-K stating that it outsources a "significant majority" of its manufacturing to contract manufacturers located in China); Tr. at 16)

- The products were designed and developed, however, in GoPro's San Mateo offices, where all of the company's research and development operations are located. (D.I. 87 at ¶ 5) Thus, to the extent that the design and development of the accused products gave rise to any infringing acts (e.g., GoPro design/development employees "making" or "using" the accused products/methods), those relevant activities would have taken place in the Northern District of California. (Tr. at 52)

- As for other instances involving the alleged infringing "use" of the accused products (or the use of methods relating to such products), those acts could be undertaken by U.S.-based GoPro endorsers, suppliers distributors and resellers, (*see, e.g.*, D.I. 1 at ¶ 79), or they might be undertaken by GoPro customers, (*see* Tr. at 51). Those persons are presumably found all over the United States.

- With regard to GoPro's U.S.-based sales or offers to sell the accused products (or sales by its endorsers, suppliers distributors and resellers), some amount of that activity surely emanates from the Northern District of California, where GoPro's sales and finance operations are located. (D.I. 87 at ¶¶ 5-6; Tr. at 19-20 (GoPro's counsel noting that certain sales of the product occur on the Internet or in brick and mortar stores, but "with respect to [sales by GoPro itself] it would emanate out of San Mateo")) But it is not disputed that GoPro engages in sales nationally, and that sales of its products occur via online offerings, sales in others' stores, and through the work of independent representatives. (Form 10-K at 6)

18

- As to GoPro's acts of inducement, it is a fair inference that these acts of encouragement largely emanated from GoPro's San Mateo offices, where its research and development, product development and sales and finance operations are all located. (D.I. 87 at ¶¶ 5-6)

As the discussion above indicates, on the one hand, a chunk of the alleged infringement here is truly nationwide in scope. And yet as to various categories of the alleged infringement, any infringement likely would have occurred to a greater extent in the Northern District of California than in any other district (including this one). In such circumstances, this factor favors transfer. *Cf. Altera*, 842 F. Supp. 2d at 755 (finding this factor to weigh in favor of transfer where the "record so far indicates that at least some of the research and development activities relating to the allegedly infringing products occurred in the [proposed transferee district], and none in Delaware").

### d.    Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined a number of issues. These include: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted); *see also McKee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770, at *4 (D. Del. Mar. 20, 2013) (footnote omitted).

19

GoPro argues that because it has its principal place of business in the Northern District of California, and a significant employee presence there, that district would be a more convenient place for it to litigate. (D.I. 84 at 9) The Court agrees that it would.

A few considerations, however, dilute the impact of this convenience argument. First, because GoPro has incorporated in Delaware (and, thus, has willingly submitted to suit here), it would be hard to conclude that Delaware is a decidedly inconvenient location for GoPro to defend a lawsuit. *Altera*, 842 F. Supp. 2d at 756 (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)). Second, while GoPro's employees would face some additional inconvenience were they obligated to travel to Delaware for pre-trial or trial proceedings, the amount of such travel is not likely to be large, particularly if this case does not result in a trial. *See, e.g., Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328-29 (D. Del. 2013) ("[A]s a practical matter, regardless of the trial venue, most of the discovery [in a patent case involving Defendant] will take place in California or other locations mutually agreed to by the parties."); *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. No. 11-082-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware—particularly few if the case did not go to trial—weighed against transfer, as did technological advances that allow traveling employees to more easily interact with their office while away). And third, GoPro is clearly a large, global corporation. It employs nearly 2,000 people, and (as of end-of-year 2015) took in over $1.6 billion in revenue. (*See, e.g.*, D.I. 87 at ¶ 2; Form 10-K at 30); *see also Altera*, 842 F. Supp. 2d at 755. Nothing in the record suggests that litigating in Delaware would impose any meaningful financial or logistical burden on GoPro.

20

As for Plaintiff, it has no full-time employees and is run by three managers. (D.I. 98, ex. 3 at ¶¶ 4-5)  One of those managers, Mr. Harrison, avers that he manages Plaintiff's operations from his office in Miami (closer to Delaware than the Northern District of California).  (*Id.* at ¶ 5)  In case filings, though, CIPH has listed Mr. Harrison's business address as being in Provo, Utah (closer to the Northern District of California than to Delaware), (D.I. 86, ex. H at 3), and at oral argument, CIPH's counsel indicated that Mr. Harrison at least sometimes conducts business in Utah, (Tr. at 45).  The other two CIPH managers, Nora Anderson and James Clarke, are located in Utah.  (D.I. 86, ex. H at 3; Tr. at 9, 46)  Plaintiff does not assert that litigating in the proposed transferee forum (instead of Delaware) will cause it an undue financial burden.  (Tr. at 48-49)

In the end, a good percentage of possible employee witnesses/representatives on both sides are located closer to the Northern District of California than to Delaware.  For that reason, the Court recognizes that this factor should weigh in GoPro's favor to some degree.  But in light of the other counter-balancing factors discussed above—particularly the fact that both sides have the wherewithal to litigate in either forum—the Court concludes that this factor only slightly favors transfer. *Cf. Audatex*, 2013 WL 3293611, at *4-5 (concluding the same when both parties operated out of the proposed transferee district, both had sufficient resources to litigate in either forum and both were incorporated in Delaware); *Altera*, 842 F. Supp. 2d at 755 (concluding the same, where all parties were located in or near the proposed transferee district, but the record did not indicate that litigating in Delaware would impose an "undue financial burden" on defendants, who had extensive operations and significant annual sales).

### e.    Convenience of the witnesses to the extent that they may

21

**actually be unavailable for trial in one of the fora**

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Of particular concern here are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001); *Affymetrix,* 28 F. Supp. 2d at 203-05.

In *Jumara*, the Third Circuit made clear that in order for this factor to meaningfully favor the movant, the movant must come forward with some amount of specificity. This is evident from the wording of the factor itself, which notes that the witnesses' convenience should be considered "only to the extent that the witnesses may *actually be* unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879 (emphasis added). It is also evident from the legal authority that *Jumara* cited to in setting out this factor, which explains:

> The rule is that these applications [for transfer] are not determined solely upon the outcome of a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts in which each party would like to try the case. The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than numbers. One key witness may outweigh a great number of less important witnesses. If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3851, at 425-28 (2d ed. 1986) (footnotes omitted) (cited in

*Jumara*, 55 F.3d at 879). In light of this, in order for the movant to convincingly argue that this factor squarely favors transfer, it must provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will "actually" be unavailable for trial (as opposed to the proffer of a guess or speculation on that front). *See Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *8 (D. Del. Aug. 20, 2015).

In the briefing and at oral argument, the majority of the focus on third-party witnesses was on the following persons or entities:

- There are a total of 10 inventors (the same 10) on both of the patents-in-suit; all are third-parties. The best evidence is that four live in New Zealand, one lives in Australia, three live in the state of Washington, and two live in California (none in the Northern District of California). (D.I. 86, exs. G, K)

- Two prosecuting attorneys were identified; one lives in Irvine, California, and one in Washington, D.C. (D.I. 84 at 4; D.I. 86, ex. K; D.I. 98 at 13)

- A key component of the accused products, in terms of the infringement allegations, are chips incorporated into those products that are designed by third party Ambarella, Inc. ("Ambarella"). (Tr. at 17, 18) In its initial disclosures, where Plaintiff listed the entities or persons most likely to have discoverable information in this case, the only non-party that Plaintiff cited to was Ambarella, which it described as possibly having "knowledge regarding the Accused Products, including their operation and design." (*Id.*, ex. H) A Vice-President of Engineering at Ambarella, Chan Lee, in turn, submitted a declaration stating that: (1) the majority of Ambarella's employees work in the Northen District of California or Taiwan; (2) likely prospective Ambarella witnesses work in the Northern District of

23

California; and (3) "[i]t would be difficult and significantly more disruptive and expensive for Ambarella witnesses to travel to Delaware for trial compared with the Northern District of California." (D.I. 88 at ¶¶ 2, 5-7)

For at least the five inventors who live in the United States (those in Washington or California), the Court can infer that participating in a trial located in the proposed transferee court would be more convenient for them. With that said, it is not clear which of the inventor witnesses might actually be needed to testify at trial, and no party offered any information on this front. Presumably, all 10 inventors (or, indeed, most of them) will not be needed to testify live. Nor has GoPro provided evidence suggesting that any of the inventor witnesses will "actually be" unavailable for trial in Delaware. Some consideration should be given to the fact that certain inventors live closer to the proposed transferee district, but under the circumstances here, not much.

It is also unclear whether or to what extent the prosecuting attorneys will play a role in this case. (Tr. at 25-26) Neither are within the subpoena power of either relevant court, and in any event, one is located closer to the Northern District of California and one is located closer to Delaware. These witnesses do not move the needle at all.

The Ambarella witness(es) are a little different. It would be hard for Plaintiff to contest that at least one or more Ambarella witnesses will have relevant information, in light of the fact that Plaintiff suggested as much in its initial disclosures. And though Mr. Lee's declaration stops short of saying that Ambarella employees would not participate in a trial in Delaware, the declaration provides some reason for concern on that front. Ambarella witnesses would be within the subpoena power of the Northern District of California, but not this Court, with regard

24

to trial attendance.

With there being little concrete evidence that any third-party witness will not attend a trial in either district, this factor should not swing heavily toward either party. But the situation regarding the possible Ambarella witness(es) (combined with the physical location of some of the inventors) pushes this factor slightly in GoPro's favor. *Cf. Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *6 (D. Del. Mar. 27, 2015) (finding that this factor should weigh squarely in favor of transfer where nearly all of the relevant third-party inventors lived in the proposed transferee district, where two of those inventors were listed on both parties' initial disclosures as having discoverable information, and where as to one of those third-party inventors, in a prior litigation, the defendant was required to subpoena the inventor in order to procure his testimony).

### f.    Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation

25

marks and citation omitted); *see also Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp.

2d 376, 382 (D. Del. 2012).

Here, there is evidence that any GoPro records relating to the accused products, including

those that relate to the structure, function and operation of those products, will be located in the

company's San Mateo offices.  (D.I. 87 at ¶ 5)  No relevant evidence will likely be found in

Delaware.

With that said, there was also no suggestion that any of this evidence would be difficult to

produce in Delaware for trial.  As such, this factor should only slightly favor transfer, and should

not have a significant impact in the overall calculus.  *McRo, Inc.*, 2013 WL 6571618, at *9-10.

### 2.    Public Interest Factors

The Court below addresses the two public interest factors that were asserted by the parties

to be anything other than neutral.

#### a.    Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court first assesses the "practical considerations" factor.

Plaintiff suggests that one such consideration affecting trial is that "a transfer will

necessarily result in further delay getting to trial[,]" since the transferee court will need to get up-

to-speed on the case and will not likely be able to honor the currently-scheduled November 2018

trial date.  (D.I. 98 at 15)  And (though it is unclear whether the transferee court could honor the

current trial date) Plaintiff is probably right that the case schedule will need to be altered some

upon transfer.  Yet it is not argued that such an alteration would be any more pronounced here

than in any other transfer case.  Moreover, the parties have been diligently working through the

discovery stage of the case. So at least for their part, the parties should be able to pick up in a new district not far from where they left off here. For all these reasons, the Court does not give much weight to this argument.

GoPro raises two sets of "practical considerations." One is simply a re-stating of arguments it made in exactly the same way, as to other *Jumara* factors (e.g., that trial in the proposed transferee district will be more convenient for party and non-party witnesses). (D.I. 84 at 11) The Court will not "double-count" this argument here. *See Elm 3DS*, 2015 WL 4967139, at *11. The second is that if trial proceeded in Delaware, this would require the additional cost of retaining Delaware counsel. (D.I. 84 at 11) This fact should inure to GoPro's benefit to some degree, but with all parties being financially capable of easily bearing this expense, it should weigh only slightly in favor of transfer. *Cf. Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 444 (D. Del. 2015); *see also Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485-86 (D. Del. 2011).

At most then, this factor only slightly favors transfer.

### b.    Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props.*, 964 F. Supp. 2d at 330. Nevertheless, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (internal citation omitted); *see also Graphics Props.*, 964 F. Supp. 2d at

27

330-31.

Defendant suggests that there is a stronger local interest in this case in the Northern District of California because "GoPro is headquartered there, and that party and third party evidence and witnesses are there." (D.I. 106 at 10; *see also* D.I. 84 at 12) There are surely connections between this matter and the proposed transferee district.

Yet GoPro has not demonstrated that the case has any type of outsized resonance to the citizens of the Northern District of California, nor that its outcome would significantly impact that district. It is *that* kind of showing that, pursuant to Third Circuit precedent and the precedent of this Court, would cause this factor to meaningfully favor one party or the other. *Cf. Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, C.A. No. 12-775-LPS, 2013 WL 5461876, at *4 (D. Del. Sept. 30, 2013) (holding that this factor "strongly" favored transfer where the case involved consideration of the enforceability under California law of certain insurance coverage provisions, which was "an issue of first impression" in that state, where the transferee district was located); *Downing v. Globe Direct LLC*, Civil Action No. 09-693 (JAP), 2010 WL 2560054, at *4 (D. Del. June 18, 2010) (finding that this factor favored transfer where the case "concern[ed] . . . the conduct of [a] Massachusetts government agency, and therefore the case [had] the potential to impact the public policy of as well as, to some extent, the taxpayers of Massachusetts [the transferee forum]"); *see also Papst Licensing*, 126 F. Supp. 3d at 445-46 & n.12.

As for Delaware, GoPro has chosen it for its corporate home. But it does not want to claim the benefits of being a Delaware corporation in this case, and so its Delaware corporate status should have little bearing as to this factor. *Cf. Pragmatus*, 2012 WL 4889438, at *6 (concluding the same, as to the "public policy" public interest factor); *Wacho Co. v. Kionix Inc.*,

28

845 F. Supp. 2d 597, 604 (D. Del. 2012) (same).

Under these circumstances, this factor slightly favors transfer.

### 3.    Conclusion Regarding Impact of *Jumara* Factors

In the end, GoPro's forum preference and the "whether the claim arose elsewhere" factor squarely favor transfer.  The "convenience of the parties," "convenience of the witnesses," "location of books and records," "practical considerations" and "local interest" factors all slightly favor transfer.  No *Jumara* factors weigh against transfer.

The Court concludes that this balance "is strongly in favor of" transfer to the Northern District of California.  *Shutte*, 431 F.2d at 25.  It is a case where the defendant and many witnesses and records are found in the transferee district, or if not, then far closer to that district than to Delaware.  And it is the very rare case where the Court cannot give affirmative weight to the Plaintiff's proffered reason(s) for filing here.

It is an unfortunate result of this analysis that, assuming the Court's decision stands, this case will end up in its third forum.  But in the particular circumstances of this case, it is an outcome that the Court believes to be warranted.

## III.    CONCLUSION

For the reasons set out above, the Court GRANTS the Motion.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the document.  Any such redacted version shall be submitted by not later than **July 13, 2017** for review by the Court, along with an explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious

injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.

1994) (internal quotation marks and citation omitted).  The Court will subsequently issue a

publicly-available version of its Memorandum Order.


Dated: July 6, 2017                               _____
                                                  Christopher J. Burke
                                                  UNITED STATES MAGISTRATE JUDGE

30